**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SUZANNE POIRIER, Individually and On Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>BAKKT HOLDINGS, INC. f/k/a VPC IMPACT ACQUISITION HOLDINGS, JOHN MARTIN, OLIBIA STAMATOGLOU, GORDON WATSON, KAI SCHMITZ, and KURT SUMMERS,<br><br>                    Defendants. | Case No.: 1:22-cv-02283-EK-PK<br><br>**AMENDED COMPLAINT**<br><br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Rachna Mehrotra, Tse Winston Wing Kuen, and James Liner (collectively, "Plaintiffs"), individually and on behalf of all other persons similarly situated, by Plaintiffs' undersigned attorneys, for Plaintiffs' Consolidated Complaint against Bakkt Holdings, Inc. f/k/a VIH Impact Acquisition Holdings ("Bakkt") and certain of its former officers, alleges the following based upon personal knowledge as to Plaintiffs and Plaintiffs' own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiffs' attorneys, which included, among other things, a review of Bakkt's filings with the U.S. Securities and Exchange Commission ("SEC") filings, announcements and press releases by or about Defendants, media and analyst reports, and other publicly available documents.

Plaintiffs believe that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## I.     NATURE OF THE ACTION

1.     This is a federal class action lawsuit on behalf of a class consisting of all persons and entities who purchased or acquired: (a) Bakkt's publicly traded securities between March 31,

2021 and November 19, 2021, both inclusive (the "Class Period"); and/or (b) Bakkt's publicly traded securities pursuant and/or traceable to the Registration Statement (defined below) issued in connection with the business combination between VIH Impact Acquisition Holdings ("VIH") and Bakkt Holdings, LLC ("Legacy Bakkt") (the "Business Combination" or "Merger"). Plaintiffs seek to recover damages caused by Defendants' violations of the Securities Act of 1933 (the "Securities Act"), the Securities Exchange Act of 1934 (the "Exchange Act"), and SEC Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

2.     VIH was a special purpose acquisition company, or "SPAC," created to engage in an acquisition of another company and bring it to the public equity markets. VIH found its target acquisition in Legacy Bakkt, a digital asset marketplace where consumers were able to buy, sell, convert, spend, store, and send digital assets, *i.e.*, cryptocurrencies and non-fungible tokens. In the process of publicly listing Legacy Bakkt's stock, VIH and its officers and directors failed to abide by longstanding Generally Accepted Accounting Principles ("GAAP") and Accounting Standards Codification ("ASC"). They issued financial statements to investors that materially misrepresented several key accounting metrics, including shareholders' equity. They also failed to accurately describe the extent of VIH's material weaknesses in its internal controls over financial reporting. When the truth ultimately surfaced about VIH's financial statements and internal controls, investors who had purchased Bakkt stock based in part on these false financial statements suffered significant damages. This action seeks to recovery those losses and make these investors whole.

3.     On January 11, 2021, VIH entered into a definitive agreement for a merger with Legacy Bakkt that would result in Bakkt becoming a publicly traded company with an enterprise value of approximately $2.1 billion. The combined company would be renamed Bakkt Holdings,

Inc. (previously defined as Bakkt) and would be listed on the New York Stock Exchange ("NYSE") under the ticker symbol "BKKT".

4.     On March 30, 2021, after market hours, VIH filed an annual report on Form 10-K with the SEC for the fiscal year ended December 31, 2020 (the "2020 Annual Report"). The following day, on March 31, 2021, VIH filed a registration statement on Form S-4 with the SEC registering 25.9 million shares of Class A common stock and 16.5 million redeemable warrants (the "Registration Statement"). The Registration Statement included VIH's financial statements as of and for the fiscal year ended December 31, 2020, as well as VIH's condensed financial statements as of and for the three and six months ended June 30, 2021. Both the 2020 Annual Report and Registration Statement contained false and/or materially misleading financial information that, as described below, Bakkt would subsequently correct not once, but on two different occasions due to Defendants' inadequate internal controls over financial reporting.

5.     Investors began to discover VIH's internal control issues shortly after receiving the 2020 Annual Report. On May 17, 2021, VIH announced that it would not be able to timely file its quarterly report for the period ended March 31, 2021 ("1Q21 Report"). VIH disclosed that the delay was due to an accounting error pertaining to its prior classification of warrants as equity. Instead, the warrants should have been classified as liabilities measured at fair value with non-cash fair value adjustments recorded in earnings at each reporting period. In response to this news, VIH's share price fell 1.26%, or $0.13 per share, to close at $10.18 per share on May 18, 2021.

6.     On May 21, 2021, just several days later, VIH filed an amended annual report for the year ended December 31, 2020 (the "Amended 2020 Annual Report") to reclassify the warrants. Yet, unbeknownst to the market, VIH's internal control weaknesses extended beyond the warrant issue to material misrepresentations related to its Class A ordinary shares subject to

possible redemption, additional paid-in capital, accumulated loss, and shareholders' equity, all of which would force the company to file yet another amended annual report for the year ended December 31, 2020 (the "Second Amended Annual Report").

7.    On May 24, 2021, VIH filed the 1Q21 Report that it previously stated it could not timely file. The 1Q21 Report contained restated financials for fiscal 2020.

8.    The Amended 2020 Annual Report and 1Q21 Report disclosed that VIH had identified a material weakness in its internal control over financial reporting. The Amended 2020 Annual Report stated, in pertinent part, that:

> [W]e identified a material weakness in our internal control over financial reporting related to the accounting for a significant and unusual transaction related to the warrants we issued in connection with our initial public offering in September 2020. As a result of this material weakness, our management concluded that our internal control over financial reporting was not effective as of December 31, 2020. This material weakness resulted in a material misstatement of our warrant liabilities, change in fair value of warrant liabilities, Class A common stock subject to possible redemption, additional paid-in capital, accumulated deficit and related financial disclosures as of and for the period ended December 31, 2020.

9.    VIH claimed investors that "[t]o respond to this material weakness, we have devoted significant effort and resources to the remediation and improvement of our internal control over financial reporting."  "Specifically," the Amended 2020 Annual Report stated, "we expanded and improved our review process for complex securities and related accounting standards." Further, VIH reassured investors that, "[i]n light of this material weakness, we performed additional analysis as deemed necessary to ensure that our financial statements were prepared in accordance with U.S. generally accepted accounting principles."

10.    On September 17, 2021, in connection with the merger, VIH filed its Prospectus and Proxy Statement (the "Prospectus/Proxy Statement"), which was incorporated into the Registration Statement. Unbeknownst to shareholders, the Prospectus/Proxy Statement misstated

4

VIH's financial statements, including key metrics such as additional paid-in capital, accumulated deficit, and shareholders' equity.

11.    On October 13, 2021, VIH disclosed that its financial statements, as presented in the Registration Statement and Prospectus/Proxy Statement, were materially incorrect. VIH filed Form 10-Q with the SEC for the quarter ended September 30, 2021 (the "3Q21 Report"). In the 3Q21 Report, VIH disclosed that it failed to properly account for the classification of its Class A ordinary shares subject to possible redemption, which resulted in offsets "recorded to additional paid-in capital (to the extent available), accumulated deficit and Class A ordinary shares." In pertinent part, VIH corrected its financial statements as follows:

| Balance Sheet as of December 31, 2020 (audited) | As Previously Reported | Adjustment | As Revised |
|---|---|---|---|
| Class A ordinary shares subject to possible redemption | $173,122,110 | $ 34,249,910 | $207,372,020 |
| Class A ordinary shares | $          343 | $        (343) | $          — |
| Additional paid-in capital | $   9,860,338 | $ (9,860,338) | $          — |
| Accumulated deficit | $  (4,861,190) | $(24,389,229) | $(29,250,419) |
| Total Shareholders' Equity (Deficit) | $   5,000,009 | $(34,249,910) | $(29,249,901) |
| | | | |
| **Statement of Cash Flows for the Period of July 31, 2020 through September 30, 2020 (unaudited)** | | | |
| Initial classification of Class A ordinary shares subject to possible redemption | $168,557,240 | $ 31,442,760 | $200,000,000 |
| Change in value of Class A ordinary shares subject to possible redemption | (110,770) | 110,770 | — |

12.    In response to this news, VIH's stock price declined 4.73%, or $0.47 per share, to close at $9.46 per share on October 14, 2021.

13.    On November 22, 2021, Bakkt (which was now the operating entity following the combination with VIH) disclosed that the Amended 2020 Annual Report, the 1Q21 Report, the 2Q21 Report, and the 3Q21 Report (that is, financial statements covering the entire period of VIH's existence) should no longer be relied upon by investors and would be restated. Bakkt stated that this was due to the misclassification of the Class A ordinary shares disclosed on October 13, 2021, which involved adjustments that Bakkt had previously "deemed . . . to be immaterial that time." However, after consultation with its auditor, WithumSmith+Brown ("Withum"), Bakkt

determined that the misclassification error was in fact material and required the restatement of nearly two years' worth of financial statements. On this news, Bakkt's stock price declined an additional 13.69%, or $2.70 per share, to close at $17.02 per share on November 22, 2021.

14.     A company's liabilities, additional paid-in capital, accumulated deficit, and shareholders' equity are some of the important metrics that investors utilize to gauge the financial health of a company and determine whether it is a worthy investment. In addition, a company's ability to retain additional paid-in capital and shareholders' equity is very important. This signals to investors that the company has been diligent and successful in not allowing additional paid-in capital and shareholders' equity to be eroded away or obliterated by accumulated losses, excessive debts incurred, or even large dividend payments. Further, investors also rely on a company's net worth in assessing its overall value, financial health, and future potential. Given that a company's net worth is calculated by subtracting total liabilities from total assets, this requires truthful and accurate disclosures as to the full extent of a company's assets and liabilities. Defendants failed to comply with these requirements and, as a result, Plaintiffs and other investors suffered losses. Defendants are liable for these losses.

## II.    **JURISDICTION AND VENUE**

15.     The federal law claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act [15 U.S.C. §§ 77k and 77o], and Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§78j, 78t] and Rule 10b-5 promulgated thereunder by the SEC [17 C.F.R. § 240.10b-5].

16.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331, Section 22 of the Securities Act of 1933 [15 U.S.C. §77v], and Section 27 of the Exchange Act [15 U.S.C. §78aa].

17.     This Court has jurisdiction over each Defendant named herein because each

6

Defendant is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District Court permissible under traditional notions of fair play and substantial justice.

18.     Venue is proper in this District pursuant to Section 22 of the Securities Act of 1933 [15 U.S.C. §77v], Section 27 of the Exchange Act [15 U.S.C. §78aa], and 28 U.S.C. § 1391(b) because certain of the acts alleged herein, including the preparation and dissemination of material false and/or misleading information, occurred in this District.

19.     In connection with the acts alleged herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited the mails, interstate telephone communications, and the facilities of the national securities markets.

## III.    PARTIES

### A.    Plaintiffs

20.     Plaintiff Rachna Mehrotra purchased Bakkt securities (*i.e.*, Bakkt's Class A common stock) pursuant and/or traceable to the Registration Statement during the Class Period and, as a result, was damaged thereby. Mehrotra's certification evidencing her transactions is incorporated by reference herein. Dkt. No. 15-1 at 1-2.

21.     Plaintiff Tse Winston Wing Kuen purchased Bakkt securities (*i.e.*, Bakkt's Class A common stock) pursuant and/or traceable to the Registration Statement during the Class Period and, as a result, was damaged thereby. Mr. Kuen's certification evidencing his transactions is incorporated by reference herein. Dkt. No. 24-6 at 1-6.

22.     Plaintiff James Liner purchased Bakkt securities (*i.e.*, Bakkt's Class A common stock) pursuant and/or traceable to the Registration Statement during the Class Period and, as a result, was damaged thereby. Mr. Liner's certification evidencing his transactions is incorporated by reference herein. Dkt. No. 24-6 at 7-9.

23.     Together, Mehrotra, Kuen, and Liner are referred to herein as "Plaintiffs."

**B.    Defendants**

24.     Defendant Bakkt is a Delaware corporation with principal executive offices located at 10000 Avalon Blvd., Suite 1000, Alpharetta, Georgia 30009. Bakkt's Class A common stock and warrants trade in an efficient market on the NYSE under the ticker symbols "BKKT" and "BKKT WS," respectively. Prior to the merger, Bakkt (as VIH) was incorporated in the Cayman Islands with its principal executive office located at Victory Park Capital Advisors, LLC, 150 North Riverside Plaza, Suite 5200, Chicago, Illinois 60606. At that time, VIH's units, Class A ordinary shares, and warrants traded on the Nasdaq Capital Market ("NASDAQ") under the ticker symbols "VIHAU," "VIH," and "VIHAW," respectively.

25.     Defendant John Martin ("Martin") was, at all relevant times, the Chief Executive Officer ("CEO") of Bakkt prior to the consummation of the merger. Martin signed or authorized the signing of the Registration Statement, Prospectus/Proxy Statement, and other filings with the SEC described herein.

26.     Defendant Olibia Stamatoglou ("Stamatoglou") served as Bakkt's Chief Financial Officer ("CFO") at all relevant times prior to the consummation of the merger. Stamatoglou signed or authorized the signing of the Registration Statement, Prospectus/Proxy Statement, and other filings with the SEC described herein.

27.     Defendant Gordon Watson ("Watson") served as Bakkt's Chief Operating Officer ("COO") and President at all relevant times prior to the consummation of the merger. Watson signed or authorized the signing of the Registration Statement and Prospectus/Proxy Statement.

28.      Defendant Kai Schmitz ("Schmitz") served as Bakkt's Director at all relevant times prior to the consummation of the merger. Schmitz authorized the signing of the Registration Statement and Prospectus/Proxy Statement.

29.      Defendant Kurt Summers ("Summers") served as Bakkt's Director at all relevant times prior to the consummation of the merger. Summers authorized the signing of the Registration Statement and Prospectus/Proxy Statement.

30.      Defendants Martin, Stamatoglou, Watson, Schmitz, and Summers are referred to as the "Individual Defendants."

31.      Bakkt, together with the Individual Defendants, are referred to as "Defendants."

32.      The Individual Defendants were at all relevant times acting within their normal scopes of employment. Consequently, their intent and/or state of mind is imputed to VIH and/or Bakkt under the doctrine of *respondeat superior* and common law principles of agency.

## IV.    FACTUAL BACKGROUND

### A.    VIH SPAC Formation and Announcement of Business Combination

33.      When listing, a common practice among SPACs is to offer common stock in addition to warrants as a key way to entice and attract early investors who may have to lock up their cash for years. SPACs significantly increased in popularity in 2020 as it represented a means in which companies could sidestep the stricter regulatory requirements of a traditional initial public offering. The Harvard Business Review reported that, in 2019, 59 SPACs were created with $13 billion invested and in 2020, 247 SPACs were created with $80 billion invested, which represented more than 50% of the new publicly listed U.S. companies in 2020. According to data from Dealogic, from January 2021 to March 2021, U.S. SPACs raised a record $100 billion with 298 SPAC initial public offerings occurring in the just the first three months of 2021.

34.    On July 31, 2020, VIH was incorporated in the Cayman Islands as a blank check company for the purpose of effecting a merger, share exchange, asset acquisition, share purchase, reorganization, or similar business combination with one or more businesses. Specifically, VIH was a SPAC. SPACs are companies without commercial operations that are formed to raise capital in order to acquire or merge with an existing private company, thereby allowing the private company to become a publicly-traded one.

35.    On September 22, 2020, VIH consummated its initial public offering of 20,000 units, each consisting of one Class A ordinary share and one-half of one redeemable warrant (with each whole warrant entitling the holder thereof to purchase one Class A ordinary share for $11.50 per share, subject to adjustment). VIH's IPO generated gross proceeds of $200 million. VIH's Class A ordinary shares and warrants traded on the NASDAQ Capital Market.

36.    Simultaneously with VIH's initial public offering, VIH completed the private sale of 6,000,000 warrants to its sponsor at a purchase price of $1.00 per warrant, generating an additional gross proceeds of $6 million.

37.    On January 11, 2021, VIH issued a press release announcing that it entered into a definitive agreement for the Merger with Legacy Bakkt that would result in Bakkt becoming a publicly traded company with an enterprise value of approximately $2.1 billion. The combined company would be renamed Bakkt Holdings, Inc. and would be listed on the NYSE. The press release also stated, in relevant part:

> **Key Transaction Terms**
> The business combination values the combined company at an enterprise value of approximately $2.1 billion and is expected to result in over $500 million of cash on the combined company's balance sheet, reflecting a contribution of up to $207 million of cash held in VIH Impact Acquisition Holdings' trust account, and a $325 million concurrent private placement (PIPE) of Class A common stock of the combined company, priced at $10.00 per share, including a $50 million contribution from ICE.

As part of the transaction, Bakkt's existing equity holders and management will roll 100% of their equity into the combined company. Assuming no shareholders of VIH exercise their redemption rights, current Bakkt equity holders will own approximately 78%, VIH public shareholders will own approximately 8%, VIH will own approximately 2%, and PIPE investors (a group that will include ICE) will own approximately 12% of the combined company (through an Up-C structure described below) at closing.

In connection with the business combination, VIH will change its jurisdiction of incorporation from the Cayman Islands to the State of Delaware. The business combination has been structured as an "Up-C" where former Bakkt equity owners will retain their equity interests in Bakkt and will receive non-economic voting shares of the combined company at closing. The combined company will also enter into a customary tax receivable arrangement with the current equity holders of Bakkt, which will provide for the sharing of certain tax benefits as realized by the combined company.

The proposed business combination has been unanimously approved by the Boards of Directors of Bakkt and VIH, is subject to approval by VIH's shareholders, regulatory approvals and other customary closing conditions. The business combination is expected to close in the second quarter of 2021.

A more detailed description of the business combination terms and a copy of the Agreement and Plan of Merger will be included in a current report on Form 8-K to be filed by VIH with the United States Securities and Exchange Commission (the "SEC"). VIH will file a registration statement (which will contain a proxy statement/prospectus) with the SEC in connection with the business combination.

**B.    The Registration Statement**

38.    On March 31, 2021, after market hours (the start of the Class Period), VIH filed a registration statement with the SEC on Form S-4 in connection with the merger (previously defined as the Registration Statement). The Registration Statement registered 25,921,502 Class A common shares, which consisted of 20,737,202 Class A ordinary shares issued in its IPO registered on Form S-1 (SEC File No. 333-248619) and 5,184,300 Class B ordinary shares. As a result of domestication, the Class A and Class B ordinary shares would automatically convert, by operation of law, into shares of Class A common stock.

C.    **Pre-Merger Restatement of Financial Information**

39.    On April 12, 2021, the SEC published its "Staff Statement on Accounting and Reporting Considerations for Warrants Issued by Special Purpose Acquisition Companies ("SPACs")" (the "SEC Warrant Statement"). The SEC Warrant Statement stated that, in in light of "certain terms that may be common in warrants included in SPAC transactions," the warrants issued by most SPACs must be classified as liabilities rather than equity, with the liability measured at fair value, with changes in fair value each period reported in earnings. The SEC Warrant Statement further advised SPACs that, if they had accounted for their warrants improperly, they must consider whether to restate any previously-issued financial statements. The SEC Warrant Statement also advised, in pertinent part, that SPACs:

> should consider their obligation to maintain internal controls over financial reporting and disclosure controls and procedures to determine whether those controls are adequate. ***Registrants and their advisors should also assess whether prior disclosure on the evaluation of internal controls over financial reporting and disclosure controls and procedures needs to be revised in the amended filings. Such an analysis would necessarily include consideration of whether there is a control deficiency or deficiencies and an evaluation of the severity of any control deficiency, individually or in the aggregate. The evaluation of the severity of any control deficiency should not be limited to the actual misstatement that occurred or whether that misstatement was material, but instead should consider the magnitude of the potential misstatement resulting from the deficiency or deficiencies, amongst other considerations.***

(Emphasis added.)

1.    Amended 2020 Annual Report

40.    Following the publication of the SEC Warrant Statement, VIH determined that it had previously improperly classified its warrants as equity rather than as liabilities. On May 17, 2021, after market hours, VIH filed Form NT 10-Q with the SEC alerting regulators and the market that it could not timely file its Quarterly Report for the fiscal quarter ended March 31, 2021. VIH disclosed that "the Warrants should be, and should previously have been, classified as a liability

measured at fair value, with non-cash fair value adjustments recorded in earnings at each reporting period," and stated that it was working diligently to "determine[e} the extent of the SEC Statement's impact on its financial statements" and file the quarterly report as soon as practicable

41.    On May 21, 2021, after market hours, VIH filed an amended Annual Report on Form 10-K for the year ended December 31, 2020 (the "Amended 2020 Annual Report") restating the company's warrants as a liability instead of equity and disclosing a material weakness in internal controls over financial reporting.

