**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| SUZANNE POIRIER, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> BAKKT HOLDINGS, INC. f/k/a VPC IMPACT ACQUISITION HOLDINGS, JOHN MARTIN, OLIBIA STAMATOGLOU, GORDON WATSON, KAI SCHMITZ, and KURT SUMMERS, <br><br> Defendants. | Case No. 1:22-cv-02283-EK-PK |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**
<u>**AND APPROVAL OF NOTICE TO THE SETTLEMENT CLASS**</u>

Jeremy A. Lieberman
Jonathan D. Park
POMERANTZ LLP
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
jpark@pomlaw.com

Adam M. Apton
Devyn R. Glass
LEVI & KORSINSKY, LLP
55 Broadway, 4th Floor
New York, New York 10006
Telephone: (212) 363-7500
Fax: (212) 363-7171
aapton@zlk.com
dglass@zlk.com

*Co-Lead Counsel for Plaintiffs and
the Class*

Dated: April 17, 2023

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................. 2

    I.     SUMMARY OF THE LITIGATION .................................................... 2

    II.    NEGOTIATION OF THE SETTLEMENT.............................................. 3

    III.   THE TERMS OF THE PROPOSED SETTLEMENT ........................................... 4

ARGUMENT................................................................................................ 6

    IV.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL. ................................................................................. 6

        A.    Legal Standard for Judicial Approval of Class Action Settlements. .......... 6

        B.    The Settlement Satisfies the Approval Requirements Under Rule 23(e)(2) and *Grinnell.* .............................................................. 9

            1.    Plaintiffs and Co-Lead Counsel Adequately Represented the Class. ........................................................... 9

            2.    The Settlement Is the Product of Good Faith, Arm's-Length Negotiations. ................................................................. 10

            3.    The Settlement Is an Excellent Result for the Class. .................... 11

                a.    The costs, risks and delay of trial and appeal support approval............................................................... 12

                b.    The other Rule 23(e)(2)(C) factors support approval. ...... 15

            4.    The Settlement Treats All Class Members Equitably................... 17

        C.    The Remaining *Grinnell* Factors Support Approval................................ 18

    V.    THE COURT SHOULD APPROVE THE PROPOSED PLAN OF NOTICE. ... 19

    VI.   PROPOSED SCHEDULE OF SETTLEMENT EVENTS .................................. 21

    VII.  THE CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES. ... 21

        A.    The Settlement Class Meets the Requirements under Rule 23(a)............. 22

B.      The Settlement Class Meets the Requirements of Rule 23(b). .................. 24

C.      Co-Lead Counsel Satisfies Rule 23(g). ..................................................... 25

CONCLUSION ................................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
 298 F.R.D. 171 (S.D.N.Y. 2014)...................................................................................... 19

*In re Agent Orange Prod. Liab. Litig.*,
 597 F. Supp. 740 (E.D.N.Y. 1984)............................................................................. 11, 19

*In re Agent Orange Prod. Liab. Litig.*,
 MDL No. 381, 818 F.2d 145 (2d Cir. 1987) ................................................................. 11

*In re Am. Bank Note Holographics, Inc. Sec. Litig.*,
 127 F. Supp. 2d 418 (S.D.N.Y. 2001) ........................................................................... 13

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
 293 F.R.D. 459 (S.D.N.Y. 2013)...................................................................................... 6

*Amchem Prods., Inc., v. Windsor*,
 521 U.S. 591 (1997) ........................................................................................... 21, 22, 24

*Anixter v. Home-Stake Prod. Co.*,
 77 F.3d 1215 (10th Cir. 1996)........................................................................................ 14

*Arbuthnot v. Pierson*,
 607 F. App'x 73 (2d Cir. 2015)....................................................................................... 12

*In re BioScrip, Inc. Sec. Litig.*,
 273 F. Supp. 3d 474 (S.D.N.Y. 2017) ............................................................................ 16

*Burns v. FalconStor Software, Inc.*,
 2013 WL 12432583 (E.D.N.Y. Oct. 9, 2013) ........................................................... 15, 19

*In re Carrier iQ, Inc., Consumer Privacy Litig.*,
 2016 WL 4474366 (N.D. Cal. Aug. 25, 2016) ............................................................... 17

*Christine Asia Co. v. Yun Ma*,
 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ..................................................... 8, 13, 16, 17

*In re China Sunergy Sec. Litig.*,
 2011 WL 1899715 (S.D.N.Y. May 13, 2011).................................................................. 12

*In re Citigroup Inc. Bond Litig.*,
 296 F.R.D. 147 (S.D.N.Y. 2013)...................................................................................... 6

*In re Citigroup, Inc. Sec. Litig.*,
 965 F. Supp. 2d 369 (S.D.N.Y. 2013)............................................................................. 17

*City of Providence v. Aeropostale, Inc.*,
 2014 WL 1883494 (S.D.N.Y. May 9, 2014).................................................................... 12

*D'Amato v. Deutsche Bank*,
 236 F.3d 78 (2d Cir. 2001).............................................................................................. 11

*Detroit v. Grinnell Corp.*,
 495 F.2d 448 (2d Cir. 1974).............................................................................................. 8

iv

*Enriquez v. Nabriva Therapeutics plc,*
 1:19-cv-04183 (S.D.N.Y. May 14, 2021) ............................................................ 16

*In re Flag Telecom Holdings, Ltd. Sec. Litig.,*
 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ....................................................... 13

*Frank v. Eastman Kodak Co.,*
 228 F.R.D. 174 (W.D.N.Y. 2005) ....................................................................... 19

*Fresno Cty. Employees' Ret. Ass'n v. Isaacson/Weaver Fam. Tr.,*
 925 F.3d 63 (2d Cir. 2019) ................................................................................. 16

*In re Global Crossing Sec. & ERISA Litig.,*
 225 F.R.D. 436 (S.D.N.Y. 2004).......................................................................... 19

*Gordon v. Vanda Pharms. Inc.,*
 2022 WL 4296092 (E.D.N.Y. Sept. 15, 2022)........................................... 23, 24, 25

*In re GSE Bonds Antitrust Litig.,*
 414 F. Supp. 3d 686 (S.D.N.Y. 2019).................................................................. 25

*Hayes v. Harmony Gold Min. Co.,*
 2011 WL 6019219 (S.D.N.Y. Dec. 2, 2011), aff'd, 509 F. App'x 21 (2d Cir. 2013) ................ 16

*In re Initial Pub. Offering Sec. Litig.,*
 243 F.R.D. 79 (S.D.N.Y. 2007), *adhered to on reconsideration*, 2007 WL 844710 (S.D.N.Y.
 Mar. 20, 2007) .................................................................................................. 6

*Karvaly v. eBay, Inc.,*
 245 F.R.D. 71 (E.D.N.Y. 2007) .......................................................................... 22

*Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.,*
 No. 02 C 5893 (N.D. Ill. Jun. 20, 2016)............................................................... 14

*In re LIBOR-Based Fin. Instruments Antitrust Litig.,*
 2014 WL 6851096 (S.D.N.Y. Dec. 2, 2014)......................................................... 7

*Massiah v. MetroPlus Health Plan, Inc.,*
 2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012) ................................................. 18, 19

*In re Marsh ERISA Litig.,*
 265 F.R.D. 128 (S.D.N.Y. 2010).......................................................................... 17