42.    The Amended 2020 Annual Report stated, in relevant part:

> Due to the recurring fair value measurement, we expect that we will recognize non-cash gains or losses on our warrants each reporting period and that the amount of such gains or losses could be material. The impact of changes in fair value on earnings may have an adverse effect on the market price of our ordinary shares. In addition, potential targets may seek a special purpose acquisition company that does not have warrants that are accounted for as liability, which may make it more difficult for us to consummate an initial business combination with a target business.

> . . .

> As described elsewhere in this Annual Report, ***we identified a material weakness in our internal control over financial reporting related to the accounting for a significant and unusual transaction related to the warrants we issued in connection with our initial public offering in September 2020***. As a result of this material weakness, our management concluded that our internal control over financial reporting was not effective as of December 31, 2020. This material weakness resulted in a material misstatement of our warrant liabilities, change in fair value of warrant liabilities, Class A common stock subject to possible redemption, additional paid-in capital, accumulated deficit and related financial disclosures as of and for the period ended December 31, 2020 (the "Affected Period").

> To respond to this material weakness, we have devoted significant effort and resources to the remediation and improvement of our internal control over financial reporting . . . .

(Emphasis added.)

43.     As shown below, the Amended 2020 Annual Report disclosed material changes to VIH's balance sheet due to the reclassification of VIH's warrants, including Class A ordinary shares subject to possible redemption in the amount of $173,122,110, additional paid-in capital of $9,860,338, and an accumulated deficit of $4,861,190:

| Balance Sheet as of December 31, 2020 (audited) | | | |
|---|---|---|---|
| Warrant Liabilities | $          — | $ 22,513,065 | $ 22,513,065 |
| Total Liabilities | 8,153,666 | 22,513,065 | 30,666,731 |
| Class A ordinary shares subject to possible redemption | 195,635,180 | (22,513,070) | 173,122,110 |
| Class A ordinary shares | 118 | 225 | 343 |
| Additional paid-in capital | $    6,002,037 | $   3,858,301 | $   9,860,338 |
| Accumulated deficit | $   (1,002,669) | $ (3,858,521) | $  (4,861,190) |
| Total Shareholders' Equity | $    5,000,004 | $              5 | $   5,000,009 |
| Number of shares subject to possible redemption | 19,563,518 | (2,251,306) | 17,312,211 |

75

44.     VIH assured investors that its conclusion that its internal control over financial reporting was not effective as of December 31, 2020 was "due *solely* to the material weakness" concerning accounting for the "significant and unusual transaction related to the warrants" issued in VIH's initial public offering (emphasis added). VIH further stated that "[m]anagement has implemented remediation steps to address the material weakness and to improve our internal control over financial reporting. Specifically, we expanded and improved our review process for complex securities and related accounting standards." In connection with the reclassification of Warrants from equity to liabilities, the Amended 2020 Annual Report reported a loss of ***$3,090,130*** arising from a change in the fair value of warrant liabilities for the period from July 31, 2020 (inception) through December 31, 2020, which contributed to a net loss of $4,861,190 for that period.

45.     In reference to the Class A ordinary shares subject to possible redemption, the Amended 2020 Annual Report stated, in relevant part:

> *Class A Ordinary Shares Subject to Possible Redemption*
> *We account for our Class A ordinary shares subject to possible redemption in accordance with the guidance in Accounting Standards Codification ("ASC") Topic 480 "Distinguishing Liabilities from Equity."* Class A ordinary shares

subject to mandatory redemption is classified as a liability instrument and is measured at fair value. Conditionally redeemable ordinary shares (including ordinary shares that features redemption rights that is either within the control of the holder or subject to redemption upon the occurrence of uncertain events not solely within our control) is classified as temporary equity. At all other times, ordinary shares are classified as shareholders' equity. ***Our ordinary shares feature certain redemption rights that are considered to be outside of our control and subject to occurrence of uncertain future events. Accordingly, Class A ordinary shares subject to possible redemption is presented as temporary equity, outside of the shareholders' equity section of our condensed balance sheet***.

…

### Net Income (Loss) Per Ordinary Share

We apply the two-class method in calculating earnings per share. Net income per ordinary share, basic and diluted for Class A redeemable ordinary shares is calculated by dividing the interest income earned on the Trust Account by the weighted average number of Class A redeemable ordinary shares outstanding since original issuance. Net loss per common share, basic and diluted for Class B non-redeemable ordinary shares is calculated by dividing the net income (loss), less income attributable to Class A redeemable ordinary shares, by the weighted average number of Class B non-redeemable ordinary shares outstanding for the periods presented.

### Recent Accounting Standards

Management does not believe that any recently issued, but not yet effective, accounting standards, if currently adopted, would have a material effect on our condensed consolidated financial statements.

…

### Recent Accounting Pronouncements

Our management does not believe there are any other recently issued, but not yet effective, accounting pronouncements, if currently adopted, that would have a material effect on our consolidated financial statements.

…

### Class A Ordinary Shares Subject to Possible Redemption

***The Company accounts for its Class A ordinary shares subject to possible redemption in accordance with the guidance in Accounting Standards Codification ("ASC") Topic 480 "Distinguishing Liabilities from Equity."*** Ordinary shares subject to mandatory redemption are classified as a liability instrument and are measured at fair value. Conditionally redeemable ordinary shares (including ordinary shares that feature redemption rights that are either within the control of the holder or subject to redemption upon the occurrence of

uncertain events not solely within the Company's control) are classified as temporary equity. At all other times, ordinary shares are classified as shareholders' equity. The Company's ordinary shares feature certain redemption rights that are considered to be outside of the Company's control and subject to occurrence of uncertain future events. ***Accordingly, at December 31, 2020, 17,312,211 Class A ordinary shares subject to possible redemption are presented as temporary equity, outside of the shareholders' equity section of the Company's consolidated balance sheet.***

(Emphasis added.)

        2.    <u>1Q21 Quarterly Report</u>

46.     On May 24, 2021, before market hours, VIH filed its previously delayed Form 10-Q for the quarter of ended March 31, 2021 (previously defined as the "1Q21 Report") with the SEC. The 1Q21 Report restated VIH's balance sheet for the year ended December 31, 2020 as disclosed in the Amended 2020 Annual Report. In addition, the 1Q21 Report disclosed additional paid-in capital of $43,531,612, an accumulated deficit of $38,532,806, and total shareholders' equity of $5,000,003 as of March 31, 2021.

47.     Similar to the Amended 2020 Annual Report, the 1Q21 Report acknowledged that there was a material weakness in VIH's internal control over financial reporting, but concealed its pervasiveness and severity by claiming that the "disclosure controls and procedures were not effective, due solely to the material weakness in [their] internal control over financial reporting" and VIH "ensure[d] that [their] financial statements were prepared in accordance with U.S. generally accepted accounting principles. Notwithstanding the material weakness, management has concluded that the financial statements included elsewhere in this Quarterly Report present fairly, in all material respects, our financial position, results of operations and cash flows in conformity with GAAP."

48.     The 1Q21 Report also discussed the Class A ordinary shares subject to possible redemption, stating that, in relevant part:

*Class A Ordinary Shares Subject to Possible Redemption*
***The Company accounts for its Class A ordinary shares subject to possible redemption in accordance with the guidance in Accounting Standards Codification ("ASC") Topic 480 "Distinguishing Liabilities from Equity."*** Class A ordinary shares subject to mandatory redemption are classified as a liability instrument and are measured at fair value. Conditionally redeemable ordinary shares (including ordinary shares that feature redemption rights that are either within the control of the holder or subject to redemption upon the occurrence of uncertain events not solely within the Company's control) are classified as temporary equity. At all other times, ordinary shares are classified as shareholders' equity. The Company's ordinary shares feature certain redemption rights that are considered to be outside of the Company's control and subject to occurrence of uncertain future events. ***Accordingly, at March 31, 2021 and December 31, 2020, Class A ordinary shares subject to possible redemption are presented as temporary equity, outside of the shareholders' equity section of the Company's condensed consolidated balance sheets.***
…

*Recent Accounting Standards*
Management does not believe that any recently issued, but not yet effective, accounting standards, if currently adopted, would have a material effect on our condensed consolidated financial statements.

(Emphasis added.)

### 3.    2Q21 Quarterly Report

49.    On August 13, 2021, after market hours, VIH filed a quarterly report on Form 10-Q for the quarter ended June 30, 2021 (the "2Q21 Report") with the SEC. Attached as exhibits to the 2Q21 Report were SOX certifications signed by Defendants Martin and Stamatoglou.

50.    The 2Q21 Report disclosed additional paid-in capital of $22,262,164, an accumulated deficit of $17,263,148, and total shareholders' equity of $5,000,001 as of June 30, 2021. Once again, VIH also acknowledged that there was a material weakness in its internal control over financial reporting, but concealed its pervasiveness and severity by claiming that the "disclosure controls and procedures were not effective, due solely to the material weakness in [their] internal control over financial reporting" and VIH "ensure[d] that [their] unaudited interim financial statements were prepared in accordance with U.S. generally accepted accounting

principles. Accordingly, management believes that the financial statements included in this Quarterly Report on Form 10-Q present fairly in all material respects our financial position, results of operations and cash flows for the period presented."

51.     The 2Q21 Report also included substantively similar statements from the Amended 2020 Annual Report and the 1Q21 Report regarding the Class A ordinary shares subject to possible redemption. Specifically, the 2Q21 Report stated, in relevant part:

> **Class A Ordinary Shares Subject to Possible Redemption**
> **The Company accounts for its Class A ordinary shares subject to possible redemption in accordance with the guidance in Accounting Standards Codification ("ASC") Topic 480 "Distinguishing Liabilities from Equity."** Class A ordinary shares subject to mandatory redemption are classified as a liability instrument and are measured at fair value. Conditionally redeemable ordinary shares (including ordinary shares that feature redemption rights that are either within the control of the holder or subject to redemption upon the occurrence of uncertain events not solely within the Company's control) are classified as temporary equity. At all other times, ordinary shares are classified as shareholders' equity. The Company's ordinary shares feature certain redemption rights that are considered to be outside of the Company's control and subject to occurrence of uncertain future events. **Accordingly, at June 30, 2021 and December 31, 2020, Class A ordinary shares subject to possible redemption are presented as temporary equity, outside of the shareholders' equity section of the Company's condensed consolidated balance sheets.**

(Emphasis added.)

### D.     Prospectus/Proxy Statement

52.     On September 17, 2021, after market hours, VIH filed a Prospectus and Proxy Statement with the SEC on Form 424B3 and Form DEFM14A (previously defined as the Prospectus/Proxy Statement), respectively. The Registration Statement was declared effective as of 4:00 p.m. that day. Shareholders were asked to approve a merger with Legacy Bakkt that would result in a surviving entity named Bakkt Holdings, Inc. following domestication. The prospectus offered 25,921,502 Class A common stock shares and 16,516,041 warrants to purchase shares of Class A common stock of VIH. The Registration Statement and Prospectus/Proxy Statement

contained materially incorrect historical financial statements and misrepresented that material weaknesses no longer existed except for the period ended December 31, 2020, as described in the Amended 2020 Annual Report.

53.     The Prospectus/Proxy Statement was incorporated into the Registration Statement, which VIH amended on Forms S-4/A on May 26, 2021, July 9, 2021, August 19, 2021, September 3, 2021, and September 16, 2021, prior to it becoming effective.

54.     VIH's Registration Statement registered 25,921,502 shares of Class A common stock and 16,516,041 redeemable warrants. Neither the Class A common stock nor the redeemable warrants existed prior to the effective date of the Registration Statement. Upon completion of the business combination between VIH and Legacy Bakkt, equity holders in both companies received newly registered shares of Class A common stock and redeemable warrants under the Registration Statement pursuant to the terms of an exchange agreement.

### E.     Post-Merger Restatement of Financial Information

#### 1.     3Q21 Report

55.     On October 13, 2021, after market hours, Bakkt filed Form 10-Q with the SEC for the quarter ended September 30, 2021 (the "3Q21 Report"). Attached as exhibits to the 3Q21 Report were SOX certifications signed by Defendants Martin and Stamatoglou. The 3Q21 Report disclosed that Bakkt (and VIH prior to the consummation of the merger) previously misclassified its Class A redeemable shares, which consequently resulted in false financial reporting related to additional paid-in capital, accumulated deficit, and shareholders' equity. The 3Q21 Report stated that, in pertinent part:

> In connection with the preparation of the Company's financial statements as of September 30, 2021, management determined it should revise its previously reported financial statements. The Company determined, at the closing of the Company's Initial Public Offering and shares sold pursuant to the exercise of the

underwriters' overallotment, it had improperly valued its Class A ordinary shares subject to possible redemption . . . . ***As a result, management has noted a reclassification adjustment related to temporary equity and permanent equity. This resulted in an adjustment to the initial carrying value of the Class A ordinary shares subject to possible redemption with the offset recorded to additional paid-in capital (to the extent available), accumulated deficit and Class A ordinary shares.***

(Emphasis added.)

56.     As shown below, due to Bakkt restating its balance sheet for the year ended December 31, 2020, additional paid-in capital was non-existent instead of the previously disclosed $9,860,338, the accumulated deficit was reported as $29,250,419 compared to the previous reporting of $4,861,190, and the $5,000,009 shareholders' equity was annihilated, replaced by a shareholders' deficit of $29,249,901.

| Balance Sheet as of December 31, 2020 (audited) | As Previously Reported | Adjustment | As Revised |
|---|---|---|---|
| Class A ordinary shares subject to possible redemption | $173,122,110 | $ 34,249,910 | $207,372,020 |
| Class A ordinary shares | $       343 | $      (343) | $      — |
| Additional paid-in capital | $  9,860,338 | $ (9,860,338) | $      — |
| Accumulated deficit | $  (4,861,190) | $(24,389,229) | $ (29,250,419) |
| Total Shareholders' Equity (Deficit) | $   5,000,009 | $(34,249,910) | $ (29,249,901) |

| Statement of Cash Flows for the Period of July 31, 2020 through September 30, 2020 (unaudited) | | | |
|---|---|---|---|
| Initial classification of Class A ordinary shares subject to possible redemption | $168,557,240 | $ 31,442,760 | $200,000,000 |
| Change in value of Class A ordinary shares subject to possible redemption | (110,770) | 110,770 | — |

57.     The 3Q21 Report stated further, in relevant part:

*Changes in Internal Control Over Financial Reporting*
There was no change in our internal control over financial reporting that occurred during the fiscal quarter ended September 30, 2021 covered by this Quarterly Report on Form 10-Q that has materially affected, or is reasonably likely to materially affect, our internal control over financial reporting. The material weakness discussed below was remediated during the quarter ended September 30, 2021.

*Remediation of a Material weakness in Internal Control over Financial Reporting*
We recognize the importance of the control environment as it sets the overall tone for the Company and is the foundation for all other components of internal control. Consequently, we designed and implemented remediation measures to address the

material weakness previously identified and enhance our internal control over financial reporting. In light of the material weakness, we enhanced our processes to identify and appropriately apply applicable accounting requirements to better evaluate and understand the nuances of the complex accounting standards that apply to our condensed consolidated financial statements, including providing enhanced access to accounting literature, research materials and documents and increased communication among our personnel and third-party professionals with whom we consult regarding complex accounting applications. The foregoing actions, which we believe remediated the material weakness in internal control over financial reporting, were completed as of the date of June 30, 2021.

(emphasis in original).

### 2.    Shareholder Vote

58.    On October 14, 2021, at the extraordinary general meeting of its shareholders, VIH's shareholders voted to approve the previously announced merger with Legacy Bakkt. Approximately 85.1% of the votes cast at the meeting voted to approve the merger.

59.    On October 15, 2021, the merger was consummated and VIH changed its name to Bakkt Holdings, Inc. At this time, a portion of VIH's shares were exchanged for cash through the exercise of redemption rights and the remaining shares were exchanged for newly issued shares of Bakkt's Class A common stock. On October 18, 2021, VIH securities were removed from the NASDAQ and Bakkt's Class A common stock and warrants began trading on the NYSE under the ticker symbols "BKKT" and "BKKT.WS", respectively.

### 3.    Statement of Non-Reliance

60.    On November 22, 2021, before market hours, Bakkt filed Form 8-K with the SEC issuing a statement of *Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review*. It stated that, in relevant part:

> **Management of Bakkt Holdings, Inc. (the "Company") has re-evaluated the application of ASC 480-10-S99-3A to the accounting classification of the Class A ordinary shares**, par value $0.0001 (the "Class A Ordinary Shares") of VIH Acquisition Impact Holdings ("VIH") prior to the completion of the Merger (defined below), which were issued in connection with VIH's initial public offering

21

(the "IPO"), *and has identified errors in the historical financial statements of VIH for the Affected Period (defined below) related to the misclassification (the "Misclassification") of the Class A Ordinary Shares prior to the Merger. Accordingly, the Company has determined that it is appropriate to restate certain of VIH's condensed consolidated financial statements from the Affected Period.* Legacy Bakkt's (as defined below) historical consolidated financial statements are not affected by the Misclassification, and none of the current management of the Company or its Audit Committee (as defined below) had any role in any of the prior accounting and financial reporting determinations of VIH.

*Historically, a portion of the Class A Ordinary Shares was classified as permanent equity to maintain net tangible assets of at least $5,000,001 on the basis that VIH would consummate its initial business combination only if VIH had net tangible assets of at least $5,000,001.* To the Company's knowledge, VIH's management at the time of the IPO evaluated the accounting for the Class A Ordinary Shares at their issuance and believed the accounting treatment to be appropriate at that time. In connection with VIH's condensed consolidated financial statements as of September 30, 2021 and the filing of its Quarterly Report on Form 10-Q filed on October 13, 2021, VIH's management determined it should revise its previously reported financial statements to, among other things, address the Misclassification by noting a reclassification adjustment related to temporary equity and permanent equity. This resulted in an adjustment to the initial carrying value of the Class A Ordinary Shares subject to possible redemption with the offset recorded to additional paid-in capital (to the extent available), accumulated deficit and Class A Ordinary Shares. However, VIH did not restate the historical financial statements because it deemed the adjustment to be immaterial at that time.

WithumSmith+Brown, PC ("Withum") was the independent registered public accounting firm of VIH during the Affected Period and for the life of VIH as a special purpose acquisition vehicle from July 31, 2020 (inception) through the consummation of the Merger. Subsequent to this filing, and based on discussions with Withum, including in relation to Withum's recent discussions with the U.S. Securities and Exchange Commission ("SEC") regarding unpublished but evolving positions expressed by the staff to certain persons, as relayed to the Company by Withum, as well as public reporting regarding such misclassification issues in the SPAC industry as a whole, management made a determination regarding the Misclassification and determined to take the other actions described herein in restating certain of VIH's condensed consolidated financial statements from the Affected Period.

On November 19, 2021, management, after briefing and consulting with the Audit Committee of the Board of Directors of the Company (the "Audit Committee"), concluded that, *due to the Misclassification, VIH's previously issued (i) condensed consolidated audited financial statements for the year ended December 31, 2020 included in VIH's Annual Report on Form 10-K, initially filed on March 31, 2021 (as amended); and (ii) condensed consolidated*

> ***unaudited financial statements for the quarterly periods ended March 31, 2021, June 30, 2021 and September 30, 2021 included in VIH's Quarterly Reports on Form 10-Q filed on May 24, 2021, August 13, 2021 and October 13, 2021, respectively (the periods referred to in (i) and (ii), collectively, the "Affected Period"), should no longer be relied upon*** based on the facts described below. Further, the Audit Committee, in consultation with management, determined that it is appropriate to restate certain of VIH's condensed consolidated financial statements from the Affected Period.

(Emphasis added.)