*Melito v. Experian Mktg. Sols., Inc.,*
 923 F.3d 85 (2d Cir. 2019) ................................................................................. 20

*In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.,*
 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007) ........................................................... 12

*In re Merrill Lynch Tyco Rsch. Sec. Litig.,*
 249 F.R.D. 124 (S.D.N.Y. 2008) ......................................................................... 18

*In re Metlife Demutualization Litig.,*
 689 F. Supp. 2d 297 (E.D.N.Y. 2010)................................................................... 13

*Micholle v. Ophthotech Corp.,*
 2022 WL 1158684 (S.D.N.Y. Mar. 14, 2022) ...................................................... 24

*In re Nasdaq Mkt.-Makers Antitrust Litig.*,
176 F.R.D. 99 (S.D.N.Y. 1997) .................................................................................... 7

*In re PaineWebber Inc. Ltd. Partnerships Litig.*,
117 F.3d 721 (2d Cir. 1997) ....................................................................................... 10

*In re PaineWebber Ltd. Partnerships Litig.*,
171 F.R.D. 104 (S.D.N.Y.) .......................................................................................... 10

*Pantelyat v. Bank of America, N.A.*,
2019 WL 402854 (S.D.N.Y. Jan. 31, 2019) ............................................................... 12

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
330 F.R.D. 11 (E.D.N.Y. 2019) ............................................................................ 8, 16

*Pearlman v. Cablevision Sys. Corp.*,
2019 WL 3974358 (E.D.N.Y. Aug. 20, 2019) ........................................................... 16

*Pearlstein v. BlackBerry Ltd.*,
2021 WL 253453 (S.D.N.Y. Jan. 26, 2021) ............................................................... 22

*Pennsylvania Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co.*,
772 F.3d 111 (2d Cir. 2014) ....................................................................................... 22

*In re Pfizer Inc. Sec. Litig.*,
282 F.R.D. 38 (S.D.N.Y. 2012) .................................................................................. 23

*In re Platinum & Palladium Commodities Litig.*,
2014 WL 3500655 (S.D.N.Y. July 15, 2014) ............................................................... 8

*In re Polaroid ERISA Litig.*,
240 F.R.D. 65 (S.D.N.Y. 2006) .................................................................................... 9

*In re PPDAI Grp. Inc. Sec. Litig.*,
2022 WL 198491 (E.D.N.Y. Jan. 21, 2022) ............................................................... 16

*Robbins v. Koger Properties, Inc.*,
116 F.3d 1441 (11th Cir. 1997) .................................................................................. 14

*Rodriguez v. CPI Aerostructures, Inc.*,
2021 WL 9032223 (E.D.N.Y. Nov. 10, 2021) ................................................... *passim*

*In re Schering-Plough Corp. Sec. Litig.*,
2009 WL 5218066 (D. N.J. Dec. 31, 2009) ............................................................... 21

*Seijas v. Republic of Argentina*,
606 F.3d 53 (2d Cir.2010) .......................................................................................... 24

*In re Take Two Interactive Sec. Litig.*,
2010 WL 11613684 (S.D.N.Y. June 29, 2010) .......................................................... 20

*In re Tesla Inc. Securities Litigation*,
No. 18-cv-4865 (N.D. Cal. 2023) ............................................................................... 13

*In re Vivendi Universal, S.A. Sec. Litig.*,
No. 02-cv-5571 SAS (S.D.N.Y. Apr. 21, 2017) ........................................................ 14

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005) ..................................................................................... 6, 9

*Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.*,
    No. 10-CV-864 (SLT) (RER), 2015 U.S. Dist. LEXIS 73276 (E.D.N.Y. Apr. 17, 2015) ......... 7

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982) ................................................................................................ 21

**Statutes**

15 U.S.C. § 78u-4 ...................................................................................................................... 20

**Other Authorities**

4 Newberg on Class Actions § 13:18
    (5th ed. 2012) ...................................................................................................................... 22

**Rules**

Fed. R. Civ. P. 23(a) ................................................................................................................. 23

Fed. R. Civ. P. 23(b) ................................................................................................................. 22

Fed. R. Civ. P. 23(c) ................................................................................................................. 19

Fed. R. Civ. P. 23(e) .................................................................................................. 6, 7, 11, 15, 20

Fed. R. Civ. P. 23(g) ................................................................................................................. 25

Court-appointed Co-Lead Plaintiffs Tse Winston Win Kuen, James Liner, and Rachna Mehrotra (collectively, "Plaintiffs"),[1] on behalf of themselves and the proposed Settlement Class, respectfully submit this memorandum of law in support of their unopposed motion, for entry of an Order: (i) granting preliminary approval of the proposed Settlement; (ii) approving the form and manner of providing notice of the Settlement to Class Members; (iii) certifying the proposed Settlement Class for purposes of Settlement; and (iv) scheduling a hearing for final approval of the Settlement (the "Settlement Fairness Hearing").

## PRELIMINARY STATEMENT

Plaintiffs have negotiated a Settlement that provides a strong and immediate recovery to Class Members that is highly favorable in light of the risks of continued litigation. Pursuant to the proposed Settlement, Bakkt, on behalf of all Defendants,[2] has agreed to pay, or cause to be paid, $3,000,000 in cash for the benefit of the Settlement Class in exchange for the settlement of all claims asserted in the Action, the dismissal with prejudice of the Amended Complaint, and the release of all Released Plaintiffs' Claims by Plaintiffs and the other members of the Settlement Class against Defendants and Defendants' Releasees.

The Settlement provides a substantial, immediate, and guaranteed recovery for the Settlement Class, eliminates additional costs to the Parties, and circumvents future risks of litigation. These risks include disputes over liability and damages concerning Plaintiffs' ability to prove scienter, loss causation, and damages given Defendants' reliance on expert advice from their auditors and the market's reaction (or lack thereof) to news from the company about its financial

---

[1] All capitalized terms used and not otherwise defined in this Memorandum have the meanings ascribed to them in the Stipulation of Settlement, dated as of April 12, 2023 ("Stipulation" or "Stip."), filed herewith.

[2] Defendants are Bakkt Holdings, Inc. ("Bakkt") (f/k/a VPC Impact Acquisition Holdings ("VIH")) and John Martin, Olibia Stamatoglou, Gordon Watson, Kai Schmitz, and Kurt Summers (the "Individual Defendants," with Bakkt, "Defendants," and together with Plaintiffs, the "Parties").

statements. In addition, Plaintiffs faced numerous other risks unique to large complex class action litigation, such as their ability to secure and maintain a certified class as well as recover any award obtained at trial. For these reasons and others, the Settlement is fair, reasonable, adequate, and in the Settlement Class Members' best interest. The Settlement is the product of vigorous good-faith, arm's-length negotiations between experienced counsel, including significant mediation efforts overseen by Robert A. Meyer, Esq. of JAMS ADR, a nationally recognized mediator. The Settlement meets the requirements of Federal Rule of Civil Procedure ("Rule") 23(e) and Second Circuit precedent. Moreover, the proposed content and manner of providing notice satisfies requirements imposed by Rule 23, the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and due process. For these reasons, the Court should approve Plaintiffs' motion.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    SUMMARY OF THE LITIGATION

The initial complaint in this Action was filed on April 21, 2022. ECF No. 1. The operative complaint, the Amended Complaint, was filed on October 18, 2022, asserting violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and SEC Rule 10b-5 promulgated thereunder, and Sections 11 and 15 of the Securities Act of 1933 ("Securities Act"), on behalf of all persons and entities who purchased or acquired Bakkt's publicly traded securities: (i) between March 31, 2021 and November 19, 2021, both dates inclusive; and/or (ii) pursuant and/or traceable to the Registration Statement, and who were damaged thereby. ECF No. 45.