### 4.    2020 Annual Report and 2021 Quarterly Reports

61.    On December 7, 2021, after market hours, Bakkt filed Form 10-Q/A with the SEC restating its quarterly financial statements for the quarters ended March 31, 2021, June 30, 2021, and September 30, 2021. At the time of the IPO, VIH improperly classified a portion of its Class A redeemable shares as permanent equity resulting in materially incorrect statements of VIH's additional paid-in capital, accumulated deficit, and shareholders' equity. After discussion, management determined that a reclassification adjustment related to temporary equity and permanent equity should be restated for the 1Q21, 2Q21, and 3Q21 financials. As shown below, Bakkt had to make significant, material changes to the financial information it previously reported for additional paid-in capital, accumulated deficit, and shareholders' equity:

| | As Previously Reported | Adjustment | As Restated |
|---|---|---|---|
| **Balance Sheet as of March 31, 2021 (unaudited)** | | | |
| Class A ordinary shares subject to possible redemption | $139,450,500 | $ 67,921,520 | $207,372,020 |
| Class A ordinary shares | $        679 | $       (679) | $        — |
| Additional paid-in capital | $ 43,531,612 | $(43,531,612) | $        — |
| Accumulated deficit | $(38,532,806) | $(24,389,229) | $ (62,922,035) |
| Total shareholders' equity (deficit) | $    5,000,003 | $(67,921,520) | $ (62,921,517) |
| Number of shares subject to redemption | 13,945,050 | 6,792,152 | 20,737,202 |
| **Balance Sheet as of June 30, 2021 (unaudited)** | | | |
| Class A ordinary shares subject to possible redemption | $160,720,160 | $ 46,651,860 | $207,372,020 |
| Class A ordinary shares | $        467 | $       (467) | $        — |
| Additional paid-in capital | $ 22,262,164 | $(22,262,164) | $        — |
| Accumulated deficit | $(17,263,148) | $(24,389,229) | $ (41,652,377) |
| Total shareholders' equity (deficit) | $    5,000,001 | $(46,651,860) | $ (41,651,859) |
| Number of shares subject to redemption | 16,072,016 | 4,665,186 | 20,737,202 |

62.    The *Condensed Consolidated Balance Sheets* revealed that additional paid-in capital was $0, accumulated deficit was $42,135,525, and shareholders' equity turned into a shareholders' deficit of $42,135,007, as of September 30, 2021. For the year ended December 31, 2020, the *Condensed Consolidated Balance Sheets* revealed that additional paid-in capital was $0, accumulated deficit was $29,250,419, and shareholders' equity was actually a shareholders' deficit of $29,249,901.

63.    On December 7, 2021, after market hours, Bakkt also filed Form 10-K/A with the SEC restating its annual financial statements for the year ended December 31, 2020, which became Bakkt's ***Second*** Amended Annual Report for the year 2020. It reported the same changes to Bakkt's additional paid-in capital, accumulated deficit, and shareholders' deficit as the above restated Quarterly Report, *i.e.,* additional paid-in capital was $0, the accumulated deficit was $29,250,419, and shareholders' equity was actually a shareholders' deficit of $29,249,901.

## V.    CLASS ACTION ALLEGATIONS

64.    Plaintiffs bring this action on behalf of all persons and entities who purchased or acquired: (a) Bakkt's publicly traded securities during the Class Period; and/or (b)  Bakkt's publicly traded securities pursuant and/or traceable to the Registration Statement (the "Class"). Excluded from the Class are the Individual Defendants, members of the immediate families of each Defendant, VIH and/or Bakkt (including its subsidiaries) and its officers and directors at all relevant times, any entity in which any excluded party has or had a controlling interest or which is related to or affiliated with any Defendant, and the legal representatives, heirs, successors or assigns of any such excluded party.

65.    The members of the Class are so numerous that joinder of all members is impracticable. At all relevant times, VIH and/or Bakkt's stock was actively traded on the Nasdaq

and/or NYSE. While the exact number of Class members is unknown to Plaintiffs at this time and can be ascertained only through appropriate discovery, Plaintiffs believe that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by VIH and/or Bakkt or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

66.    Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by the Defendants' respective wrongful conduct in violation of the federal laws complained of herein.

67.    Plaintiffs have and will continue to fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation. Plaintiffs have no interests antagonistic to or in conflict with those of the Class.

68.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

      a.    whether the federal securities laws were violated by Defendants;

      b.    whether the price of VIH's and/or Bakkt's stock during the Class Period was artificially inflated because of the Defendants' conduct complained of herein; and

      c.    whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

69.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden

of individual litigation make it impossible for members of the Class to individually redress the

wrongs done to them. There will be no difficulty in the management of this action as a class action.

## VI.    SECURITIES ACT ALLEGATIONS

70.    The Prospectus/Proxy Statement, which formed part of the Registration Statement,

contained false statements.

71.    The Prospectus/Proxy Statement stated that VIH complied with Accounting

Standards Codification Topic 480 and that, as of December 31, 2020, there were 17,312,211 Class

A ordinary shares subject to possible redemption. In pertinent part, the Prospectus/Proxy Statement

stated:

> ***The Company accounts for its Class A ordinary shares subject to possible redemption in accordance with the guidance in Accounting Standards Codification ("ASC") Topic 480 "Distinguishing Liabilities from Equity."*** Ordinary shares subject to mandatory redemption are classified as a liability instrument and are measured at fair value. Conditionally redeemable ordinary shares (including ordinary shares that feature redemption rights that are either within the control of the holder or subject to redemption upon the occurrence of uncertain events not solely within the Company's control) are classified as temporary equity. At all other times, ordinary shares are classified as shareholders' equity. The Company's ordinary shares feature certain redemption rights that are considered to be outside of the Company's control and subject to occurrence of uncertain future events. ***Accordingly, at December 31, 2020, 17,312,211 Class A ordinary shares subject to possible redemption are presented as temporary equity, outside of the shareholders' equity section of the Company's consolidated balance sheet.***

(Emphasis added.)

72.    The statements in the immediately preceding paragraph were false and/or

materially misleading because VIH did not comply with Accounting Standards Codification Topic

480. Topic 480 (specifically, ASC 480-10-S99-3A) provides that redemption provisions outside

of the issuer's control require common stock subject to redemption to be classified outside of

permanent equity (*i.e.*, as temporary equity). Because VIH's Class A redeemable shares contained

redemption provisions that were outside of the company's control, ***all*** of its Class A redeemable shares should have been classified as temporary equity. Yet, contrary to applicable GAAP guidance, VIH classified a portion of its Class A redeemable shares as permanent equity. Further, and as a result of its failure to comply with Topic 480, there were in fact 20,737,202 Class A redeemable shares as of December 31, 2020 (and not 17,312,211 Class A redeemable shares, as initially represented).

73.     In addition to the foregoing, VIH's Prospectus/Proxy Statement also contained false financial statements, including material financial information such as VIH's paid-in capital, accumulated deficit, and shareholder equity. In pertinent part, VIH's Prospectus/Proxy Statement contained a *Condensed Consolidated Balance Sheet* providing the following information as of December 31, 2020:

| | June 30, 2021 (Unaudited) | December 31, 2020 |
|---|---|---|
| **ASSETS** | | |
| Current assets | | |
| Cash | $ 861,171 | $ 1,177,678 |
| Prepaid expenses | 185,959 | 234,959 |
| Total Current Assets | 1,047,130 | 1,412,637 |
| Cash and marketable securities held in Trust Account | 207,393,442 | 207,376,213 |
| **TOTAL ASSETS** | $ 208,440,572 | $ 208,788,850 |
| **LIABILITIES AND SHAREHOLDERS' EQUITY** | | |
| Liabilities | | |
| Current Liabilities | | |
| Accounts payable and accrued expenses | $ 4,106,461 | $ 893,415 |
| Accrued offering costs | 0 | 2,230 |
| Total Current Liabilities | 4,106,461 | 895,645 |
| Warrant liabilities | 31,355,929 | 22,513,065 |
| Deferred underwriting fee payable | 7,258,021 | 7,258,021 |
| **Total Liabilities** | 42,720,411 | 30,666,731 |
| **Commitments and Contingencies** | | |
| Class A ordinary shares subject to possible redemption, 16,072,016 and 17,312,211 shares at $10.00 per share as of June 30, 2021 and December 31, 2020, respectively | 160,720,160 | 173,122,110 |
| **Shareholders' Equity** | | |
| Preference shares, $0.0001 par value; 1,000,000 shares authorized; no shares issued and outstanding | 0 | 0 |
| Class A ordinary shares, $0.0001 par value; 200,000,000 shares authorized; 4,665,186 and 3,424,991 shares issued and outstanding (excluding 16,072,016 and 17,312,211 shares subject to possible redemption) at June 30, 2021 and December 31, 2020, respectively | 467 | 343 |
| Class B ordinary shares, $0.0001 par value; 20,000,000 shares authorized; 5,184,300 shares issued and outstanding at June 30, 2021 and December 31, 2020 | 518 | 518 |
| Additional paid-in capital | 22,262,164 | 9,860,338 |
| Accumulated deficit | (17,263,148) | (4,861,190) |
| **Total Shareholders' Equity** | 5,000,001 | 5,000,009 |
| **TOTAL LIABILITIES AND SHAREHOLDERS' EQUITY** | $ 208,440,572 | $ 208,788,850 |

The accompanying notes are an integral part of these condensed consolidated financial statements.

F-27

74.    As indicated above, the Prospectus/Proxy Statement represented to investors that, as of December 31, 2020, VIH's additional paid-in capital was $9,860,338, accumulated deficit was $4,861,190, and shareholders' equity was $5,000,009. The Prospectus/Proxy Statement also represented to investors that, as of June 30, 2021, VIH's additional paid-in capital $22,262,164, accumulated deficit was $17,263,148, and shareholders' equity was $5,000,001.

75.    The financial information in VIH's *Condensed Consolidated Balance Sheet* was false. Contrary to what VIH claimed in the Prospectus/Proxy Statement, as of December 31, 2020 its additional paid-in capital was $0, accumulated deficit was $29,250,419, and shareholders' equity was in fact a shareholders' deficit of $29,249,901. Similarly, as of June 30, 2021, its additional paid-in capital was $0, accumulated deficit was $41,652,377, and shareholders' equity was a deficit of $41,651,859.

76.    This financial information was material to investors. Additional paid-in capital, accumulated deficit, and shareholders' equity are some of the most important metrics that investors and analysts use to assess a company's value and financial health. Investors relied on VIH's financial statements when deciding whether to invest and, therefore, VIH's correct paid-in capital, accumulated deficit, and shareholders' equity would have materially altered the total mix of information available to investors.

77.    The Prospectus/Proxy Statement disclosed that the company previously identified the existence of a "material weakness in [its] internal control over financial reporting," stating, in relevant part:

> **We identified a material weakness in our internal control over financial reporting related to the accounting for a significant and unusual transaction related to the warrants we issued in connection with our initial public offering in September 2020. As a result of this material weakness, our management concluded that our internal control over financial reporting was not effective as of December 31, 2020.** This material weakness resulted in a material misstatement of our warrant

liabilities, change in fair value of warrant liabilities, Class A common stock subject to possible redemption, additional paid-in capital, accumulated deficit and related financial disclosures for the fiscal year ended December 31, 2020 (the "Affected Period").

***To respond to this material weakness, we have devoted significant effort and resources to the remediation and improvement of our internal control over financial reporting,*** see "Note 2—Restatement of Previously Issued Financial Statements" to the accompanying consolidated financial statements, as well as Part II, Item 9A: Controls and Procedures included in our Annual Report on Form 10-K/A for the year ended December 31, 2020.

(Emphasis added.)

78.     The above statements identified in emphasis were materially false and/or misleading because they concealed the breadth and severity of the material weakness in internal controls over financial reporting while simultaneously creating the false impression that the problem had been resolved through the company's remediation efforts. Contrary to these representations, the material weakness was more pervasive and serious than what had been disclosed to the market. The material weakness was not solely limited to the company's reporting related to warrants as these misstatements conveyed. In fact, the severity of the material weakness also forced Bakkt to restate its financial reporting related to the misclassification of its Class A redeemable shares in addition to its materially false reporting related to additional paid-in capital, accumulated deficit, and shareholders' equity. Ultimately, the depth of the material weakness was so severe that Bakkt had to restate these misrepresentations not only for the year ended December 31, 2020, but also for the quarters ended March 31, 2021, June 30, 2021 and September 30, 2021.

79.     By claiming that Bakkt responded to the material weakness by "devot[ing] significant effort and resources to the remediation and improvement of our internal control over financial reporting," Defendants Bakkt, Martin, Stamatoglou, Watson, Schmitz, and Summers materially misled and deceived investors as to the effectiveness of its internal control over financial

reporting in addition to the accuracy of its financial reporting for the year ended December 31, 2020 and the quarters ended March 31, 2021, June 30, 2021 and September 30, 2021. As the Prospectus/Proxy Statement represented, "[i]neffective internal controls could also cause investors to lose confidence in our reported financial information, which could have a negative effect on the trading price of our common stock." Therefore, it is clear that these false statements and/or omissions were highly material to Bakkt investors because they would have been considered when deciding whether to purchase Bakkt securities.

<u>**COUNT I**</u>

**FOR VIOLATION OF SECTION 11 OF THE SECURTIES ACT**
**(Against Bakkt, Martin, Stamatoglou, Watson, Schmitz, and Summers)**

80.    Plaintiffs repeat and reallege each and every allegation contained above. Plaintiffs specifically disclaim any allegations that are based on fraud, recklessness, or intentional misconduct.

81.    This count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. §77k, on behalf of Plaintiffs and other members of the Class, against Bakkt, Martin, Stamatoglou, Watson, Schmitz, and Summers.

82.    The Registration Statement was inaccurate and misleading, contained untrue statements of material facts, omitted facts necessary to make the statements made therein not misleading, and omitted to state material facts required to be stated therein.

83.    Bakkt is the issuer of the securities purchased by Plaintiffs and other members of the Class. As such, Bakkt is strictly liable for the materially untrue statements contained in the Registration Statement and the failure of the Registration Statement to be complete and accurate.

84.    Defendants Martin, Stamatoglou, Watson, Schmitz, and Summers each signed the Registration Statement. As such, each is strictly liable for the materially inaccurate statements

contained therein and the failure of the Registration Statement to be complete and accurate. Defendants Martin, Stamatoglou, Watson, Schmitz, and Summers named herein were responsible for the contents and dissemination of the Registration Statement, which were inaccurate and misleading, contained untrue statements of material facts, omitted facts necessary to make the statements made therein not misleading, and omitted to state material facts required to be stated therein. Defendants Martin, Stamatoglou, Watson, Schmitz, and Summers each had a duty to make a reasonable and diligent investigation of the truthfulness and accuracy of the statements contained in the Registration Statement and ensure that they were true and accurate and not misleading. In the exercise of reasonable care, Defendants Martin, Stamatoglou, Watson, Schmitz, and Summers should have known of the material misstatements and omissions contained in the Registration Statement. Accordingly, Defendants Martin, Stamatoglou, Watson, Schmitz, and Summers are liable to Plaintiffs and the other members of the Class.

85.    By reason of the conduct alleged herein, Defendants Bakkt, Martin, Stamatoglou, Watson, Schmitz, and Summers violated Section 11 of the Securities Act.

86.    Plaintiffs and the other members of the Class acquired Bakkt common stock pursuant or traceable to the Registration Statement and without knowledge of the untruths and/or omissions alleged herein. Plaintiffs and the other members of the Class sustained damages, and the price of Bakkt's shares declined substantially due to material misstatements in the Registration Statement.

87.    This claim was brought within one year after the discovery of the untrue statements and omissions and within three years of the date of the effective date of the Registration Statement.

88.    By virtue of the foregoing, Plaintiffs and the other members of the Class are entitled to damages under Section 11, as measured by the provisions of Section 11(e), from Defendants

Bakkt, Martin, Stamatoglou, Watson, Schmitz, and Summers and each of them, jointly and severally.

## COUNT II

**FOR VIOLATION OF SECTION 15 OF THE SECURTIES ACT**
**(Against Defendants Martin, Stamatoglou, Watson, Schmitz, and Summers)**

89.     Plaintiffs repeat and reallege each and every allegation contained above. Plaintiffs specifically disclaim any allegations that are based on fraud, recklessness, or intentional misconduct.

90.     This Count is brought by Plaintiffs against Defendants Martin, Stamatoglou, Watson, Schmitz, and Summers pursuant to Section 15 of the Securities Act, 15 U.S.C. § 77o, on behalf of the Class.

91.     This Count is asserted against Defendants Martin, Stamatoglou, Watson, Schmitz, and Summers, each of whom was a control person of Bakkt during the relevant time period.

92.     Defendants Martin, Stamatoglou, Watson, Schmitz, and Summers were each control persons of Bakkt by virtue of their positions as directors, senior officers, and/or authorized representatives of Bakkt. Defendants Martin, Stamatoglou, Watson, Schmitz, and Summers had the power to influence, and did in fact exercise control over Bakkt to cause it to engage in the conduct complained of herein. Similarly, each of these Defendants not only controlled those subject to liability as primary violators of Section 11 of the Securities Act, as alleged above, but they also directly participated in controlling Bakkt by having signed, or authorized the signing of, the Registration Statement and authorizing the resale of Bakkt securities to Plaintiffs and members of the Class.

93.     As control persons of Bakkt, each of Defendants Martin, Stamatoglou, Watson, Schmitz, and Summers are jointly and severally liable pursuant to Section 15 of the Securities Act with and to the same extent as Bakkt for its violations of Section 11 of the Securities Act.

94.     As a direct and proximate result of said wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchase or acquisition of Bakkt common stock.

## VII.    EXCHANGE ACT ALLEGATIONS

### A.     MATERIAL MISREPRESENTATIONS

95.     In various SEC filings, Defendants issued a series of pervasive and material misstatements and omitted material facts necessary to make those statements not misleading in light of the circumstances in which they were made. These material misstatements and omissions created a false impression as to Bakkt's equity, liabilities, Class A redeemable shares, additional paid-in capital, accumulated deficit, shareholders' equity, and overall financial health. Contrary to Defendants' statements, Bakkt's warrants and Class A redeemable shares were misclassified, which further resulted in the reporting of false financial statements. Defendants also concealed the severity of the company's material weakness in internal controls over financial reporting. These material misrepresentations caused Bakkt's stock price to be artificially inflated throughout the Class Period. When the truth was revealed through multiple corrective disclosures, the artificial inflation came out of Bakkt's stock price causing significant damages to Plaintiffs and Class Members.

**March 30, 2021 – Annual Report**

96.     On March 30, 2021, after market hours, VIH published its annual report on Form 10-K for fiscal 2020 (the "Annual Report"). Defendant Martin signed the Annual Report on behalf

of himself in addition to signing as attorney-in-fact for Defendants Watson, Stamatoglou, Schmitz, and Summers. Defendants Martin and Stamatoglou also certified that they reviewed the Annual Report and it did "not contain any untrue statement of a material fact or omit to state a material fact" and "the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant…"

*Class A Ordinary Shares Subject to Possible Redemption*

97.    VIH's Annual Report provided investors with false and/or materially misleading information about VIH's Class A redeemable shares. In pertinent part, the Annual Report stated that:

> **Class A Ordinary Shares Subject to Possible Redemption**
> **The Company accounts for its Class A ordinary shares subject to possible redemption in accordance with the guidance in Accounting Standards Codification ("ASC") Topic 480 "Distinguishing Liabilities from Equity."** Ordinary shares subject to mandatory redemption are classified as a liability instrument and are measured at fair value. Conditionally redeemable ordinary shares (including ordinary shares that feature redemption rights that are either within the control of the holder or subject to redemption upon the occurrence of uncertain events not solely within the Company's control) are classified as temporary equity. At all other times, ordinary shares are classified as shareholders' equity. The Company's ordinary shares feature certain redemption rights that are considered to be outside of the Company's control and subject to occurrence of uncertain future events. **Accordingly, at December 31, 2020, 19,563,518 Class A ordinary shares subject to possible redemption are presented as temporary equity, outside of the shareholders' equity section of the Company's balance sheet.**

(Emphasis added.)

98.    The above statements identified in emphasis were false and/or materially misleading because they misrepresented the total amount of Class A redeemable shares that were temporary equity in addition to misrepresenting that the company properly classified these shares in accordance with GAAP. By making these claims, Defendants deceived the investing public into

believing that only 19,563,518 Class A redeemable shares were temporary equity and that this classification adhered to GAAP. ASC 480-10-S99-3A provides that redemption provisions outside of the issuer's control require common stock subject to redemption to be classified outside of permanent equity (*i.e.,* as temporary equity). Due to the fact that VIH's Class A redeemable shares contained redemption provisions that were outside of the company's control, ***all*** of its Class A redeemable shares should have been classified as temporary equity, not just 19,563,518 shares.