The Amended Complaint alleges that Defendants failed to abide by longstanding Generally Accepted Accounting Principles (GAAP) and Accounting Standards Codification (ASC); they issued financial statements to investors that materially misrepresented several key accounting

metrics, including shareholders' equity; and they failed to accurately describe the extent of Bakkt's material weaknesses in its internal controls over financial reporting. The Amended Complaint further alleges that the truth about Bakkt's financial statements and internal controls was ultimately revealed in a series of corrective disclosures, causing significant damages to investors who purchased Bakkt Securities based in part on these false financial statements. Defendants deny any and all allegations of wrongdoing and deny that they have committed any act or omission giving rise to any liability or violation of law.

After Plaintiffs filed the Amended Complaint, the Parties began discussing the possibility of mediation. *See* Declaration of Jeremy A. Lieberman and Adam M. Apton ("Co-Lead Counsel Decl.") at ¶39. On November 22, 2022, the Parties jointly requested that the Court adjourn Defendants' response deadline so that the Parties could schedule mediation. ECF No. 46. On December 2, 2022, the Court granted the Parties' request. ECF No. 47. The Parties then retained Mr. Meyer of JAMS ADR, a well-respected and highly experienced mediator, to assist them in negotiating a potential resolution of the claims in the Action, and scheduled mediation for February 28, 2022. *See* Co-Lead Counsel Decl. at ¶40.

On December 20, 2022, the Parties informed the Court of the scheduled mediation, and jointly stipulated to adjourn the then-existing deadlines and agreed to provide the Court with an update regarding the outcome of mediation no later than March 2, 2023. ECF No. 49. On December 21, 2022, the Court so-ordered the Parties' stipulation.

## II.    NEGOTIATION OF THE SETTLEMENT

In advance of the scheduled mediation, the Parties exchanged mediation statements, which addressed issues of liability and damages and presented the Parties' respective view of the claims and risks of continued litigation. *See* Co-Lead Counsel Decl. at ¶43. On February 28, 2023, the

Parties, through counsel, participated in a full-day mediation session before Mr. Meyer in an attempt to resolve the Action. *Id.* at ¶44. Though the day of mediation did not result in a resolution, the Parties continued to engage in settlement negotiations thereafter, as the Parties informed the Court on March 2, 2023. ECF No. 50.

At the conclusion of the mediation, Mr. Meyer provided a "mediator's proposal" to the Parties recommending a settlement of the Action in exchange for $3 million in cash. *See* Co-Lead Counsel Decl. at ¶45. On March 8, 2023, Plaintiffs and Defendants each agreed to the mediator's proposal, and informed the Court on March 9, 2023 that they had reached a settlement-in-principle, that they expected to complete a Stipulation of Settlement by April 10, 2023, and that Plaintiffs would present the motion that same day. ECF No. 51.

On March 14, 2023, the Court ordered that the present motion be filed by April 10, 2023 and that, should the Parties fail to finalize the Stipulation by the date set, pre-motion letters shall be due on April 20, 2023 and May 4, 2023. That same day, the Parties executed a memorandum of understanding, agreeing to settle the Action for $3 million subject to the execution of a formal, final settlement agreement. *See* Co-Lead Counsel Decl. at ¶48.

## III.    THE TERMS OF THE PROPOSED SETTLEMENT

The Stipulation (together with its exhibits) constitutes the final and binding agreement between the Parties. Pursuant to the Stipulation, Bakkt, on behalf of all Defendants, will pay or cause to be paid $3,000,000 in cash, which amount plus accrued interest comprises the Settlement Fund. Stip., § II(A). In exchange for monetary consideration, Plaintiffs agreed to the release of all Released Plaintiffs' Claims by Plaintiffs and the Settlement Class against Defendants and Defendants' Releasees. Stip. at ¶4, 10.

The proposed Settlement Class is defined as all persons and entities who purchased or otherwise acquired publicly traded Bakkt Securities (i) during the period from March 31, 2021 through November 19, 2021, both dates inclusive, or (ii) pursuant and/or traceable to the Registration Statement, and were allegedly damaged thereby. Stip, at ¶1(rr). Excluded from the Settlement Class are (i) Defendants; (ii) current and former officers and directors of Bakkt; (iii) members of the Immediate Family of each of the Individual Defendants; (iv) all subsidiaries and affiliates of Bakkt and the directors and officers of Bakkt and their respective subsidiaries or affiliates; (v) all persons, firms, trusts, corporations, officers, directors, and any other individual or entity in which any Defendant has a controlling interest, provided, however, that any "Investment Vehicle" shall not be excluded from the Settlement Class; (vi) the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of all such excluded parties; and (vii) any persons or entities who properly exclude themselves by filing a valid and timely request for exclusion. *Id.*

The cost of Notice to the Settlement Class and settlement administration ("Notice and Administration Expenses") will be funded by the Settlement Fund. Stip. at ¶13. After a competitive bidding process, Co-Lead Counsel retained a nationally recognized class action settlement administrator, AB Data Ltd., to administer the process of giving notice to the Settlement Class, receive and assess claims submitted by Claimants and, upon Court approval, distribute the Net Settlement Fund to Class Members. *See* Co-Lead Counsel Decl. at ¶51.

The Notice provides that Co-Lead Counsel will submit an application for an award of attorneys' fees in an amount not to exceed one-third of the Settlement Amount and litigation expenses in an amount not to exceed $80,000, plus interest accrued on both amounts at the same rate as earned by the Settlement Fund. *See* Stipulation, Ex. A-1 ("Notice") at 3. The Notice also states that Plaintiffs may also seek compensatory awards under the PSLRA not to exceed $15,000

in the aggregate for all Plaintiffs. *Id.* Such fees, awards, and expenses shall be paid from the Settlement Fund. *Id.*

While Plaintiffs believe that the merits of their case are strong, Defendants contend that they did not violate the securities laws, did not act with scienter, and did not cause damages to the Settlement Class. Plaintiffs recognize that they face numerous dangers, including an unfavorable decision on a motion to dismiss or summary judgment, the possibility that a jury may not return a verdict in their favor or may award damages less than the Settlement Amount, or an unfavorable appellate decision. Moreover, even if Plaintiffs were able to achieve a favorable verdict, this would involve years of delay and carry with it a risk that Plaintiffs may not be able to collect a judgment depending on the strength of the crypto market and, in turn, Bakkt's financial strength. Given these significant risks, Plaintiffs and Co-Lead Counsel believe that the proposed Settlement provides an excellent result, is in the best interest of the Settlement Class.