99.     Confirming this point, when Bakkt published its Second Amended Annual Report for fiscal 2020, it stated that, "[m]anagement determined that the ordinary shares issued during the Initial Public Offering can be redeemed or become redeemable subject to the occurrence of future events considered outside of the Company's control. Therefore, Management concluded that the redemption value should include ***all*** ordinary shares subject to possible redemption, resulting in the ordinary shares subject to possible redemption being equal to their redemption value. ***As a result, Management has noted a reclassification error related to temporary equity and permanent equity***. This resulted in a restatement to the initial carrying value of the ordinary shares subject to possible redemption with the offset recorded to additional paid-in capital (to the extent available), accumulated deficit and ordinary shares. Further, due to change in presentation for the Class A ordinary shares subject to redemption, the company also revised its earnings per share calculation to allocate net income (loss) evening to Class A and Class B ordinary shares… In accordance with the SEC and its staff's guidance on redeemable equity instruments, ASC 480, paragraph 10-S99, redemption provisions not solely within the control of the Company require ordinary shares subject to redemption to be classified outside of permanent equity. ***The Company had previously classified a portion of its Class A ordinary shares in permanent equity, or total shareholders' equity***… The Company concluded it should restate its previously issued financial

statements by amending Amendment No. 1 to its Annual Report on Form 10-K/A, filed with the SEC on May 24, 2021, *to classify all Class A ordinary shares subject to possible redemption in temporary equity*" (emphasis added). Thus, Bakkt admitted after the fact that a portion of its Class A redeemable shares were improperly classified as permanent equity and previous reporting related to these shares was not in accordance with GAAP.

*Additional Paid-in Capital, Accumulated Deficit, & Shareholders' Equity*

100.    The Annual Report disclosed that additional paid-in capital was $6,002,037, accumulated deficit was $1,002,669, and shareholders' equity was $5,000,004. This financial information was materially false because it misrepresented the true dollar amount of these financial metrics. Due to the fact that VIH incorrectly classified a portion of its Class A redeemable shares as permanent equity, the company also provided investors with materially false values for additional paid-in capital, accumulated deficit, and shareholders' equity.

101.    Validating the falsity of this financial information, Bakkt's Second Amended Annual Report revealed that, "[t]he financial statements as of December 31, 2020 have been restated in Note 2 of this Second Amendment, with the restatements resulting in a change in the initial carrying value of the Class A redeemable shares with the offset recorded to *additional paid-in capital (to the extent available), accumulated deficit and Class A ordinary shares*. Further, due to change in presentation for the Class A ordinary shares subject to redemption, the Company also revised its earnings per share calculation to allocate net income (loss) evenly to Class A and Class B ordinary shares" (emphasis added). The Second Amended Annual Report went on to reveal that the true amount of additional paid-in capital was $0, the true amount of accumulated deficit was $29,250,419, and there was absolutely no remaining shareholders' equity within the company; instead, there was a shareholders' deficit of $29,249,901. This financial information was

in stark contrast to the previous financials that were reported to investors. As such, Defendants deceived the market by disseminating materially false financial information, which they knew or had reason to know was false at the time the misrepresentations were made.

*Material Weakness of Internal Controls Over Financial Reporting*

102.    The Annual Report failed to provide truthful disclosures related to VIH's disclosure controls and internal controls over financial reporting. Specifically, the Annual Report stated, in pertinent part:

> **Item 9A. Controls and Procedures.**
> **Evaluation of Disclosure Controls and Procedures**
> Disclosure controls are procedures that are designed with the objective of ensuring that information required to be disclosed in our reports filed under the Exchange Act, such as this Report, is recorded, processed, summarized, and reported within the time period specified in the SEC's rules and forms. Disclosure controls are also designed with the objective of ensuring that such information is accumulated and communicated to our management, including the Chief Executive Officer and Chief Financial Officer, as appropriate to allow timely decisions regarding required disclosure. ***Our management evaluated, with the participation of our principal executive officer and principal financial and accounting officer (our "Certifying Officers"), the effectiveness of our disclosure controls and procedures as of December 31, 2020, pursuant to Rule 13a-15(b) under the Exchange Act. Based upon that evaluation, our Certifying Officers concluded that, as of December 31, 2020, our disclosure controls and procedures were effective***.
> …
>
> **Changes in Internal Control over Financial Reporting**
> ***There were no changes in our internal control over financial reporting (as such term is defined in Rules 13a-15(f) and 15d-15(f) of the Exchange Act) during the most recent fiscal quarter that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.***

(Emphasis added.)

103.    The above statements identified in emphasis were materially false and/or misleading because they misrepresented that VIH's disclosure controls and procedures in addition to its internal controls over financial reporting were effective. In reality, there was a material weakness in VIH's internal controls over financial reporting that resulted in not one restated

financial statement, but five total restated financial statements as demonstrated by the two Amended Annual Reports and the three restated financial statements for the quarters ended March 31, 2021, June 30, 2021, and September 30, 2021. These five restated financial statements revealed that the material weakness in internal controls over financial reporting was so severe that it rendered the controls ineffective and necessitated a Form 8-K statement of non-reliance. Indeed, the Second Amended Annual Report disclosed that, "[i]n connection with the restatement, our management reassessed the effectiveness of its disclosure controls and procedures for the periods affected by the restatement. As a result of that reassessment, we determined that its disclosure controls and procedures for such periods *were not effective* with respect to the accounting for complex financial instruments" (emphasis added). In disseminating the above misrepresentations, Defendants created a false impression in the market as to the effectiveness of these controls while simultaneously concealing the then-existing risks surrounding the company's accounting classifications, financial statements, and reliability of financial reporting.

104.    Moreover, Defendants also violated Section 404(a) of the Sarbanes Oxley Act of 2002 and Exchange Act Rules 13a-15 and 15d-15 in addition to the SEC's guidance regarding management's report on internal control over financial reporting under Section 13(a) or 15(d) of the Securities Exchange Act of 1934. Under these rules and regulations, which were reiterated in the SEC's April 12, 2021 Staff Statement, management was required to assess whether prior disclosures needed to be revised *and also needed to evaluate the severity of any control deficiency*. The evaluation of the severity of the control deficiency was not supposed to be limited to the actual misstatement that occurred, but instead was supposed to consider the magnitude of the potential misstatement resulting from the control deficiency or deficiencies. In failing to

38

comply with these rules and regulations, Defendants did not detect or identify the severity of the material weakness and, as a result, failed to inform the market of such.

*GAAP*

105.    The Annual Report provided investors with materially false and/or misleading statements regarding the company's compliance with GAAP. In pertinent part, the Annual Report reads as follows:

> **Class A Ordinary Shares Subject to Possible Redemption**
> **We account for our Class A ordinary shares subject to possible redemption in accordance with the guidance in Accounting Standards Codification ("ASC") Topic 480 "Distinguishing Liabilities from Equity."** Class A ordinary shares subject to mandatory redemption is classified as a liability instrument and is measured at fair value. Conditionally redeemable ordinary shares (including ordinary shares that features redemption rights that is either within the control of the holder or subject to redemption upon the occurrence of uncertain events not solely within our control) is classified as temporary equity. At all other times, ordinary shares are classified as shareholders' equity. Our ordinary shares feature certain redemption rights that are considered to be outside of our control and subject to occurrence of uncertain future events. Accordingly, Class A ordinary shares subject to possible redemption is presented as temporary equity, outside of the shareholders' equity section of our condensed balance sheet.

(Emphasis added.)

106.    The above statement identified in emphasis was materially false and/or misleading because it misrepresented that VIH's Class A redeemable shares were properly accounted for in accordance with GAAP. However, this was not the case. Due to Defendants' failure to comprehend and comply with GAAP, the company had to restate its financial reporting for the year ended December 31, 2020 and the quarters ended March 31, 2021, June 30, 2021, and September 30, 2021. Indeed, on Bakkt's Form 8-K statement of non-reliance, it explicitly stated that management "has re-evaluated the application of ASC480-10-S99-3A to the accounting classification of the Class A ordinary shares" and concluded that, due to the misclassification, the previously issued financial statements for the year ended December 31, 2020 and the quarters ended March 31, 2021,

June 30, 2021, and September 30, 2021 "should no longer be relied upon." Bakkt's admission

confirms the fact that the relevant guidance to account for the Class A redeemable shares was

provided by ASC480-10-S99-3A, which was available to Defendants at the time that the Annual

Report was published. Thus, contrary to the misrepresentation disseminated to the market,

Defendants had not complied with GAAP in accounting for the Class A redeemable shares. In

making the above misrepresentation, Defendants created a false perception in the market as to the

company's compliance with GAAP and the accuracy of its ongoing financial reporting.

*SOX Certifications*

107.    Defendants Martin and Stamatoglou both certified the accuracy of the Annual

Report pursuant to SOX. In pertinent part, they certified that:

1.    I have reviewed this Annual Report on Form 10-K of VIH Impact Acquisition Holdings;

2.    Based on my knowledge, ***this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report***;

3.    Based on my knowledge, ***the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report***;

4.    The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) for the registrant and have:

   a)  ***Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared***;

   b)  [Paragraph omitted pursuant to SEC Release Nos. 33-8238/34-47986 and 33-8392/34-49313];

40

    c)   ***Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation***; and

    d)   Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.    The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

    (a)   ***All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information***; and

    (b)   Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

(Emphasis added.)

108.    The statements identified above in emphasis were false and/or materially misleading because they misrepresented: (1) the truthfulness of the Annual Report as a whole, (2) the accuracy and truthfulness of VIH's financial statements contained within the Annual Report, and (3) the existence of a material weakness in VIH's internal controls over financial reporting.

109.    Contrary to the above representations, the Annual Report did contain multiple "untrue statement[s] of a material fact" and/or "omit[ted] to state a material fact necessary to make the statements made . . . not misleading" such that financial statements contained within the Annual Report did not "fairly present" VIH's financial condition. In reviewing and certifying the Annual Report, Defendants Martin and Stamatoglou were also required to verify that all financial reporting was accurate, which meant confirming the Annual Report's conformity with GAAP. ASC Topic

41

480 governs the classification of redeemable shares and while this guidance was available during the Class Period, Defendants Martin and Stamatoglou failed to follow it in the Annual Report. Despite the above assurances to the market, VIH's financial statements had not been prepared in accordance with GAAP and, thus, contained false financial information. This was revealed by VIH's own admission on October 13, 2021, *i.e.,* the day the 3Q21 Report was published.

110.    Specifically, VIH admitted after the fact that the Annual Report improperly classified a portion of VIH's Class A redeemable shares as permanent equity instead of temporary equity, which was a direct violation of GAAP. As a result of this violation and misclassification, VIH further reported false financial information for additional paid-in capital, accumulated deficit, and shareholders' equity. Indeed, the Second Amended Annual Report revealed that additional paid-in capital was $0, not the $6,002,037 disclosed to investors in the Annual Report. The accumulated deficit was $29,250,419 instead of the mere $1,002,669 proffered to the market and there was no remaining shareholders' equity in the company. What was once a shareholders' equity of $5,000,004 vanished and turned into a shareholders' deficit of $29,249,901. This clearly illustrates falsity related to the Class A redeemable shares classification, VIH's financial statements and, as such, the false and/or misleading nature of the SOX certifications. By disseminating these SOX certifications, the investing public was deceived about the "review" that Defendants Martin and Stamatoglou engaged in and were thereby induced to rely upon unreliable financial statements.

111.    Further, not only were Defendants Martin and Stamatoglou responsible for establishing and maintaining VIH's disclosure controls and procedures, but they were also responsible for disclosing "significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting[.]" However, Defendants Martin and

Stamatoglou intentionally or recklessly failed to carry out this duty. This is evidenced by multiple facts. First, VIH was delayed in filing its 1Q21 Report due to a misclassification issue related to the company's warrants, yet this did not lead to an identification of the magnitude of the material weakness and, accordingly, a remediation of it. Second, based on SOX and SEC regulations, VIH was required to evaluate the *severity and magnitude* of any control deficiencies once it discovered the misclassification of the warrants, yet this was not undertaken. Third, VIH's Amended 2020 Annual Report disclosed the existence of a material weakness, yet concealed the severity and magnitude of the weakness, which is exemplified by the fact that the company went on to restate its financial statements for 1Q21, 2Q21, 3Q21, and the year ended December 31, 2020 for a second time.

112.    Moreover, Defendants also violated Section 404(a) of the Sarbanes Oxley Act of 2002 and Exchange Act Rules 13a-15 and 15d-15 in addition to the SEC's guidance regarding management's report on internal control over financial reporting under Section 13(a) or 15(d) of the Securities Exchange Act of 1934. Under these rules and regulations, which were reiterated in the SEC's April 12, 2021 Staff Statement, once management identified the misclassification of the warrants, it was then required to assess whether prior disclosures needed to be revised *and also needed to evaluate the severity of any control deficiency*. The evaluation of the severity of the control deficiency was not supposed to be limited to the actual misstatement that occurred, but rather was supposed to consider the magnitude of the potential misstatement resulting from the control deficiency or deficiencies. In failing to comply with these rules and regulations, Defendants did not detect or identify the severity of the material weakness and, as a result, failed to inform the market of such. Thus, the SOX certifications further contributed to the false perception in the market as to the effectiveness of VIH's internal controls over financial reporting.

**May 21, 2021 – Amended 2020 Annual Report**

113.    On May 21, 2021, after market hours, VIH published an amended annual report on Form 10-K for fiscal 2020 (the "Amended 2020 Annual Report"). Defendant Martin signed the Amended 2020 Annual Report on behalf of himself in addition to signing as attorney-in-fact for Defendants Watson, Stamatoglou, Schmitz, and Summers. Defendants Martin and Stamatoglou also certified that they reviewed this Report and it did "not contain any untrue statement of a material fact or omit to state a material fact" and "the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant…"

*Class A Ordinary Shares Subject to Possible Redemption*

114.    The Amended 2020 Annual Report provided the investing public with a materially false and/or misleading description of the Class A redeemable shares. Specifically, it read as follows:

> ***Class A Ordinary Shares Subject to Possible Redemption***
> ***The Company accounts for its Class A ordinary shares subject to possible redemption in accordance with the guidance in Accounting Standards Codification ("ASC") Topic 480 "Distinguishing Liabilities from Equity."*** Ordinary shares subject to mandatory redemption are classified as a liability instrument and are measured at fair value. Conditionally redeemable ordinary shares (including ordinary shares that feature redemption rights that are either within the control of the holder or subject to redemption upon the occurrence of uncertain events not solely within the Company's control) are classified as temporary equity. At all other times, ordinary shares are classified as shareholders' equity. The Company's ordinary shares feature certain redemption rights that are considered to be outside of the Company's control and subject to occurrence of uncertain future events. ***Accordingly, at December 31, 2020, 17,312,211 Class A ordinary shares subject to possible redemption are presented as temporary equity, outside of the shareholders' equity section of the Company's consolidated balance sheet.***

(Emphasis added.)

115. The above statements, including the portions identified in emphasis, were materially false and/or misleading because they misrepresented that VIH complied with GAAP in classifying and accounting the Class A redeemable shares in addition to misrepresenting the true amount of VIH's Class A redeemable shares that were supposed to be classified as temporary equity. ASC 480-10-S99-3A provides that redemption provisions outside of the issuer's control require common stock subject to redemption to be classified outside of permanent equity, *i.e.,* as temporary equity. Given the fact that VIH's Class A redeemable shares contained redemption provisions that were outside of the company's control, *all* of VIH's Class A redeemable shares should have been classified as temporary equity, not just 17,312,211 shares. Indeed, the company even admitted in its Second Amended Annual Report that "*[m]anagement has noted a reclassification error related to temporary equity and permanent equity*. This resulted in a restatement to the initial carrying value of the ordinary shares subject to possible redemption with the offset recorded to additional paid-in capital (to the extent available), accumulated deficit and ordinary shares… In accordance with the SEC and its staff's guidance on redeemable equity instruments, ASC 480, paragraph 10-S99, redemption provisions not solely within the control of the Company require ordinary shares subject to redemption to be classified outside of permanent equity. *The Company had previously classified a portion of its Class A ordinary shares in permanent equity, or total shareholders' equity*… The Company concluded it should restate its previously issued financial statements by amending Amendment No. 1 to its Annual Report on Form 10-K/A, filed with the SEC on May 24, 2021, *to classify all Class A ordinary shares subject to possible redemption in temporary equity*" (emphasis added). Therefore, making the above-referenced misrepresentations enabled Defendants to not only deceive investors as to the proper classification of all the redeemable shares, but it also enabled Defendants to further mislead the

market with false financial reporting related to additional paid-in capital, accumulated deficit, and shareholders' equity, as further described below.

*Additional Paid-in Capital, Accumulated Deficit, & Shareholders' Equity*

116.    The Amended 2020 Annual Report disclosed that additional paid-in capital was $9,860,338, accumulated deficit was $4,861,190, and shareholders' equity was $5,000,009. This financial information was materially false because it misrepresented the true dollar amount of these financial metrics. Again, due to the fact that VIH incorrectly classified a portion of its Class A redeemable shares as permanent equity, the company also provided investors with materially false values for additional paid-in capital, accumulated deficit, and shareholders' equity. Validating the falsity of this financial information, Bakkt's Second Amended Annual Report revealed that, "[t]he financial statements as of December 31, 2020 have been restated in Note 2 of this Second Amendment, with the restatements resulting in a change in the initial carrying value of the Class A ordinary shares subject to possible redemption with the offset recorded to ***additional paid-in capital (to the extent available), accumulated deficit and Class A ordinary shares***" (emphasis added). The Second Amended Annual Report went on to reveal that the true amount of additional paid-in capital was $0, the true amount of accumulated deficit was $29,250,419, and there was absolutely no remaining shareholders' equity within the company; instead, there was an astounding shareholders' deficit of $29,249,901. This financial information directly contradicted the previous financials that were reported to investors. By disseminating materially false financial information, which Defendants knew or had reason to know was false, they misled the investing public as to the company's true financial state, financial health, and ability to understand and comply with GAAP.

*Material Weakness in Internal Controls Over Financial Reporting*

117.    When VIH published its Amended 2020 Annual Report, it disclosed the identification of a material weakness in its internal controls over financial reporting, but concealed the severity of the weakness while simultaneously assuring investors that it "devoted significant effort and resources to the remediation and improvement of our internal control over financial reporting… Specifically, we expanded and improved our review process for complex securities and related accounting standards." However, the material weakness had not been remediated or improved. VIH explicitly stated that the material weakness "resulted in a material misstatement of our warrant liabilities, change in fair value of warrant liabilities, ***Class A common stock subject to possible redemption, additional paid-in capital, accumulated deficit, and related financial disclosures as of and for the period ended December 31, 2020***" (emphasis added). Yet, Defendants went on misstate its Class A redeemable shares, additional paid-in capital, accumulated deficit, and shareholders' equity for the year ended December 31, 2020 (again) in addition to the quarters ended March 31, 2021, June 30, 2021, and September 30, 2021. In making these misrepresentations, Defendants deceived the market about VIH's remediation and improvement efforts, the current effectiveness of its internal controls over financial reporting, and the market's ability to rely on VIH's current and ongoing financial statements.

118.    Defendants further concealed the severity of the material weakness by later claiming in the Amended 2020 Annual Report that the material weakness was only related to a "significant and unusual transaction related to the warrants." With this statement, they intentionally and falsely limited the material weakness to the previous reporting related to warrants when, in fact, the material weakness had been and continued to effect the company's ability to accurately classify and account for its Class A redeemable shares, additional paid-in capital,

accumulated deficit, and shareholders' equity. By making this claim, Defendants materially downplayed and concealed the then-existing risks surrounding VIH's financial statements, financial health, and reliance on previously reported financial statements. Considering that VIH's Annual Report had to be amended for a second time and its Quarterly Reports for 1Q21, 2Q21, and 3Q21 had to be restated, Defendants cannot plausibly argue that they were truthful in their prior disclosures.