## ARGUMENT

## I.      THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL.

### A.      Legal Standard for Judicial Approval of Class Action Settlements.

The Second Circuit recognizes the "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *see also In re IMAX Sec. Litig.*, 283 F.R.D. 178, 188 (S.D.N.Y. 2012).[3] Courts should approve a class action settlement if it is "fair, reasonable, and adequate." *See* Fed. R. Civ. P. 23(e)(2); *see also In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 154 (S.D.N.Y. 2013); *In re Am. Int'l Grp., Inc. Sec. Litig.*, 293 F.R.D. 459, 464 (S.D.N.Y. 2013).

---

[3] Unless otherwise noted, all emphasis is added, and internal quotations and citations are omitted throughout.

"Review of a proposed class action settlement generally involves a two-step process: preliminary approval and a subsequent 'fairness hearing.'" *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007), *adhered to on reconsideration*, 2007 WL 844710 (S.D.N.Y. Mar. 20, 2007). "In considering preliminary approval, courts make a preliminary evaluation of the fairness of the settlement, prior to notice" and "[o]nce preliminary approval is bestowed, the second step of the process ensues: notice is given to the class members of a hearing, at which time class members and the settling parties may be heard with respect to final court approval." *In re Nasdaq Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997). "Preliminary approval is not tantamount to a finding that [a proposed] settlement is fair and reasonable. . . . Instead, at this stage, we need only decide whether the terms of the Proposed Settlement are at least sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2014 WL 6851096, at *2 (S.D.N.Y. Dec. 2, 2014). Additionally, "courts should give proper deference to the private consensual decision of the parties," and should bear in mind "the unique ability of class and defense counsel to assess the potential risks and rewards of litigation." *Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.*, No. 10-CV-864 (SLT) (RER), 2015 U.S. Dist. LEXIS 73276, at *18 (E.D.N.Y. Apr. 17, 2015).

Rule 23(e)(1) provides that preliminary approval should be granted where "the parties show[] that the Court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1). Pursuant to Rule 23(e)(2), courts assessing settlement approval consider whether:

(A)    The class representatives and class counsel have adequately represented the class;
(B)    The proposal was negotiated at arm's length;
(C)    The relief provided for the class is adequate, taking into account:
    (i)    The costs, risks, and delay of trial and appeal;

(ii)    The effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)    The terms of any proposed award of attorneys' fees, including timing of payment; and

(iv)    Any agreement required to be identified under Rule 23(e)(3);

(D)    The proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). These factors "add to, rather than displace, the *Grinnell* factors." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019). Courts in the Second Circuit have long considered the *Grinnell* factors, to evaluate "whether a class action settlement is fair, reasonable, and adequate under Rule 23":

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *8-9 (S.D.N.Y. Oct. 16, 2019) (citing *Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)). The Second Circuit has not prescribed any set order of consideration, but at least one district court has suggested that courts first "consider[] the Rule 23(e)(2) factors, and then consider[] additional *Grinnell* factors not otherwise addressed by the Rule 23(e)(2) factors." *See Payment Card*, 330 F.R.D. at 29.

Either way, the court should not "engage in a complete analysis at the preliminary approval stage . . . as other courts in this Circuit have held, 'it is not necessary to exhaustively consider the factors applicable to final approval'" when considering preliminary approval. *Id.* at 30 n.24 (quoting *In re Platinum & Palladium Commodities Litig.*, 2014 WL 3500655, at *12 (S.D.N.Y. July 15, 2014)). Indeed, certain factors—such as the reaction of the class to the settlement—will not have sufficient data to thoroughly consider until the final approval stage. *Id.*

8

As set forth below, the proposed Settlement satisfies both prongs under Rule 23(e)(1) and meets the criteria for final approval expressly enumerated in Rule 23(e)(2), as well as those articulated in *Grinnell*.

**B.      The Settlement Satisfies the Approval Requirements Under Rule 23(e)(2) and *Grinnell.***

**1.      Plaintiffs and Co-Lead Counsel Adequately Represented the Class.**

Plaintiffs and Co-Lead Counsel more than satisfy Rule 23(e)(2)(A)'s "adequate representation" requirement, which focuses primarily on the "alignment of interests between class members." *See Wal-Mart Stores, Inc.*, 396 F.3d at 106-07. Here, Plaintiffs' interests were fully aligned with the interests of absent Settlement Class Members. Plaintiffs' claims (like those of the Settlement Class) concern publicly traded Bakkt Securities, and are based on the same facts and legal theory over the same Class Period. And, because Plaintiffs and Co-Lead Counsel "share the common goal of maximizing recovery" for the Settlement Class, "there is no conflict of interest[.]" *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006).

Moreover, Plaintiffs and Co-Lead Counsel have vigorously litigated this case since its inception. *See* Co-Lead Counsel Decl. at ¶5. Among other things, Co-Lead Counsel conducted a thorough and wide-ranging investigation concerning the allegedly fraudulent misrepresentations made by Defendants, which included: (i) a review and analysis of publicly available information, including Bakkt's SEC filings, (ii) analysis of applicable accounting standards; (iii) consultation with an accounting expert; and (iv) consultation with experts on market efficiency, loss causation, and damages. *See id.* Co-Lead Counsel then prepared and filed the Amended Complaint. *See id.* at ¶¶37, 38. In addition, Plaintiffs contributed to the Action by overseeing the litigation, including helping with the initial investigation of this Action, the drafting of the Amended Complaint, and the mediation and subsequent negotiations that ultimately resulted in the Settlement.

Plaintiffs and Co-Lead Counsel also vigorously pursued settlement discussions. After the Parties agreed on a mediator, Co-Lead Counsel drafted a mediation statement, prepared for, and attended, a full-day mediation session, and participated in further negotiations in the following weeks. *See id.* at ¶40-45. Indeed, Co-Lead Counsel, who is experienced in prosecuting complex class actions, had a clear view of the strengths and risks of the Action, and were equipped to make an informed decision regarding the reasonableness of a potential settlement. The result of these efforts is an impressive settlement of $3,000,000 in cash for the benefit of the Settlement Class. Accordingly, Plaintiffs and Co-Lead Counsel have adequately represented the Settlement Class, which weighs in favor of approval.

### 2. The Settlement Is the Product of Good Faith, Arm's-Length Negotiations.

A settlement is procedurally fair when it is "achieved through arms-length negotiations by counsel with the experience and ability to effectively represent the class's interests." *Rodriguez v. CPI Aerostructures, Inc.*, 2021 WL 9032223, at *4 (E.D.N.Y. Nov. 10, 2021); *see also* Fed. R. Civ. P. 23(e)(2)(B). In such circumstances, "'great weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation." *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y.), *aff'd* 117 F.3d 721 (2d Cir. 1997). There is a "presumption of fairness when a class settlement has been reached after arm's-length negotiations between experienced, capable counsel." *Rodriguez*, 2021 WL 9032223, at *4.

As previously discussed, the Parties engaged Robert A. Meyer, a nationally recognized mediator, and attended a full-day mediation session, at which the parties did not reach a settlement. *See* Co-Lead Counsel Decl. at ¶44. Following post-mediation negotiations, the Parties ultimately agreed to resolve the Action based on a "mediator's proposal" to settle for $3,000,000. *Id.* at ¶45.

10

Further, Mr. Meyer's involvement strongly supports the conclusion that negotiations were conducted at arm's length and without collusion. "The [P]arties' involvement in mediation in this case helps to ensure that the proceedings were free of collusion and undue pressure." *Rodriguez*, 2021 WL 9032223, at \*4 (citing *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001)).