*GAAP*

119.    In the Amended 2020 Annual Report, VIH claimed that, in light of the material weakness that was identified, it "performed additional analysis as deemed necessary to ensure that our financial statements were prepared in accordance with U.S. generally accepted accounting principles." However, this statement was also false because VIH's accounting treatment of its Class A redeemable shares failed to comply with GAAP for four consecutive reporting periods. Indeed, Bakkt admitted on its Form 8-K statement of non-reliance that, because the company failed to comply with GAAP, the following financial statements should no longer be relied upon: (i) condensed consolidated audited financial statements for the year ended December 31, 2020 included in VIH's Annual Report on Form 10-K, initially filed on March 31, 2021 (as amended); and (ii) condensed consolidated unaudited financial statements for the quarterly periods ended March 31, 2021, June 30, 2021 and September 30, 2021 included in VIH's Quarterly Reports on Form 10-Q. Accordingly, the Amended 2020 Annual Report was materially false and/or misleading at the time it was disseminated to investors. In misrepresenting VIH's compliance with GAAP, the company falsely assured the public that its financial statements were truthful, accurate, and could be relied upon.

*SOX Certifications*

120.    Defendants Martin and Stamatoglou both certified the accuracy of the Amended

2020 Annual Report pursuant to SOX. In pertinent part, they certified that:

1.    I have reviewed this Annual Report on Form 10-K/A of VIH Impact Acquisition Holdings;

2.    Based on my knowledge, ***this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report***;

3.    Based on my knowledge, ***the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report***;

4.    The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) for the registrant and have:

   a) ***Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared***;

   b) [Paragraph omitted pursuant to SEC Release Nos. 33-8238/34-47986 and 33-8392/34-49313];

   c) ***Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation***; and

   d) Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.    The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's

auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

(a) *All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information*; and

(b) Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

(Emphasis added.)

121.   The statements identified above in emphasis were false and/or materially misleading because they misrepresented: (1) the truthfulness of the Amended 2020 Annual Report as a whole, (2) the accuracy and truthfulness of VIH's financial statements contained within the Amended 2020 Annual Report, and (3) the scope and severity of the material weakness in VIH's internal controls over financial reporting.

122.   Contrary to the above representations, the Amended 2020 Annual Report did contain multiple "untrue statement[s] of a material fact" and/or "omit[ted] to state a material fact necessary to make the statements made . . . not misleading" such that financial statements contained within the Amended 2020 Annual Report did not "fairly present" VIH's financial condition. In reviewing and certifying the Amended 2020 Annual Report, Defendants Martin and Stamatoglou were also required to verify that all financial reporting was accurate, which meant confirming the report's conformity with GAAP. ASC Topic 480 governs the classification of redeemable shares and, while this guidance was available during the Class Period, Defendants Martin and Stamatoglou failed to follow it in the Amended 2020 Annual Report. Despite the above assurances to the market, VIH's financial statements had not been prepared in accordance with

GAAP and, thus, contained false financial information. This was revealed by VIH's own admission on October 13, 2021, *i.e.,* the day the 3Q21 Report was published.

123.    Specifically, VIH admitted after the fact that it improperly classified a portion of VIH's Class A redeemable shares as permanent equity instead of temporary equity, which was a direct violation of GAAP. As a result of this violation and misclassification, VIH further reported false financial information for additional paid-in capital, accumulated deficit, and shareholders' equity. Although the Amended 2020 Annual Report reported additional paid-in capital as $9,860,338, accumulated deficit as $4,861,190, and shareholders' equity as $5,000,009, this financial information was simply incorrect. The investing public was shocked by the glaring falsity of what VIH reported several months earlier. The Second Amended Annual Report revealed that additional paid-in capital was $0 instead of the $9,860,338 disclosed to investors in the Amended 2020 Annual Report. The accumulated deficit was $29,250,419 instead of the mere $4,861,190 reported to the market and there was absolutely no remaining shareholders' equity in the company. What was once a shareholders' equity of $5,000,009 got wiped out and became a shareholders' deficit of $29,249,901. The drastic difference in financial reporting between the Amended 2020 Annual Report and the Second Amended Annual Report ultimately boiled down to a difference between following GAAP guidance and disregarding it. Had the company adhered to then-existing GAAP guidance, the market would not have relied upon false financial statements. Nonetheless, the SOX certifications operated as a, per se, system of checks and balances that the market could rely on to ensure that, even if the company failed to provide truthful and accurate reporting, it would be detected and corrected in the review process undertaken by Defendants Martin and Stamatoglou. Yet, this is not what transpired. In willfully or recklessly failing to undertake the necessary reviews required by SOX and SEC regulations, Defendants Martin and Stamatoglou

misled the investing public about their "review" of the Amended 2020 Annual Report and wrongfully induced unsuspecting investors to rely on false financial statements.

124.    Further, not only were Defendants Martin and Stamatoglou responsible for establishing and maintaining VIH's disclosure controls and procedures, but they were also responsible for disclosing "significant deficiencies and material weaknesses *in the design or operation* of internal control over financial reporting" (emphasis added). It is true that the Amended 2020 Annual Report disclosed the existence of a material weakness in internal controls over financial reporting, however, the magnitude and severity of the weakness was distinctly concealed such that the market had no reason to believe that the weakness was not remediated and, thus, continued to rely on unreliable financial statements. The Amended 2020 Annual Report assured investors that it "devoted significant effort and resources to the remediation and improvement of our internal control over financial reporting… Specifically, we expanded and improved our review process for complex securities and related accounting standards." However, the material weakness had not been remediated or improved. Speaking to this point, VIH explicitly stated that the material weakness "resulted in a material misstatement of our warrant liabilities, change in fair value of warrant liabilities, *Class A common stock subject to possible redemption, additional paid-in capital, accumulated deficit, and related financial disclosures as of and for the period ended December 31, 2020*" (emphasis added). Yet, the company went on to *repeatedly* misstate its financial reporting in the *exact same areas* that are outlined above in emphasis, *i.e.,* for Class A redeemable shares, additional paid-in capital, accumulated deficit, and shareholders' equity for the year ended December 31, 2020 (again) in addition to the quarters ended March 31, 2021, June 30, 2021, and September 30, 2021.

125.    In addition, the magnitude and severity of the material weakness was further concealed in the Amended 2020 Annual Report with claims that the material weakness only related to a "significant and unusual transaction *related to the warrants*" (emphasis added). In making this statement, the material weakness was falsely limited to the previous reporting related to warrants when, in fact, the material weakness had been and continued to effect the company's ability to accurately classify and account for its Class A redeemable shares, additional paid-in capital, accumulated deficit, and shareholders' equity.

126.    Moreover, Defendants also violated Section 404(a) of the Sarbanes Oxley Act of 2002 and Exchange Act Rules 13a-15 and 15d-15 in addition to the SEC's guidance regarding management's report on internal control over financial reporting under Section 13(a) or 15(d) of the Securities Exchange Act of 1934. Under these rules and regulations, which were reiterated in the SEC's April 12, 2021 Staff Statement, once management identified the misclassification of the warrants, it was then required to assess whether prior disclosures needed to be revised *and also needed to evaluate the severity of any control deficiency*. The evaluation of the severity of the control deficiency was not supposed to be limited to the actual misstatement that occurred, but rather was supposed to consider the magnitude of the potential misstatement resulting from the control deficiency or deficiencies. In failing to comply with these rules and regulations, Defendants did not detect or identify the severity of the material weakness and, as a result, failed to inform the market of such. Therefore, the SOX certifications operated to deceive the market about the "review" undertaken by Defendants Martin and Stamatoglou, the then-existing risks surrounding VIH's financial statements, the magnitude and severity of the material weakness, and the reliability of the company's ongoing financial reporting.

**May 24, 2021 – Quarterly Report Q1 2021**

127.    On May 24, 2021, before market hours, VIH published its quarterly report for the quarter ended March 31, 2021 (previously defined as the "1Q21 Report"). Defendants Martin and Stamatoglou signed the 1Q21 Report. Defendants Martin and Stamatoglou also certified that they reviewed the 1Q21 Report and it did "not contain any untrue statement of a material fact or omit to state a material fact" and "the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant…"

*Class A Ordinary Shares Subject to Possible Redemption*

128.    The 1Q21 Report provided investors with materially false and/or misleading statements related to the accounting treatment of VIH's Class A redeemable shares. The 1Q21 Report read as follows:

> ***Class A Ordinary Shares Subject to Possible Redemption***
> ***The Company accounts for its Class A ordinary shares subject to possible redemption in accordance with the guidance in Accounting Standards Codification ("ASC") Topic 480 "Distinguishing Liabilities from Equity."*** Class A ordinary shares subject to mandatory redemption are classified as a liability instrument and are measured at fair value. Conditionally redeemable ordinary shares (including ordinary shares that feature redemption rights that are either within the control of the holder or subject to redemption upon the occurrence of uncertain events not solely within the Company's control) are classified as temporary equity. At all other times, ordinary shares are classified as shareholders' equity. The Company's ordinary shares feature certain redemption rights that are considered to be outside of the Company's control and subject to occurrence of uncertain future events. ***Accordingly, at March 31, 2021 and December 31, 2020, Class A ordinary shares subject to possible redemption are presented as temporary equity, outside of the shareholders' equity section of the Company's condensed consolidated balance sheets***.

(Emphasis added.)

129.    The above statements identified in emphasis were materially false and/or misleading because they misrepresented both VIH's compliance with GAAP and the accounting

54

treatment of VIH's Class A redeemable shares. ASC 480 was available to Defendants Martin and Stamatoglou at all relevant times during the Class Period, including when the 1Q21 Report was published. ASC 480-10-S99-3A provides that redemption provisions outside of the issuer's control require common stock subject to redemption to be classified outside of permanent equity, *i.e.,* as temporary equity. Considering that VIH's Class A redeemable shares contained redemption provisions that were outside of the company's control, the entirety of VIH's Class A redeemable shares should have been classified as temporary equity. VIH's failure to properly account for the Class A redeemable shares in accordance with GAAP is exemplified by its issuance of a Form 8-K statement of non-reliance in which the company disclosed that it failed to comply with "ASC 480-10-S99-3A" and its financial statements for the 1Q21 Report "should no longer be relied upon." Therefore, by making the above misrepresentations, Defendants Martin and Stamatoglou wrongfully deceived and falsely induced the investing public to believe that VIH complied with GAAP and properly classified its Class A redeemable shares.

*Additional Paid-in Capital, Accumulated Deficit, & Shareholders' Equity*

130.    The 1Q21 Report disclosed that additional paid-in capital was $43,531,612, accumulated deficit was $38,532,806, and shareholders' equity was $5,000,003. However, this financial reporting was materially false because it misrepresented the true dollar amount of these financial metrics. Due to the fact that VIH incorrectly classified a portion of its Class A redeemable shares as permanent equity, the company also provided investors with materially false values for additional paid-in capital, accumulated deficit, and shareholders' equity. When Bakkt published its amended quarterly report for the quarter ended September 30, 2021, it also restated its financial statement for the quarter ended March 31, 2021 ("Q1"). The restatement for Q1 revealed that additional paid-in capital was completely eliminated being reduced from $43,531,612 to $0,

accumulated deficit ballooned from $38,532,806 to $62,922,035, and shareholders' equity was obliterated leaving a shareholders' deficit of $62,921,517. Accordingly, the Q1 restatement plainly illustrated the false and misleading nature of the company's previous financial reporting to the public. By disseminating materially false financial information, Defendants Martin and Stamatoglou misled the investing public as to the company's true financial state, financial health, and ability to understand and comply with GAAP.

*Material Weakness in Internal Controls Over Financial Reporting*

131.    The 1Q21 Report provided investors with materially false and/or misleading statements related to the material weakness in VIH's disclosure controls and internal controls over financial reporting. The 1Q21 Report stated, in relevant part, that:

> *Evaluation of Disclosure Controls and Procedures*
> Under the supervision and with the participation of our management, including our Chief Executive Officer and Chief Financial Officer, we conducted an evaluation of the effectiveness of our disclosure controls and procedures as of the end of the fiscal quarter ended December 31, 2020, as such term is defined in Rules 13a-15(e) and 15d-15(e) under the Exchange Act. Based on this evaluation, our principal executive officer and principal financial and accounting officer have concluded that during the period covered by this report, ***our disclosure controls and procedures were not effective, due solely to the material weakness in our internal control over financial reporting described in the Company's Amendment No. 1 to its Annual Report on Form 10-K/A filed on May 21, 2021) (the "Restatement")***. In light of this material weakness, we performed additional analysis as deemed necessary to ensure that our financial statements were prepared in accordance with U.S. generally accepted accounting principles.
>
> ***Notwithstanding the material weakness, management has concluded that the financial statements included elsewhere in this Quarterly Report present fairly, in all material respects, our financial position, results of operations and cash flows in conformity with GAAP***.
> …
>
> *Changes in Internal Control Over Financial Reporting*
> Other than as described below, there was no change in our internal control over financial reporting that occurred during the fiscal quarter of 2021 covered by this Quarterly Report on Form 10-Q that has materially affected, or is reasonably likely to materially affect, our internal control over financial reporting. ***In light of the***

> *Restatement, we plan to enhance our processes to identify and appropriately apply applicable accounting requirements to better evaluate and understand the nuances of the complex accounting standards that apply to our financial statements. Our plans at this time include providing enhanced access to accounting literature, research materials and documents and increased communication among our personnel and third-party professionals with whom we consult regarding complex accounting applications.* The elements of our remediation plan can only be accomplished over time, and we can offer no assurance that these initiatives will ultimately have the intended effects.

(Emphasis added.)

132.    The above statements, including the portions identified in emphasis, were materially false and/or misleading because they misrepresented the severity of the material weakness in VIH's internal controls over financial reporting. The 1Q21 Report stated that VIH's disclosure controls and procedures were not effective "due solely to the material weakness in our internal control over financial reporting described in the Company's Amendment No. 1 to its Annual Report on Form 10-K/A filed on May 21, 2021." The Amended 2020 Annual Report attributed and limited the material weakness to a "misapplication in the guidance around accounting for certain of [its] outstanding warrants," but concealed the breadth and severity of the material weakness from the investing public. In addition, these statements also conveyed that the material weakness had been addressed and, essentially, resolved such that "financial statements included elsewhere in this Quarterly Report present fairly, in all material respects, our financial position, results of operations and cash flows in conformity with GAAP." Contrary to these statements, the material weakness in VIH's internal controls over financial reporting was not addressed to the extent that financial statements included in the 1Q21 Report fairly presented the company's financial position and cash flows in conformity with GAAP. Neither was the material weakness "solely" limited to the misapplication of GAAP guidance for warrants. Instead, the material weakness was so pervasive and severe that VIH also misapplied applicable GAAP

guidance in accounting for its Class A redeemable shares and further disseminated false financial reporting for additional paid-in capital, accumulated deficit, and shareholders' equity. In fact, even after management's re-evaluation of disclosure controls, internal controls, and compliance with GAAP for Q1, Defendants Martin and Stamatoglou still disseminated materially false and/or misleading statements in the 1Q21 Report related to the material weakness, GAAP compliance, classification of the Class A redeemable shares, additional paid-in capital, accumulated deficit, and shareholders' equity. This is clearly evidenced by the fact that Bakkt had to amend and restate its financial statements not just for Q1 2021, but also for Q2 2021, Q3 2021, and the year ended December 31, 2020 (again). Therefore, by making the above misrepresentations and omissions, Defendants Martin and Stamatoglou wrongfully deceived the market about the breadth and severity of the material weakness in internal controls over financial reporting.

*GAAP*

133.    The 1Q21 Report provided investors with materially false and/or misleading statements related to VIH's compliance with GAAP in classifying and accounting the Class A redeemable shares. The 1Q21 Report read as follows:

> ***Class A Ordinary Shares Subject to Possible Redemption***
> ***The Company accounts for its Class A ordinary shares subject to possible redemption in accordance with the guidance in Accounting Standards Codification ("ASC") Topic 480 "Distinguishing Liabilities from Equity."*** Class A ordinary shares subject to mandatory redemption are classified as a liability instrument and are measured at fair value. Conditionally redeemable ordinary shares (including ordinary shares that feature redemption rights that are either within the control of the holder or subject to redemption upon the occurrence of uncertain events not solely within the Company's control) are classified as temporary equity. At all other times, ordinary shares are classified as shareholders' equity. The Company's ordinary shares feature certain redemption rights that are considered to be outside of the Company's control and subject to occurrence of uncertain future events. Accordingly, at March 31, 2021 and December 31, 2020, Class A ordinary shares subject to possible redemption are presented as temporary equity, outside of the shareholders' equity section of the Company's condensed consolidated balance sheets.

…

*Evaluation of Disclosure Controls and Procedures*

Under the supervision and with the participation of our management, including our Chief Executive Officer and Chief Financial Officer, we conducted an evaluation of the effectiveness of our disclosure controls and procedures as of the end of the fiscal quarter ended December 31, 2020, as such term is defined in Rules 13a-15(e) and 15d-15(e) under the Exchange Act. Based on this evaluation, our principal executive officer and principal financial and accounting officer have concluded that during the period covered by this report, our disclosure controls and procedures were not effective, due solely to the material weakness in our internal control over financial reporting described in the Company's Amendment No. 1 to its Annual Report on Form 10-K/A filed on May 21, 2021) (the "Restatement"). ***In light of this material weakness, we performed additional analysis as deemed necessary to ensure that our financial statements were prepared in accordance with U.S. generally accepted accounting principles.***

***Notwithstanding the material weakness, management has concluded that the financial statements included elsewhere in this Quarterly Report present fairly, in all material respects, our financial position, results of operations and cash flows in conformity with GAAP.***

(Emphasis added.)

134.   The above statements identified in emphasis were materially false and/or misleading because they misrepresented VIH's compliance with GAAP in classifying the Class A redeemable shares in addition to misrepresenting the accuracy of ongoing financial reporting. When VIH issued its statement of non-compliance on Form 8-K, it revealed to the investing public that management "re-evaluated the application of ASC480-10-S99-3A to the accounting classification of the Class A ordinary shares" and concluded that there was a misclassification problem that rendered certain financial reporting unreliable, including the financial statements for the year ended December 31, 2020 and the quarters ended March 31, 2021, June 30, 2021, and September 30, 2021. Yet, it is important to note that ASC 480 was available to Defendants at the time the 1Q21 Report was published and, by their own admission, Defendants failed to comply with this then-existing GAAP guidance. Not only was the investing public deceived as to

Defendants' compliance with GAAP, but they were also deceived as to the accuracy and truthfulness of the company's ongoing financial reporting.

135.     In addition, Defendants Martin and Stamatoglou further deceived and induced the market to rely on current and ongoing financial statements that were materially false and/or misleading by assuring the market that "[i]n light of this material weakness, we performed additional analysis as deemed necessary to ensure that our financial statements were prepared in accordance with U.S. generally accepted accounting principles… Notwithstanding the material weakness, management has concluded that the financial statements included elsewhere in this Quarterly Report present fairly, in all material respects, our financial position, results of operations and cash flows in conformity with GAAP." Again, this is contradicted by the very fact that Bakkt eventually went on to restate its financial statements for this particular report and three others, as noted above, solely because of its failure to adhere to then-existing GAAP guidance. In totality, these misrepresentations created a false perception in the market as to the company's ability to comprehend GAAP, correctly apply GAAP guidance, and provide the market with accurate and truthful financial disclosures.

*SOX Certifications*

136.     Defendants Martin and Stamatoglou both certified the accuracy of the 1Q21 Report pursuant to SOX. In pertinent part, they certified that:

1.     I have reviewed this Quarterly Report on Form 10-Q of VIH Impact Acquisition Holdings;

2.     Based on my knowledge, ***this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report***;

3.     Based on my knowledge, ***the financial statements, and other financial information included in this report, fairly present in all material respects the***

*financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;*

4. The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) for the registrant and have:

    a) *Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared*;

    b) [Paragraph omitted pursuant to SEC Release Nos. 33-8238/34-47986 and 33-8392/34-49313];

    c) *Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation*; and

    d) Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5. The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

    (a) *All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information*; and

    (b) Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

(Emphasis added.)

137. The statements identified above in emphasis were false and/or materially misleading because they misrepresented: (1) the truthfulness of the 1Q21 Report as a whole, (2) the

accuracy and truthfulness of VIH's financial statements contained within the 1Q21 Report, and (3)

the scope and severity of the material weakness in VIH's internal controls over financial reporting.