Accordingly, this factor favors preliminary approval.

### 3. The Settlement Is an Excellent Result for the Class.

The proposed Settlement provides an excellent result and immediate recovery for the Class, and is fair, reasonable, and adequate considering "the costs, risks, and delay of trial and appeal" and other relevant factors. Fed. R. Civ. P. 23(e)(2)(C). The Settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd sub nom. In re Agent Orange Prod. Liab. Litig.*, MDL No. 381, 818 F.2d 145 (2d Cir. 1987).

Here, the Settlement provides a cash payment of $3,000,000 for the benefit of the Class. This is an excellent result, especially given the significant risks of continued litigation. After consulting with an econometric expert, Plaintiffs and Co-Lead Counsel estimate that the maximum aggregated damages possible, upon a successful verdict of all claims, is approximately $80 million. *See* Co-Lead Counsel Decl. at ¶69. However, even if Plaintiffs were to secure a successful verdict, collection could be delayed and jeopardized significantly by post-trial appeals, coverage litigation, and risks arising from the volatility within the crypto industry. *See id.* at ¶58-59. Moreover, even if Plaintiffs prevailed, a jury might not accept that any of the declines in stock price on each disclosure date was caused by the alleged fraud, limiting actual damages to less than $5 million. *See id.* at ¶70-72.

11

The Settlement in this Action is also favorable compared to other securities fraud class actions with similar damages. Plaintiffs estimate that this recovery represents 3.75% of the approximately $80 million in aggregate damages, including damages from statistically insignificant stock price declines. This recovery is in line with the average settlement amount in securities class actions. *See In re China Sunergy Sec. Litig.*, 2011 WL 1899715, at *5 (S.D.N.Y. May 13, 2011) ("the average settlement amounts in securities fraud class actions where investors sustained losses over the past decade . . . have ranged from 3% to 7% of the class members' estimated losses"); *In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*, 2007 WL 313474, at *10 (S.D.N.Y. Feb. 1, 2007) (a recovery of approximately 6.25% was "at the higher end of the range of reasonableness of recovery in class action[] securities litigations").

#### a.    The costs, risks and delay of trial and appeal support approval.

In assessing a settlement, courts consider "not whether the settlement represents the best possible recovery, but how the settlement relates to the strengths and weaknesses of the case." *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *9 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015). A court need only determine whether the Settlement falls within a range of reasonableness that "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Pantelyat v. Bank of America, N.A.*, 2019 WL 402854, at *7 (S.D.N.Y. Jan. 31, 2019).

Although Plaintiffs and Co-Lead Counsel believe the allegations of wrongdoing against Defendants are strong, they acknowledge that Defendants have put forth substantial arguments concerning liability. *See* Co-Lead Counsel Decl. at ¶60-66. Specifically, Plaintiffs would still need to succeed in their opposition to Defendants' motion to dismiss, summary judgment, and trial where the issue of scienter would have been hotly contested given Defendants' proclaimed reliance

on expert auditors and customary practice with regard to SPAC accounting. *See id.* at ¶61. Class certification also would have been risky in light of Bakkt's volatile market for securities and the potential that its stock did not trade in an "efficient market." *See id.* at ¶72. Undoubtedly, successfully prosecuting this Action through trial, like any securities action, would be both complex and risky. *See, e.g.*, *Christine Asia*, 2019 WL 5257534, at *10 ("In evaluating the settlement of a securities class action, federal courts, including this Court, have long recognized that such litigation is notably difficult and notoriously uncertain."); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *15 (S.D.N.Y. Nov. 8, 2010) (recognizing that complex securities class actions are "notably difficult and notoriously uncertain"). Moreover, there can be no assurance that a jury would find Defendants made misrepresentations, acted with scienter, or that those misrepresentations were the cause of investor losses. Indeed, a recent securities class action trial ended in a defense verdict, leaving the class with nothing, despite the Court previously finding, at summary judgment, that the defendant made a material misrepresentation and did so with scienter. *See In re Tesla Inc. Securities Litigation*, No. 18-cv-4865 (N.D. Cal. 2023).

Even assuming Plaintiffs' claims survived a motion to dismiss and summary judgment, a jury trial would have required a substantial amount of factual and expert testimony. *See, e.g., In re Metlife Demutualization Litig.,* 689 F. Supp. 2d 297, 332 (E.D.N.Y. 2010) ("The proof on many disputed issues – which involve complex financial concepts – would likely have included a battle of experts, leaving the trier of fact with difficult questions to resolve."); *In re Am. Bank Note Holographics, Inc. Sec. Litig.,* 127 F. Supp. 2d 418, 426-27 (S.D.N.Y. 2001) ("In such a battle, Plaintiffs' Counsel recognize the possibility that a jury could be swayed by experts for Defendants."). And whatever the outcome at trial, it is virtually certain that an appeal would

13

follow. This continued litigation would have posed considerable expense to the Parties, and would have delayed any potential recovery, if one was even achieved.

Moreover, prevailing at trial would not necessarily result in a larger recovery. The jury could award a smaller number of damages, or the verdict could be appealed. *See, e.g.*, *Robbins v. Koger Properties, Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing jury verdict of $81 million for plaintiffs against an accounting firm and entering judgment for defendant); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning securities fraud class action jury verdict for plaintiffs in a case tried in 1988 on the basis of a Supreme Court opinion handed down in 1994). And even if Plaintiffs were able to achieve a favorable verdict, this would only come after years of delay. For example, in two PSLRA cases that went trial, plaintiffs did not move for preliminary approval until approximately *seven years* after their respective juries rendered verdicts in their favor. *See In re Vivendi Universal, S.A. Sec. Litig.*, No. 02-cv-5571 SAS (S.D.N.Y. Apr. 21, 2017), ECF No. 1313 (preliminary approval motion filed after appeal and approximately 7.5 years after the jury verdict); *see also Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, No. 02 C 5893 (N.D. Ill. Jun. 20, 2016), ECF No. 2212 (preliminary approval motion filed approximately 7 years after the jury verdict and after appeal, which reversed verdict in part and ordered a limited new trial).

Further, Bakkt is subject to volatility arising from the crypto industry, which creates additional risks associated with continued litigation. During 2022, Bakkt incurred a net loss of over $1.9 billion. *See* Co-Lead Counsel Decl. at ¶59. Bakkt also recently announced a "restructuring" for 2023. *See id.* at ¶59. Further litigation could serve to consume resources rather than going to the Settlement Class. *See Burns v. FalconStor Software, Inc.*, 2013 WL 12432583, at *8 (E.D.N.Y. Oct. 9, 2013) (granting preliminary approval while defendants' motion to dismiss

14

was still pending because further litigation "would likely consume tremendous time and resources").

### b.       The other Rule 23(e)(2)(C) factors support approval.

Rule 23(e)(2)(C) states that adequacy should be assessed in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims[,]" "the terms of any proposed award of attorney's fees, including timing of payment[,]" and "any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). Each of these factors supports approval here.