138.    Contrary to the above representations, the 1Q21 Report did contain multiple

"untrue statement[s] of a material fact" and/or "omit[ted] to state a material fact necessary to make

the statements made . . . not misleading" such that financial statements contained within the 1Q21

Report did not "fairly present" VIH's financial condition. In reviewing and certifying the 1Q21

Report, Defendants Martin and Stamatoglou were also required to verify that all financial reporting

was accurate, which meant confirming the 1Q21 Report's conformity with GAAP. ASC Topic 480

governs the classification of redeemable shares and, while this guidance was available during the

Class Period, Defendants Martin and Stamatoglou failed to follow it in the 1Q21 Report. Despite

the above assurances to the market, VIH's financial statements had not been prepared in

accordance with GAAP and, thus, contained false financial information. This was revealed by

VIH's own admission on October 13, 2021, *i.e.,* the day VIH published its 3Q21 Report.

139.    Specifically, VIH admitted after the fact that it improperly classified a portion of

VIH's Class A redeemable shares as permanent equity instead of temporary equity, which was a

direct violation of GAAP. As a result of this violation and misclassification, VIH further reported

false financial information for additional paid-in capital, accumulated deficit, and shareholders'

equity. Indeed, the 3Q21 Report revealed that additional paid-in capital was $0, not the astounding

$43,531,612 disclosed to investors in the 1Q21 Report. The accumulated deficit was $62,922,035

instead of the $38,532,806 previously reported and there was no remaining shareholders' equity

in the company. The previously disclosed shareholders' equity of $5,000,003 did not exist and,

instead, there was a shocking shareholders' deficit of $62,921,517. This undeniably demonstrates

the falsity of VIH's Class A redeemable shares classification, its financial statements and, as such,

the false and/or misleading nature of the above SOX certifications. By disseminating these SOX certifications, the investing public was deceived about the "review" that Defendants Martin and Stamatoglou engaged in and were thereby induced to rely upon unreliable financial statements.

140.    Further, not only were Defendants Martin and Stamatoglou responsible for establishing and maintaining VIH's disclosure controls and procedures, but they were also responsible for disclosing "significant deficiencies and material weaknesses *in the design or operation* of internal control over financial reporting" (emphasis added). While the 1Q21 Report disclosed the existence of a material weakness in internal controls over financial reporting, the magnitude and severity of the weakness was wrongfully concealed such that the market had no reason to believe that the weakness was not remediated and, thus, continued to rely on false financial statements. The 1Q21 Report stated that VIH's disclosure controls and procedures were not effective "due solely to the material weakness in our internal control over financial reporting described in the Company's Amendment No. 1 to its Annual Report on Form 10-K/A filed on May 21, 2021." The Amended 2020 Annual Report unquestionably limited the material weakness to a "misapplication in the guidance around accounting for certain of [its] outstanding *warrants*," such that the 1Q21 Report concealed the true scope and severity of the material weakness from the market (emphasis added).

141.    In addition, the 1Q21 Report misleadingly conveyed that the material weakness had been addressed and remediated to the extent that "financial statements included elsewhere in this Quarterly Report present fairly, in all material respects, our financial position, results of operations and cash flows in conformity with GAAP." To the contrary, the material weakness had not been addressed to the extent that financial statements included in the 1Q21 Report fairly presented the company's financial position and cash flows in conformity with GAAP. Neither was the material

weakness "due solely" to the misapplication of GAAP guidance for "warrants." Instead, the material weakness was so pervasive and severe that VIH also failed to apply applicable GAAP guidance in accounting for its Class A redeemable shares and further disseminated false financial reporting for additional paid-in capital, accumulated deficit, and shareholders' equity. In fact, even after management's re-evaluation of disclosure controls, internal controls, and compliance with GAAP for Q1, Defendants Martin and Stamatoglou still allowed the dissemination of false and/or materially misleading statements in the 1Q21 Report related to the material weakness, GAAP compliance, classification of the Class A redeemable shares, additional paid-in capital, accumulated deficit, and shareholders' equity. This is confirmed by the fact that Bakkt had to restate its financial statements not just for 1Q21, but also for 2Q21, 3Q21, and the year ended December 31, 2020 (for a second time).

142.    Moreover, Defendants also violated Section 404(a) of the Sarbanes Oxley Act of 2002 and Exchange Act Rules 13a-15 and 15d-15 in addition to the SEC's guidance regarding management's report on internal control over financial reporting under Section 13(a) or 15(d) of the Securities Exchange Act of 1934. Under these rules and regulations, which were reiterated in the SEC's April 12, 2021 Staff Statement, once management identified the misclassification of the warrants, it was then required to assess whether prior disclosures needed to be revised ***and also needed to evaluate the severity of any control deficiency***. The evaluation of the severity of the control deficiency was not supposed to be limited to the actual misstatement that occurred, but rather was supposed to consider the magnitude of the potential misstatement resulting from the control deficiency or deficiencies. In failing to comply with these rules and regulations, Defendants did not detect or identify the severity of the material weakness and, as a result, failed to inform the market of such. Accordingly, the SOX certifications operated to deceive the market about the

"review" undertaken by Defendants Martin and Stamatoglou, the then-existing risks surrounding VIH's financial statements, the magnitude and severity of the material weakness, and the reliability of the company's ongoing financial reporting.

**August 13, 2021 – Quarterly Report Q2 2021**

143.    On August 13, 2021, after market hours, VIH published its quarterly report for the quarter ended June 30, 2021 (previously defined as the "2Q21 Report"). Defendants Martin and Stamatoglou signed the 2Q21 Report. Defendants Martin and Stamatoglou also certified that they reviewed the 2Q21 Report and it did "not contain any untrue statement of a material fact or omit to state a material fact" and "the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant…"

*Class A Ordinary Shares Subject to Possible Redemption*

144.    The 2Q21 Report furnished the market with materially false and/or misleading statements related the accounting treatment of the company's Class A redeemable shares. The 2Q21 Report reads, in pertinent part:

> ***Class A Ordinary Shares Subject to Possible Redemption***
> ***The Company accounts for its Class A ordinary shares subject to possible redemption in accordance with the guidance in Accounting Standards Codification ("ASC") Topic 480 "Distinguishing Liabilities from Equity."*** Class A ordinary shares subject to mandatory redemption are classified as a liability instrument and are measured at fair value. Conditionally redeemable ordinary shares (including ordinary shares that feature redemption rights that are either within the control of the holder or subject to redemption upon the occurrence of uncertain events not solely within the Company's control) are classified as temporary equity. At all other times, ordinary shares are classified as shareholders' equity. The Company's ordinary shares feature certain redemption rights that are considered to be outside of the Company's control and subject to occurrence of uncertain future events. ***Accordingly, at June 30, 2021 and December 31, 2020, Class A ordinary shares subject to possible redemption are presented as temporary equity, outside of the shareholders' equity section of the Company's condensed consolidated balance sheets***.

(Emphasis added.)

145.    The above statements identified in emphasis were materially false and/or misleading because they misrepresented that VIH appropriately accounted for the Class A redeemable shares. Although VIH stated that the accounting for these shares was performed in accordance with GAAP, in truth, ASC 480-10-S99-3A required the entirety of VIH's Class A redeemable shares to be classified as temporary equity. In direct violation of GAAP, VIH classified a portion of its Class A redeemable shares as permanent equity. In turn, this also caused Defendants to disseminate materially false financial reporting for additional paid-in capital, accumulated deficit, and shareholders' equity, as further discussed below. The falsity of these statements is confirmed by the fact that Bakkt eventually restated its financial statement for the 2Q21 Report to provide the market with the correct classification and reporting for its Class A redeemable shares, additional paid-in capital, accumulated deficit, and shareholders' equity. By making the above misrepresentations, the investing public was deceived not only about the proper classification of the Class A redeemable shares, but they were also deceived as to VIH's compliance with GAAP.

*Additional Paid-in Capital, Accumulated Deficit, & Shareholders' Equity*

146.    The 2Q21 Report falsely reported that additional paid-in capital was $22,262,164, accumulated deficit was $17,263,148, and shareholders' equity was $5,000,001. This financial information was materially false because the true dollar amount of these financial metrics differed drastically. Since VIH incorrectly classified a portion of its Class A redeemable shares as permanent equity, the company also provided investors with materially false values for additional paid-in capital, accumulated deficit, and shareholders' equity. When Bakkt published its amended quarterly report for the quarter ended September 30, 2021, it also restated its financial statement for the quarter ended June 30, 2021 ("Q2"). The restatement for Q2 revealed that additional paid-

in capital was shockingly reduced from $22,262,164 to $0, accumulated deficit exploded from $17,263,148 to $41,652,377, and shareholders' equity of $5,000,001 was completely eliminated leaving a shareholders' deficit of $41,651,859. Accordingly, the Q2 restatement plainly illustrated the false and misleading nature of the company's previous financial reporting to the public. By disseminating materially false financial information, Defendants Martin and Stamatoglou misled the investing public as to the company's true financial state, financial health, and ability to comprehend and comply with GAAP.

*Material Weakness in Internal Controls Over Financial Reporting*

147.    The 2Q21 Report provided investors with materially false and/or misleading statements related to the material weakness in VIH's disclosure controls and internal controls over financial reporting. The 2Q21 Report stated, in pertinent part, that:

*Evaluation of Disclosure Controls and Procedures*
Under the supervision and with the participation of our management, including our Chief Executive Officer and Chief Financial Officer, we conducted an evaluation of the effectiveness of our disclosure controls and procedures as of the end of the fiscal quarter ended December 31, 2020, as such term is defined in Rules 13a-15(e) and 15d-15(e) under the Exchange Act. Based on this evaluation, our principal executive officer and principal financial and accounting officer have concluded that during the period covered by this report, ***our disclosure controls and procedures were not effective, due solely to the material weakness in our internal control over financial reporting described in the Company's Amendment No. 1 to its Annual Report on Form 10-K/A filed on May 21, 2021) (the "Restatement"). In light of this material weakness, we performed additional analysis as deemed necessary to ensure that our unaudited interim financial statements were prepared in accordance with U.S. generally accepted accounting principles. Accordingly, management believes that the financial statements included in this Quarterly Report on Form 10-Q present fairly in all material respects our financial position, results of operations and cash flows for the period presented.***

*Changes in Internal Control Over Financial Reporting*
Other than as described below, there was no change in our internal control over financial reporting that occurred during the fiscal quarter ended June 30, 2021 covered by this Quarterly Report on Form 10-Q that has materially affected, or is reasonably likely to materially affect, our internal control over financial reporting. ***In light of the Restatement, we plan to enhance our processes to identify and***

> ***appropriately apply applicable accounting requirements to better evaluate and
> understand the nuances of the complex accounting standards that apply to our
> financial statements. Our plans at this time include providing enhanced access
> to accounting literature, research materials and documents and increased
> communication among our personnel and third-party professionals with whom
> we consult regarding complex accounting applications.*** The elements of our
> remediation plan can only be accomplished over time, and we can offer no
> assurance that these initiatives will ultimately have the intended effects.

(Emphasis added.)

148.   The above statements, including the portions identified in emphasis, were
materially false and/or misleading because the misrepresented the severity of the material
weakness in VIH's internal controls over financial reporting. The 2Q21 Report explicitly stated
that VIH's disclosure controls and procedures were not effective "***due solely*** to the material
weakness in our internal control over financial reporting described in the Company's Amendment
No. 1 to its Annual Report on Form 10-K/A filed on May 21, 2021" (emphasis added). The
Amended 2020 Annual Report misleadingly limited the material weakness to a "misapplication in
the guidance around accounting for certain of [its] outstanding warrants." However, the material
weakness was not "due solely" to the misapplication of GAAP guidance for the warrants, instead,
the material weakness was so pervasive and severe that VIH also violated GAAP in accounting
for its Class A redeemable shares. In turn, due to the misclassification of the Class A redeemable
shares, Defendants Martin and Stamatoglou further disseminated false financial reporting for
additional paid-in capital, accumulated deficit, and shareholders' equity. It is plainly evident that
Defendants Martin and Stamatoglou intentionally or recklessly concealed the extent of the material
weakness because even after management revaluated its disclosure controls, internal controls, and
compliance with GAAP, they still disseminated materially false and/or misleading statements in
the 2Q21 Report related to the material weakness, GAAP compliance, classification of the Class
A redeemable shares, additional paid-in capital, accumulated deficit, and shareholders' equity.

This is directly confirmed by the fact that Bakkt had to amend and restate its financial statements not just for Q2 2021, but also for Q1 2021, Q3 2021, and the year ended December 31, 2020 (again).

149.    In addition, the above statements also falsely conveyed that the material weakness had been addressed and improved such that "financial statements included in this Quarterly Report on Form 10-Q present fairly in all material respects our financial position, results of operations and cash flows for the period presented" and "were prepared in accordance with U.S. generally accepted accounting principles [GAAP]." Contrary to these statements, the material weakness had neither been addressed nor improved to the extent that the financial statements included in the 2Q21 Report fairly presented the company's financial position and cash flows in accordance with GAAP. Again, this is evident by the fact that Bakkt was forced to restate its financial statements not only for Q2 2021, but also for Q1 2021, Q3 2021, and the year ended December 31, 2020 (again). As a result of these misrepresentations and omissions, the investing public was deceived about the breadth and severity of the material weakness and was wrongfully induced into relying on what would later become unreliable financial statements.

*GAAP*

150.    The 2Q21 Report also provided the market with materially false and/or misleading statements related to VIH's compliance with GAAP. Specifically, the 2Q21 Report reads as follows:

> ***The accompanying unaudited condensed consolidated financial statements have been prepared in accordance with accounting principles generally accepted in the United States of America ("GAAP") for interim financial information*** and in accordance with the instructions to Form 10-Q and Article 8 of Regulation S-X of the U.S. Securities and Exchange Commission (the "SEC"). Certain information or footnote disclosures normally included in financial statements prepared in accordance with GAAP have been condensed or omitted, pursuant to the rules and regulations of the SEC for interim financial reporting. Accordingly, they do not

include all the information and footnotes necessary for a complete presentation of financial position, results of operations, or cash flows. In the opinion of management, the accompanying unaudited condensed consolidated financial statements include all adjustments, consisting of a normal recurring nature, which are necessary for a fair presentation of the financial position, operating results and cash flows for the periods presented.

…

***In light of this material weakness, we performed additional analysis as deemed necessary to ensure that our unaudited interim financial statements were prepared in accordance with U.S. generally accepted accounting principles.*** Accordingly, management believes that the financial statements included in this Quarterly Report on Form 10-Q present fairly in all material respects our financial position, results of operations and cash flows for the period presented.

151.    The above statements, including the portions identified in emphasis, were materially false and/or misleading because they misrepresented VIH's compliance with GAAP and, consequently, the accuracy and reliability of its ongoing financial statements. ASC 480-10-S99-3A, which was available to Defendants Martin and Stamatoglou at the time the 2Q21 Report was published, required ***all*** of VIH's Class A redeemable shares to be classified as temporary equity. However, Defendants Martin and Stamatoglou violated GAAP by classifying a portion of its Class A redeemable shares as permanent equity. Consequently, the company also reported materially false financial information for additional paid-in capital, accumulated deficit, and shareholders' equity, as discussed *supra*. Ultimately, the glaring failure to comply with GAAP forced the company to restate its financial statements not only for Q2 2021, but also for Q1 2021, Q3 2021, and the year ended December 31, 2020 (for a second time). By claiming that VIH's financial statements were prepared in accordance with GAAP, Defendants Martin and Stamatoglou materially misled investors about the company's ability to adhere to GAAP and provide the market with accurate and reliable financial disclosures.

*SOX Certifications*

152.    Defendants Martin and Stamatoglou both certified the accuracy of the 2Q21 Report

pursuant to SOX. In pertinent part, they certified that:

1.    I have reviewed this Quarterly Report on Form 10-Q of VIH Impact Acquisition Holdings;

2.    Based on my knowledge, ***this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report***;

3.    Based on my knowledge, ***the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report***;

4.    The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) for the registrant and have:

    a)  ***Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared***;

    b)  [Paragraph omitted pursuant to SEC Release Nos. 33-8238/34-47986 and 33-8392/34-49313];

    c)  ***Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation***; and

    d)  Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.    The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's

auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

(a) *All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information*; and

(b) Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

(Emphasis added.)

153.    The statements identified above in emphasis were false and/or materially misleading because they mispresented: (1) the truthfulness of the 2Q21 Report as a whole, (2) the accuracy and truthfulness of VIH's financial statements contained within the 2Q21 Report, and (3) the scope and severity of the material weakness in VIH's internal controls over financial reporting.

154.    Contrary to the above representations, the 2Q21 Report did contain multiple "untrue statement[s] of a material fact" and/or "omit[ted] to state a material fact necessary to make the statements made . . . not misleading" such that financial statements contained within the 2Q21 Report did not "fairly present" VIH's financial condition. In reviewing and certifying the 2Q21 Report, Defendants Martin and Stamatoglou were also required to verify that all financial reporting was accurate, which meant confirming the 2Q21 Report's conformity with GAAP. ASC Topic 480 governs the classification of redeemable shares and while this guidance was available during the Class Period, Defendants Martin and Stamatoglou failed to follow it in the 2Q21 Report. Despite the above assurances to the market, VIH's financial statements had not been prepared in accordance with GAAP and, thus, contained false financial information. This was revealed by Bakkt's own admission on November 22, 2021, *i.e.,* the day Bakkt issued its Form 8-K statement

of non-reliance alerting the market that its financial statements for 1Q21, 2Q21, 3Q21, and the year ended December 31, 2020, should no longer be relied upon.

155.    Specifically, VIH admitted after the fact that it improperly classified a portion of VIH's Class A redeemable shares as permanent equity instead of temporary equity, which was a direct violation of GAAP. As a result of this violation and misclassification, VIH further reported false financial information for additional paid-in capital, accumulated deficit, and shareholders' equity. According to the 3Q21 Report, additional paid-in capital was surprisingly non-existent, *i.e.,* $0, not the $22,262,164 reported in the 2Q21 Report. The true accumulated deficit was $41,652,377, not $17,263,148. What seemed to be a healthy shareholders' equity of $5,000,001, was also surprisingly non-existent; instead, there was a shareholders' deficit of $41,651,859. It is undeniable that the 2Q21 Report contained multiple incorrect financial disclosures. As such, the SOX certifications were inherently false and/or materially misleading. By disseminating these SOX certifications, the investing public was deceived about the "review" that Defendants Martin and Stamatoglou engaged in and were thereby induced to rely upon unreliable financial statements.

156.    Further, not only were Defendants Martin and Stamatoglou responsible for establishing and maintaining VIH's disclosure controls and procedures, but they were also responsible for disclosing "significant deficiencies and material weaknesses *in the design or operation* of internal control over financial reporting" (emphasis added). Although the 2Q21 Report disclosed the existence of a material weakness in internal controls over financial reporting, however, the magnitude and severity of the weakness was distinctly concealed such that the market had no reason to believe that the weakness was not remediated and, thus, continued to rely on unreliable financial statements. The 2Q21 Report assured investors that it

157.     Further, not only were Defendants Martin and Stamatoglou responsible for establishing and maintaining VIH's disclosure controls and procedures, but they were also responsible for disclosing "significant deficiencies and material weaknesses *in the design or operation* of internal control over financial reporting" (emphasis added). While the 2Q21 Report disclosed the existence of a material weakness in internal controls over financial reporting, the magnitude and severity of the weakness was wrongfully concealed such that the market had no reason to believe that the weakness was not remediated and, thus, continued to rely on false financial statements. The 2Q21 Report stated that VIH's disclosure controls and procedures were not effective "*due solely* to the material weakness in our internal control over financial reporting described in the Company's Amendment No. 1 to its Annual Report on Form 10-K/A filed on May 21, 2021" (emphasis added). The Amended 2020 Annual Report distinctly limited the material weakness to a "misapplication in the guidance around accounting for certain of [its] outstanding *warrants*," such that the 2Q21 Report concealed the true scope and severity of the material weakness from the market (emphasis added).