First, the Settlement calls for an experienced Claims Administrator to process claims and distribute the Net Settlement Fund to Class Members according to the Plan of Allocation using procedures that are well-established and have proven effective in securities fraud litigation. Co-Lead Counsel selected AB Data to serve as Claims Administrator (subject to Court approval) after a competitive bidding process. *See* Co-Lead Counsel Decl. at ¶51. Under the guidance of Co-Lead Counsel, AB Data will process claims and provide Claimants with a reasonable opportunity to cure deficiencies in their claims. *See* Declaration of Adam D. Walter, ¶11. The Claims Administrator will audit the claims received and evaluate the proposed distribution according to the Plan of Allocation, and Co-Lead Counsel will move the Court for an order of distribution permitting checks to be mailed to eligible claimants.[4] *See id.* at ¶12.

Second, as disclosed in the Notice, Co-Lead Counsel, who have not been paid to date for their efforts in this Action, will apply for a fee award not to exceed one-third of the Settlement Fund. Such a fee is considered reasonable for the work performed and the results obtained and is consistent with awards in similar complex class action cases. *See, e.g.*, *In re PPDAI Grp. Inc. Sec.*

---

[4] This is not a claims-made settlement. If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement Fund based on the number or value of the claims submitted.

15

*Litig.*, 2022 WL 198491, at *17 (E.D.N.Y. Jan. 21, 2022) (approving a one-third of a $9 million settlement).[5]

Third, Rule 23(e)(2)(C)(iv) requires the disclosure of any agreement between the Parties in connection with the Settlement. On March 14, 2023, the Parties executed the MOU and on April 12, 2022 they entered into the Stipulation and the confidential Supplemental Agreement regarding requests for exclusion (the "Supplemental Agreement"). Stip. at ¶ 40. The Supplemental Agreement provides that Bakkt has the option to terminate the Settlement in the event that requests for exclusion from the Settlement Class exceed a certain agreed-upon threshold. *See id.* As is standard in securities class actions, the Supplemental Agreement is being kept confidential in order to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging a larger individual settlement to the detriment of the Settlement Class. *See* 7 Newberg on Class Actions § 22:59 (5th ed.) Such an agreement "is standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *See, e.g.*, *Christine Asia*, 2019 WL 5257534, at *15; *In re Carrier iQ, Inc., Consumer Privacy Litig.*, 2016 WL 4474366, at *5 (N.D. Cal. Aug. 25, 2016) (observing that such "opt-out deals are not uncommon as they are designed to ensure that an objector cannot try to hijack a settlement in his or her own self-interest"). Pursuant to its terms, the Supplemental Agreement may be submitted to the Court *in camera* or under seal.

---

[5] *Enriquez v. Nabriva Therapeutics plc,* 1:19-cv-04183, ECF No. 78 (S.D.N.Y. May 14, 2021) (approving fee award that was one-third of a $3 million settlement); *Pearlman v. Cablevision Sys. Corp.,* 2019 WL 3974358, at *3 (E.D.N.Y. Aug. 20, 2019) ("[I]t is very common to see 33% contingency fees in cases with funds of less than $10 million, and 30% contingency fees in cases with funds between $10 million and $50 million."); *In re BioScrip, Inc. Sec. Litig.,* 273 F. Supp. 3d 474, 497 (S.D.N.Y. 2017), *aff'd sub nom. Fresno Cty. Employees' Ret. Ass'n v. Isaacson/Weaver Fam. Tr.,* 925 F.3d 63 (2d Cir. 2019) (approving 33 1/3% settlement and stating "courts routinely award a percentage amounting to approximately 1/3"); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,* 991 F. Supp. 2d 437, 445 (E.D.N.Y. 2014) ("it is very common to see 33% contingency fees in cases with funds of less than $10 million"); *Hayes v. Harmony Gold Min. Co.,* 2011 WL 6019219, at *1 (S.D.N.Y. Dec. 2, 2011), aff'd, 509 F. App'x 21 (2d Cir. 2013) (noting that attorneys' fee of one-third of the $9 million settlement amount was fair, reasonable and adequate).

The Supplemental Agreement, Stipulation, and MOU are the only agreements between the Parties concerning the Settlement.

### 4. The Settlement Treats All Class Members Equitably.

The Settlement easily satisfies the Rule 23(e)(2)(D) criteria that the Settlement treat class members equitably relative to one another. A plan of allocation, "particularly if recommended by experienced and competent class counsel," should be approved so long as it is "fair and adequate" and "ha[s] a reasonable, rational basis." *Christine Asia,* 2019 WL 5257534, at *15. Under the proposed Plan of Allocation, each Authorized Claimant will receive a *pro rata* share of the Net Settlement Fund, which shall be the Authorized Claimant's Recognized Loss divided by the total of Recognized Losses of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. *See* Co-Lead Counsel Decl. at ¶77-80. As described in the Notice, the Plan of Allocation has a rational basis and was formulated by Co-Lead Counsel, with the assistance of Plaintiffs' damages expert, ensuring its fairness and reliability. *See id.* The Plan of Allocation also clearly identifies the circumstances by which Class Members may participate in the distribution of the Net Settlement Fund. *See id.* As such, the Plan of Allocation is consistent with the alleged theories of damages under the Securities Act and Exchange Act and is substantially similar to other plans approved and successfully implemented in securities class actions in this Circuit. *See, e.g.*, *In re Citigroup, Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 386-87 (S.D.N.Y. 2013); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145-46 (S.D.N.Y. 2010). Thus, the proposed Settlement treats all Class Members equitably and the Plan of Allocation is fair and adequate and has a reasonable and rational basis, weighing in favor of approval. *See, e.g.*, *In re Merrill Lynch Tyco Rsch. Sec. Litig.*, 249 F.R.D. 124, 135 (S.D.N.Y. 2008) ("A plan of allocation that calls for the *pro rata* distribution of settlement proceeds on the basis of investment loss is presumptively reasonable.").

17

### C.    The Remaining *Grinnell* Factors Support Approval.

The additional factors articulated in *Grinnell* include: the stage of the proceedings and the amount of discovery completed; the ability of the defendants to withstand a greater judgment; and the range of reasonableness of the settlement fund in light of the best possible recovery and the risks of litigation.[6] While, "a court need not find that every factor militates in favor of a finding of fairness; rather, a court consider[s] the totality of these factors in light of the particular circumstances," each supports approval here. *In re Merrill Lynch Tyco Rsch. Sec. Litig.*, 249 F.R.D. 124, 134 (S.D.N.Y. 2008).

First, the stage of the proceedings favors approval. This factor assesses "whether counsel had an adequate appreciation of the merits of the case before negotiating." *Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *4 (E.D.N.Y. Nov. 20, 2012). Here, Co-Lead Counsel investigated the claims, consulted with experts, filed a 103-page Amended Complaint, prepared for an anticipated motion to dismiss, and engaged in extensive mediation efforts overseen by an experienced mediator. *See* Co-Lead Counsel Decl. at ¶37-45. These efforts place Co-Lead Counsel in the position to effectively evaluate the merits of the Action and the strengths and weaknesses Plaintiffs would face if the litigation were to proceed. *See Rodriguez*, 2021 WL 9032223, at *5 ("[w]hile formal discovery has not occurred in this case . . . Plaintiffs filed an exhaustive Amended Complaint in this case and defendants responded with a motion to dismiss, apprising plaintiffs of the defendants' position. Moreover, Lead Plaintiff and his counsel engaged in extensive negotiations with the defendants with the aid of a mediator.").[7]

---

[6] One remaining *Grinnell* factor, the reaction of the Settlement Class, cannot meaningfully be assessed until Notice is disseminated, and thus will be addressed at a later stage.