158.     In addition, the 2Q21 Report misleadingly conveyed that the material weakness had been addressed and remediated to the extent that "financial statements included elsewhere in this Quarterly Report present fairly, in all material respects, our financial position, results of operations and cash flows in conformity with GAAP." To the contrary, the material weakness had not been addressed to the extent that financial statements included in the 2Q21 Report fairly presented the company's financial position and cash flows in conformity with GAAP. Neither was the material weakness "due solely" to the misapplication of GAAP guidance for "warrants." Instead, the material weakness was so pervasive and severe that VIH also failed to apply applicable GAAP guidance in accounting for its Class A redeemable shares and further disseminated false financial

74

reporting for additional paid-in capital, accumulated deficit, and shareholders' equity. In fact, even after management's re-evaluation of disclosure controls, internal controls, and compliance with GAAP, Defendants Martin and Stamatoglou still allowed the dissemination of false and/or materially misleading statements in the 2Q21 Report related to the material weakness, GAAP compliance, classification of the Class A redeemable shares, additional paid-in capital, accumulated deficit, and shareholders' equity. This is validated by the fact that Bakkt had to restate its financial statements not just for 2Q21, but also for 1Q21, 3Q21, and the year ended December 31, 2020 (for a second time).

159.    Moreover, Defendants also violated Section 404(a) of the Sarbanes Oxley Act of 2002 and Exchange Act Rules 13a-15 and 15d-15 in addition to the SEC's guidance regarding management's report on internal control over financial reporting under Section 13(a) or 15(d) of the Securities Exchange Act of 1934. Under these rules and regulations, which were reiterated in the SEC's April 12, 2021 Staff Statement, once management identified the misclassification of the warrants, it was then required to assess whether prior disclosures needed to be revised ***and also needed to evaluate the severity of any control deficiency***. The evaluation of the severity of the control deficiency was not supposed to be limited to the actual misstatement that occurred, but instead was supposed to consider the magnitude of the potential misstatement resulting from the control deficiency or deficiencies. In failing to comply with these rules and regulations, Defendants did not detect or identify the severity of the material weakness and, as a result, failed to inform the market of such. Therefore, the SOX certifications operated to deceive the market about the "review" undertaken by Defendants Martin and Stamatoglou, the then-existing risks surrounding VIH's financial statements, the magnitude and severity of the material weakness, and the reliability of the company's ongoing financial reporting.

**October 13, 2021 – Quarterly Report Q3 2021**

160.    On October 13, 2021, after market hours, VIH published its quarterly report on Form 10-Q for the quarter ended September 30, 2021 (the "3Q21 Report"). Defendants Martin and Stamatoglou signed the 3Q21 Report. Defendants Martin and Stamatoglou also certified that they reviewed the 3Q21 Report and it did "not contain any untrue statement of a material fact or omit to state a material fact" and "the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant…"

*Material Weakness in Internal Controls Over Financial Reporting*

161.    The 3Q21 Report provided investors with a materially false and/or misleading information related to the material weakness in the company's internal controls over financial reporting. The 3Q21 Report stated that, in relevant part:

*Evaluation of Disclosure Controls and Procedures*
As required by Rules 13a-15 and 15d-15 under the Exchange Act, our Chief Executive Officer and Chief Financial Officer carried out an evaluation of the effectiveness of the design and operation of our disclosure controls and procedures as of September 30, 2021. Based upon their evaluation, ***our Chief Executive Officer and Chief Financial Officer concluded that our disclosure controls and procedures*** (as defined in Rules 13a-15 (e) and 15d-15 (e) under the Exchange Act) ***were effective.***

*Changes in Internal Control Over Financial Reporting*
There was no change in our internal control over financial reporting that occurred during the fiscal quarter ended September 30, 2021 covered by this Quarterly Report on Form 10-Q that has materially affected, or is reasonably likely to materially affect, our internal control over financial reporting. ***The material weakness discussed below was remediated during the quarter ended September 30, 2021.***

*Remediation of a Material weakness in Internal Control over Financial Reporting*
We recognize the importance of the control environment as it sets the overall tone for the Company and is the foundation for all other components of internal control. ***Consequently, we designed and implemented remediation measures to address the material weakness previously identified and enhance our internal control***

*over financial reporting. In light of the material weakness, we enhanced our processes to identify and appropriately apply applicable accounting requirements to better evaluate and understand the nuances of the complex accounting standards that apply to our condensed consolidated financial statements, including providing enhanced access to accounting literature, research materials and documents and increased communication among our personnel and third-party professionals with whom we consult regarding complex accounting applications. The foregoing actions, which we believe remediated the material weakness in internal control over financial reporting, were completed as of the date of June 30, 2021*.

(Emphasis added.)

162.    The above statements, including the portions identified in emphasis, were materially false and/or misleading because they misrepresented the severity of the material weakness in internal controls over financial reporting by concealing its true scope and assuring the market that it had been "remediated." Based on the true scope of the weakness, Bakkt's controls were defective, deficient, and completely ineffective. Yet, the market did not learn of the extent and severity of the problem until the truth was revealed in Bakkt's corrective disclosure on November 22, 2021, *i.e.,* when Bakkt issued its Form 8-K statement of non-reliance. It was only at this time that the market learned that the material weakness was far more problematic and pervasive than the company previously disclosed because additional financial statements had to be restated and could no longer be relied upon. By making the above misrepresentations and omissions, Defendants Martin and Stamatoglou deceived the investing public about its compliance policies, the reliability of its financial statements, and the severity of the material weakness.

*SOX Certifications*

163.    Defendants Martin and Stamatoglou both certified the accuracy of the 3Q21 Report pursuant to SOX. In pertinent part, they certified that:

1.     I have reviewed this Quarterly Report on Form 10-Q  of VIH Impact Acquisition Holdings;

2.      Based on my knowledge, ***this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report***;

3.      Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.      The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) for the registrant and have:

   a) ***Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared***;

   b) [Paragraph omitted pursuant to SEC Release Nos. 33-8238/34-47986 and 33-8392/34-49313];

   c) ***Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation***; and

   d) Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.      The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

   (a) ***All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information***; and

> (b) Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

(Emphasis added.)

164.    The statements identified above in emphasis were false and/or materially misleading because they mispresented the true scope and severity of the material weakness in internal controls over financial reporting. Defendants Martin and Stamatoglou were responsible for establishing and maintaining disclosure controls and procedures in addition to disclosing "significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting." The 3Q21 Report assured the market that the material weakness had been "remediated," but still concealed its magnitude and severity, which in turn, elicited unwarranted trust and reliance from investors. Yet, the market could not ascertain just how defective and deficient the internal controls were until the truth was fully revealed in Bakkt's corrective disclosure on November 22, 2021, *i.e.,* when Bakkt issued its Form 8-K statement of non-reliance alerting the market that its financial statements for 1Q21, 2Q21, 3Q21, and the year ended December 31, 2020, should no longer be relied upon. It was only at this time that the market could fully comprehend the magnitude of the material weakness. Prior to this point, Defendants had been successful in deceiving the market about the company's compliance policies, the reliability of its financial statements, and the severity of the material weakness.

165.    Moreover, Defendants also violated Section 404(a) of the Sarbanes Oxley Act of 2002 and Exchange Act Rules 13a-15 and 15d-15 in addition to the SEC's guidance regarding management's report on internal control over financial reporting under Section 13(a) or 15(d) of the Securities Exchange Act of 1934. Under these rules and regulations, which were reiterated in the SEC's April 12, 2021 Staff Statement, once management identified the misclassification of the

warrants, it was then required to assess whether prior disclosures needed to be revised *and also needed to evaluate the severity of any control deficiency*. The evaluation of the severity of the control deficiency was not supposed to be limited to the actual misstatement that occurred, but rather was supposed to consider the magnitude of the potential misstatement resulting from the control deficiency or deficiencies. In failing to comply with these rules and regulations, Defendants did not detect or identify the severity of the material weakness and, as a result, failed to inform the market of such. Therefore, the SOX certifications operated to further deceive the market about the magnitude and severity of the material weakness.

### B.    ADDITIONAL ALLEGATIONS OF SCIENTER

166.    Defendants acted with scienter in that they knew that the financial statements issued or disseminated in the name of VIH and Bakkt during the Class Period were false and/or materially misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. Defendants participated in the fraudulent scheme alleged herein by virtue of their possession of and/or access to information reflecting the true facts regarding VIH's internal controls over financial reporting and accounting for its Class A redeemable shares.

1.    Defendants violated GAAP and longstanding regulations governing proper accounting for redeemable shares.

167.    GAAP are those principles recognized by the accounting profession as the conventions, rules, and procedures necessary to define accepted accounting practice at a particular time. GAAP are the official standards adopted by the American Institute of Certified Public Accountants (the "AICPA"), a private professional association, through three successor groups

80

that it established, the Committee on Accounting Procedure, the Accounting Principles Board (the "APB"), and the Financial Accounting Standards Board (the "FASB"). Effective July 1, 2009, the FASB issued the FASB Accounting Standards Codification ("ASC") which superseded all prior FAS Standards and FASB Staff Positions regarding FAS Standards. The ASC is "the source of authoritative [GAAP] recognized by the FASB to be applied by nongovernmental entities." (ASC, Topic 105, Sub-topic 10, § 5, ¶ 1.)

168.    SEC Regulation S-X (17 C.F.R. § 210.4-01(a)(1)) states that financial statements filed with the SEC which are not prepared in compliance with GAAP are presumed to be misleading and inaccurate. Regulation S-X requires that interim financial statements must also comply with GAAP, with the exception that interim financial statements need not include disclosures that would be duplicative of disclosures accompanying annual financial statements. 17 C.F.R. § 210.10-01(a).

169.    Senior management is responsible for a company's financial reporting. The Code of Professional Conduct developed by the American Institute of Certified Public Accounts states in pertinent part:

> The financial statements are management's responsibility. The auditor's responsibility is to express an opinion on the financial statements. Management is responsible for adopting sound accounting policies and for establishing and maintaining an internal control structure that will, among other things, record, process, summarize, and report financial data that is consistent with management's assertions embodied in the financial statements. The entity's transactions and the related assets, liabilities, and equity are within the direct knowledge and control of management. The auditor's knowledge of these matters and internal control is limited to that acquired through the audit. Thus, the fair presentation of financial statements in conformity with generally accepted accounting principles is an implicit and integral part of management's responsibility.

1 CCH AICPA Professional Standards, SAS No. 1, § 110.02 (1982).

170.    Section 13 of the Exchange Act confirms management's responsibilities for an entity's internal controls. "Every issuer which has a class of securities registered pursuant to section 78l of this title and every issuer which is required to file reports pursuant to section 78o(d) of this title shall- . . . devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that- . . . transactions are recorded as necessary (I) to permit preparation of financial statements in conformity with generally accepted accounting principles or any other criteria applicable to such statements . . . ." (15 U.S.C. § 77m(b)(2)(B)(ii)(I).)

171.    GAAP provides guidance that entities must consider in determining whether to classify shares issued in the legal form of equity as liability instruments if they represent (i) mandatorily redeemable financial instruments under ASC 480-10-25-4 or (2) unconditional obligations to deliver a variable number of equity shares that are liabilities under ASC 480-10-25-14.

172.    Since SPACs are SEC registrants, shares issued in the legal form of equity may require classification as temporary equity instruments under ASC 480-S99-3A if they are redeemable at: (1) a fixed or determinable price on a fixed or determinable date, (2) the option of the holder, or (3) upon the occurrence of an event that is not solely within the control of the issuer. ASC 480-10-S99-3A provides that redemption provisions outside of the issuer's control require common stock subject to redemption to be classified outside of permanent equity (as temporary equity). Contrary to this rule, VIH reclassified a portion of its redeemable shares from temporary equity to permanent equity even though VIH had no control over which redeemable shares would be redeemed. In other words, VIH was not allowed to classify some redeemable shares as permanent equity and others as temporary equity.

173.     Defendants' failure to comply with GAAP was not caused by the issuance of any new rules or regulations related to the classification of redeemable shares. Indeed, ASC 480-10-S99-3A provides that redemption provisions that are outside of the issuer's control (whether conditional or unconditional) require common stock subject to redemption to be classified outside of permanent equity as temporary equity. Instead of adhering to this guidance, Defendants knowingly or recklessly failed to comply with GAAP by classifying a portion of the Class A redeemable shares as permanent equity.

174.     In fact, in VIH's 3Q21 Report filed on October 13, 2021, VIH reported that "it had improperly valued its Class A ordinary shares subject to possible redemption" and "[a]s a result, management has noted a reclassification adjustment related to temporary equity and permanent equity," which resulted in "offset[s] recorded to additional paid-in capital (to the extent available), accumulated deficit and Class A ordinary shares." Thus, VIH admitted that it did not have any valid, excusable, or justifiable reason for failing to properly classify and account for its Class A redeemable shares in accordance with GAAP.

175.     Like most SPACs, VIH's organizational documents provided that public stockholders could request that VIH redeem all or a portion of such holder's shares for cash if the Merger was consummated. As the rule holds and has held historically, all SPACs with the typical redemption features in their redeemable shares need to classify *all* of their redeemable shares as temporary equity and not permanent equity. This classification must occur notwithstanding the typical provision in the SPAC's charter indicating that the SPAC shall not redeem public shares that would cause the company's net tangible assets to be less than $5,000,001 following such redemptions.

176.    The SEC's stance, which was widely publicized, is in line with its official guidance on how to treat redeemable shares and with U.S. GAAP. The relevant accounting guidance has existed for a number of years without substantial recent changes. In fact, by September 17, 2021, the effective date of the Registration Statement, SEC staff had recently enforced its accounting rules relating to redeemable shares against several SPACs, stating that redeemable shares cannot be treated as permanent equity and had to be counted as temporary equity under applicable accounting standards. For example:

a.    On July 9, 2021, the SEC wrote to Cactus Acquisition Corp. 1 Limited, stating that "securities that are redeemable for cash" must be "classified outside of permanent equity" pursuant to ASC 480-10-S99-3A;

b.    On July 13, 2021, the SEC similarly wrote to Capitalworks Emerging Markets Acquisition Corp., making the same comment and ultimately telling the company on September 16, 2021 that it was "unable to agree" with the "view that the $5 million net tangible limitation" allows for a portion of "redeemable Class A ordinary shares" to be considered "permanent equity";

c.    On July 21, 2022, the SEC responded to Alpha Star Acquisition Corp., questioning why the company was offering "10,000,000 shares as part of your initial public offering . . . but only show[ing] 9,301,909 ordinary shares subject to possible redemption in your Capitalization table," given the requirements of ASC 480-10-S99-3A;

d.    On July 21, 2021, the SEC wrote to Vahanna Tech Edge Acquisition I Corp., stating that the registration statement violated ASC 480-10-S99-3A

because it would list "less than all Class A ordinary shares subject to possible redemption" as temporary equity;

e.  On August 16, 2021, the SEC notified Athena Consumer Acquisition Corp. that ASC 480-10-S99-3A required "securities that are redeemable" to be "classified outside of permanent equity" and that, in spite of this, the registration statement stated that "less than all Class A shares subject to possible redemption" would be listed as temporary equity; and

f.  On August 27, 2021, the SEC wrote to Deep Medicine Acquisition Corp., stating that its draft registration statement incorrectly identified only a portion of its shares as being subject to "possible redemption" notwithstanding "ASC 480-10-S99-3A."

177.  The SEC's enforcement of ASC 480-10-S99-3A was widespread, given the number of SPAC entities that received notice of the accounting violation. In addition to the above list, numerous other SPAC entities received similar warnings at and/or around the same time prior to the Registration Statement, including: Embrace Change Acquisition Corp. (Aug. 30, 2021); Talon 1 Acquisition Corp. (Aug. 17, 2021); Digital Health Acquisition Corp. (Jul. 16, 2021); NorthView Acquisition Corp. (Jul. 26, 2021); Accretion Acquisition Corp. (Jul. 19, 2021); Maxpro Capital Acquisition Corp. (Aug. 18, 2021); Sportsmap Tech Acquisition Corp. (Aug. 16, 2021); OmniLit Acquisition Corp. (Jul. 28, 2021); Fat Projects Acquisition Corp. (Jul. 13, 2021); Inception Growth Acquisition Ltd. (Aug. 26, 2021); OPY Acquisition Corp. I (Aug. 18, 2021); Aesther Healthcare Acquisition Corp. (Aug. 4, 2021); APx Acquisition Corp. I (Aug. 10, 2021); and Enterprise 4.0 Technology Acquisition Corp. (Aug. 26, 2021).

178.    Indeed, "[t]he relevant accounting guidance has existed for a number of years without substantial recent changes" and they "are not aware of any plan of the FASB or SEC to significantly change the guidance in the near future." (*See* Deloitte, "Distinguishing Liabilities From Equity" (March 2022).) Thus, at all relevant times during the Class Period, Defendants acted in direct violation of the rules and regulations governing the accounting classification of redeemable shares issued by SPACs and, in turn, knew or recklessly disregarded the reality that their financial statements were materially incorrect.

179.    Defendants' misconduct squarely falls within the gambit of conduct that exemplifies a strong, cogent, and compelling inference of scienter because they knowingly or recklessly disregarded then-existing regulations for SPACs. Just as the SEC did not issue any new regulations related to warrants during the Class Period, the SEC also did not implement any new rules or regulations regarding the accounting classification of redeemable shares issues by SPACs during the Class Period. Accordingly, Defendants' conduct alleged herein amounts to an intentional, or at a minimum deliberate recklessness, disregard of the rules and regulations governing the preparation of financial statements.

2.    Material weakness of internal control over financial reporting.

180.    Due to the financial reporting issues encountered with the company's warrants, as previously discussed, Defendants were alerted to the fact that there was a material weakness in VIH's internal control over financial reporting as of May 17, 2021, *i.e.*, the day VIH disclosed that its 1Q21 Report would be untimely due to the company reclassifying the warrants. Given that Defendants' material misrepresentations about the company's warrants could have been avoided through proper education, understanding, and application of ***then-existing*** rules and regulations, as of May 17, 2021 Defendants knew or had reason to know that there was a serious and pervasive

material weakness in internal controls over financial reporting. Yet, Defendants did not disclose any issue or problem with its disclosure controls when they admitted to incorrectly classifying the warrants on May 17, 2021.

181.    VIH blamed the untimeliness of its 1Q21 Report on the guidance within the SEC's April 12, 2021 Staff Statement. In reality, the SEC's Staff Statement merely reiterated then-existing GAAP guidance that SPACs were to follow when classifying and reporting warrants including ASC 815-40, which was available to Defendants at all times during the Class Period. In fact, the SEC's Staff Statement explicitly stated that it was meant to "***highlight*** the potential accounting implications of certain terms that may be common in warrants included in SPAC transactions" and it did not operate to create any new guidance (emphasis added). In addition, ASC 480 also provides relevant guidance for classifying warrants and it was also available to Defendants at all times during the Class Period. Overall, then-existing GAAP guidance made it quite clear that the company's warrants should have been classified as a liability, but this simply was not what the company followed and disclosed. Consequently, the 1Q21 Report was untimely because the company had failed to follow established GAAP guidance not because of any new rules created by the SEC's Staff Statement.

182.    When VIH published its Amended 2020 Annual Report on May 21, 2021, it disclosed the identification of a material weakness in its internal controls over financial reporting but concealed the severity of the weakness while simultaneously assuring investors that it "devoted significant effort and resources to the remediation and improvement of our internal control over financial reporting." However, the material weakness had not been remediated or improved and Defendants knew such or had reason to know. VIH explicitly stated that the material weakness "resulted in a material misstatement of our warrant liabilities, change in fair value of warrant

liabilities, ***Class A common stock subject to possible redemption, additional paid-in capital, accumulated deficit, and related financial disclosures as of and for the period ended December 31, 2020***" (emphasis added). Yet, Defendants went on to misstate its additional paid-in capital, accumulated deficit, and shareholders' equity for the year ended December 31, 2020 (again) in addition to the quarters ended March 31, 2021, June 30, 2021, and September 30, 2021. Therefore, it is clear that Defendants knowingly or recklessly concealed the severity of the material weakness because they continued to disseminate materially false financial reporting in the exact areas they claimed to have remediated and improved.

183.    Defendants further concealed the severity of the material weakness by later claiming in the Amended 2020 Annual Report that the material weakness was only related to a "significant and unusual transaction related to the warrants." With this statement, Defendants intentionally and falsely limited the material weakness to the previous reporting related to warrants when, in fact, the material weakness had been and continued to affect the company's ability to accurately classify and account for its Class A redeemable shares, additional paid-in capital, accumulated deficit, and shareholders' equity. Considering that VIH's Annual Report had to be amended for a second time and VIH's Quarterly Reports for 1Q21, 2Q21, and 3Q21 had to be restated, Defendants cannot plausibly deny that they knew or had reason to know about the extent of the material weakness on May 17, 2021 through October 13, 2021, as further discussed below.