[7] *See also Burns*, 2013 WL 12432583, at *8 (finding that information gained through the mediation and settlement process found to be sufficient in a case without any discovery); *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 177 (S.D.N.Y. 2014) (finding that even where "no merits discovery occurred in this case to date," lead counsel was "knowledgeable with respect to possible outcomes and risks in this matter and, thus, able to recommend

Second, no class has yet been certified, and even assuming class certification is achieved, the Court could revisit certification at any time. Thus, absent settlement, there would always be a meaningful risk that this case or parts thereof might not be maintained on a class-wide basis through trial. *Rodriguez*, 2021 WL 9032223, at \*6 (quoting *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005)) ("the risk that the case might not be certified is not illusory").

Third, the risk that Plaintiffs could be unable to collect on a judgment substantially larger than the Settlement Amount also "weighs heavily in favor of approving the settlement." *Advanced Battery Techs.*, 298 F.R.D. at 179. That is especially true where, as here, the corporate defendant's performance is impacted by the overall crypto market conditions, which are uncertain and could reduce any funds available to pay a judgment. Therefore, "risk of collection weighs in favor of final approval, because the settlement decreases the risk of collection." *Massiah*, 2012 WL 5874655, at \*5.

Finally, the Settlement is within the range typically found reasonable relative to the maximum prospective recovery. Reasonableness must be judged "in light of the strengths and weaknesses of plaintiffs' case" not "the best of all possible worlds." *In re Agent Orange*, 597 F. Supp. at 762.

## II.    THE COURT SHOULD APPROVE THE PROPOSED PLAN OF NOTICE.

Rule 23(c)(2) directs that the notice be "the best notice that is practicable under the circumstances" (Fed. R. Civ. P. 23(c)(2)(B)) and Rule 23(e) directs "notice in a reasonable manner" (Fed. R. Civ. P. 23(e)(1)(B)). Pursuant to the PSLRA, the notice must also include an explanation of the plaintiff's recovery. *In re Take Two Interactive Sec. Litig.*, 2010 WL 11613684, at \*12–13 (S.D.N.Y. June 29, 2010) (quoting 15 U.S.C. §78u-4(a)(7)). The notice must also "fairly

_____

the Settlement"); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004) ("Formal discovery is not a prerequisite; the question is whether the parties had adequate information about their claims.").

apprise[] the prospective members of the class of the terms of the proposed settlement and of the options that [are] open to them in connection with the proceedings." *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 95 (2d Cir. 2019).

Plaintiffs' proposed plan of notice satisfies these standards. As specified by Rule 23(c)(3) and 15 U.S.C. § 78u4(a)(7), the Notice describes the proposed Settlement and sets forth, among other things: (1) the nature, history, and status of the litigation; (2) the definition of the certified Class and who is excluded; (3) the reasons for settling; (4) the amount of the Settlement Fund; (5) the Class's claims and issues raised in this Action; (6) the Parties' disagreement over damages and liability; (7) the maximum amount of attorneys' fees and expenses that Co-Lead Counsel may seek; (8) the maximum amount that may be requested as a reimbursement award to Plaintiffs; and (9) the plan for allocating the Settlement proceeds to the Class. *See generally*, Notice. The Notice also describes the process for seeking exclusion from the Class, or for objecting to the Settlement, Plan of Allocation, or requests for awards of fees and expenses. *Id*. The proposed Summary Notice also provides essential information about the Action and the Settlement and directs Class Members to alternative sources for additional information. *See* Stip., Ex. A-3. Likewise, the proposed Postcard Notice provides necessary information about the Settlement and how to participate. *See* Stip., Ex. A-4. In addition to the mailed and published notice, the Stipulation provides for the establishment of a website devoted to posting Settlement-related information, and a toll-free telephone number to answer Settlement-related inquires.

Accordingly, the proposed plan of notice meets all the requirements of due process, the PSLRA, and Rule 23. *See e.g., In re Schering-Plough Corp. Sec. Litig.,* 2009 WL 5218066, at *1, 6 (D. N.J. Dec. 31, 2009) (finding that a settlement notice with a mailing to all class members who

20

could be identified with reasonable effort and publication of a summary notice and over the PR Newswire, satisfied the requirements of Rule 23 and due process).

## III.    PROPOSED SCHEDULE OF SETTLEMENT EVENTS

In conjunction with the Preliminary Approval Order, the Parties respectfully propose the following schedule for Settlement-related events:

| Event | Proposed Due Date |
|---|---|
| Deadline to mail Postcard Notice and post Notice and Claim Form on Settlement website | 20 calendar days after entry of Preliminary Approval Order |
| Deadline to publish Summary Notice | 30 calendar days after entry of Preliminary Approval Order |
| Deadline to file papers in support of final approval and seek fees and expenses | 35 calendar days before the Settlement Fairness Hearing |
| Deadline to object or request exclusion | 21 calendar days before the Settlement Fairness Hearing |
| Deadline for submitting a Proof of Claim | Postmarked no later than 90 calendar days after the Notice Date |
| Deadline to file response to any objections, or reply in further support of final approval or fees and expenses | 7 calendar days before the Settlement Fairness Hearing |
| Affidavit or declaration of Notice, and list of timely and untimely exclusion requests | 7 calendar days before the Settlement Fairness Hearing |
| Settlement Fairness Hearing | Approximately 100-105 days after entry of the Preliminary Approval Order |

## IV.    THE CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES.

In preliminarily approving the proposed Settlement, this Court must consider whether to conditionally certify the Settlement Class for settlement purposes. *Amchem Prods., Inc., v. Windsor*, 521 U.S. 591, 620 (1997); Manual for Complex Litigation (Fourth) § 21.632. The Second Circuit has long acknowledged the propriety of certifying a class solely for settlement purposes. *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982). "The type of certification approval that courts provide with a preliminary settlement approval is accorded under a more relaxed standard" than in the typical certification process. 4 Newberg on Class Actions § 13:18 (5th ed.

2012). The Court need not conduct a rigorous analysis at this stage to determine whether to certify a settlement class and should reserve this analysis for the final approval hearing. *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 86 (E.D.N.Y. 2007). Further, in certifying the Settlement Class, the Court need not determine whether the action, if tried, would present intractable management problems, "for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620; *see also* Fed. R. Civ. P. 23(b)(3)(D).

Here, the Parties have stipulated to the certification of the Settlement Class for settlement purposes only. Stip. at ¶2. Plaintiffs submit that class certification is appropriate because the four prerequisites of Rule 23(a) (numerosity, commonality, typicality, adequacy of representation) are met. *See Amchem*, 521 U.S. at 613. Also, common issues of law or fact predominate over individual issues, making the class action a superior vehicle to fairly and efficiently adjudicate the Class's claims. *See* Fed. R. Civ. P. 23(b)(3). Plaintiffs, therefore, respectfully request that the Court certify the Settlement Class using the definition agreed to in the Stipulation.