184.    On October 13, 2021, when VIH filed its 3Q21 Report, VIH disclosed the previous existence of a material weakness in its internal control over financial reporting, but concealed the extent and severity of the material weakness while also claiming that the problem had been "remediated." Specifically, VIH stated, in relevant part:

> We recognize the importance of the control environment as it sets the overall tone for the Company and is the foundation for all other components of internal control.

Consequently, we designed and implemented remediation measures to address the material weakness previously identified and enhance our internal control over financial reporting. In light of the material weakness, we enhanced our processes to identify and appropriately apply applicable accounting requirements to better evaluate and understand the nuances of the complex accounting standards that apply to our condensed consolidated financial statements, including providing enhanced access to accounting literature, research materials and documents and increased communication among our personnel and third-party professionals with whom we consult regarding complex accounting applications. The foregoing actions, which we believe remediated the material weakness in internal control over financial reporting, were completed as of the date of June 30, 2021.

185.    The simple fact that VIH conveyed the existence of a material weakness and explained its process for designing and implementing measures to address the problem, shows that Defendants knew or had reason to know of the true nature and extent of the material weakness. The material weakness was not a byproduct of the establishment of **new** regulatory rules or GAAP guidance, but rather was a byproduct of Defendants' intentional refusal to apply then-existing rules and regulations. Therefore, any investigation whatsoever into the material weakness related to the warrants or Class A redeemable shares would have revealed that a much greater and problematic weakness existed simply because of poor comprehension. Indeed, VIH went on to restate its Annual Report for the second time **in addition to** restating its 1Q21 Report, 2Q21 Report, and 3Q21 Report. By concealing the severity of the material weakness, Defendants were able to maintain a significant amount of investor enthusiasm and support until the truth was fully revealed on November 22, 2021.

186.    In addition to assuring the market of the company's compliance with GAAP and the reliability its financial statements, Defendants Martin and Stamatoglou additionally certified that, pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, the following reports "fully complie[d] with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934" and that the "information contained in the Report[s] fairly present[ed], in all material

respects, the financial condition and results of operations of the Company[:]" the Annual Report, the Amended 2020 Annual Report, and the Quarterly Reports filed during the Class Period. Thus, Defendants Martin and Stamatoglou engaged in ***quarterly evaluations*** of the company's financial statements and internal controls over financial reporting and still proceeded to certify the accuracy of these reports and disseminate false and/or misleading information to the investing public. Given the role that Defendants Martin and Stamatoglou played in designing and evaluating internal controls, they presumably had extensive knowledge about precisely these matters and lacked a reasonable basis for consistently certifying these reports.

187.     Defendants' conduct amounts to an extreme departure from the standards of ordinary care to the extent that the severity of the material weakness was either known by Defendants or so obvious that Defendants must have been aware of it. While Defendants created the appearance of full compliance by disclosing that the warrants should have been classified as a liability on May 17, 2021, Defendants completely concealed the existence of any issue related to internal controls over financial reporting at a time when they knew facts or had access to information suggesting that their public statements were not accurate.

188.     Defendants then proceeded to disseminate multiple false and/or materially misleading financial statements – related to the Class A redeemable shares, additional paid-in capital, accumulated deficit, and shareholders' equity – for the exact same reasons that it misclassified its warrants, *i.e.*, a failure to comply with GAAP, a failure to comply with SEC regulations, and a failure to recognize the prevalence of a serious material weakness in internal controls over financial reporting. Therefore, when considering that the allegations contained herein are a direct result of Defendants ***repeated violations*** of GAAP, Defendants demonstrated their refusal to follow proper accounting guidelines, whether intentional or with deliberate recklessness.

3.    Defendants delayed restating financials until after the Merger and public listing.

189.    Defendants had motive to delay restating VIH's financial statements until after the Merger with Legacy Bakkt and the public listing of VIH shares on the NYSE.

190.    VIH incorrectly classified a portion of its shares as permanent equity in order to maintain stockholders' equity greater than $5,000,000 on the basis that its charter permitted it to consummate an initial business combination *only* if it had net tangible assets of at least $5,000,0001. Thus, VIH could only complete a merger and continue to exist as a public company if share redemptions remained below a certain threshold.

191.    This was improper, however, because the prevailing accounting guidance, reiterated in SEC comment letters, made clear that shares issued in the legal form of equity must be classified as temporary equity—not permanent equity—if they are subject to redemption provisions not solely within the control of the issuer, which was the case here.  Upon reevaluation, VIH's management determined that because each share contained a redemption provision, all shares must be classified as temporary equity. As a result of this reclassification, VIH's stockholders' equity and net tangible assets were less than $5,000,001 when the Registration Statement became effective. Indeed, as VIH admitted, stockholders' equity was *negative* $29,249,901 as of December 31, 2020, *negative* $62,921,517 as of March 31, 2021, and *negative* $41,651,859 as of June 30, 2021. But for the admittedly improper classification of shares as permanent equity, VIH would not have had tangible assets sufficient to proceed with the Merger under its charter.

192.    Further, VIH, prior to its combination with Legacy Bakkt, traded on the Nasdaq Capital Market. Maintaining its listing on this market was a priority for Defendants. Indeed,

Defendants warned investors in its filings with the SEC that if their securities were "delist[ed]" from the exchange, it could "limit investors' ability to make transactions in our securities and subject us to additional trading restrictions." Defendants further told investors that "delist[ing]" could cause VIH to "face significant material adverse consequences, including: a limited availability of market quotations for its securities; reduced liquidity for its securities; a determination that the Bakkt Pubco Class A Common Stock is a 'penny stock' which will require brokers trading in the common stock to adhere to more stringent rules and possibly result in a reduced level of trading activity in the secondary trading market for the Company's securities; a limited amount of news and analyst coverage; and a decreased ability to issue additional securities or obtain additional financing in the future."

193.    The Nasdaq Capital Market maintains and enforces specific listing requirements, including a minimum amount of shareholder equity of at least $5 million, according to Defendants. Had Defendants correctly accounted for its Class A redeemable shares and/or restated its financial statements in advance of the business combination, VIH would have fallen out of compliance with the Nasdaq Capital Market's listing requirements due to the fact that its true shareholders' equity was *negative* $29.2 million for fiscal 2020, *negative* $62.9 million for 1Q21, *negative* $41.6 million for 2Q21, and *negative* $42.1 million for 3Q21. In light of the foregoing, Defendants knew that maintaining their listing on the Nasdaq Capital Market was critical to the successful combination with Legacy Bakkt and, in turn, the value of their equity in the combined company.

194.    In addition, Bakkt's Form 8-K statement of non-reliance explicitly stated that, [h]istorically, a portion of the Class A Ordinary Shares was classified as permanent equity to maintain net tangible assets of at least $5,000,001 on the basis that VIH would consummate its initial business combination only if VIH had net tangible assets of at least $5,000,001." Had

Defendants correctly accounted for its Class A redeemable shares and/or restated its financial statements in advance of the business combination, the merger would not have occurred. Accordingly, there was also a unique connection between the fraud and the merger because the company's misstatements also directly related to the merger, which further confirms intent or a deliberate recklessness.

195.    Consequently, Defendants successfully delayed and/or minimized the risk of delisting and not consummating the merger by improperly accounting for its Class A redeemable shares and not correcting it until *after* the combination and subsequent public listing on the NYSE.

### C.    LOSS CAUSATION AND ECONOMIC LOSS

196.    Throughout the Class Period, Defendants made materially misleading statements and omissions, which artificially inflated the price of VIH's and/or Bakkt's securities and operated as a fraud or deceit on Class Period purchasers of these securities. As the truth began to emerge, as a result of multiple corrective disclosures, the prior artificial inflation was removed from VIH's and/or Bakkt's stock price and Plaintiffs and other members of the Class suffered foreseeable economic losses, which were proximately caused by Defendants materially misleading the investing public.

197.    The market for VIH's and/or Bakkt's stock was open, well-developed and efficient at all relevant times. Defendants' material misrepresentations and omissions created a false impression in the market as to VIH's and/or Bakkt's internal controls over financial reporting generally and, in particular, its liabilities, equity, additional paid-in capital, accumulated deficit, shareholders' equity, and overall financial health. In turn, this caused VIH's and/or Bakkt's shares to be overvalued and artificially inflated during the Class Period.

198.    Reasonably relying on the integrity of the market price for VIH's and/or Bakkt's securities and market information relating to VIH's and/or Bakkt's financial health and business, Plaintiffs and other members of the Class purchased or otherwise acquired VIH's and/or Bakkt's securities to their detriment as they sustained damages resulting from the revelation of corrective information, as discussed below.

199.    On May 17, 2021, after market hours, VIH filed Form NT 10-Q with the SEC alerting regulators and the market that it could not timely file its Quarterly Report for the fiscal quarter ended March 31, 2021. Specifically, VIH claimed that the 1Q21 Report would be untimely because of guidance contained within the SEC's April 12, 2021 Staff Statement. However, a review of the SEC's Staff Statement reveals that it was merely a reiteration of then-existing rules as a means to remind SPACs of their duty to comply with relevant rules and regulations. The Staff Statement's nudging reminder for SPACs to remain compliant with existing rules shocked the investing public because it alerted them to the potential of a much bigger problem. In other words, the delayed 1Q21 Report revealed that VIH's internal controls over financial reporting were materially weaker than previously represented. In turn, this suggested that the company faced heightened regulatory risk and its financial statements may not be as accurate as investors were led to believe. In response to this news, the Company's share price fell $0.13 per share, or 1.26%, to close at $10.18 per share on May 18, 2021. This decline in the value of VIH's shares amounted to dissipation of the artificial inflation in the stock price that had been created and/or maintained by Defendants' fraudulent statements.

200.    On October 13, 2021, after market hours, VIH filed Form 10-Q with the SEC for the quarter ended September 30, 2021. The 3Q21 Report disclosed that, prior to the consummation of the merger, VIH misclassified its Class A redeemable shares, which consequently resulted in

false financial reporting related to additional paid-in capital, accumulated deficit, and shareholders' equity. Ultimately, VIH failed to classify all of its Class A redeemable shares as temporary equity in accordance with GAAP and SEC rules and regulations. Given that investors also rely on important metrics such as additional paid-in capital, accumulated deficit, shareholders' equity, and shareholders' deficit in gauging the financial health of a company, VIH's disclosure of these misrepresentations diminished investors' confidence in the company. In addition, re-measurement adjustments on equity securities that are classified as temporary equity may reduce a company's reported earnings per share. Further, at the time that VIH disclosed that it misrepresented this financial information, the company had not yet provided the market with its revised and restated financial statements for the year ended December 31, 2020. Thus, there was still great uncertainty in the market as to what the true value of the misrepresented metrics would reveal. In response to this news, VIH's stock price fell 4.73%, or $0.47 per share, to close at $9.46 per share on October 14, 2021. This represented further dissipation of the artificial inflation created and/or maintained by Defendants' misrepresentations, yet, because VIH failed to disclose material misrepresentations in its Quarterly Reports for the quarters ended March 31, 2021, June 30, 2021, and September 31, 2021, its stock price retained much of its artificial inflation until November 22, 2021.

201.    On November 22, 2021, before market hours, Bakkt filed Form 8-K with the SEC issuing a statement of *Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review*. Before Bakkt was even able to provide the investing public with its revised and restated financial statements for the year ended December 31, 2020, Bakkt was now informing the market that it would also have to revise and restate its financial statements for the quarters ended March 31, 2021, June 30, 2021, and September 31, 2021. As the market

promptly digested the implications of this disclosure, Bakkt's stock price plunged 13.69%, or $2.70 per share, to close at $17.02 per share on November 22, 2021. This decline in value of Bakkt shares represented further dissipation of the artificial inflation that was created and/or maintained by Defendants' fraudulent statements. But for Defendants' material misrepresentations and omissions, Plaintiffs and Class Members would not have purchased Bakkt securities at artificially inflated prices and would not have suffered damages when the truth was disclosed to the market. Therefore, Defendants' misrepresentations and omissions were the foreseeable and proximate cause of the damages sustained by Plaintiffs and other members of the Class.

202.    As detailed above, when the truth about Defendants' misrepresentations and omissions were revealed, the value of VIH's and/or Bakkt's shares declined precipitously as the prior artificial inflation no longer propped up its stock price. The decline in VIH's and/or Bakkt's stock price was a direct result of the nature and extent of Defendants' fraud being revealed to investors and the market through corrective disclosures and/or materialization of the risks concerning VIH's and/or Bakkt's fraudulent conduct.

203.    The timing and magnitude of VIH's and/or Bakkt's stock price declines negate any inference that the loss suffered by Plaintiffs and other members of the Class was caused by changed market conditions, macroeconomic or industry factors or company-specific facts unrelated to the Defendants' fraudulent conduct. Therefore, the damages suffered by Plaintiffs and Class Members were foreseeably and proximately caused by Defendants' fraudulent scheme to artificially inflate stock prices and the subsequent significant declines in the value of VIH's and/or Bakkt's shares when Defendants' prior misrepresentations and omissions were revealed.

### D.    PRESUMPTION OF RELIANCE; FRAUD-ON-THE-MARKET

204.    Plaintiffs will rely upon the presumption of reliance established by the fraud on the

market doctrine in that, among other things:

  a. Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

  b. the omissions and misrepresentations were material;

  c. VIH's and/or Bakkt's securities traded in an efficient market;

  d. the misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of the VIH's and/or Bakkt's securities; and

  e. Plaintiffs and the other members of the Class purchased VIH's and/or Bakkt's securities between the time Defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

  205. At all relevant times, the market for VIH's and/or Bakkt's securities was an efficient market for the following reasons, among others:

  a. VIH's and/or Bakkt's stock met the requirements for listing, and were listed and actively traded on the Nasdaq and/or NYSE, highly efficient and automated markets;

  b. During the Class Period, VIH's and/or Bakkt's stock was actively traded, demonstrating a strong presumption of an efficient market;

  c. As a regulated issuer, VIH and/or Bakkt filed with the SEC periodic public reports during the Class Period;

  d. VIH and/or Bakkt regularly communicated with public investors via established market communication mechanisms;

  e. VIH and/or Bakkt was followed by securities analysts employed by major

brokerage firms who wrote reports that were distributed to the sales force and certain customers of brokerage firms during the Class Period. Each of these reports was publicly available and entered the public marketplace; and

f.    Unexpected material news about VIH and/or Bakkt was rapidly reflected in and incorporated into VIH and/or Bakkt stock price during the Class Period.

206.    As a result of the foregoing, the market for VIH's and/or Bakkt's securities promptly digested current information regarding VIH and/or Bakkt from all publicly available sources and reflected such information in VIH's and/or Bakkt's stock price. Under these circumstances, all purchasers of VIH and/or Bakkt securities during the Class Period suffered similar injury through their purchase of VIH's and/or Bakkt's stock at artificially inflated prices, and a presumption of reliance applies.

207.    Alternatively, reliance need not be proven in this action because the action involves material omissions and deficient disclosures. Positive proof of reliance is not a prerequisite to recovery pursuant to the ruling of the United States Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972). All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered the omitted information important in deciding whether to buy or sell the subject security. Here, the facts withheld are material because an investor would have considered VIH's and/or Bakkt's financial statements, financial health, and adequacy of internal controls over financial reporting and disclosures to be important when deciding whether to purchase and/or sell VIH's and/or Bakkt's securities.

E.    **NO SAFE HARBOR; INAPPLICABILITY OF BESPEAKS CAUTION DOCTRINE**

208.    The statutory safe harbor provided for forward-looking statements under certain

circumstances does not apply to any of the material misrepresentations and omissions alleged in this Complaint.

209.    To the extent certain of the statements alleged to be misleading or inaccurate may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

210.    Defendants are also liable for any false or misleading "forward-looking statements" pleaded because, at the time each "forward-looking statement" was made, the speaker knew the "forward-looking statement" was false or misleading and the "forward-looking statement" was authorized and/or approved by an executive officer of VIH and/or Bakkt who knew that the "forward-looking statement" was false. Alternatively, none of the historic or present-tense statements made by the Defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by Defendants expressly related to or stated to be dependent on those historic or present-tense statements when made.

### COUNT III

### FOR VIOLATION OF SECTION 10(B) OF THE EXCHANGE ACT AND RULE 10B-5 PROMULGATED THEREUNDER (Against VIH, Bakkt and the Individual Defendants)

211.    Plaintiffs incorporate and re-allege each and every preceding paragraph as though fully set forth herein (except for disclaimers of allegations that are based on fraud, recklessness, or intentional misconduct, as stated in ¶¶80, 89, *supra*).

212.    During the Class Period, VIH, Bakkt and the Individual Defendants disseminated or approved the materially false and misleading statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

213.    VIH, Bakkt and the Individual Defendants violated Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5 [17 C.F.R. §240.10b-5] in that they: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the VIH and/or Bakkt securities during the Class Period.

214.    Plaintiffs and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for VIH and/or Bakkt securities. Plaintiffs and the Class would not have purchased VIH and/or Bakkt securities at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by the Defendants' misleading statements and/or omissions.

215.    As a direct and proximate result of the Defendants' wrongful conduct, Plaintiffs and the other members of the Class suffered damages in connection with their purchases of VIH and/or Bakkt securities during the Class Period.

**COUNT IV**

**FOR VIOLATION OF SECTION 20(a) OF THE EXCHANGE ACT**
**(Against the Individual Defendants)**

216.    Plaintiffs repeats and re-alleges each and every allegation contained above as if fully set forth herein (except for disclaimers of allegations that are based on fraud, recklessness, or intentional misconduct, as stated in ¶¶80, 89, *supra*).

217.    During the Class Period, the Individual Defendants participated in the operation and management of VIH and/or Bakkt, and conducted and participated, directly and indirectly, in the conduct of VIH's and/or Bakkt's business affairs. Because of their senior positions, they knew the adverse non-public information about VIH's and/or Bakkt's financial statements, financial health, and internal controls over financial reporting.

218.    As officers and/or directors of a publicly-owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to VIH's and/or Bakkt's Class A redeemable shares, additional paid-in capital, accumulated loss, and shareholders' equity, and to promptly correct any public statements issued by VIH and/or Bakkt which had become materially false or misleading.

219.    Because of their positions of control and authority as senior officers, directors, and/or controlling shareholders, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which VIH and/or Bakkt disseminated in the marketplace during the Class Period concerning VIH's and/or Bakkt's Class A redeemable shares, paid-in capital, accumulated loss, and shareholders' equity. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause VIH and/or Bakkt to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of VIH and/or Bakkt within the meaning of Section 20(a) of the

101

Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of VIH and/or Bakkt securities.

220.     Each of the Individual Defendants, therefore, acted as a controlling person of VIH and/or Bakkt. By reason of their senior management positions and/or being directors or controlling shareholders of VIH and/or Bakkt, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, VIH and/or Bakkt to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of VIH and/or Bakkt and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

221.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by VIH and/or Bakkt.

## VIII.  **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief and judgment as follows:

A.     Determining this action to be a class action properly maintained pursuant to Rule 23 of the Federal Rules of Civil Procedure, certifying Plaintiffs as Class Representatives, and designating Co-Lead Counsel as Class Counsel;

B.     Awarding compensatory damages in favor of Plaintiffs and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, together with prejudgment and post-judgment interest thereon;

C.     Awarding Plaintiffs and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.     Awarding such other and further relief as the Court may deem just and proper.

## IX.    <u>JURY TRIAL DEMANDED</u>

Plaintiffs hereby demand a jury trial.

Dated:  October 18, 2022                      LEVI & KORSINSKY, LLP


*/s/ Adam M. Apton*
Adam M. Apton
Udeme Ikpe (to be admitted *pro hac vice*)
55 Broadway, 10th Floor
New York, New York 10006
Tel.: (212) 363-7500
Fax: (212) 363-7171
aapton@zlk.com

*Counsel for Rachna Mehrotra and*
*Co-Lead Counsel for the Class*


POMERANTZ LLP
Jeremy A. Lieberman
Jonathan D. Park
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
jpark@pomlaw.com

*Counsel for Tse Winston Wing Kuen and James*
*Liner and Co-Lead Counsel for the Class*


Junbo Hao
HAO LAW FIRM
BEIJING HAO JUNBO LAW FIRM
Room 3-401 No. 2 Building,
No. 1 Shuangliubei Street
100024 Beijing
People's Republic of China
Telephone: +86 137-1805-2888
jhao@haolaw.cn

*Additional Counsel for Tse Winston Wing Kuen*