### A.    The Settlement Class Meets the Requirements under Rule 23(a).

Rule 23(a)(1) requires that the proposed class be so numerous that joinder of all members is impracticable. In the Second Circuit, "[n]umerosity is presumed for classes larger than forty members." *Pennsylvania Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir. 2014). "In securities fraud class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period." *Pearlstein v. BlackBerry Ltd.*, 2021 WL 253453, at *7 (S.D.N.Y. Jan. 26, 2021); *see also Rodriguez*, 2021 WL 9032223, at *8. Here, during the Class Period, VIH and/or Bakkt's stock was actively traded on NASDAQ and/or NYSE. ECF No. 45, ¶ 65. Thus, while Plaintiffs "do[] not know the 'exact' number of class members, [they] estimate[] that there are "thousands" of investors residing in geographically

22

disparate areas that would be included in the class, thus rendering joinder impracticable." *Rodriguez*, 2021 WL 9032223, at *8. Consequently, numerosity is satisfied.

Second, "questions of law or fact common to the class" exist. Fed. R. Civ. P. 23(a)(2). "In securities fraud cases, where putative class members have been injured by similar material misrepresentations and omissions, the commonality requirement is satisfied." *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 44 (S.D.N.Y. 2012); *see also Gordon v. Vanda Pharms. Inc.*, 2022 WL 4296092, at *7 (E.D.N.Y. Sept. 15, 2022). Here, Plaintiffs allege that Defendants engaged in conduct involving a common nucleus of operative facts by mispresenting or omitting material information artificially inflating the price of Bakkt Securities, resulting in sustained damages when the truth is revealed. ECF No. 45, ¶ 68. Other courts have found similar questions satisfy commonality. *See, e.g.*, *Rodriguez*, 2021 WL 9032223, at *8 (collecting cases).

Next, Rule 23(a)(3) requires "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "This is satisfied, where, as here, the claims of [ ] [P]laintiffs arise from the same course of conduct that gives rise to claims of the other class members, … are based on the same legal theory, and where the class members have allegedly been injured by the same course of conduct as [Plaintiffs]." *Gordon*, 2022 WL 4296092, at *7. Thus, typicality is satisfied.

Lastly, Rule 23(a)(4) requires that the interests of the class be adequately represented. First, "class counsel [must be] qualified, experienced and able to conduct the litigation" and "[s]econd, the named plaintiffs' interests must not be antagonistic to the interest of other members of the class." *Rodriguez*, 2021 WL 9032223, at *9. Plaintiffs interests do not conflict with the class "given that the [c]lass was injured by the same allegedly materially false and misleading statements as [ ] Plaintiff[s]." *Id.* Likewise, Plaintiffs retained highly experienced securities litigation firms to

23

prosecute the Action, regularly communicated with counsel, and put the class in a strong position throughout this litigation, and in negotiating the Settlement. Moreover, Co-Lead Counsel is qualified and experienced in securities class actions, and has demonstrated its ability to prosecute the Action.

> **B.    The Settlement Class Meets the Requirements of Rule 23(b).**

Rule 23(b)(3) requires proof that common issues predominate, and that a class action is the superior method of adjudication. As the Supreme Court noted, "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem*, 521 U.S. at 625. "Moreover, common issues, such as liability, may be certified even where other issues, such as damages, do not lend themselves to classwide proof." *Rodriguez*, 2021 WL 9032223, at *11. Here, "[r]esolution of [P]laintiff[s'] allegations—including questions of liability, causation, and damages—are susceptible to generalized proof and, further, such generalized inquiries predominate over any issues specific to individual class members." *Gordon*, 2022 WL 4296092, at *8; *see also Micholle v. Ophthotech Corp.*, 2022 WL 1158684, at *3 (S.D.N.Y. Mar. 14, 2022) ("Predominance is met here because the members of the Settlement Class were subject to the same alleged misrepresentations and omissions of Defendants and the claim is susceptible to common evidence and proof").

Finally, Courts have long recognized that the class action is not only a superior method, but possibly the only feasible method to fairly and efficiently adjudicate a controversy involving a significant number of purchasers of securities injured by securities law violations. *See Seijas v. Republic of Argentina,* 606 F.3d 53, 58 (2d Cir.2010) ("the class action device is frequently superior to individual actions."). Considerations in assessing superiority, include: (1) the interests of class members in individually controlling the prosecution of separate actions; (2) whether other litigation has already commenced; (3) the desirability of concentrating claims in one forum; and

(4) the difficulties likely to be encountered in the management of a class action. *Amchem*, 521 U.S. at 616. Here, there are no other parallel actions, and because many investors suffered losses too small to justify individual litigation, class adjudication is the only realistic basis for recourse. *Gordon*, 2022 WL 4296092, at *9 (citing *GSE Bonds*, 414 F. Supp. 3d at 702). Moreover, because "[t]here are likely thousands of class members nationwide . . . consolidating their claims is in the interests of efficiency and judicial economy." *Gordon*, 2022 WL 4296092, at *9; *see also In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 702 (S.D.N.Y. 2019) ("[C]oncentrating the case in one forum will help improve fairness and efficiency in adjudication of the claims of plaintiffs, who are widely dispersed."). Finally, Plaintiffs do not foresee any difficulty in effecting a class-wide settlement.

### C.    Co-Lead Counsel Satisfies Rule 23(g).

Lastly, Rule 23(g) requires the appointment of class counsel that can fairly and adequately represent the interests of the Class. Fed. R. Civ. P. 23(g)(1)(A). Here, Co-Lead Counsel spent significant effort investigating relevant facts asserted in this Action. Co-Lead Counsel is also highly experienced in securities litigation. *See* Co-Lead Counsel Decl., Ex. A & B (firm resumes). Co-Lead Counsel has extensive knowledge of the applicable law governing this Action. Finally, Co-Lead Counsel has expended significant resources in prosecuting this Action, including but not limited to the resources necessary to successfully engage in mediation. Thus, Co-Lead Counsel's extensive efforts and in-depth knowledge of the law governing this Action weigh strongly in favor of appointment under Rule 23(g).

### CONCLUSION

For the forgoing reasons, Plaintiffs respectfully request that the Court grant their motion in its entirety.

//

25

DATED: April 17, 2023                    Respectfully submitted,


                                         **POMERANTZ LLP**

                                         By: */s/ Jeremy. A. Lieberman*
                                         Jeremy A. Lieberman
                                         Jonathan D. Park
                                         600 Third Avenue, 20th Floor
                                         New York, NY 10016
                                         Telephone: (212) 661-1100
                                         Facsimile: (917) 463-1044
                                         jalieberman@pomlaw.com
                                         jpark@pomlaw.com

                                         **LEVI & KORSINSKY LLP**
                                         Adam M. Apton
                                         Devyn R. Glass
                                         55 Broadway, 4th Floor
                                         New York, New York 10006
                                         Telephone: (212) 363-7500
                                         Fax: (212) 363-7171
                                         aapton@zlk.com
                                         dglass@zlk.com

                                         *Co-Lead Counsel for Plaintiffs and the Class*

                                         **HAO LAW FIRM**
                                         **BEIJING HAO JUNBO LAW FIRM**
                                         Junbo Hao
                                         Room 3-401 No. 2 Building
                                         No. 1 Shaungliubei Street
                                         100024 Beijing
                                         People's Republic of China
                                         Telephone: +86 137-1805-2888
                                         jhao@haolaw.cn

                                         *Additional Counsel for Plaintiff Tse*
                                         *Winston Wing Kuen*

26