**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

SUZANNE POIRIER, Individually and On
Behalf of All Others Similarly Situated,

              Plaintiff,

     v.

BAKKT HOLDINGS, INC. f/k/a VPC IMPACT
ACQUISITION HOLDINGS, JOHN MARTIN,
OLIBIA STAMATOGLOU, GORDON
WATSON, KAI SCHMITZ, and KURT
SUMMERS,

              Defendants.

---

Case No. 1:22-cv-02283-EK-PK

---

**DECLARATION OF JEREMY A. LIEBERMAN AND ADAM M. APTON IN SUPPORT
OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENT AND APPROVAL OF NOTICE TO THE SETTLEMENT CLASS**

We, Jeremy A. Lieberman and Adam M. Apton, pursuant to 28 U.S.C. § 1746, declare as

follows:

1.      I, Jeremy A. Lieberman, am a member of the Bar of the State of New York, and am

admitted to appear before this Court.  I am the managing partner of the law firm of Pomerantz LLP

("Pomerantz"), counsel on behalf of the Court-appointed Co-Lead Plaintiffs Tse Winston Win

Kuen ("Kuen"), James Liner ("Liner"), and Rachna Mehrotra ("Mehrotra") (collectively,

"Plaintiffs"), and Co-Lead Counsel for the Class.[1]  I have been actively involved in all aspects of

the prosecution and resolution of the Action, am familiar with its proceedings, and have personal

---

[1] All capitalized terms used herein that are not otherwise defined have the meanings provided in the Stipulation and
Agreement of Settlement, dated as of April 12, 2023 (the "Stipulation"), which was entered into by and among
Plaintiffs and Defendants Bakkt Holdings, Inc. ("Bakkt") f/k/a VPC Impact Acquisition Holdings ("VIH"), John
Martin, Olibia Stamatoglou, Gordon Watson, Kai Schmitz, and Kurt Summers (the "Individual Defendants," with
Bakkt, "Defendants," and together with Plaintiffs, the "Parties").

knowledge of the matters set forth herein based upon my supervision and participation in all material aspects of the Action, and if called as a witness, could and would testify competently thereto.

2.    I, Adam M. Apton, am a member of the Bar of the State of New York, and am admitted to appear before this Court.  I am a partner of the law firm of Levi & Korsinsky, LLP ("Levi & Korsinsky"), counsel on behalf of Plaintiffs and Co-Lead Counsel for the Class.  I have been actively involved in all aspects of the prosecution and resolution of the Action, am familiar with its proceedings, and have personal knowledge of the matters set forth herein based upon my supervision and participation in all material aspects of the Action, and if called as a witness, could and would testify competently thereto.

3.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, we submit this declaration in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement and Approval of Notice to the Settlement Class (the "Motion").

I.    PRELIMINARY STATEMENT

4.    The proposed Settlement now before the Court provides for the resolution of all claims in the Action, and related claims, in exchange for a cash payment of $3,000,000.  As detailed herein, Plaintiffs and Co-Lead Counsel respectfully submit that the Settlement represents a very favorable result for the Settlement Class in light of the significant risks of continuing to litigate the Action.

5.    Plaintiffs and Co-Lead Counsel have vigorously litigated this case since its inception on April 21, 2022, securing the proposed Settlement in less than a year.  The Settlement was achieved only after Co-Lead Counsel, *inter alia,* as detailed herein: (i) identified alleged misrepresentations by Defendants and filed an initial complaint (ECF No. 1); (ii) conducted a thorough and wide-ranging investigation concerning the allegedly fraudulent misrepresentations

made by Defendants, which included a review and analysis of publicly available information and analysis of applicable accounting standards; (iii) consulted with an accounting expert; (iii) consulted with experts on market efficiency, loss causation, and damages; (iv) prepared and filed a detailed amended complaint (ECF No. 45); (v) conducted legal research and otherwise prepared for Defendants' anticipated motion to dismiss, which ultimately was not filed; and (vi) engaged in extensive mediation efforts overseen by Robert A. Meyer, Esq., which included the preparation of mediation briefs, a full-day mediation session, and subsequent negotiations.

6.      Plaintiffs and Co-Lead Counsel believe that the Settlement is in the best interests of the Settlement Class.  Due to their efforts, Plaintiffs and Co-Lead Counsel are well-informed about the strengths and weaknesses of the claims and defenses in the Action.  As discussed in detail below, the Settlement was achieved in the face of vigorous opposition by Defendants who would have continued to raise numerous challenging defenses.  For example, Defendants maintain serious contentions regarding Plaintiffs' allegations of scienter, falsity of the alleged misstatements, and loss causation.  Additionally, Defendants would likely argue that damages are not significant.  Issues relating to damages would likely have come down to an inherently unpredictable and hotly disputed "battle of the experts," with Defendants' experts opining, among other things, that Plaintiffs' model overstates damages and does not account for other factors that may have caused the price of Bakkt Securities to decline.  In the absence of a settlement, there is a very real risk that the Class could recover nothing or an amount significantly less than the negotiated Settlement.

7.      Further, the Settlement forecloses risks associated with attempting to collect a judgment.  As discussed further in Section VI below, Bakkt's financial condition have been and continue to be subject to volatility inherent in the crypto industry, raising concern as to whether Plaintiffs could face significant obstacles collecting a judgment if they were to succeed at trial,

appeals, and any claims process. The cryptocurrency sector—which includes Bakkt—continues to face challenges, thereby underscoring the importance of Defendants' insurance proceeds in this Action.

8.    With respect to the proposed Plan of Allocation for the Settlement proceeds, as discussed below, the proposed plan was developed with the assistance of Plaintiffs' damages expert, and provides for the distribution of the Net Settlement Fund to Settlement Class Members who submit Claim Forms that are approved for payment on a *pro rata* basis based on their losses attributable to the alleged securities law violations.

9.    Plaintiffs believe the proposed Settlement represents a victory for the Settlement Class. Therefore, Plaintiffs seek to notify Class members of the proposed Settlement so to evaluate and determine whether to exclude themselves from the Settlement Class, object to the proposed Settlement, or submit a Proof of Claim Form.

## II.    FACTUAL BACKGROUND

### A.    VIH's Acquisition of Legacy Bakkt

10.    Bakkt is the product of a Merger, or Business Combination, between VIH and Bakkt Holdings, LLC ("Legacy Bakkt"). ¶ 1.[2]  On July 31, 2020, VIH was incorporated in the Cayman Islands. ¶ 34.  On September 22, 2020, VIH consummated its initial public offering of 20,000 units, each consisting of one Class A ordinary share and one-half of one redeemable warrant (with each whole warrant entitling the holder thereof to purchase one Class A ordinary share for $11.50 per share, subject to adjustment). ¶ 35.  VIH's IPO generated gross proceeds of $200 million. *Id.*  VIH's Class A ordinary shares and warrants traded on the NASDAQ Capital Market. *Id.*

---

[2] Unless otherwise noted, "¶__" references are the Amended Complaint (ECF No. 45).

11.    VIH was a special purpose acquisition company, or "SPAC," created to engage in an acquisition of another company and bring it to the public equity markets. ¶ 2. VIH found its target acquisition in Legacy Bakkt, a digital asset marketplace where consumers were able to buy, sell, convert, spend, store, and send digital assets, *i.e.*, cryptocurrencies and non-fungible tokens. *Id.* On January 11, 2021, VIH announced that it had entered into a definitive agreement for a merger with Legacy Bakkt that would result in Bakkt becoming a publicly traded company with an enterprise value of approximately $2.1 billion. ¶ 3. On March 31, 2021, VIH filed a registration statement with the SEC on Form S-4 in connection with the Merger (the "Registration Statement"), registering 25,921,502 shares of Class A common stock (consisting of 20,737,202 Class A ordinary shares and 5,184,300 Class B ordinary shares) and 16.5 million redeemable warrants to purchase shares of Class A common stock of VIH. ¶ 4.[3] The Registration Statement was amended several times before it was declared effective on September 17, 2021. ¶¶ 52-53.

**B.    VIH Reclassifies Its Warrants as Liabilities to Conform to the SEC Warrant Statement**

12.    On May 17, 2021, after market hours, VIH disclosed that it could not timely file its quarterly report for the fiscal quarter ended March 31, 2021. ¶ 40. VIH disclosed that "the Warrants should be, and should previously have been, classified as a liability measured at fair value, with non-cash fair value adjustments recorded in earnings at each reporting period," and stated that it was working diligently to "determin[e] the extent of the SEC Statement's impact on its financial statements" and would file the quarterly report as soon as practicable. *Id.* VIH's reference to the "SEC Statement's impact" referred to a statement from the SEC dated April 12,

---

[3] The Registration Statement stated that, in connection with the Merger, VIH would change its jurisdiction of incorporation from the Cayman Islands to the State of Delaware and as a result of such domestication, the Class A and Class B ordinary shares of VIH would automatically convert, by operation of law, into newly issued shares of Class A common stock of Bakkt. ¶¶ 37-38.

2021 stating that warrants issued by most SPACs must be classified as liabilities rather than equity, with the liability measured at fair value, with changes in fair value reflected in reported earnings for each period. *Id.*

13.     On May 21, 2021, after market hours, VIH filed an amended Annual Report on Form 10-K for the year ended December 31, 2020 (the "Amended 2020 Annual Report"), restating the company's warrants as a liability instead of equity and disclosing a material weakness in internal controls over financial reporting. ¶ 41.  The Amended 2020 Annual Report stated: "we identified a material weakness in our internal control over financial reporting related to the accounting for a significant and unusual transaction related to the warrants we issued in connection with our initial public offering in September 2020." ¶ 42.  Importantly, the filing disclosed that "management concluded that our internal control over financial reporting was not effective as of December 31, 2020," which was "due solely" to the misclassification of warrants." ¶ 44.

14.     On May 24, 2021, before market hours, VIH filed its previously delayed Form 10-Q for the quarter ended March 31, 2021 (the "1Q21 Report").  ¶ 46.  The 1Q21 Report acknowledged a material weakness in VIH's internal control over financial reporting and stated once again that the internal control weakness was "due solely" to the previously disclosed warrant accounting error. ¶ 47.  The 1Q21 Report assured investors that the Company had "ensure[d] that [its] financial statements were prepared in accordance with U.S. generally accepted accounting principles" and that "the financial statements included elsewhere in this Quarterly Report present fairly, in all material respects, our financial position, results of operations and cash flows in conformity with GAAP." *Id.*

##### C.    The SEC Warns SPACs that Redeemable Shares Must Be Treated as Temporary Equity under GAAP.

15.    Like most SPACs, VIH's organizational documents provided that public stockholders could request that VIH redeem all or a portion of such holder's shares for cash if the Merger was consummated.  ¶ 175.  Under long-standing accounting rules, *i.e.*, Accounting Standards Codification ("ASC")[4] Topic 480 (specifically, ASC 480-10-S99-3A), shares of common stock featuring redemption provisions outside of the issuer's control must be classified outside of permanent equity (*i.e.*, as temporary equity).  ¶¶ 171-72.  Thus, GAAP requires SPACs with the typical redemption features in their redeemable shares—including VIH—to classify all of their redeemable shares as temporary equity and not permanent equity.  ¶ 175.

16.    The charters of most SPACs, including VIH, include a provision stating that the SPAC shall not redeem public shares that would cause the company's net tangible assets to be less than $5,000,001 following such redemptions.  ¶¶ 175, 190.  In light of such provisions, numerous SPACs classified, or proposed to classify, only a portion of their redeemable shares as temporary equity.  ¶ 176.  VIH took this approach, classifying some of its Class A ordinary shares as permanent equity rather than as temporary equity, even though each Class A ordinary share was subject to redemption at the option of the holder (and thus, not solely within the Company's control).

17.    Beginning in July 2021, the SEC sent publicly available comment letters to a number of SPAC issuers (but not VIH) concerning their accounting for redeemable equity.  ¶¶ 176-77.  In these comment letters, the SEC questioned issuers that proposed to classify a portion of their redeemable shares as permanent equity, and made clear its view that all redeemable shares must be classified outside of permanent equity, despite the $5 million net tangible asset provision

---

[4] ASC standards form part of U.S. Generally Accepted Accounting Principles ("GAAP").

that is typically present in SPAC charters.  *Id*.  Indeed, on September 16, 2021—the day before the Registration Statement became effective and VIH filed the Prospectus/Proxy Statement—the SEC bluntly informed another issuer, in a public letter, that it was "unable to agree" with the "view that the $5 million net tangible limitation" allows for a portion of "redeemable Class A ordinary shares" to be considered "permanent equity." ¶ 176(b).

18.    Despite the SEC's explicit warnings, which reiterated long-standing accounting rules, VIH continued to wrongly classify a portion of its redeemable shares as permanent equity in order to avoid reducing its net tangible assets below $5 million, in which case it would be barred from consummating the Merger.  ¶ 178.  Further, VIH assured investors that its financial statements were prepared in accordance with GAAP and denied any other weaknesses in internal controls other than what had already been disclosed relating solely to VIH's warrants.  ¶ 179.

### D.    VIH Issues the Prospectus/Proxy Statement and Consummates the Merger.

19.    On September 17, 2021, after market hours, VIH filed a Prospectus and Proxy Statement with the SEC on Form 424B3 and Form DEFM14A, respectively, and was incorporated into the Registration Statement.  ¶ 52-53. The Prospectus/Proxy Statement asked shareholders to approve the proposed Merger with Legacy Bakkt. ¶ 52.  The Registration Statement was declared effective as of 4:00 p.m. that same day.  *Id.*

20.    On October 14, 2021, at the extraordinary general meeting of its shareholders, VIH's shareholders voted to approve the previously announced merger with Legacy Bakkt.  Approximately 85.1% of the votes cast at the meeting voted to approve the merger. ¶ 58.

21.    On October 15, 2021, the merger was consummated and VIH changed its name to Bakkt Holdings, Inc.  ¶ 59.  At that time, a portion of VIH's shares were exchanged for cash through the exercise of redemption rights and the remaining shares were exchanged for newly

issued shares of Bakkt's Class A common stock. *Id.* On October 18, 2021, VIH securities were removed from NASDAQ and Bakkt's Class A common stock and warrants began trading on the NYSE under the ticker symbols "BKKT" and "BKKT.WS", respectively. *Id.*

**E.     After the Registration Statement Becomes Effective, Bakkt "Revise[s]" its Financial Information.**

22.     On October 13, 2021 (one day before the shareholder meeting to vote on the proposed Merger), after market hours, Bakkt filed a quarterly report on Form 10-Q for the quarter ended September 30, 2021 (the "3Q21 Report"). ¶ 55. The 3Q21 Report stated that:

> In connection with the preparation of the Company's financial statements as of September 30, 2021, management determined it should revise its previously reported financial statements. The Company determined, at the closing of the Company's Initial Public Offering and shares sold pursuant to the exercise of the underwriters' overallotment, it had improperly valued its Class A ordinary shares subject to possible redemption . . . . As a result, management has noted a reclassification adjustment related to temporary equity and permanent equity. This resulted in an adjustment to the initial carrying value of the Class A ordinary shares subject to possible redemption with the offset recorded to additional paid-in capital (to the extent available), accumulated deficit and Class A ordinary shares.

*Id.*

23.     Due to this "reclassification adjustment," for the year ended December 31, 2020: additional paid-in capital was non-existent instead of the previously disclosed $9,860,338; the accumulated deficit was reported as $29,250,419 compared to the previous reporting of $4,861,190; and the $5,000,009 shareholders' equity was replaced by a shareholders' deficit of $29,249,901. ¶ 56.

24.     However, the Company assured investors that the previously-disclosed material weakness was remediated as of June 30, 2021: the Company had "enhanced our processes to identify and appropriately apply applicable accounting requirements to better evaluate and understand the nuances of the complex accounting standards that apply to our condensed consolidated financial statements, including providing enhanced access to accounting literature,

research materials and documents and increased communication among our personnel and third-party professionals with whom we consult regarding complex accounting applications." ¶ 57.

**F.    Bakkt Withdraws and Restates All Previously Issued Financial Statements.**

25.    On November 22, 2021, before market hours, Bakkt filed Form 8-K with the SEC issuing a statement of Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review.  ¶ 60.  Bakkt stated that its management "re-evaluated the application of ASC 480-10-S99-3A to the accounting classification of the Class A ordinary shares and . . . identified errors in the historical financial statements of VIH" for the year ended December 31, 2020 and the quarterly periods ended March 31, 2021, June 30, 2021 and September 30, 2021 (the "Affected Period").  *Id.*

26.    Bakkt explained that "[h]istorically, a portion of the Class A Ordinary Shares was classified as permanent equity to maintain net tangible assets of at least $5,000,001 on the basis that VIH would consummate its initial business combination only if VIH had net tangible assets of at least $5,000,001."  *Id.*  In connection with the filing of the 3Q21 Report, "VIH's management determined it should revise its previously reported financial statements . . . by noting a reclassification adjustment related to temporary equity and permanent equity."  *Id.*  As set forth in the 3Q21 Report, "[t]his resulted in an adjustment to the initial carrying value of the Class A Ordinary Shares subject to possible redemption with the offset recorded to additional paid-in capital (to the extent available), accumulated deficit and Class A Ordinary Shares."  *Id.*  Despite the significant effect this had on the Company's financial statements, Bakkt explained that "VIH did not restate the historical financial statements because it deemed the adjustment to be immaterial at that time."  *Id.*

27.    However, in light of discussions between the Company's management and its independent auditor, management determined that the financial statements for the Affected Period (*i.e.,* every financial statement issued by VIH following its initial public offering) "should no longer be relied upon." *Id.* "Further, the Audit Committee, in consultation with management, determined that it is appropriate to restate certain of VIH's condensed consolidated financial statements from the Affected Period." *Id.*

28.    Then, on December 7, 2021, after market hours, Bakkt filed a Form 10-Q/A restating its quarterly financial statements for the quarters ended March 31, 2021, June 30, 2021, and September 30, 2021. ¶ 61. The Restatement showed that the Company had zero additional paid-in capital as of March 31 and June 30, 2021, that the accumulated deficit was materially larger than previously reported, and that shareholders' equity was actually an eight-figure deficit. ¶ 62. For instance, total shareholders' equity was a deficit of over $41 million as of June 30, 2021—the end of the last full quarter before the Merger. *Id.* Thus, the Amended Complaint alleges that the Restatement revealed that the Company was, or should have been, prohibited from consummating the Merger because it did not have net tangible assets of at least $5,000,001 at that time.

29.    The announcements May 17, October 13, and November 22, 2021, revealed to the market that Defendants' prior statements were false and misleading, and causing the price of Bakkt Securities to fall, injuring investors. ¶¶ 196-203. In all, when the truth was revealed, Bakkt's stock price had plummeted over 65% from its Class Period high, falling to $17.02 at the close of trading on November 22, 2021. ¶ 201. The price of Bakkt's warrants also declined significantly.

### III.    PROCEDURAL HISTORY

**A.    Commencement of the Action and Appointment of Lead Plaintiff and Lead Counsel**

30.    On April 21, 2022, this Action commenced with the filing of a class action complaint by investor Suzanne Poirier, represented by Pomerantz LLP (prior to its appointment as Co-Lead Counsel), in the United States District Court for the Eastern District of New York. ECF No. 1. The case was entitled *Poirier v. Bakkt Holdings, Inc.*, Civil No. 1:22-cv-02283-EK-PK and was assigned to United States District Judge Eric R. Komitee and United States Magistrate Judge Peggy Kuo.

31.    Pursuant to Section 21D(a)(3) of the Exchange Act, 15 U.S.C. §78u-4(a)(3)(B), as amended by the PSLRA, on June 21, 2022, members of the purported class moved for appointment as lead plaintiff and approval of their selection of lead counsel for the purported class: (i) Rachna Mehrotra (ECF No. 13); (ii) Christopher H. Sheffield (ECF No. 16); (iii) Jeffrey Fandl (ECF No. 19); (iv) Jeremy Petrus, Richard Petrus, and Bonnie Petrus (the "Petrus Family") (ECF No. 21); (v) Tse Winston Wing Kuen and James Liner (ECF No. 24); and (vi) Alessandro Pizzo and Lawrence Rutherford (ECF No. 25).

32.    Following the filing of the six lead plaintiff motions, all competing movants beside Mehrotra, Kuen, and Liner withdrew their motions. *See* ECF Nos. 29, 36, 38, and 39.

33.    On July 5, 2022, Mehrotra, Kuen, and Liner filed a stipulation to serve as Co-Lead Plaintiffs and selecting the firms of Pomerantz LLP and Levi & Korsinsky, LLP as Co-Lead Counsel for the proposed class. ECF No. 40.

34.    On August 3, 2022, J. Kuo granted the stipulation, appointing Mehrotra, Kuen, and Liner as Co-Lead Plaintiffs and approving their selection of Pomerantz LLP and Levi & Korsinsky, LLP as Co-Lead Counsel for the proposed class. ECF No. 41.

35.     On August 15, 2022, Plaintiffs and Defendants stipulated that: (1) Plaintiffs would file an amended complaint within sixty days of the Court so-ordering the stipulation; (2) Defendants would respond to such amended complaint within forty-five days of the filing of said complaint (by filing an answer or, pursuant to Paragraph III.B. of the Individual Rules and Practices of District Judge Komitee, by filing a pre-motion letter); (3) Plaintiffs would respond to any pre-motion letter within fourteen days; and (4) provided the Court permitted Defendants to file a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), Plaintiffs would file their opposition to Defendants' motion within sixty days of service of the motion and Defendants would file a reply in further support of their motion within thirty days of Plaintiffs' opposition. ECF No. 44.

36.     On August 19, 2022, J. Komitee so-ordered that stipulation, establishing a deadline of October 18, 2022 for Plaintiffs to file an amended complaint. ECF No. 45.

### B.     The Amended Complaint

37.     On October 18, 2022, Plaintiffs filed the Amended Complaint on behalf of a class consisting of all persons and entities who purchased or acquired: (a) Bakkt's publicly traded securities between March 31 2021 and November 19, 2021, both inclusive; and/or (b) Bakkt's publicly traded securities pursuant and/or traceable to the Registration Statement issued in connection with the business combination between VIH and Legacy Bakkt. ECF No. 45. The Amended Complaint asserts Defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, SEC Rule 10b-5 promulgated thereunder, and Sections 11 and 15 of the Securities Act of 1933. The Amended Complaint alleges that Defendants violated the federal securities laws by issuing materially false financial statements, making materially false or misleading statements, or omitting material information concerning the Company's accounting for

13

its Class A ordinary shares subject to redemption and concerning the Company's internal controls over financial reporting.

38.    The Amended Complaint was the result of significant effort and investigation conducted by Plaintiffs' Counsel which included, among other things, the review and analysis of: (i) documents filed publicly by the Company with the SEC; (ii) press releases, news articles, and other public statements issued by or concerning the Company and the Defendants; (iii) research reports issued by financial analysts concerning the Company; (iv) review and analysis of applicable accounting standards and literature concerning such standards, including guidance from the SEC; (v) consultation with an accounting expert; and (vi) consultation with damages experts.

## IV.    SETTLEMENT NEGOTIATIONS

39.    After Plaintiffs filed the Amended Complaint, the Parties discussed the possibility of mediation.  On November 22, 2022, ten days before Defendants' December 2 deadline to respond to the Amended Complaint, the Parties requested that the Court adjourn Defendants' response deadline so that the Parties could schedule mediation.  ECF No. 46.  On December 2, 2022, the Court granted the Parties' request and as stipulated by the Parties, extending the deadlines to file pre-motion letters to December 23, 2022 and January 13, 2022.  ECF No. 47.

40.    The Parties then retained Robert A. Meyer, Esq., with JAMS ADR, a well-respected and highly experienced mediator, to assist them in negotiating a potential resolution of the Action, and to oversee the mediation scheduled for February 28, 2022.

41.    On December 20, 2022, the Parties informed the Court of the scheduled mediation, and requested to adjourn the deadlines for pre-motion letters.  ECF No. 49.

42.    On December 21, 2022, the Court granted the Parties' stipulation, extending the deadlines to file pre-motion letters to March 21, 2023 and April 4, 2023, and ordered the Parties to provide an update regarding the outcome of mediation no later than March 2, 2023. The Court's

14

December 21, 2022 Order further provided that should the Action proceed and Defendants are permitted to file a motion to dismiss, Plaintiffs would file their opposition within sixty days of the filing of said motion, and Defendants would file a reply in further support of such motion within thirty days of Plaintiffs' opposition.

43.    On February 27, 2023, in advance of the mediation, the Parties exchanged mediation statements, which addressed issues of both liability and damages and discussed the Parties' respective views of the claims and alleged damages.

44.    On February 28, 2023, the Parties participated in a full-day mediation session before Mr. Meyer.  While the mediation was initially unsuccessful, the Parties continued to engage in settlement negotiations thereafter, as the Parties explained to the Court on March 2, 2023.  ECF No. 50.  The Parties stated that they would update the Court again by March 9, 2023 regarding the status of their negotiations.  *Id.*

45.    On March 8, 2023, Plaintiffs and Defendants each agreed to settle the Action for $3 million in response to a "mediator's proposal" provided by Mr. Meyer.

46.    On March 9, 2023, the Parties informed the Court of the agreed upon settlement-in-principle and provided the Parties' intention to complete a Stipulation of Settlement by April 10, 2023, and for Plaintiffs to file the present motion that same day.  ECF No. 51.  In light of the settlement-in-principle, the Parties jointly requested that the Court adjourn indefinitely the deadlines for pre-motion letters, and otherwise hold in abeyance any obligation on the part of Defendants to respond to the Amended Complaint.  *Id.*

47.    On March 14, 2023, the Court granted the Parties' request in part, ordering Plaintiffs to file the present motion by April 10, 2023 and should the parties fail to finalize the

Stipulation of Settlement by such date, the deadlines to file pre-motion letters were set to April 20, 2023 and May 4, 2023.

48.    That same day, the Parties executed a memorandum of understanding, agreeing to settle the Action for $3 million subject to the execution of a formal, final settlement agreement.

49.    The Parties then negotiated the terms of the Stipulation of Settlement, which the Parties executed on April 12, 2023.

50.    As provided for in the Stipulation, in exchange for payment of the Settlement Amount, the Action will be dismissed with prejudice and Plaintiffs and the Settlement Class will forever release all Released Plaintiffs' Claims against the Defendants' Releasees.  Released Plaintiffs' Claims are all claims that Plaintiffs or any other member of the Settlement Class (as defined below) (i) asserted in any of the complaints filed in the Action; or (ii) could have asserted in the Action or in any other action or in any other forum that arise out of the allegations in the Amended, including all claims relating to or arising from purchase or acquisition of Bakkt securities: (a) during the Class Period; and/or (b) pursuant and/or traceable to Bakkt's Registration Statement issued in connection with the Business Combination. *See* Stipulation at ¶ 1(mm).  Also, upon the Effective Date of the Settlement, Defendants will forever release all Released Defendants' Claims against the Plaintiffs' Releasees.  Released Defendants' Claims are all claims related to the institution, prosecution, or settlement of the claims.  *See* Stipulation at ¶ 1(ll).

## V.    PLAINTIFFS' PROPOSAL TO NOTIFY MEMBERS OF THE PROPOSED SETTLEMENT CLASS OF THE PROPOSED SETTLEMENT

51.    Plaintiffs have retained A.B. Data, Ltd. ("A.B. Data" or the "Claims Administrator") as the proposed Claims Administrator to supervise and administer the notice procedure as well as the processing of claims.  Plaintiffs retained A.B. Data only after requesting proposals from four reputable and experienced claims administrators in the field of class action

securities litigation administrations. Counsel for Plaintiffs reviewed the proposals received in response and selected A.B. Data to serve as claims administrator subject to court approval. If the Court so approves, Plaintiffs will instruct the Claims Administrator to disseminate copies of the Postcard Notice by mail, to publish the Summary Notice, and to post the Notice and Claim Form on the Settlement website.  The accompanying declaration from A.B. Data further explains its procedures for completing the notice program, if appointed as the Claims Administrator.

52.    The Postcard Notice, attached as Exhibit A-4 to the Stipulation, will provide potential Class Members with information about the terms of the Settlement and contains, among other things: (i) a description of the Action and the Settlement; (ii) the terms of the proposed Plan of Allocation; (iii) an explanation of Class Members' right to participate in the Settlement; (iv) an explanation of Class Members' rights to object to the Settlement, the Plan of Allocation, and/or the fee and expense motion, or exclude themselves from the Settlement Class; and (v) the manner for submitting a Claim Form in order to be eligible for a payment from the net proceeds of the Settlement.  The Postcard Notice also informs Class Members of Lead Counsel's intention to apply for an award of attorneys' fees in an amount not to exceed one-third of the Settlement Amount, plus accrued interest, and for payment of litigation expenses in an amount not to exceed $80,000, plus accrued interest.

53.    If the [Proposed] Preliminary Approval Order (attached to the stipulation as Exhibit A) is entered in the form submitted herewith, the Claims Administrator will commence mailing the Postcard Notice, within twenty (20) calendar days after the Court signs the [Proposed] Preliminary Approval Order (the "Notice Date"), by first-class mail to all Settlement Class Members who can be identified with reasonable effort, and will cause the Notice and Claim Form to be posted on the Settlement website at www.BakktSecuritiesSettlement.com.  In addition, not

17

later than ten (10) calendar days after the Notice Date, the Claims Administrator shall cause the Summary Notice to be published once in *Investor's Business Daily* and once over a national newswire service.

54.     The [Proposed] Preliminary Approval Order states that Bakkt shall provide, or cause to be provided, to Co-Lead Counsel, or the Claims Administrator, within fifteen (15) business days after the Court enters the [Proposed] Preliminary Approval Order, at no cost to the Settlement Fund, a list, in electronic form, of record holders of Bakkt Securities during the Class Period obtained from Bakkt's present or former transfer agent (consisting of names and addresses, as well as e-mail addresses if available), to the extent that such information is reasonably available.

55.     Further, the [Proposed] Preliminary Approval Order provides that nominees who purchased or otherwise acquired Bakkt Securities for beneficial owners who are Settlement Class Members shall send copies of the Notice Packet to such Class Members or provide a list of such Class Members, with contact information, to the Claims Administrator, which will then send copies of the Notice Packet to such Class Members.

56.     Plaintiffs and Co-Lead Counsel believe that the proposed notice procedure, which is common in securities class actions, meets the requirements of Federal Rule of Civil Procedure 23 and due process, provides the best notice practicable under the circumstances, and constitutes due and sufficient notice to all persons or entities entitled thereto.

## VI.     RISKS FACED BY PLAINTIFFS IN THE ACTION

57.     The proposed Settlement eliminates significant risks posed by continuing litigation, including the potential risk that the Settlement Class would recover nothing or an amount significantly less than the $3 million negotiated here, and the risks presented by Bakkt's vulnerability to the crypto industry.  Further, while Plaintiffs believe that the claims asserted against Defendants are meritorious, they recognize that there are significant hurdles to overcome

to establish falsity and materiality of the alleged misstatements and that Defendants acted with scienter.  Plaintiffs are faced with considerable risks and obstacles to achieving a greater recovery, were the case to continue.  Plaintiffs and Co-Lead Counsel carefully considered these challenges during the months leading up to mediation and were mindful of such risks during settlement discussions with Defendants.  In addition, even if Plaintiffs were able to overcome the risks to establishing falsity and scienter, they faced very serious risks in proving loss causation.

### A.    Risks Related to Bakkt's Financial Condition

58.    In addition to the numerous litigation risks discussed below, Bakkt's financial condition is subject to heightened volatility caused by its role within the cryptocurrency industry. As of the end of 2021, Bakkt had $391.4 million of cash and cash equivalents.[5]  By the end of 2022, that figure declined to $98.3 million, and the Company incurred a net loss of over $1.9 billion for 2022.[6]  Bakkt's stock price closed at $1.72 per share on March 31, 2023 compared to $17.02 per share at the end of the Class Period. Moreover, applicable insurance coverage is limited and would have continued to be depleted by defense costs if Plaintiffs continued to prosecute the Action.

59.    On February 13, 2023, approximately two weeks before the mediation, Bakkt announced its plan to discontinue its two-year-old consumer-facing app as of March 16, 2023. Further, on March 9, 2023, Bakkt announced restructuring plans, which are expected to result in an approximately 40% decline in the company's workforce in 2023.[7]

---

[5] Bakkt Holdings, Inc., Annual Report for year ending December 31, 2022 (Form 10-K), filed Mar. 24, 2023, at 84 (available at https://www.sec.gov/ix?doc=/Archives/edgar/data/1820302/000182030223000016/bakkt-20221231.htm).

[6] *Id.* at 83, 89.

[7] Bakkt Holdings, Inc., Fourth Quarter and Full Year 2022 Results (Exhibit 99.1) at 2, filed Mar. 9, 2023 (available at https://www.sec.gov/Archives/edgar/data/1820302/000182030223000006/exhibit991pressrelease_4.htm) (last visited on Apr. 6, 2023).

B.      **Risks Concerning Liability**

1.      **Risks Concerning Scienter**

60.     If the case were to continue, Defendants would strenuously maintain that they did not act with scienter, which is generally the most difficult element of a securities fraud claim for a plaintiff to plead or prove.  In this case, Defendants would likely raise numerous scienter arguments that could pose very significant hurdles to pleading and proving that they acted with an intent to commit securities fraud or with severe recklessness.

61.     Defendants would likely take the position that Bakkt's decision to classify a portion its Class A ordinary shares as permanent equity was a reasonable application of accounting standards that require subjective determinations.  In support of this, Defendants would likely argue that the same decision made by numerous other SPACs at the time.  Further, Defendants would certainly argue that the Company's accounting for the Company's Class A ordinary shares was made in reliance on the advice of the Company's auditors, which Defendants would argue precludes any inference (let alone proof) or fraudulent intent or extreme recklessness.  With respect to the SEC comment letters issued to other registrants, Defendants would likely argue that these letters represented "evolving positions" by SEC staff (as the Company stated on October 13, 2021) and that, because Bakkt did not receive such a letter and that there is no allegation that Defendants were aware of the comment letters, they do not contribute to establishing scienter.  Further, Defendants would likely argue that, after further conversations with the Company's independent auditor, they promptly disclosed that Bakkt would revise its accounting treatment for the Class A ordinary shares, undermining any inference of scienter.

62.     In sum, Defendants would likely argue that they genuinely believed Bakkt properly applied accounting standards to the Class A ordinary shares and that, once they learned of the inaccuracies, Bakkt withdrew and restated all previously issued financials.

20

63.     For all these reasons, there was a very significant risk that the Court, at the pleading stage or on summary judgment, or a jury at trial, could conclude that Defendants did not act with scienter.

## 2.    Risks in Proving Material Misstatements.

64.     Defendants would likely argue in a motion to dismiss and/or at summary judgment that the alleged misstatements or omissions concerning the Company's accounting for the Class A ordinary shares and the Company's internal controls over financial reporting were not materially false and misleading.

65.     First, Defendants would likely argue that Bakkt disclosed that it was treating a portion of its Class A ordinary shares as permanent equity and thus did not make any materially false or misleading statements.

66.     Second, Defendants would likely argue that the decision as to whether to classify a portion of the Class A ordinary shares as permanent equity constituted a subjective and reasonable application of accounting standards and must be analyzed as a statement of opinion or belief, rather than a statement of fact, and that under applicable case law, in particular *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 186 (2015), Plaintiffs cannot establish falsity. More specifically, Defendants would certainly argue that it is not sufficient to show that the "belief turned out to be wrong," *Omnicare*, 575 U.S. at 186, or even that the opinion or belief was "unreasonable, irrational, [or] excessively optimistic." *In re Aratana Therapeutics Inc. Sec. Litig.*, 315 F. Supp. 3d 737, 754 (S.D.N.Y. 2018) (internal citation omitted). Rather, Defendants would argue that Plaintiffs must, but cannot, establish either that (i) Defendants did not subjectively belief that Bakkt was properly accounting for its Class A ordinary shares, (ii) that there was a false statement of fact "embedded" in Defendants' statements of opinion or belief, or (iii) that Defendants "omit[ted] material facts about [their] inquiry into or knowledge concerning

21

[the] statement[s] of opinion[] . . . [that would] conflict with what a reasonable investor would take from the statement itself." *Omnicare*, 575 U.S. at 189.

67. For these reasons, Plaintiffs faced a substantial risk that the Court or a jury would have concluded that the alleged misstatements were not materially false or misleading.

### C. Risks Related to Loss Causation and Damages

68. Even if Plaintiffs overcame the above risks and successfully established liability, Defendants would likely argue that there are no recoverable damages or that damages are minimal.

69. Plaintiffs' consulting damages expert has estimated maximum aggregate damages of approximately $80 million, not accounting for the disaggregation of inactionable (or statistically non-significant) price movements.

70. Defendants would of course argue that damages are much less. Depending on the regression models used by the parties' competing experts, some or all of the corrective disclosures on May 17, October 13, and November 22, 2021 resulted in statistically insignificant stock price declines. This means that Defendants would have argued that the declines on those days were not recoverable because they were caused by non-fraud related market movements as opposed to the alleged fraud. Thus, if Plaintiffs were precluded from recovering damages caused by statistically insignificant declines, aggregate damages would have dropped to below $5 million. Thus, Plaintiffs' ability to recover damages in this action rested largely on whether and to what extent they could prove economic loss in connection with alleged corrective disclosures.

71. Separate and apart from the statistical significance of the declines, Defendants would have also argued that the corrective disclosures were incapable of supporting any theory of loss causation. In particular, Defendants would have argued that Bakkt's November 22, 2021 announcement concerning its restatement of financial statements did not reveal new information

22

to the market, given that the company had already announced on October 13, 2021 that its redeemable Class A ordinary shares were temporary equity.

72. In addition, Defendants would likely argue, through their own expert testimony, that Plaintiffs significantly underestimate the impact of non-fraud related information released on the alleged corrective disclosure dates. For instance, Defendants would likely argue that Bakkt Securities, like securities of other issuers in the cryptocurrency sector, were prone to significant movements with seemingly little provocation, and that this volatility precludes Plaintiffs from establishing that declines in the price of Bakkt Securities following the alleged corrective disclosures are connected to the alleged misstatements. As an example, the Amended Complaint alleges that Bakkt's stock declined 13.69% in response to the alleged November 22, 2021 corrective disclosure. Defendants would argue, however, that the price of Bakkt stock had *increased* 13.79% the previous trading day (November 19, 2021) and that this increase cannot be tied to any new information, indicating that the November 22, 2021 price decline cannot be tied to Defendants' alleged misstatements. The volatility in Bakkt's stock price likely would have been used by Defendants' experts to argue that the market for Bakkt's securities was not "efficient" and, therefore, Plaintiffs would not have been able to take advantage of a presumption of "reliance" under *Basic, Inc. v. Levinson*, 485 U.S. 224 (1988).

73. Plaintiffs also faced risks with respect to proving damages in connection with their Section 11 claims. While arguably easier to prove at trial because Section 11 does not require proof of scienter, damages under Section 11 are only recoverable when the trading price of the security is below the price at which the security was initially sold to the public. In this case, Bakkt's stock was trading well-above the initial public offering price of $10 per share for much of the relevant period. Bakkt's stock price declined below $10 per share only at or around the time of the PIPE

offering on December 15, 2021, meaning that Plaintiffs faced traceability issues once damages became recoverable. Thus, even though the Section 11 claims presented a stronger liability case for Plaintiffs, they faced significant obstacles recovering damages on those claims.

74.     Of course, even a reduced damages estimate assumes liability proved, which, as explained above, is far from certain.  Indeed, to recover any damages at trial, Plaintiffs would have to prevail at many stages in the litigation—namely, a motion to dismiss, a motion for summary judgment, class certification, and trial—and, even if Plaintiffs prevailed at those stages, appeals would likely follow.  At each of these stages, there would be significant risks attendant to the continued prosecution of the Action, and there is no guarantee that further litigation would have resulted in a higher recovery, or any recovery at all.

## VII.    THE PLAN OF ALLOCATION

75.     Pursuant to the [Proposed] Preliminary Approval Order, and as set forth in the Notice (attached to the Stipulation as Exhibit A-1), all Class Members who wish to participate in the distribution of the Net Settlement Fund must submit a valid Claim Form, including all required information, that is postmarked no later than 90 days after the Notice Date.  As provided in the Notice, after deduction of Court-awarded attorneys' fees and expenses, Notice and Administration Costs, and Taxes and Tax Expenses, the balance of the Settlement Fund will be distributed according to the Plan of Allocation, if approved by the Court.

76.     The proposed Plan of Allocation, which is set forth in full in the Notice (Stipulation, Exhibit A-1 at 11), was designed to achieve an equitable and rational distribution of the Net Settlement Fund, but it is not a damages analysis that would be submitted at trial.  Co-Lead Counsel developed the Plan of Allocation in close consultation with Plaintiffs' consulting damages expert and believes that the plan provides a fair and reasonable method for equitably distributing the Net Settlement Fund among Authorized Claimants.

77. In developing the Plan of Allocation, Plaintiffs' consulting damages expert calculated, with respect to the Exchange Act claims, the estimated amount of artificial inflation in the prices of Bakkt Securities that allegedly was proximately caused by Defendants' false and misleading statements and omissions. In calculating the estimated artificial inflation allegedly caused by those misrepresentations and omissions, Plaintiffs' expert considered price changes in Bakkt Securities in reaction to public disclosures that allegedly corrected the respective alleged misrepresentations and omissions.

78. Under the Plan of Allocation, a "Recognized Loss Amount" will be calculated for each purchase of Bakkt Securities during the Class Period consistent with the measure of damages under the Exchange Act. Purchases of Bakkt Securities pursuant or traceable to the Registration Statement will be entitled to a Recognized Claim that coincides with the statutory damages formula under the Securities Act. Authorized Claimants with both Recognized Losses under the Exchange Act and Securities Act will be entitled to the greater of the Recognized Loss Amount calculation.

79. The Claims Administrator, under Lead Counsel's direction, will determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's total Recognized Claim compared to the aggregate Recognized Claims of all Authorized Claimants. Calculation of Recognized Claims will depend upon several factors, including when the Authorized Claimant purchased Bakkt Securities during the Class Period, whether the Authorized Claimant purchased Bakkt Securities pursuant to the Registration Statement, and whether the securities were sold and, if so, when.

80. Once the Claims Administrator has processed all submitted claims, notified claimants of deficiencies or ineligibility, processed responses, and made claim determinations, the Claims Administrator will distribute the Net Settlement Fund. After an initial distribution of the

Net Settlement Fund, if there is any balance remaining in the Net Settlement Fund after six (6) months from the date of initial distribution, Lead Counsel will, if cost effective, re-distribute the balance among Authorized Claimants who have cashed their checks.  These re-distributions will be repeated until the balance in the Net Settlement Fund is no longer feasible to distribute.  Any balance that still remains in the Net Settlement Fund after re-distribution(s), which is not cost effective to reallocate, after payment of any outstanding Notice and Administration Costs or Taxes and Tax Expenses, will be contributed to a 501(c)(3) non-profit organization(s) unaffiliated with the Parties or their counsel, and approved by the Court.

81. In sum, the proposed Plan of Allocation, developed in consultation with Plaintiffs' consulting damages expert, is designed to fairly and rationally allocate the Net Settlement Fund among Authorized Claimants.  Accordingly, Plaintiffs and Co-Lead Counsel believe the proposed Plan of Allocation is fair, reasonable, and adequate, and in the best interest of the Settlement Class.

## VIII.   CO-LEAD COUNSEL

82. Levi & Korsinsky and Pomerantz are nationally recognized securities litigation firms. Their attorneys are highly experienced in this area of the law and have proven themselves time and again to be successful investor advocates. Their knowledge and experience benefited Plaintiffs in this case, as evidenced by the recovery they achieved.

83. Additional information about each firm's experience is contained within the attached firm resumes:

> **Exhibit A** – Attached hereto as Exhibit A is a true and correct copy of Levi & Korsinsky's firm resume; and
>
> **Exhibit B** – Attached hereto as Exhibit B is a true and correct copy of Pomerantz's firm resume.

We declare under penalty of perjury that the foregoing is true and correct.  Executed this 17th day of April, 2023.


*/s/ Adam M. Apton*                                      */s/ Jeremy A. Lieberman*
Adam M. Apton                                             Jeremy A. Lieberman

# EXHIBIT "A"



**RESUME**

# LEVI&KORSINSKY LLP

### NEW YORK

55 Broadway
4th Floor, Suite 427
New York, NY 10006
T. 212-363-7500
F. 212-363-7171

### WASHINGTON, D.C.

1101 30th Street NW
Suite 115
Washington, D.C. 20007
T. 202-524-4290
F. 202-333-2121

### CONNECTICUT

1111 Summer Street
Suite 401
Stamford, CT 06905
T. 203-992-4523

### CALIFORNIA

**Los Angeles**
445 South Figueroa Street
31st Floor
Los Angeles, CA 90071
T. 213-985-7290

**San Francisco**
1160 Battery Street East
Suite 100 - #3425
San Francisco, CA 94111
T. 415-373-1671
F. 415-484-1294

 Levi&Korsinsky LLP

 MergerAlerts

www.zlk.com

# CONTENTS

## About the Firm

## Practice Areas

Securities Fraud Class Actions
Derivative, Corporate Governance & Executive Compensation
Mergers & Acquisitions
Consumer Litigation

## Our Attorneys

| | | | |
|---|---|---|---|
| Managing Partners | EDUARD KORSINSKY JOSEPH E. LEVI | | |
| Partners | NICHOLAS I. PORRITT DONALD J. ENRIGHT SHANNON L. HOPKINS GREGORY M. NESPOLE | DANIEL TEPPER ELIZABETH K. TRIPODI ADAM M. APTON MARK S. REICH | GREGORY M. POTREPKA |
| Counsel | ANDREW E. LENCYK | | |
| Associates | RACHEL BERGER JORDAN A. CAFRITZ MORGAN EMBLETON NOAH GEMMA DEYVN R. GLASS GARY ISHIMOTO DAVID C. JAYNES | ALEXANDER KROT NICHOLAS LANGE COURTNEY E. MACCARONE ADAM C. MCCALL AMANDA MILLER MELISSA MULLER CINAR ONEY | BRIAN STEWART CORREY A. SUK COLE VON RICHTHOFEN MAX WEISS DANIEL WEISS |
| Law Clerks | AARON PARNAS | | |
| Staff Attorneys | KATHY AMES-VALDIVIESO KAROLINA CAMPBELL CHRISTINA FUHRMAN | RUBEN MARQUEZ | |

2   LEVI&KORSINSKY LLP

# ABOUT THE FIRM

Levi & Korsinsky, LLP is a national law firm with decades of combined experience litigating complex securities, class, and consumer actions in state and federal courts throughout the country. Our main office is located in New York City and we also maintain offices in Connecticut, California, and Washington, D.C.

We represent the interests of aggrieved shareholders in class action and derivative litigation through the vigorous prosecution of corporations that have committed securities fraud and boards of directors who have breached their fiduciary duties. We have served as Lead and Co-Lead Counsel in many precedent–setting litigations, recovered hundreds of millions of dollars for shareholders via securities fraud lawsuits, and obtained fair value, multi-billion-dollar settlements in merger transactions.

We also represent clients in high-stakes consumer class actions against some of the largest corporations in America. Our legal team has a long and successful track record of litigating high-stakes, resource-intensive cases and consistently achieving results for our clients.

Our attorneys are highly skilled and experienced in the field of securities class action litigation. They bring a vast breadth of knowledge and skill to the table and, as a result, are frequently appointed Lead Counsel in complex shareholder and consumer litigations in various jurisdictions. We are able to allocate substantial resources to each case, reviewing public documents, interviewing witnesses, and consulting with experts concerning issues particular to each case. Our attorneys are supported by exceptionally qualified professionals including financial experts, investigators, and administrative staff, as well as cutting-edge technology and e-discovery systems. Consequently, we are able to quickly mobilize and produce excellent litigation results.  Our ability to try cases, and win them, results in substantially better recoveries than our peers.

We do not shy away from uphill battles – indeed, we routinely take on complex and challenging cases, and we prosecute them with integrity, determination, and professionalism.

       

## PRACTICE AREAS

## Securities Class Actions

Over the last four years, Levi & Korsinsky has been lead, or co-lead counsel in 35 separate settlements that have resulted in nearly $200 million in recoveries for shareholders. During that time, Levi & Korsinsky has consistently ranked in the Top 10 in terms of number of settlements achieved for shareholders each year, according to reports published by ISS. In Lex Machina's Securities Litigation Report, Levi & Korsinsky ranked as one of the Top 5 Securities Firm for the period from 2018 to 2020. Law360 dubbed the Firm one of the "busiest securities firms" in what is "on track to be one of the busiest years for federal securities litigation" in 2018. In 2019, Lawdragon Magazine ranked multiple members of Levi & Korsinsky among the 500 Leading Plaintiff Financial Lawyers in America. Our firm has been appointed Lead Counsel in a significant number of class actions filed in both federal and state courts across the country.

In **In re Tesla Inc. Securities Litigation**, Case No. 18-cv-4865-EMC (N.D. Cal.), the firm represents a certified class of Tesla investors who sustained damages when Elon Musk tweeted "Am considering taking Tesla private at $420. Funding secured," on August 7, 2018. In 2023, after more than four years of litigation, our attorneys went to trial against Mr. Musk, Tesla, and its board of directors in the U.S. District Court for the Northern District of California. Trials in federal securities fraud lawsuits are exceedingly rare due to the risks inherent in high-stakes complex jury trials. We accepted these risks out of a commitment to our clients, the class, and our firm belief that investors deserved a full 100% recovery. The firm continues to represent the class in post-trial proceedings and remains committed to securing a class recovery.

In **In re U.S. Steel Consolidated Cases**, Case No. 17-559-CB (W.D. Pa.), the firm recovered $40 million cash on behalf of purchasers of securities of United States Steel Corporation. Plaintiffs in the action alleged that U. S. Steel and its executive officers made false and misleading statements throughout the class period regarding the company's Reliability Centered Maintenance program and U. S. Steel's capability to meet demand for steel. During the litigation, Levi & Korsinsky defeated two motions to dismiss, and successfully moved for class certification.

LEVI&KORSINSKY LLP

In two related actions, **In re Nutanix, Inc. Securities Litigation**, Case No. 3:19-cv-01651-WHO (the "Stock Case") and **John P. Norton, on Behalf of the Norton Family Living Trust UAD 11/15/2002 v. Nutanix, Inc., et. al.**, Case No. 3:19-cv-04080-WHO (the "Options Case") Levi & Korsinsky achieved a settlement providing for the payment of $71 million to eligible class members. Lead Plaintiff of the Stock Case, California Ironworkers Field Pension Trust, and Lead Plaintiff of the Options Case, John P. Norton, alleged violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 based on false and misleading misstatements that the company made that allegedly concealed from shareholders its rapidly declining sales pipeline, revenue, and billings.

As Lead Counsel in **In re Avon Products Inc. Securities Litigation**, Case No. 19-cv-1420-MKV (S.D.N.Y.), having been commenced in the U.S. District Court for the Southern District of New York, the Firm achieved a $14.5 million cash settlement to successfully end claims alleged by a class of investors that the beauty company loosened its recruiting standards in its critical market in Brazil, eventually causing the company's stock price to crater. The case raised important issues concerning the use of confidential witnesses located abroad in support of scienter allegations and the scope of the attorney work product doctrine with respect to what discovery could be sought of confidential sources who are located in foreign countries.

In **Rougier v. Applied Optoelectronics, Inc.**, Case No. 17-cv-2399 (S.D. Tex.), the Firm served as sole Lead Counsel, prevailed against Defendants' Motion to Dismiss, and achieved class certification before the Parties reached a settlement. The Court granted final approval of a $15.5 million settlement on November 24, 2020.

> " "Plaintiffs' selected Class Counsel, the law firm of Levi & Korsinsky, LLP, has demonstrated the zeal and competence required to adequately represent the interests of the Class. The attorneys at Levi & Korsinsky have experience in securities and class actions issues and have been appointed lead counsel in a significant number of securities class actions across the country."
>
> *The Honorable Christina Bryan in Rougier v. Applied Optoelectronics, Inc., No. 4:17-CV-02399 (S.D. Tex. Nov. 13, 2019)*

5  LEVI&KORSINSKYLLP

In **In Re Helios and Matheson Analytics, Inc. Sec. Litig.**, Case No. 18-cv-6965-JGK (S.D.N.Y.), the Firm served as sole Lead Counsel. Although the company had filed a voluntary Bankruptcy petition for liquidation and had numerous creditors (including private parties and various state and federal regulatory agencies), the Firm was able to reach a settlement. The settlement was obtained at a time when a motion to dismiss filed by the defendants was still pending and a risk to the Class. In its role as Lead Counsel, the Firm achieved a settlement of $8.25 million on behalf of the class. The Court granted final approval of the settlement on May 13, 2021.

In **In re Restoration Robotics, Inc. Sec. Litig.**, Case No. 18-cv-03712-EJD (N.D. Cal.), the Firm was sole Lead Counsel and achieved a settlement of $4,175,000 for shareholders.

In **Kirkland, et al. v. WideOpenWest, Inc., et al.**, Index No. 653248/2018 (N.Y. Sup.) the Firm was Co-Lead Counsel and achieved a settlement of $7,025,000 for shareholders.

 "I find the firm to be well-qualified to serve as Lead Counsel."
*The Honorable Andrew L. Carter, Jr. In Snyder v. Baozun Inc., No. 1:19-CV-11290 (S.D.N.Y. Sept. 8, 2020)*

In **Stein v. U.S. Xpress Enterprises, Inc., et al.**, Case No. 1:19-cv-98-TRM-CHS (E.D. Tenn.), the Firm is Co-Lead Counsel representing a certified class of USX investors and has achieved the preliminary approval of a settlement. The settlement provides for the payment of $13 million to eligible class members.   Lead plaintiff Deirdre Terry alleged violations of §§ 11 and 15 of the Securities Act of 1933 based on false and misleading misstatements that the company made that allegedly concealed from shareholders facts relating to driver retention and the harm the U.S. Xpress was suffering from its inability to retain drivers.

We have also been appointed Lead or Co-Lead Counsel in the following securities class actions:

· **Sean Ryan v. FIGS, Inc. et al.**, 2:22-cv-07939-ODW (C.D. Cal. February 14, 2023)
· **Schoen v. Eiger Biopharmaceuticals, Inc., et al.**, 3:22-cv-6985-RS (N.D. Cal. February 3, 2023)
· **Jamia Fernandes v. Centessa Pharmaceuticals plc, et al.**, 1:22-cv-08805-GHW-SLC (S.D.N.Y. December 12, 2022)
· **Gilbert v. Azure Power Global Limited, et al.**, 1:22-cv-07432-GHW (S.D.N.Y. December 8, 2022
· **Pugley v. Fulgent Genetics, Inc. et al.**, 2:22-cv-06764-CAS-KS (C.D. Cal. November 30, 2022)
· **Michalski v. Weber Inc., et al.**, 1:21-cv-03966-EEB (N.D. Ill. November 29, 2022)
· **Edge v. Tupperware Brands Corporation, et al.**, 6:22-cv-1518-RBD-LHP (M.D. Fla. September 16, 2022)
· **In re Nano-X Imaging Ltd. Securities Litigation**, 1:20-cv-04355-WFK (E.D.N.Y. August 30, 2022)
· **Patterson v. Cabaletta Bio, Inc., et al.**, 2:22-cv-00737-JMY (E.D. Pa. August 10, 2022)
· **Rose v. Butterfly Network, Inc., et al.**, 2:22-cv-00854-EP-JBC (D.N.J. August 8, 2022)
· **Winter v. Stronghold Digital Mining, Inc., et al.**, 1:22-cv-03088-RA (S.D.N.Y. August 4, 2022)
· **Poirer v. Bakkt Holdings, Inc.**, 1:22-cv-02283-EK-PK (E.D.N.Y. August 3, 2022)
 **In re Meta Materials Inc. Securities Litigation**, 1:21-cv-07203-CBA-JRC (E.D.N.Y. July 15, 2022)
· **Deputy v. Akebia Therapeutics, Inc. et al.**, 1:22-cv-01411-AMD-VMS (E.D.N.Y. June 28, 2022)

 In appointing the Firm Lead Counsel, the Honorable Analisa Torres noted our "extensive experience" in securities litigation.

*White Pine Invs. v. CVR Ref., LP, No. 20 CIV. 2863 (S.D.N.Y. Jan. 5, 2021)*

· **In re Grab Holdings Limited Securities Litigation**, 1:22-cv-02189-VM (S.D.N.Y. June 7, 2022)
· **Jiang v. Bluecity Holdings Limited et al.**, 1:21-cv-04044-FB-CLP (E.D.N.Y. December 22, 2021)
· **In re AppHarvest Securities Litigation**, 1:21-cv-07985-LJL (S.D.N.Y. December 13, 2021)
· **In re Coinbase Global, Inc. Securities Litigation**, 3:21-cv-05634-VC (N.D. Cal. November 5, 2021)
· **Miller v. Rekor Systems, Inc. et al.**, 1:21-cv-01604-GLR (D. Md. September 16, 2021)
· **John P. Norton, On Behalf Of The Norton Family Living Trust UAD 11/15/2002 V. Nutanix, Inc. Et Al**, 3:21-cv-04080-WHO (N.D. Cal. September 8, 2021) · **The Daniels Family 2001 Revocable Trust v. Las Vegas Sands Corp., et al.**, 1:20-cv-08062-JMF (D. Nev. Jan. 5, 2021)
 · **Zaker v. Ebang International Holdings Inc. et al.**, 1:21-cv-03060-KPF (S.D.N.Y. July 21, 2021)
· **Valdes v. Kandi Technologies Group, Inc. et al.**, 2:20-cv-06042-LDH-AYS (E.D.N.Y. April 20, 2021)

- **In re QuantumScape Securities Class Action Litigation**, 3:21-cv-00058-WHO (N.D. Cal. April 20, 2021)
- **In re Minerva Neurosciences, Inc. Sec. Litig.**, 1:20-cv-12176-GAO (D. Mass. March 5, 2021)
- **White Pine Investments v. CVR Refining, LP, et al.**, 1:20-cv-02863-AT (S.D.N.Y Jan. 5, 2021)
- **Yaroni v. Pintec Technology Holdings Limited, et al.**, 1:20-cv-08062-JMF (S.D.N.Y. Dec. 15, 2020)
- **Nickerson v. American Electric Power Company, Inc., et al.**, 2:20-cv-04243-SDM-EPD (S.D. Ohio Nov. 24, 2020)
- **Ellison v. Tufin Software Technologies Ltd., et al.**, 1:20-cv-05646-GHW (S.D.N.Y. Oct. 19, 2020)
- **Hartel v. The GEO Group, Inc., et al.**, 9:20-cv-81063-RS (S.D. Fla. Oct. 1, 2020)
- **Posey, Sr. v. Brookdale Senior Living, Inc., et al.**, 3:20-cv-00543-AAT (M.D. Tenn. Sept. 14, 2020)
- **Snyder v. Baozun Inc.**, 1:19-cv-11290-ALC (S.D.N.Y. Sept. 8, 2020)
- **In re eHealth Inc. Sec. Litig.**, 4:20-cv-02395-JST (N.D. Cal. Jun. 24, 2020)
- **Mehdi v. Karyopharm Therapeutics Inc.**, 1:19-cv-11972-NMG (D. Mass. Apr. 29, 2020)
- **Brown v. Opera Ltd.**, 1:20-cv-00674-JGK (S.D.N.Y. Apr. 17, 2020)
- **In re Dropbox Sec. Litig.**, 5:19-cv-06348-BLF (N.D. Cal. Jan. 16, 2020)
- **In re Yunji Inc. Sec. Litig.**, 1:19-cv-6403-LDH-SMG (E.D.N.Y. Feb. 3, 2020)
- **Zhang v. Valaris plc**, 1:19-cv-7816-NRB (S.D.N.Y. Dec. 23, 2019)
- **In re Sundial Growers Inc. Sec. Litig.**, 1:19-cv-08913-ALC (S.D.N.Y. Dec. 20, 2019)
- **Costanzo v. DXC Technology Co.**, 5:19-cv-05794-BLF (N.D. Cal. Nov. 20, 2019)
- **Ferraro Family Foundation, Inc. v. Corcept Therapeutics Incorporated**, 5:19-cv-1372-LHK (N.D. Cal. Oct. 7, 2019)
- **Roberts v. Bloom Energy Corp.**, 4:19-cv-02935-HSG (N.D. Cal. Sept. 3, 2019)
- **Luo v. Sogou Inc.**, 1:19-cv-00230-JPO (S.D.N.Y. Apr. 2, 2019)
- **In re Aphria Inc. Sec. Litig.**, 1:18-cv-11376-GBD (S.D.N.Y. Mar. 27, 2019)

 "Class Counsel have demonstrated that they are skilled in this area of the law and therefore adequate to represent the Settlement Class as well."

*The Honorable Barry Ted Moskowitz in In re Regulus Therapeutics Inc. Sec. Litig., No. 3:17-CV-182-BTM-RBB (S.D. Cal. Oct. 30, 2020)*

- **Chew v. MoneyGram International, Inc.**, 1:18-cv-07537 (N.D. Ill. Feb. 12, 2019)
- **Johnson v. Costco Wholesale Corp.**, 2:18-cv-01611-TSZ (W.D. Wash. Jan. 30, 2019)
- **Tung v. Dycom Industries, Inc.**, 9:18-cv-81448-RLR (S.D. Fla. Jan. 11, 2019)
- **Guyer v. MGT Capital Investments, Inc.**, 1:18-cv-09228-LAP (S.D.N.Y. Jan. 9, 2019)
- **In re Adient plc Sec. Litig.**, 1:18-CV-09116 (S.D.N.Y. Dec. 21, 2018)

LEVI&KORSINSKY LLP

- **In re Prothena Corp. plc Sec. Litig.**, 1:18-cv-06425 (S.D.N.Y. Oct. 31, 2018)
- **Pierrelouis v. Gogo Inc.**, 1:18-cv-04473 (N.D. Ill. Oct. 10, 2018)
- **Balestra v. Cloud With Me Ltd.**, 2:18-cv-00804-LPL (W.D. Pa. Oct. 18, 2018)
- **Balestra v. Giga Watt, Inc.**, 2:18-cv-00103-SMJ (E.D. Wash. June 28, 2018)
- **Chandler v. Ulta Beauty, Inc.**, 1:18-cv-01577 (N.D. Ill. June 26, 2018)
- **In re Longfin Corp. Sec. Litig.**, 1:18-cv-2933 (S.D.N.Y. June 25, 2018)
- **Chahal v. Credit Suisse Group AG**, 1:18-cv-02268-AT (S.D.N.Y. June 21, 2018)

 Vice Chancellor Sam Glasscock, III said "it's always a pleasure to have counsel who are articulate and exuberant…" and referred to our approach to merger litigation as "wholesome" and "a model of… plaintiffs' litigation in the merger arena."

*Ocieczanek v. Thomas Properties Group, C.A. No. 9029-VCG (Del. Ch. May 15, 2014)*

- **In re Bitconnect Sec. Litig.**, 9:18-cv-80086-DMM (S.D. Fla. June 19, 2018)
- **In re Aqua Metals Sec. Litig.**, 4:17-cv-07142-HSG (N.D. Cal. May 23, 2018)
- **Davy v. Paragon Coin, Inc.**, 4:18-cv-00671-JSW (N.D. Cal. May 10, 2018)
- **Rensel v. Centra Tech, Inc.**, 1:17-cv-24500-JLK (S.D. Fla. Apr. 11, 2018)
- **Cullinan v. Cemtrex, Inc.** 2:17-cv-01067 (E.D.N.Y. Mar. 3, 2018)
- **In re Navient Corporation Sec. Litig.**, 1:17-cv-08373-RBK-AMD (D.N.J. Feb. 2, 2018)
- **Huang v. Depomed, Inc.**, 3:17-cv-04830-JST (N.D. Cal. Dec. 8, 2017)
- **In re Regulus Therapeutics Inc. Sec. Litig.**, 3:17-cv-00182-BTM-RBB (D. Mass. Oct. 26, 2017)
- **Murphy III v. JBS S.A.**, 1:17-cv-03084-ILG-RER (E.D.N.Y. Oct. 10, 2017)
- **Ohren v. Amyris, Inc.**, 3:17-cv-002210-WHO (N.D. Cal. Aug. 8, 2017)
- **Beezley v. Fenix Parts, Inc.**, 2:17-cv-00233 (D.N.J. June 28, 2017)
- **M & M Hart Living Trust v. Global Eagle Entertainment, Inc.**, 2:17-cv-01479 (C.D. Cal. June 26, 2017)
- **In re Insys Therapeutics, Inc.**, 1:17-cv-1954 (S.D.N.Y. May 31, 2017)
- **Clevlen v. Anthera Pharmaceuticals, Inc.**, 3:17-cv-00715 (N.D. Cal. May 18, 2017)

· **In re Agile Therapeutics, Inc. Sec. Litig.**, 3:17-cv-00119-AET-LHG (D.N.J. May 15, 2017)
· **Roper v. SITO Mobile Ltd.**, 2:17-cv-01106-ES-MAH (D.N.J. May 8, 2017)
· **In re Illumina, Inc. Sec. Litig.**, 3:16-cv-03044-L-KSC (S.D. Cal. Mar. 30, 2017)
· **In re PTC Therapeutics, Inc.**, 2:16-cv-01224-KM-MAH (D.N.J. Nov. 14, 2016)
· **The TransEnterix Investor Group v. TransEnterix, Inc.**, 5:16-cv-00313-D (E.D.N.C. Aug. 30, 2016)
· **Gormley v. magicJack VocalTec Ltd.**, 1:16-cv-01869-VM (S.D.N.Y. July 12, 2016)
· **Azar v. Blount Int'l Inc.**, 3:16-cv-00483-SI (D. Or. July 1, 2016)
· **Plumley v. Sempra Energy**, 3:16-cv-00512-BEN-RBB (S.D. Cal. June 6, 2016)
· **Francisco v. Abengoa, S.A.**, 1:15-cv-06279-ER (S.D.N.Y. May 24, 2016)
· **De Vito v. Liquid Holdings Group, Inc.**, 2:15-cv-06969-KM-JBC (D.N.J. Apr. 7, 2016)

 Vice Chancellor Sam Glasscock, III said "it's always a pleasure to have counsel who are articulate and exuberant..." and referred to our approach to merger litigation as "wholesome" and "a model of... plaintiffs' litigation in the merger arena."

*Ocieczanek v. Thomas Properties Group, C.A. No. 9029-VCG (Del. Ch. May 15, 2014)*

· **Ford v. Natural Health Trends Corp.**, 2:16-cv-00255-TJH-AFM (C.D. Cal. Mar. 29, 2016)
· **Levin v. Resource Capital Corp.**, 1:15-cv-07081-LLS (S.D.N.Y. Nov. 24, 2015)
· **Martin v. Altisource Residential Corp.**, 1:15-cv-00024 (D.V.I. Oct. 7, 2015)
· **Paggos v. Resonant, Inc.**, 2:15-cv-01970 SJO (VBKx) (C.D. Cal. Aug. 7, 2015)
· **Fragala v. 500.com Ltd.**, 2:15-cv-01463-MMM (C.D. Cal. July 7, 2015)
· **Stevens v. Quiksilver Inc.**, 8:15-cv-00516-JVS-JCGx. (C.D. Cal. June 26, 2015)
· **In re Ocean Power Technologies, Inc. Sec. Litig.**, 3:14-cv-3799 (FLW) (LHG) (D.N.J. Mar. 17, 2015)
· **In re Energy Recovery Inc. Sec. Litig.**, 3:15-cv-00265 (N.D. Cal. Jan. 20, 2015)
· **Ford v. TD Ameritrade Holding Corporation, et al.**, 8:14-cv-00396 (D. Neb. Dec. 2, 2014)
· **In re China Commercial Credit Sec. Litig.**, 1:15-cv-00557 (ALC) (D.N.J. Oct. 31, 2014)
· **In re Violin Memory, Inc. Sec. Litig.**, 4:13-cv-05486-YGR (N.D. Cal. Feb. 26, 2014)
· **Berry v. KiOR, Inc.**, 4:13-cv-02443 (S.D. Tex. Nov. 25, 2013)
· **In re OCZ Technology Group, Inc. Sec. Litig.**, 3:12-cv-05265-RS (N.D. Cal. Jan. 4, 2013)
· **In re Digital Domain Media Group, Inc. Sec. Litig.**, 2:12-cv-14333 (JEM) (S.D. Fla. Sept. 20, 2012)

## Derivative, Corporate Governance & Executive Compensation

As a leader in achieving important corporate governance reforms for the benefit of shareholders, the Firm protects shareholders by enforcing the obligations of corporate fiduciaries.  Our efforts include the prosecution of derivative actions in courts around the country, making pre-litigation demands on corporate boards to investigate misconduct, and taking remedial action for the benefit of shareholders. In situations where a company's board responds to a demand by commencing its own investigation, we frequently work with the board's counsel to assist with and monitor the investigation, ensuring that the investigation is thorough and conducted in an appropriate manner.

We have also successfully prosecuted derivative and class action cases to hold corporate executives and board members accountable for various abuses and to help preserve corporate assets through longlasting and meaningful corporate governance changes, thus ensuring that prior misconduct does not reoccur. We have extensive experience challenging executive compensation and recapturing assets for the benefit of companies and their shareholders. We have secured corporate governance changes to ensure that executive compensation is consistent with shareholder-approved compensation plans, company performance, and federal securities laws.

In **Franchi v. Barabe**, C.A. No. 2020-0648-KSJM (Del. Ch.), the Firm secured $6.7 million in economic benefits for Selecta Biosciences, Inc. in connection with insiders' participation in a private placement while in possession of material non-public information as well as the adoption of significant governance reforms designed to prevent a recurrence of the alleged misconduct.

The Firm was lead counsel in the derivative  action styled **Police & Retirement System of the City of Detroit et al. v. Robert Greenberg et al.,** C.A. No. 2019-0578 (Del. Ch.).  The action resulted in a settlement where Skechers Inc. cancelled  nearly $20 million in equity awards issued to Skechers' founder Robert Greenberg and two top officers in 2019 and 2020.  Also, under the settlement, Skechers' board of directors must  retain a consultant to advise on compensation decisions going forward.

In **In re Google Inc. Class C Shareholder Litigation**, C.A. No. 7469-CS (Del. Ch.), we challenged a stock recapitalization transaction to create a new class of nonvoting shares and strengthen the corporate control of the Google founders. We helped achieve an agreement that provided an adjustment payment to existing shareholders harmed by the transaction as well as providing enhanced board scrutiny of the Google founders' ability to transfer stock. Ultimately, Google's shareholders received payments of $522 million and total net benefits estimated as exceeding $3 billion.

In **In re Activision, Inc. Shareholder Derivative Litigation**, Case No. 06-cv-04771-MRP (JTLX) (C.D. Cal.), we were Co-Lead Counsel and challenged executive compensation related to the dating of options. This effort resulted in the recovery of more than $24 million in excessive compensation and expenses, as well as the implementation of substantial corporate governance changes.

In **Pfeiffer v. Toll** (Toll Brothers Derivative Litigation), C.A. No. 4140-VCL (Del. Ch.), we prevailed in defeating defendants' motion to dismiss in a case seeking disgorgement of profits that company insiders reaped through a pattern of insider-trading. After extensive discovery, we secured a settlement returning $16.25 million in cash to the company, including a significant contribution from the individuals who traded on inside information.

In **Rux v. Meyer**, C.A. No. 11577-CB (Del. Ch.), we challenged the re-purchase by Sirius XM of its stock from its controlling stockholder, Liberty Media, at an inflated, above-market price. After defeating a motion to dismiss and discovery, we obtained a settlement where SiriusXM recovered $8.25 million, a substantial percentage of its over-payment.

In **In re EZCorp Inc. Consulting Agreement Derivative Litig.**, C.A. No. 9962-VCL (Del. Ch.), we challenged lucrative consulting agreements between EZCorp and its controlling stockholders. After surviving multiple motions to dismiss, we obtained a settlement where EZCorp was repaid $6.5 million it had paid in consulting fees, or approximately 33% of the total at issue and the consulting agreements were discontinued.

In **Scherer v. Lu** (Diodes Incorporated), Case No. 13-358-GMS (D. Del.), we secured the cancellation of $4.9 million worth of stock options granted to the company's CEO in violation of a shareholder-approved plan, and obtained additional disclosures to enable shareholders to cast a fullyinformed vote on the adoption of a new compensation plan at the company's annual meeting.

In **MacCormack v. Groupon, Inc.**, Case No. 13-940-GMS (D. Del.), we caused the cancellation of $2.3 million worth of restricted stock units granted to a company executive in violation of a shareholder-approved plan, as well as the adoption of enhanced corporate governance procedures designed to ensure that the board of directors complies with the terms of the plan; we also obtained additional material disclosures to shareholders in connection with a shareholder vote on amendments to the plan.

In **Edwards v. Benson** (Headwaters Incorporated), Case No. 13-cv-330 (D. Utah), we caused the cancellation of $3.2 million worth of stock appreciation rights granted to the company's CEO in violation of a shareholder-approved plan and the adoption of enhanced corporate governance procedures designed to ensure that the board of directors complies with the terms of the plan.

In **Pfeiffer v. Begley** (DeVry, Inc.), Case No. 12-CH-5105 (Ill. Cir. Ct. DuPage Cty.), we secured the cancellation of $2.1 million worth of stock options granted to the company's CEO in 2008-2012 in violation of a shareholder-approved incentive plan.

In **Basch v. Healy** (EnerNOC), Case No. 13-cv-766 (D. Del.), we obtained a cash payment to the company to compensate for equity awards issued to officers in violation of the company's compensation plan and caused significant changes in the company's compensation policies and procedures designed to ensure that future compensation decisions are made consistent with the company's plans, charters and policies. We also impacted the board's creation of a new compensation plan and obtained additional disclosures to stockholders concerning the board's administration of the company's plan and the excess compensation.

In **Kleba v. Dees**, C.A. 3-1-13 (Tenn. Cir. Ct. Knox Cty.), we recovered approximately $9 million in excess compensation given to insiders and the cancellation of millions of shares of stock options issued in violation of a shareholder-approved compensation plan. In addition, we obtained the adoption of formal corporate governance procedures designed to ensure that future compensation decisions are made independently and consistent with the plan.

 "...a model for how [the] great legal profession should conduct itself."

*Justice Timothy S. Driscoll in Grossman v. State Bancorp, Inc., Index No. 600469/2011 (N.Y. Sup. Ct. Nassau Cnty. Nov. 29, 2011)*

In **Lopez v. Nudelman** (CTI BioPharma Corp.), 14-2-18941-9 SEA (Wash. Super. Ct. King Cty.), we recovered approximately $3.5 million in excess compensation given to directors and obtained the adoption of a cap on director compensation, as well as other formal corporate governance procedures designed to implement best practices with regard to director and executive compensation.

In **In re i2 Technologies, Inc. Shareholder Litigation**, C.A. No. 4003-CC (Del. Ch.), as Counsel for the Lead Plaintiff, we challenged the fairness of certain asset sales made by the company and secured a $4 million recovery.

In **In re Corinthian Colleges, Inc. Shareholder Derivative Litigation**, Case No. 06-cv-777-AHS (C.D. Cal.), we were Co-Lead Counsel and achieved a $2 million benefit for the company, resulting in the re-pricing of executive stock options and the establishment of extensive corporate governance changes.

In **Pfeiffer v. Alpert** (Beazer Homes Derivative Litigation), Case No. 10-cv-1063-PD (D. Del.), we successfully challenged certain aspects of the company's executive compensation structure, ultimately forcing the company to improve its compensation practices.

In **In re Cincinnati Bell, Inc., Derivative Litigation**, Case No. A1105305 (Ohio, Hamilton Cty. C.P.), we achieved significant corporate governance changes and enhancements related to the company's compensation policies and practices in order to better align executive compensation with company performance. Reforms included the formation of an entirely independent compensation committee with staggered terms and term limits for service.

In **Woodford v. Mizel** (M.D.C. Holdings, Inc.), Case No. 1:11-cv-879 (D. Del.), we challenged excessive executive compensation, ultimately obtaining millions of dollars in reductions of that compensation, as well as corporate governance enhancements designed to implement best practices with regard to executive compensation and increased shareholder input.

# Mergers & Acquisitions

Levi & Korsinsky has achieved an impressive record in obtaining injunctive relief for shareholders, and we are one of the premier law firms engaged in mergers & acquisitions and takeover litigation, consistently striving to maximize shareholder value. In these cases, we regularly fight to obtain settlements that enable the submission of competing buyout bid proposals, thereby increasing consideration for shareholders.

We have litigated landmark cases that have altered the landscape of mergers & acquisitions law and resulted in multi-million dollar awards to aggrieved shareholders.

In **In re Schuff International, Inc. Stockholders Litigation**, C.A. No. 10323-VCZ (Del. Ch.), we served as Co-Lead Counsel for the plaintiff class in achieving the largest recovery as a percentage of the underlying transaction consideration in Delaware Chancery Court merger class action history, obtaining an aggregate recovery of more than $22 million -- a gross increase from $31.50 to $67.45 in total consideration per share (a 114% increase) for tendering stockholders.

In **In re Bluegreen Corp. Shareholder Litigation**, Case No. 502011CA018111 (Cir. Ct. for Palm Beach Cty., FL), as Co-Lead Counsel, we achieved a common fund recovery of $36.5 million for minority shareholders in connection with a management-led buyout, increasing gross consideration to shareholders in connection with the transaction by 25% after three years of intense litigation.

In **In re CNX Gas Corp. Shareholder Litigation**, C.A. No. 5377-VCL (Del. Ch.), as Plaintiffs' Executive Committee Counsel, we obtained a landmark ruling from the Delaware Chancery Court that set forth a unified standard for assessing the rights of shareholders in the context of freeze-out transactions and ultimately led to a common fund recovery of over $42.7 million for the company's shareholders.

In **Chen v. Howard-Anderson**, C.A. No 5878-VCL (Del. Ch.), we represented shareholders in challenging the merger between Occam Networks, Inc. and Calix, Inc., obtaining a preliminary injunction against the merger after showing that the proxy statement by which the shareholders were solicited to vote for the merger was materially false and misleading. Post-closing, we took the case to trial and recovered an additional $35 million for the shareholders.

In **In re Sauer-Danfoss Stockholder Litig.**, C.A. No. 8396 (Del. Ch.), as one of plaintiffs' co-lead counsel, we recovered a $10 million common fund settlement in connection with a controlling stockholder merger transaction.

In **In re Yongye International, Inc. Shareholders' Litigation**, Consolidated Case No.: A-12-670468-B (District Court, Clark County, Nevada), as one of plaintiffs' co-lead counsel, we recovered a $6 million common fund settlement in connection with a management-led buyout of minority stockholders in a China-based company incorporated under Nevada law.

In **In re Great Wolf Resorts, Inc. Shareholder Litigation**, C.A. No. 7328-VCN (Del. Ch.), we achieved tremendous results for shareholders, including partial responsibility for a $93 million (57%) increase in merger consideration and the waiver of several "don't-ask-don't-waive" standstill agreements that were restricting certain potential bidders from making a topping bid for the company.

In **In re Talecris Biotherapeutics Holdings Shareholder Litigation**, C.A. No. 5614-VCL (Del. Ch.), we served as counsel for one of the Lead Plaintiffs, achieving a settlement that increased the merger consideration to Talecris shareholders by an additional 500,000 shares of the acquiring company's stock and providing shareholders with appraisal rights.

In **In re Minerva Group LP v. Mod-Pac Corp.**, Index No. 800621/2013 (N.Y. Sup. Ct. Erie Cty.), we obtained a settlement in which defendants increased the price of an insider buyout from $8.40 to $9.25 per share, representing a recovery of $2.4 million for shareholders.

In **Stephen J. Dannis v. J.D. Nichols**, C.A. No. 13-CI-00452 (Ky. Cir. Ct. Jefferson Cty.), as Co-Lead Counsel, we obtained a 23% increase in the merger consideration (from $7.50 to $9.25 per unit) for shareholders of NTS Realty Holdings Limited Partnership. The total benefit of $7.4 million was achieved after two years of hard-fought litigation, challenging the fairness of the going-private, squeeze-out merger by NTS's controlling unitholder and Chairman, Defendant Jack Nichols. The unitholders bringing the action alleged that Nichols' proposed transaction grossly undervalued NTS's units. The 23% increase in consideration was a remarkable result given that on October 18, 2013, the Special Committee appointed by the Board of Directors had terminated the existing merger agreement with Nichols. Through counsel's tenacious efforts the transaction was resurrected and improved.

In **Dias v. Purches**, C.A. No. 7199-VCG (Del. Ch.), Vice Chancellor Sam Glasscock, III of the Delaware Chancery Court partially granted shareholders' motion for preliminary injunction and ordered that defendants correct a material misrepresentation in the proxy statement related to the acquisition of Parlux Fragrances, Inc. by Perfumania Holding, Inc.

In **In re Complete Genomics, Inc. Shareholder Litigation**, C.A. No. 7888-VCL (Del. Ch.), we obtained preliminary injunctions of corporate merger and acquisition transactions, and Plaintiffs successfully enjoined a "don't-ask-don't-waive" standstill agreement.

In **Forgo v. Health Grades, Inc.**, C.A. No. 5716-VCS (Del. Ch.), as Co-Lead Counsel, our attorneys established that defendants had likely breached their fiduciary duties to Health Grades' shareholders by failing to maximize value as required under Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc., 506 A.2d 173 (Del. 1986). We secured an agreement with defendants to take numerous steps to seek a superior offer for the company, including making key modifications to the merger agreement, creating an independent committee to evaluate potential offers, extending the tender offer period, and issuing a "Fort Howard" release affirmatively stating that the company would participate in good faith discussions with any party making a bona fide acquisition proposal.

In **In re Pamrapo Bancorp Shareholder Litigation**, Docket C-89-09 (N.J. Ch. Hudson Cty.) & HUD-L-3608- 12 (N.J. Law Div. Hudson Cty.), we defeated defendants' motion to dismiss shareholders' class action claims for money damages arising from the sale of Pamrapo Bancorp to BCB Bancorp at an allegedly unfair price through an unfair process. We then survived a motion for summary judgment, ultimately securing a settlement recovering $1.95 million for the Class plus the Class's legal fees and expenses up to $1 million (representing an increase in consideration of 15-23% for the members of the Class).

In **In re Integrated Silicon Solution, Inc. Stockholder Litigation**, Lead Case No. 115CV279142 (Super. Ct. Santa Clara, Cal.), we won an injunction requiring corrective disclosures concerning "don't-ask-don't-waive" standstill agreements and certain financial advisor conflicts of interests, and contributed to the integrity of a post-agreement bidding contest that led to an increase in consideration from $19.25 to $23 per share, a bump of almost 25 percent.

> " "I think you've done a superb job and I really appreciate the way this case was handled."
>
> *The Honorable Ronald B. Rubin in Teoh v. Ferrantino, C.A. No. 356627 (Cir. Ct. for Montgomery Cnty., MD 2012)*

## Consumer Litigation

Levi & Korsinsky works hard to protect consumers by holding corporations accountable for defective products, false and misleading advertising, unfair or deceptive business practices, antitrust violations, and privacy right violations.

Our litigation and class action expertise combined with our in-depth understanding of federal and state laws enable us to fight for consumers who have been aggrieved by deceptive and unfair business practices and who purchased defective products, including automobiles, appliances, electronic goods, and other consumer products. The Firm also represents consumers in cases involving data breaches and privacy right violations. The Firm's attorneys have received a number of leadership appointments in consumer class action cases, including multidistrict litigation ("MDL"). Recently, Law.com identified the Firm as one of the top firms with MDL leadership appointments in the article titled, "There Are New Faces Leading MDLs. And They Aren't All Men" (July 6, 2020). Representative settled and ongoing cases include:

In **NV Security, Inc. v. Fluke Networks**, Case No. CV05-4217 GW (SSx) (C.D. Cal. 2005), we negotiated a settlement on behalf of purchasers of Test Set telephones in an action alleging that the Test Sets contained a defective 3-volt battery. We benefited the consumer class by obtaining the following relief: free repair of the 3-volt battery, reimbursement for certain prior repair, an advisory concerning the 3-volt battery on the outside of packages of new Test Sets, an agreement that defendants would cease to market and/or sell certain Test Sets, and a 42-month warranty on the 3-volt battery contained in certain devices sold in the future.

**In Re: Apple Inc. Device Performance Litig.**, Case No. 5:18-md-02827-EJD (N.D. Cal.): Plaintiffs' Executive Committee Counsel in proposed nationwide class action alleging that Apple purposefully throttled iPhone; Apple has agreed to pay up to $500 million in cash (proposed settlement pending).

**In Re: Intel Corp. CPU Marketing, Sales Practices and Products Liability Litig.**, Case No. 3:18-md-02828 (D. Or.): Co-Lead Interim Class Counsel in proposed nationwide class action alleging that Intel manufactured and sold defective central processing units that allowed unauthorized access to consumer stored confidential information.

**In Re: ZF-TRW Airbag Control Units Products Liability Litig.**, Case No. 2:19-ml-02905-JAK-FFM (C.D. Cal.): Plaintiffs' Steering Committee Counsel in proposed nationwide class action alleging that defendant auto manufacturers sold vehicles with defective airbags.

**In Re: EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litig.**, Case No. 17-md-02785 (D. Kan.): Plaintiffs' Executive Committee Counsel in action alleging that Mylan and Pfizer violated antitrust laws and committed other violations relating to the sale of EpiPens. Nationwide class and multistate classes certified.

**Sung, et al. v. Schurman Retail Group**, Case No. 17-cv-02760-LB (N.D. Cal.): Co-Lead Class Counsel in nationwide class action alleging unauthorized disclosure of employee financial information; obtained final approval of nationwide class action settlement providing credit monitoring and identity theft restoration services through 2022 and cash payments of up to $400.

**Scott, et al. v. JPMorgan Chase Bank, N.A.**, Case No. 1:17-cv-00249 (D.D.C.): Co-Lead Class Counsel in nationwide class action settlement of claims alleging improper fees deducted from payments awarded to jurors; 100% direct refund of improper fees collected.

**In Re: Citrix Data Breach Litig.**, Case No. 19-cv-61350-RKA (S.D. Fla.): Interim Class Counsel in action alleging company failed to implement reasonable security measures to protect employee financial information; common fund settlement of $2.25 million pending.

**Bustos v. Vonage America, Inc.**, Case No. 06 Civ. 2308 (HAA) (D.N.J.): Common fund settlement of $1.75 million on behalf of class members who purchased Vonage Fax Service in an action alleging that Vonage made false and misleading statements in the marketing, advertising, and sale of Vonage Fax Service by failing to inform consumers that the protocol defendant used for the Vonage Fax Service was unreliable and unsuitable for facsimile communications.

**Masterson v. Canon U.S.A.**, Case No. BC340740 (Cal. Super. Ct. L.A. Cty.): Settlement providing refunds to Canon SD camera purchasers for certain broken LCD repair charges and important changes to the product warranty.

> **"**"The quality of the representation… has been extremely high, not just in terms of the favorable outcome in terms of the substance of the settlement, but in terms of the diligence and the hard work that has gone into producing that outcome."
>
> *The Honorable Joseph F. Bianco, in Landes v. Sony Mobile Communications, 17-cv-02264-JFB-SIL (E.D.N.Y. Dec. 1, 2017)*





# EDUARD KORSINSKY

**MANAGING PARTNER**

Eduard Korsinsky is the Managing Partner and Co-Founder of Levi & Korsinsky LLP, a national securities firm that has recovered billions of dollars for investors since its formation in 2003. For more than 24 years Mr. Korsinsky has represented investors and institutional shareholders in complex securities matters. He has achieved significant recoveries for stockholders, including a $79 million recovery for investors of E-Trade Financial Corporation and a payment ladder indemnifying investors of Google, Inc. up to $8 billion in losses on a ground-breaking corporate governance case. His firm serves as lead counsel in some of the largest securities matters involving Tesla, US Steel, Kraft Heinz and others. He has been named a New York "Super Lawyer" by Thomson Reuters and is recognized as one of the country's leading practitioners in class action and derivative matters.

Mr. Korsinsky is also a co- founder of CORE Monitoring Systems LLC, a technology platform designed to assist institutional clients more effectively monitor their investment portfolios and maximize recoveries on securities litigation.

Cases he has litigated include:

· **E-Trade Financial Corp. Sec. Litig.**, No. 07-cv-8538 (S.D.N.Y. 2007), $79 million recovery
· **In re Activision, Inc. S'holder Derivative Litig.**, No. 06-cv-04771-MRP (JTLX)(C.D. Cal. 2006), recovered $24 million in excess compensation
· **Corinthian Colleges, Inc., S'holder Derivative Litig.**, SACV-06-0777-AHS (C.D. Cal. 2009), obtained repricing of executive stock options providing more than $2 million in benefits to the company
· **Pfeiffer v. Toll**, C.A. No. 4140-VCL (Del. Ch. 2010), $16.25 million in insider trading profits recovered
· **In re Net2Phone, Inc. S'holder Litig.**, Case No. 1467-N (Del. Ch. 2005), obtained increase in tender offer price from $1.70 per share to $2.05 per share
· **In re Pamrapo Bancorp S'holder Litig.**, C-89-09 (N.J. Ch. Hudson Cty. 2011) & HUD-L-3608-12 (N.J. Law Div. Hudson Cty. 2015), obtained supplemental disclosures following the filing of a motion for preliminary injunction, pursued case post-closing, defeated motion for summary judgment, and obtained an increase in consideration of between 15-23% for the members of the Class
· **In re Google Inc. Class C S'holder Litig.**, C.A. No. 19786 (Del. Ch. 2012), obtained payment ladder indemnifying investors up to $8 billion in losses stemming from trading discounts expected to affect the new stock
· **Woodford v. M.D.C. Holdings, Inc.**, 1:2011cv00879 (D. Del. 2012), one of a few successful challenges to say on pay voting, recovered millions of dollars in reductions to compensation
· **i2 Technologies, Inc. S'holder Litig.**, C.A. No. 4003-CC (Del. Ch. 2008), $4 million recovered, challenging fairness of certain asset sales made by the company

- **Pfeiffer v. Alpert (Beazer Homes)**, C.A. No. 10-cv-1063-PD (D. Del. 2011), obtained substantial revisions to an unlawful executive compensation structure
- **In re NCS Healthcare, Inc. Sec. Litig.**, C.A. CA 19786, (Del. Ch. 2002), case settled for approximately $100 million
- **Paraschos v. YBM Magnex Int'l, Inc.**, No. 98-CV-6444 (E.D. Pa.), United States and Canadian cases settled for $85 million Canadian

---

## PUBLICATIONS

- "Board Diversity: The Time for Change is Now, Will Shareholders Step Up?," *National Council on Teacher Retirement. FYI Newsletter* May 2021
- "The Dangers of Relying on Custodians to Collect Class Action Settlements.", *The Texas Association of Public Employee Retirement Systems (TEXPERS) Investment Insights April-May Edition* (2021)
- "The Dangers of Relying on Custodians to Collect Class Action Settlements.", *Michigan Association of Public Employee Retirement Systems (MAPERS) Newsletter* (2021)
- "The Dangers of Relying on Custodians to Collect Class Action Settlements.", *Florida Public Pension Trustees Association (FPPTA)* (2021)
- "NY Securities Rulings Don't Constitute Cyan Backlash", *Law360* (March 8, 2021)
- "Best Practices for Monitoring Your Securities Portfolio in 2021.", *Building Trades News Newsletter* (2020-2021)
- "Best Practices for Monitoring Your Securities Portfolio in 2021.", *The Texas Association of Public Employee Retirement Systems (TEXPERS) Monitor* (2021)
- "Best Practices for Monitoring Your Securities Portfolio in 2021.", *Michigan Association of Public Employee Retirement Systems (MAPERS) Newsletter* (2021)
- "Best Practices for Monitoring Your Securities Portfolio in 2021.", *Florida Public Pension Trustees Association (FPPTA)* (2021)
- Delaware Court Dismisses Compensation Case Against Goldman Sachs, *ABA Section of Securities Litigation News & Developments* (Nov. 7, 2011)
- SDNY Questions SEC Settlement Practices in Citigroup Settlement, *ABA Section of Securities Litigation News & Developments* (Nov. 7, 2011)
- New York Court Dismisses Shareholder Suit Against Goldman Sachs, *ABA Section of Securities Litigation News & Developments* (Oct. 31, 2011)

**EDUCATION**
• New York University School of Law, LL.M. Master of Law(s) Taxation (1997)
• Brooklyn Law School, J.D. (1995)
• Brooklyn College, B.S., Accounting, *summa cum laude* (1992)

**ADMISSIONS**
• New York (1996)
• New Jersey (1996)
• United States District Court for the Southern District of New York (1998)
• United States District Court for the Eastern District of New York (1998)
• United States Court of Appeals for the Second Circuit (2006)
• United States Court of Appeals for the Third Circuit (2010)
• United States District Court for the Northern District of New York (2011)
• United States District Court of New Jersey (2012)
• United States Court of Appeals for the Sixth Circuit (2013)

**AWARDS**

     

23   LEVI&KORSINSKY LLP



# JOSEPH E. LEVI
 **MANAGING PARTNER**

Joseph E. Levi is a central figure in shaping and managing the Firm's securities litigation practice. Mr. Levi has been lead or co-lead in dozens of cases involving the enforcement of shareholder rights in the context of mergers & acquisitions and securities fraud. In addition to his involvement in class action litigation, he has represented numerous patent holders in enforcing their patent rights in areas including computer hardware, software, communications, and information processing, and has been instrumental in obtaining substantial awards and settlements.

Mr. Levi and the Firm achieved success on behalf of the former shareholders of Occam Networks in litigation challenging the Company's merger with Calix, Inc., obtaining a preliminary injunction against the merger due to material representations and omissions in the proxy solicitation. **Chen v. Howard-Anderson,** No. 5878-VCL (Del. Ch.). Vigorous litigation efforts continued to trial, resulting in a $35 million recovery for shareholders.

Mr. Levi and the Firm served as lead counsel in **Weigard v. Hicks**, No. 5732-VCS (Del. Ch.), which challenged the acquisition of Health Grades by affiliates of Vestar Capital Partners. Mr. Levi successfully demonstrated to the Court of Chancery that the defendants had likely breached their fiduciary duties to Health Grades' shareholders by failing to maximize shareholder value. This ruling was used to reach a favorable settlement where defendants agreed to a host of measures designed to increase the likelihood of superior bid. Vice Chancellor Strine "applaud[ed]" the litigation team for their preparation and the extraordinary high-quality of the briefing.

 "[The court] appreciated very much the quality of the argument…, the obvious preparation that went into it, and the ability of counsel…"

*Vice Chancellor Sam Glasscock, III in Dias v. Purches, C.A. No. 7199-VCG (Del. Ch. Apr. 5, 2012)*

LEVI&KORSINSKYLLP

**EDUCATION**
• Brooklyn Law School, J.D.,*magna cum laude* (1995)
• Polytechnic University, B.S., *summa cum laude* (1984); M.S. (1986)


**ADMISSIONS**
• New York (1996)
• New Jersey (1996)
• United States Patent and Trademark Office (1997)
• United States District Court for the Southern District of New York (1997)
• United States District Court for the Eastern District of New York (1997)


**AWARDS**

   



**OUR ATTORNEYS**

# Partners

LEVI&KORSINSKY LLP



# NICHOLAS I. PORRITT
**PARTNER**

Nicholas Porritt prosecutes securities class actions, shareholder class actions, derivative actions, and mergers and acquisitions litigation. He has extensive experience representing plaintiffs and defendants in a wide variety of complex commercial litigation, including civil fraud, breach of contract, and professional malpractice, as well as defending SEC investigations and enforcement actions. Mr. Porritt has helped recover hundreds of millions of dollars on behalf of shareholders. He was one of the Lead Counsel in **In re Google Inc. Class C Shareholder Litigation**, C.A. No. 7469-CS (Del. Ch.), which resulted in a payment of $522 million to shareholders and overall benefit of over $3 billion to Google's minority shareholders. He was one of the lead counsel in **Chen v. Howard-Anderson**, No. 5878-VCL (Del. Ch.) that settled during trial resulting in a $35 million payment to the former shareholders of Occam Networks, Inc., one of the largest quasi-appraisal recoveries for shareholders. Amongst other cases, he is currently lead counsel in **In re Tesla, Inc. Securities Litigation**, No. 3:18-cv-04865-EMC (N.D. Cal.), representing Tesla investors who were harmed by Elon Musk's "funding secured" tweet from August 7, 2018 as well as lead counsel in **Ford v. TD Ameritrade Holding Corp.**, No. 14-cv-396 (D. Neb.), representing TD Ameritrade customers harmed by its improper routing of their orders. Both cases involve over $1 billion in estimated damages.

Some of Mr. Porritt's recent cases include:

· **In re Tesla, Inc. Sec. Litig.**, 2020 WL 1873441 (N.D. Cal.2020)
· **In Re Aphria, Inc. Securities Litigation**, 2020 WL 5819548 (S.D.N.Y. 2020)
· **Voulgaris, v. Array Biopharma Inc.**, 2020 WL 8367829 (D. Colo. 2020)
· **In Re Aphria, Inc. Securities Litigation**, No. 18 CIV. 11376 (GBD), 2020 WL 5819548 (S.D.N.Y. 2020)
· **In re Clovis Oncology, Inc. Deriv. Litig.**, 2019 WL 4850188 (Del. Ch. 2019)
· **Martin v. Altisource Residential Corp.**, 2019 WL 2762923 (D.V.I. 2019)
· **In re Navient Corp. Sec. Litig.**, 2019 WL 7288881 (D.N.J. 2019)
· **In re Bridgestone Inv. Corp.**, 789 Fed. App'x 13 (9th Cir. 2019)
· **Klein v. TD Ameritrade Holding Corp.**, 327 F.R.D. 283 (D. Neb. 2018)
· **Beezley v. Fenix Parts, Inc.**, 2018 WL 3454490 (N.D. Ill. 2018)
· **In re PTC Therapeutics Sec. Litig.**, 2017 WL 3705801 (D.N.J. 2017)
· **Zaghian v. Farrell**, 675 Fed. Appx. 718 (9th Cir. 2017)
· **Gormley v. magicJack VocalTec Ltd.**, 220 F. Supp. 3d 510 (S.D.N.Y. 2016)
· **Carlton v. Cannon**, 184 F. Supp. 3d 428 (S.D. Tex. 2016)

· **In re Violin Memory Sec. Litig.**, 2014 WL 5525946 (N.D. Cal. Oct. 31, 2014)
· **Garnitschnig v. Horovitz**, 48 F. Supp. 3d 820 (D. Md. 2014)
· **SEC v. Cuban**, 620 F.3d 551 (5th Cir. 2010)
· **Cozzarelli v. Inspire Pharmaceuticals, Inc.**, 549 F.3d 618 (4th Cir. 2008)
· **Teachers' Retirement System of Louisiana v. Hunter**, 477 F.3d 162 (4th Cir. 2007)

Mr. Porritt was selected by Lawdragon as one of the 500 leading plaintiff lawyers in financial litigation and was selected to the 2020 DC Super Lawyers list published by Thomson Reuters.

Mr. Porritt speaks frequently on current topics relating to securities laws and derivative actions, including presentations on behalf of the Council for Institutional Investors, Nasdaq, and the Practising Law Institute. He currently serves as co-chair of the American Bar Association Sub-Committee on Derivative Actions.

Before joining the Firm, Mr. Porritt practiced as a partner at Akin Gump Strauss Hauer & Feld LLP and prior to that was a partner at Wilson Sonsini Goodrich & Rosati PC. Mr. Porritt formerly practiced as a Barrister and Solicitor in Wellington, New Zealand and is a Solicitor of the Senior Courts of England & Wales.

---

**PUBLICATIONS**

• "Current Trends in Securities Litigation: How Companies and Counsel Should Respond," *Inside the Minds. Recent Developments in Securities Law* (Aspatore Press 2010)

**EDUCATION**

• University of Chicago Law School, J.D., With Honors (1996)
• University of Chicago Law School, LL.M. (1993)
• Victoria University of Wellington, LL.B. (Hons.), With First Class Honors, Senior Scholarship (1990)

## ADMISSIONS

• New York (1997)
• District of Columbia (1998)
• United States District Court for the District of Columbia (1999)
• United States District Court for the Southern District of New York (2004)
• United States Court of Appeals for the Fourth Circuit (2004)
• United States Court of Appeals for the District of Columbia Circuit (2006)
• United States Supreme Court (2006)
• United States District Court for the District of Maryland (2007)
• United States District Court for the Eastern District of New York (2012)
• United States Court of Appeals for the Second Circuit (2014)
• United States Court of Appeals for the Ninth Circuit (2015)
• United States District Court for the District of Colorado (2015)
• United States Court of Appeals for the Tenth Circuit (2016)
• United States Court of Appeals for the Eleventh Circuit (2017)
• United States Court of Appeals for the Eighth Circuit (2019)
• United States Court of Appeals for the Third Circuit (2019)

## AWARDS







# DONALD J. ENRIGHT
**PARTNER**

During his 24 years as a litigator and trial lawyer, Mr. Enright has handled matters in the fields of securities, commodities, consumer fraud and commercial litigation, with a particular emphasis on shareholder M&A and securities fraud class action litigation. He has been named as one of the leading financial litigators in the nation by Lawdragon, as a Washington, DC "Super Lawyer" by Thomson Reuters, and as one of the city's "Top Lawyers" by Washingtonian magazine.

Mr. Enright has shown a track record of achieving victories in federal trials and appeals, including:

· **Nathenson v. Zonagen, Inc.**, 267 F. 3d 400, 413 (5th Cir. 2001)
· **SEC v. Butler**, 2005 U.S. Dist. LEXIS 7194 (W.D. Pa. April 18, 2005)
· **Belizan v. Hershon**, 434 F. 3d 579 (D.C. Cir. 2006)
· **Rensel v. Centra Tech, Inc.**, 2021 WL 2659784 (11th Cir. June 29, 2021)

Most recently, in **In re Schuff International, Inc. Stockholders Litigation**, Case No. 10323-VCZ, Mr. Enright served as Co-Lead Counsel for the plaintiff class in achieving the largest recovery as a percentage of the underlying transaction consideration in Delaware Chancery Court merger class action history, obtaining an aggregate recovery of more than $22 million -- a gross increase from $31.50 to $67.45 in total consideration per share (a 114% increase) for tendering stockholders.

Similarly, as Co-Lead Counsel in **In re Bluegreen Corp. Shareholder Litigation**, Case No. 502011CA018111 (Cir. Ct. for Palm Beach Cnty., Fla.), Mr. Enright achieved a $36.5 million common fund settlement in the wake of a majority shareholder buyout, representing a 25% increase in total consideration to the minority stockholders.

Also, in **In re CNX Gas Corp. Shareholders Litigation**, C.A. No. 53377-VCL (Del. Ch. 2010), in which Levi & Korsinsky served upon plaintiffs' Executive Committee, Mr. Enright helped obtain the recovery of a common fund of over $42.7 million for stockholders.

Mr. Enright has also played a leadership role in numerous securities and shareholder class actions from inception to conclusion. Most recently, he has served as lead counsel in several cryptocurrency-related securities class actions. His leadership has produced multi-million-dollar recoveries in shareholder class actions involving such companies as:

• Allied Irish Banks PLC
• Iridium World Communications, Ltd.
• En Pointe Technologies, Inc.
• PriceSmart, Inc.
• Polk Audio, Inc.
• Meade Instruments Corp.
• Xicor, Inc.
• Streamlogic Corp.
• Interbank Funding Corp.
• Riggs National Corp.
• UTStarcom, Inc.
• Manugistics Group, Inc.

Mr. Enright also has a successful track record of obtaining injunctive relief in connection with shareholder M&A litigation, having won preliminary injunctions or other injunctive relief in the cases of:

• **In re Portec Rail Products, Inc. S'holder Litig.**, G.D. 10-3547 (Ct. Com. Pleas Pa. 2010)
• **In re Craftmade International, Inc. S'holder Litig.**, C.A. No. 6950-VCL (Del. Ch. 2011)
• **Dias v. Purches**, C.A. No. 7199-VCG (Del. Ch. 2012)
• **In re Complete Genomics, Inc. S'holder Litig.**, C.A. No. 7888-VCL (Del. Ch. 2012)
• **In re Integrated Silicon Solution, Inc. Stockholder Litig.**, Lead Case No. 115CV279142 (Sup. Ct. Santa Clara, CA 2015)

LEVI&KORSINSKY LLP

Mr. Enright has also demonstrated considerable success in obtaining deal price increases for shareholders in M&A litigation. As Co-Lead Counsel in the matter of **In re Great Wolf Resorts, Inc. Shareholder Litigation**, C.A. No. 7328-VCN (Del. Ch. 2012), Mr. Enright was partially responsible for a $93 million (57%) increase in merger consideration and waiver of several "don't-ask-don't-waive" standstill agreements that were precluding certain potential bidders from making a topping bid for the company.

Similarly, Mr. Enright served as Co-Lead Counsel in the case of **Berger v. Life Sciences Research, Inc.**, No. SOM-C-12006-09 (NJ Sup. Ct. 2009), which caused a significant increase in the transaction price from $7.50 to $8.50 per share, representing additional consideration for shareholders of approximately $11.5 million.

Mr. Enright also served as Co-Lead Counsel in **Minerva Group, LP v. Keane**, Index No. 800621/2013 (NY Sup. Ct. of Erie Cnty.) and obtained a settlement in which Defendants increased the price of an insider buyout from $8.40 to $9.25 per share.

The courts have consistently recognized and praised the quality of Mr. Enright's work. In **In re Interbank Funding Corp. Securities Litigation** (D.D.C. 02-1490), Judge Bates of the United States District Court for the District of Columbia observed that Mr. Enright had "...skillfully, efficiently, and zealously represented the class, and... worked relentlessly throughout the course of the case."

Similarly, in **Freeland v. Iridium World Communications**, LTD, (D.D.C. 99-1002), Judge Nanette Laughrey stated that Mr. Enright had done "an outstanding job" in connection with the recovery of $43.1 million for the shareholder class.

And, in the matter of **Osieczanek v. Thomas Properties Group**, C.A. No. 9029-VCG (Del. Ch. 2013), Vice Chancellor Sam Glasscock of the Chancery Court of Delaware observed that "it's always a pleasure to have counsel [like Mr. Enright] who are articulate and exuberant in presenting their position," and that Mr. Enright's prosecution of a merger case was "wholesome" and served as "a model of . . . plaintiffs' litigation in the merger arena."

## PUBLICATIONS

• "SEC Enforcement Actions and Investigations in Private and Public Offerings," Securities: Public and Private Offerings, Second Edition, West Publishing 2007
• "Dura Pharmaceuticals: Loss Causation Redefined or Merely Clarified?" J. Tax'n & Reg. Fin. Inst. September/October 2007, Page 5

## EDUCATION

• George Washington University School of Law, J.D. (1996), where he was a Member Editor of The George Washington University Journal of International Law and Economics from 1994 to 1996
• Drew University, B.A., Political Science and Economics, *cum laude* (1993)

## ADMISSIONS

• Maryland (1996)
• New Jersey (1996)
• United States District Court for the District of Maryland (1997)
• United States District Court for the District of New Jersey (1997)
• District of Columbia (1999)
• United States Court of Appeals for the Fourth Circuit (1999)
• United States Court of Appeals for the Fifth Circuit (1999)
• United States District Court for the District of Columbia (1999)
• United States Court of Appeals for the District of Columbia (2004)
• United States Court of Appeals for the Second Circuit (2005)
• United States Court of Appeals for the Third Circuit (2006)
• United States District Court for the District of Colorado (2017)

## AWARDS

   



# SHANNON L. HOPKINS
**PARTNER**

Shannon L. Hopkins manages the Firm's Connecticut office. She was selected in 2013 as a New York "Super Lawyer" by Thomson Reuters. For more than a decade Ms. Hopkins has been prosecuting a wide range of complex class action matters in securities fraud, mergers and acquisitions, and consumer fraud litigation on behalf of individuals and large institutional clients. Ms. Hopkins has played a lead role in numerous shareholder securities fraud and merger and acquisition matters and has been involved in recovering multimillion-dollar settlements on behalf of shareholders, including:

· **In re Force Protection, Inc. S'holder Litig.**, C.A. No. A-11-651336-B (D. Nev. 2015), $11 million shareholder recovery
· **Craig Telke v. New Frontier Media, Inc.**, C.A. No. 1:12-cv-02941-JLK (D. Co. 2015), $2.25 million shareholder recovery
· **Shona Investments v. Callisto Pharmaceuticals, Inc.**, C.A. No. 652783/2012 (NY Sup. Ct. 2015), shareholder recovery of $2.5 million and increase in exchange ratio from 0.1700 to 0.1799
· **E-Trade Financial Corp. S'holder Litig.**, No. 07-cv-8538 (S.D.N.Y. 2007), $79 million recovery for the shareholder class
· **In re Cogent, Inc. S'holder Litig.**, C.A. No. 5780-VCP (Del. Ch. 2010), $1.9 million shareholder recovery and corrective disclosures relating to the Merger
· **In re CMS Energy Sec. Litig.**, Civil No. 02 CV 72004 (GCS) (E.D. Mich. Sept. 6, 2007), $200 million recovery
· **In re Sears, Roebuck and Co. Sec. Litig.**, No. 02-cv-07527 (N.D. Ill. Jan. 8, 2007), $200 million recovery
· **In re El Paso Electric Co. Sec. Litig.**, C.A. No. 3:03-cv-00004-DB (W.D. Tex. Sept. 15, 2005), $10 million recovery
· **In re Novastar Fin. Sec. Litig.**, 4:04-cv-00330-ODS (W.D. Mo. Apr. 14, 2009), $7.25 million recovery

The quality of Ms. Hopkin's work has been noted by courts. In **In re Health Grades, Inc. Shareholder Litigation**, C.A. No. 5716-VCS (Del. Ch. 2010), where Ms. Hopkins was significantly involved with the briefing of the preliminary injunction motion, then Vice Chancellor Strine "applaud[ed]" Co-Lead Counsel for their preparation and the extraordinary high-quality of the briefing.

In addition to her legal practice, Ms. Hopkins is a Certified Public Accountant (1998 Massachusetts). Prior to becoming an attorney, Ms. Hopkins was a senior auditor with PricewaterhouseCoopers LLP, where she led audit engagements for large publicly held companies in a variety of industries.

34  LEVI&KORSINSKYLLP

**PUBLICATIONS**
• "Cybercrime Convention: A Positive Beginning to a Long Road Ahead," 2 J. High Tech. L. 101 (2003)

**EDUCATION**
• Suffolk University Law School, J.D., *magna cum laude* (2003), where she served on the Journal for High Technology and as Vice Magister of the Phi Delta Phi International Honors Fraternity
• Bryant University, B.S.B.A., Accounting and Finance, *cum laude* (1995), where she was elected to the Beta Gamma Sigma Honor Society

**ADMISSIONS**
• Massachusetts (2003)
• United States District Court for the District of Massachusetts (2004)
• New York (2004)
• United States District Court for the Southern District of New York (2004)
• United States District Court for the Eastern District of New York (2004)
• United States District Court for the District of Colorado (2004)
• United States Court of Appeals for the First Circuit (2008)
• United States Court of Appeals for the Third Circuit (2010)
• Connecticut (2013)

**AWARDS**




> " In appointing the Firm Lead Counsel, the Honorable Gary Allen Feess noted our "significant prior experience in securities litigation and complex class actions."
>
> *Zaghian v. THQ, Inc., 2:12-cv-05227-GAF-JEM (C.D. Cal. Sept. 14, 2012)*



# GREGORY M. NESPOLE

**PARTNER**

Gregory Mark Nespole is a Partner of the Firm, having been previously a member of the management committee of one of the oldest firms in New York, as well as chair of that firm's investor protection practice. He specializes in complex class actions, derivative actions, and transactional litigation representing institutional investors such as public and labor pension funds, labor health and welfare benefit funds, and private institutions. Prior to practicing law, Mr. Nespole was a strategist on an arbitrage desk and an associate in a major international investment bank where he worked on structuring private placements and conducting transactional due diligence.

For over twenty years, Mr. Nespole has played a lead role in numerous shareholder securities fraud and merger and acquisition matters and has been involved in recovering multi-million-dollar settlements on behalf of shareholders, including:

- Served as co-chair of a Madoff Related Litigation Task Force that recovered over several hundred million dollars for wronged investors;
- Obtained a $90 million award on behalf of a publicly listed company against a global bank arising out of fraudulently marketed auction rated securities;
- Successfully obtained multi-million-dollar securities litigation recoveries and/or corporate governance reforms from Cablevision, JP Morgan, American Pharmaceutical Partners, Sepracor, and MBIA, among many others.

Mr. Nespole is a member of The Federalist Society, the Federal Bar Council, and the FBC's Securities Litigation Committee. Mr. Nespole's peers have elected him a "Super Lawyer" in the class action field annually since 2009. He is active in his community as a youth sports coach.

**EDUCATION**
• Brooklyn Law School, J.D. (1993)
• Bates College, B.A. (1989)

**ADMISSIONS**
• New York (1994)
• United States District Court for the Southern District of New York (1994)
• United States District Court for the Eastern District of New York (1994)
• United States Court of Appeals for the Second Circuit (1994)
• United States Court of Appeals for the Fourth Circuit (1994)
• United States Court of Appeals for the Fifth Circuit (1994)
• United States District Court for the Northern District of New York (2018)
• United States Court of Appeals for the Eighth Circuit (2019)
• United States Court of Appeals for the Third Circuit (2020)

**AWARDS**







# DANIEL TEPPER
**PARTNER**

Daniel Tepper is a Partner of the Firm with extensive experience in shareholder derivative suits, class actions and complex commercial litigation. Before he joined Levi & Korsinsky, Mr. Tepper was a partner in one of the oldest law firms in New York. He is an active member of the CPLR Committee of the New York State Bar Association and was an early member of its Electronic Discovery Committee. Mr. Tepper has been selected as a New York "Super Lawyer" in 2016 – 2023.

Some of the notable matters where Mr. Tepper had a leading role include:

- **Siegmund v. Bian**, Case No. 16-62506 (S.D. Fla.), achieving an estimated recovery of $29.93 per share on behalf of a class of public shareholders of Linkwell Corp. who were forced to sell their stock at $0.88 per share.
- **In re Platinum-Beechwood Litigation**, Case No. 18-06658 (S.D.N.Y.), achieved dismissal on behalf of an individual investor in Platinum Partners-affiliated investment fund.
- **Lakatamia Shipping Co. Ltd. v. Nobu Su**, Index No. 654860/2016 (Sup. Ct., N.Y. Co. 2016), achieved dismissal on suit attempting to domesticate a $40 million UK judgment in New York State.
- **Zelouf Int'l Corp. v. Zelouf**, 45 Misc.3d 1205(A) (Sup.Ct. N.Y. Co., 2014), representing the plaintiff in an appraisal proceeding triggered by freeze-out merger of closely-held corporation. Achieved a $10 million verdict after eleven day trial, with the Court rejecting a discount for lack of marketability.
- **Sacher v. Beacon Assocs. Mgmt. Corp.**, 114 A.D.3d 655 (2d Dep't 2014), affirming denial of defendants' motion to dismiss shareholder derivative suit by Madoff feeder fund against fund's auditor for accounting malpractice.
- **In re Belzberg**, 95 A.D.3d 713 (1st Dep't 2012), compelling a non-signatory to arbitrate brokerage agreement dispute arising under doctrine of direct benefits estoppel.
- **Estate of DeLeo**, Case No. 353758/A (Surrog. Ct., Nassau Co. 2011), achieving a full plaintiff's verdict after a seven day trial which restored a multi-million dollar family business to its rightful owner.
- **CMIA Partners Equity Ltd. v. O'Neill**, 2010 NY Slip Op 52068(U) (Sup. Ct. N.Y. Co., 2010). Representing the independent directors of a Cayman Islands investment fund, won a dismissal on the pleadings in the first New York State case examining shareholder derivative suits under Cayman Islands law.
- **Hecht v. Andover Assocs. Mgmt. Corp.**, 27 Misc 3d 1202(A) (Sup. Ct. Nassau Co., 2010), aff'd, 114 A.D.3d 638 (2d Dep't 2014). Participated in a $213 million global settlement in the first Madoffrelated lawsuit in the country to defeat a motion to dismiss.

**EDUCATION**
• New York University School of Law, J.D. (2000)
• The University of Texas at Austin, B.A. with Honors (1997), National Merit Scholar

**ADMISSIONS**
• Massachusetts (2001)
• New York (2002)
• United States District Court for the Eastern District of New York (2004)
• United States District Court for the Southern District of New York (2010)
• United States District Court for the Western District of New York (2019)

**AWARDS**

  



# ELIZABETH K. TRIPODI
**PARTNER**

Elizabeth K. Tripodi focuses her practice on shareholder protection, representing investors in securities fraud litigation, corporate derivative litigation, and litigation involving mergers, acquisitions, tender offers, and change-in-control transactions. Ms. Tripodi has been named as a Washington, D.C. "Super Lawyer" in the securities field and was selected as a "Rising Star" by Thomson Reuters for several consecutive years.

Ms. Tripodi's current representations include:

· **In re Tesla, Inc. Securities Litigation**, No. 3:18-cv-04865-EMC (N.D. Cal.) (lead counsel in class action representing Tesla investors who were harmed by Elon Musk's "funding secured" tweet from August 7, 2018)

Ms. Tripodi has played a lead role in obtaining monetary *recoveries* for shareholders in M&A litigation:

· **In re Schuff International, Inc. Stockholders Litigation**, Case No. 10323-VCZ, achieving the largest recovery as a percentage of the underlying transaction consideration in Delaware Chancery Court merger class action history, obtaining an aggregate recovery of more than $22 million -- a gross increase from $31.50 to $67.45 in total consideration per share (a 114% increase) for tendering stockholders
· **In re Bluegreen Corp. S'holder Litig.**, Case No. 502011CA018111 (Circuit Ct. for Palm Beach Cty., FL), creation of a $36.5 million common fund settlement in the wake of a majority shareholder buyout, representing a 25% increase in total consideration to the minority stockholders
· **In re Cybex International S'holder Litig**, Index No. 653794/2012 (N.Y. Sup. Ct. 2014), recovery of $1.8 million common fund, which represented an 8% increase in stockholder consideration in connection with management-led cash-out merger
· **In re Great Wolf Resorts, Inc. S'holder Litig**, C.A. No. 7328-VCN (Del. Ch. 2012), where there was a $93 million (57%) increase in merger consideration
· **Minerva Group, LP v. Keane**, Index No. 800621/2013 (N.Y. Sup. Ct. 2013), settlement in which Defendants increased the price of an insider buyout from $8.40 to $9.25 per share

Ms. Tripodi has played a key role in obtaining injunctive relief while representing shareholders in connection with M&A litigation, including obtaining preliminary injunctions or other injunctive relief in the following actions:

· **In re Portec Rail Products, Inc. S'holder Litig**, G.D. 10-3547 (Ct. Com. Pleas Pa. 2010)
· **In re Craftmade International, Inc. S'holder Litig**, C.A. No. 6950-VCL (Del. Ch. 2011)
· **Dias v. Purches, et al.**, C.A. No. 7199-VCG (Del. Ch. 2012)
· **In re Complete Genomics, Inc. S'holder Litig**, C.A. No. 7888-VCL (Del. Ch. 2012)
· **In re Integrated Silicon Solution, Inc. Stockholder Litig.**, Lead Case No. 115CV279142 (Sup. Ct. Santa Clara, CA 2015)

Prior to joining Levi & Korsinsky, Ms. Tripodi was a member of the litigation team that served as Lead Counsel in, and was responsible for, the successful prosecution of numerous class actions, including: **Rudolph v. UTStarcom** (stock option backdating litigation obtaining a $9.5 million settlement); **Grecian v. Meade Instruments** (stock option backdating litigation obtaining a $3.5 million settlement).

---

### EDUCATION
• American University Washington College of Law, *cum laude* (2006), where she served as Co-Editor in Chief of the Business Law Journal (f/k/a Business Law Brief), was a member of the National Environmental Moot Court team, and interned for Environmental Enforcement Section at the Department of Justice
• Davidson College, B.A., Art History (2000)

### ADMISSIONS
• Virginia (2006)
• United States District Court for the Eastern District of Virginia (2006)
• District of Columbia (2008)
• United States District Court for the District of Columbia (2010)
• United States Court of Appeals for the Seventh Circuit (2018)

### AWARDS






# ADAM M. APTON
**PARTNER**

Adam M. Apton focuses his practice on investor protection. He represents institutional investors and high net worth individuals in securities fraud, corporate governance, and shareholder rights litigation. Prior to joining the firm, Mr. Apton defended corporate clients against complex mass tort, commercial, and products liability lawsuits. Thomson Reuters has selected Mr. Apton to the Super Lawyers "Rising Stars" list every year since 2016, a distinction given to only the top 2.5% of lawyers.

Mr. Apton's past representations and successes include:

· **In re Tesla, Inc. Securities Litigation**, No. 3:18-cv-04865-EMC (N.D. Cal.) (trial counsel in class action representing Tesla investors who were harmed by Elon Musk's "funding secured" tweet from August 7, 2018)
· **In re Navient Corp. Securities Litigation**, 17-8373 (RBK/AMD) (D.N.J.) (lead counsel in class action against leading provider of student loans for alleged false and misleading statements about compliance with consumer protection laws)
· **In re Prothena Corporation Plc Securities Litigation**, 1:18-cv-06425-ALC (S.D.N.Y.) ($15.75 million settlement fund against international drug company for false statements about development of lead biopharmaceutical product)
· **Martin v. Altisource Residential Corporation**, et al., 15-00024 (AET) (GWC) (D.V.I.) ($15. 5 million settlement  fund against residential mortgage company for false statements about compliance with consumer regulations and corporate governance protocols)
· **Levin v. Resource Capital Corp., et al.**, 1:15-cv-07081-LLS (S.D.N.Y.) ($9.5 million settlement in class action over fraudulent statements about toxic mezzanine loan assets)
· **Rux v. Meyer (Sirius XM Holdings Inc.)**, No. 11577 (Del. Ch.) (recovery of $8.25 million against SiriusXM's Board of Directors for engaging in harmful related-party transactions with controlling stockholder, John. C. Malone and Liberty Media Corp.)

---

**PUBLICATIONS**
• "Pleading Section 11 Liability for Secondary Offerings" American Bar Association: *Practice Points* (Jan. 4, 2017)
• "Second Circuit Rules in Indiana Public Retirement System v. SAIC, Inc." American Bar Association: *Practice Points* (Apr. 4, 2016)
• "Second Circuit Applies Omnicare to Statements of Opinion in Sanofi" American Bar Association: *Practice Points* (Mar. 30, 2016)
• "Second Circuit Rules in Action AG v. China North" American Bar Association: *Practice Points* (Sept. 14, 2015)

LEVI&KORSINSKY LLP

**EDUCATION**
• New York Law School, J.D., *cum laude* (2009), where he served as Articles Editor of the New York Law School Law Review and interned for the New York State Supreme Court, Commercial Division
• University of Minnesota, B.A., Entrepreneurial Management & Psychology, With Distinction (2006)


**ADMISSIONS**
• New York (2010)
• United States District Court for the Southern District of New York (2010)
• United States District Court for the Eastern District of New York (2010)
• District of Columbia (2013)
• United States Court of Appeals for the Ninth Circuit (2015)
• United States Court of Appeals for the Second Circuit (2016)
• United States Court of Appeals for the Third Circuit (2016)
• California (2017)
• United States District Court for the Northern District of California (2017)
• United States District Court for the Central District of California (2017)
• United States District Court for the Southern District of California (2017)
• New Jersey (2020)
• United States District Court for the District of New Jersey (2020)


**AWARDS**






# MARK S. REICH

**PARTNER**

Mark Samuel Reich is a Partner of the Firm.  Mark's practice focuses on consumer class actions, including cases involving privacy and data breach issues, deceptive and unfair trade practices, advertising injury, product defect, and antitrust violations.  Mark, who has experience and success outside the consumer arena, also supports the Firm's securities and derivative practices.

Mark is attentive to clients' interests and fosters their activism on behalf of class members.  Clients he has worked with consistently and enthusiastically endorse Mark's work:

 Mark attentively guided me through each stage of the litigation, prepared me for my deposition, and ensured that I and other wronged consumers were compensated and that purchasers in the future could not be duped by the appliance manufacturer's misleading marketing tactics."

*- Katherine Danielkiewicz, Michigan*

 After my experience working with Mark and his colleague, any hesitancy I may have had in the past about leading or participating in a class action has gone away.  Mark expertly countered every roadblock that the corporate defendant tried using to dismiss our case and we ultimately reached a resolution that exceeded my expectations"

*- Barry Garfinkle, Pennsylvania*

Before joining Levi Korsinsky, Mark practiced at the largest class action firm in the country for more than 15 years, including 8 years as a Partner.  Prior to becoming a consumer and shareholder advocate, Mark practiced commercial litigation with an international law firm based in New York, where he defended litigations on behalf of a variety of corporate clients.

Mark has represented investors in securities litigation, devoted to protecting the rights of institutional and individual investors who were harmed by corporate misconduct.  His case work involved **State Street Yield Plus Fund Litig.** ($6.25 million recovery); **In re Doral Fin. Corp. Sec. Litig., SDNY (**$129 million recovery); **Lockheed Martin Corp. Sec. Litig.** ($19.5 million recovery); **Tile Shop Holdings, Inc.** ($9.5 million settlement); **Curran v. Freshpet Inc.** ($10.1 million settlement); **In re Jakks Pacific, Inc.** ($3,925,000 settlement); **Fidelity Ultra Short Bond Fund Litig.** ($7.5 million recovery); and **Cha v. Kinross Gold Corp.** ($33 million settlement).



Never having been involved in a class action, I was uninformed and apprehensive.  Mark and his colleagues not only explained the complexities, but maintained extensive ongoing, communications, involved us fully in all phases of the process; provided appropriate professional counsel and guidance to each participant, and achieved results that satisfied the original goals of the litigation"

*- Fred Sharp, New York*



It was a pleasure being represented by Mark. Above all he was patient throughout the tedious process of litigation. He is a good listener and a good communicator, which enhanced my participation and understanding of the process. He also provided excellent follow up throughout, making the process feel more like a team effort."

*- Louise Miljenovic, New Jersey*

At his prior firm, Mark achieved notable success challenging unfair mergers and acquisitions in courts throughout the country.  Among the M&A litigation that Mark handled or participated in, his notable cases include: **In re Aramark Corp. S'holders Litig.,** where he attained a $222 million increase in consideration paid to shareholders of Aramark and a substantial reduction to management's voting power – from 37% to 3.5% – in connection with the approval of the going-private transaction; **In re Delphi Fin. Grp. S'holders Litig.,** resulting in a $49 million post-merger settlement for Class A Delphi  shareholders; **In re TD Banknorth S'holders Litig.,** where Mark played a significant role in raising the inadequacy of the $3 million initial settlement, which the court rejected as wholly inadequate, and later resulted in a vastly increased $50 million recovery.  Mark has also been part of ERISA litigation teams that led to meaningful results, including **In re Gen. Elec. Co. ERISA Litig.,** which resulting in structural changes to company's 401(k) plan valued at over $100 million, benefiting current and future plan participants.



We contacted Mark about our concerns about our oven's failure to perform as advertised.  He worked with us to formulate a strategy that ultimately led to a settlement that achieved our and others' goals and specific needs."

*- Candace Oliarny, Idaho*



My wife and I never having been involved with a law firm or Class Action had no idea what to expect. Within the first few phone meetings with Mark, we became assured as Mark explained in detail how the process worked, Mark is a great communicator. Mr. Reich is a true professional, his integrity through the years he worked with us was impeccable. Working with Mark was a truly positive experience, and have no reservations if we ever had to call on his services again."

*- Richard Thome, California*

Before joining the Firm, Mark graduated with a Bachelor of Arts degree from Queens College in New York. He earned his Juris Doctor degree from Brooklyn Law School, where he served on the Moot Court Honor Society and The Journal of Law and Policy.

Mark regularly practices in federal and state courts throughout the country and is a member of the bar in New York. He has been recognized for his legal work by being named a New York Metro Super Lawyer by Super Lawyers Magazine every year since 2013.  Mark is active in his local community and has been distinguished for his neighborhood support with a Certificate of Recognition by the Town of Hempstead.

_____

**EDUCATION**
• Brooklyn Law School, J.D. (2000)
• Queens College, B.A., Psychology and Journalism (1997)

**ADMISSIONS**
• New York (2001)
• United States District Court for the Southern District of New York (2001)
• United States District Court for the Eastern District of New York (2001)
• United States District Court for the Northern District of New York (2005)
• United States District Court for the Eastern District of Michigan (2017)

**AWARDS**

  



# GREGORY M. POTREPKA
**PARTNER**

Gregory M. Potrepka is a partner of the Firm in its Connecticut office. Mr. Potrepka's practice specializes in vindicating investor rights, including the interests of shareholders of publicly traded companies. Specifically, Mr. Potrepka has considerable experience prosecuting complex class actions, securities fraud matters, and similar commercial litigation. Mr. Potrepka's role in the Firm's securities litigation practice has significantly contributed to many of the Firm's successes, including the following representative matters:

*In re U.S. Steel Consolidated Cases*, No. 17-579 (W.D. Pa.) ($40 million recovery)
*Rougier v. Applied Optoelectronics, Inc.*, No. 4:17-cv-2399 (S.D. Tex.) ($15.5 million recovery)
*In re Helios and Matheson Analytics, Inc. Securities Litigation*, No. 1:18-cv-06965 (S.D.N.Y.) ($8.25 million recovery)
*In re Aqua Metals Securities Litigation*, 17-cv-07142-HSG (N.D. Cal.) ($7 million recovery)

---

### EDUCATION
• University of Connecticut School of Law, J.D. (2015)
• University of Connecticut Department of Public Policy, M.P.A. (2015)
• University of Connecticut, B.A., Political Science (2010)

### ADMISSIONS
• Connecticut (2015)
• Mashantucket Pequot Tribal Court (2015)
• United States District Court for the District of Connecticut (2016)
• United States District Court for the Southern District of New York (2018)
• United States District Court for the Eastern District of New York (2018)
• United States Court of Appeals for the Third Circuit (2020)



**OUR ATTORNEYS**

Counsel

LEVI&KORSINSKYLLP



# ANDREW E. LENCYK
**COUNSEL**

Andrew E. Lencyk is Counsel to the Firm. Prior to joining the Firm, Mr. Lencyk was a partner in an established boutique firm in New York specializing in securities litigation. He was graduated magna cum laude from Fordham College, New York, with a B.A. in Economics and History, where he was a member of the College's Honors Program, and was elected to Phi Beta Kappa. Mr. Lencyk received his J.D. from Fordham University School of Law, where he was a member of the Fordham Urban Law Journal. He was named to the 2013, 2014, 2015, 2016, 2017, 2018 and 2019 Super Lawyers ®, New York Metro Edition.

Mr. Lencyk has co-authored the following articles for the Practicing Law Institute's Accountants' Liability Handbooks:

- Liability in Forecast and Projection Engagements: Impact of Luce v. Edelstein
- An Accountant's Duty to Disclose Internal Control Weaknesses
- Whistle-blowing: An Accountants' Duty to Disclose A Client's Illegal Acts
- Pleading Motions under the Private Securities Litigation Reform Act of 1995
- Discovery Issues in Cases Involving Auditors (co-authored and appeared in the 2002 PLI Handbook on Accountants' Liability After Enron.)

In addition, he co-authored the following article for the Association of the Bar of the City of New York, Corporate & Securities Law Updates:

- Safe Harbor Provisions for Forward-Looking Statements (co-authored and published by the Association of the Bar of the City of New York, Corporate & Securities Law Updates, Vol. II, May 12, 2000)

Cases in which Mr. Lencyk actively represented plaintiffs include:

- **Kirkland et al. v. WideOpenWest, Inc.**, Index No. 653248/2018 (Sup. Ct, NY County) (substantially denying defendants' motion to dismiss Section 11 and 12(a)(2) claims)
- **In re Community Psychiatric Centers Securities Litigation**, SA CV-91-533-AHS (Eex) (C.D. Cal.) and McGann v. Ernst & Young, SA CV-93-0814-AHS (Eex) (C.D. Cal.)(recovery of $54.5 million against company and its outside auditors)
- **In re Danskin Securities Litigation**, Master File No. 92 CIV. 8753 (JSM) (S.D.N.Y.);
- **In re JWP Securities Litigation**, Master File No. 92 Civ. 5815 (WCC) (S.D.N.Y.) (class recovery of approximately $36 million)

· **In re Porta Systems Securities Litigation**, Master File No. 93 Civ. 1453 (TCP) (E.D.N.Y.);
· **In re Leslie Fay Cos. Securities Litigation**, No. 92 Civ. 8036 (S.D.N.Y.)($35 million recovery)
· **Berke v. Presstek, Inc.**, Civ. No. 96-347-M (MDL Docket No. 1140) (D.N.H.) ($22 million recovery)
· **In re Micro Focus Securities Litigation**, No. C-01-01352-SBA-WDB (N.D. Cal.)
· **Dusek v. Mattel, Inc., et al.**, CV99-10864 MRP (C.D. Cal.) ($122 million global settlement)
· **In re Sonus Networks, Inc. Securities Litigation-II**, No. 06-CV-10040 (MLW) (D. Mass.)
· **In re AIG ERISA Litigation**, No. 04 Civ. 9387 (JES) (S.D.N.Y.) ($24.2 million recovery)
· **In re Mutual Funds Investment Litigation**, MDL No. 1586 (D. Md.)
· **In re Alger, Columbia, Janus, MFS, One Group, Putnam, Allianz Dresdner**, MDL No. 15863-JFM - Allianz Dresdner subtrack (D. Md.)
· **In re Alliance, Franklin/Templeton, Bank of America/Nations Funds and Pilgrim Baxter**, MDL No. 15862-AMD – Franklin/Templeton subtrack (D. Md.)
· **In re AIG ERISA Litigation II**, No. 08 Civ. 5722 (LTS) (S.D.N.Y.) ($40 million recovery); and
· **Flynn v. Sientra, Inc.**, CV-15-07548 SJO (RAOx) (C.D. Cal.) ($10.9 million recovery) (co-lead counsel)
Court decisions in which Mr. Lencyk played an active role on behalf of plaintiffs include:
· **Pub. Empls' Ret. Sys. of Miss. v. TreeHouse Foods**, 2018 U.S. Dist. LEXIS 22717 (N.D. Ill. Feb. 12, 2018) (denying defendants' motion to dismiss in its entirety)
· **Flynn v. Sientra, Inc.**, 2016 U.S. Dist. LEXIS 83409 (C.D. Cal. June 9, 2016) (denying in substantial part defendants' motions to dismiss Section 10(b), Section 11 and 12(b)(2) claims), motion for reconsideration denied, slip op. (C.D. Cal. Aug 12, 2016)
· **In re Principal U.S. Property Account ERISA Litigation**, 274 F.R.D. 649 (S.D. Iowa 2011) (denying defendants' motion to dismiss)
· **In re AIG ERISA Litigation II**, No. 08 Civ. 5722(LTS), 2011 U.S. Dist. LEXIS 35717 (S.D.N.Y. May 31, 2011) (denying in substantial part defendants' motions to dismiss), renewed motion to dismiss denied, slip op. (S.D.N.Y. June 26, 2014)
· **In re Mutual Funds Investment Litigation**, 384 F. Supp. 2d 845 (D. Md. 2005) (denying in substantial part defendants' motions to dismiss), In re Alger, Columbia, Janus, MFS, One Group, Putnam, Allianz Dresdner, MDL No. 15863-JFM - Allianz Dresdner subtrack (D. Md. Nov. 3, 2005) (denying in substantial part defendants' motions to dismiss), and In re Alliance, Franklin/Templeton, Bank of America/Nations Funds and Pilgrim Baxter, MDL No. 15862-AMD – Franklin/Templeton subtrack (D. Md. June 27, 2008) (same)
· **In re AIG ERISA Litigation**, No. 04 Civ. 9387 (JES) (S.D.N.Y. Dec. 12, 2006) (denying defendants' motions to dismiss in their entirety)

- **Dusek v. Mattel, Inc., et al.**, CV99-10864 MRP (C.D. Cal. Dec. 17, 2001) (denying defendants' motions to dismiss Section 14(a) complaint in their entirety)
- **In re Micro Focus Sec. Litig.**, Case No. C-00-20055 SW (N.D. Cal. Dec. 20, 2000) (denying motion to dismiss Section 11 complaint);
- **Zuckerman v. FoxMeyer Health Corp.**, 4 F. Supp.2d 618 (N.D. Tex. 1998) (denying defendants' motion to dismiss in its entirety in one of the first cases decided in the Fifth Circuit under the Private Securities Litigation Reform Act of 1995)
- **In re U.S. Liquids Securities Litigation**, Master File No. H-99-2785 (S.D. Tex. Jan. 23, 2001) (denying motion to dismiss Section 11 claims)
- **Sands Point Partners, L.P., et al. v. Pediatrix Medical Group, Inc., et al.**, Case No. 99-6181-CIV-Zloch (S.D. Fla. June 6, 2000) (denying defendants' motion to dismiss in its entirety)
- **Berke v. Presstek, Inc.**, Civ. No. 96-347-M (MDL Docket No. 1140) (D.N.H. Mar. 30, 1999) (denying defendants' motion to dismiss)
- **Chalverus v. Pegasystems, Inc.**, 59 F. Supp. 2d 226 (D. Mass. 1999) (denying defendants' motion to dismiss);
- **Danis v. USN Communications, Inc.**, 73 F. Supp. 2d 923 (N.D. Ill. 1999) (denying defendants' motion to dismiss)

---

### EDUCATION
- Fordham University School of Law, J.D. (1992)
- Fordham College, B.A. *magna cum laude*, 1988)

### ADMISSIONS
- New York (1993)
- Connecticut (1992)
- United States District Court for the Southern District of New York (2004)
- United States District Court for the Eastern District of New York (2004)
- United States Court of Appeals for the Second Circuit (2015)

### AWARDS






**OUR ATTORNEYS**

Associates

LEVI&KORSINSKYLLP



# RACHEL BERGER
**ASSOCIATE**

Rachel Berger is an Associate with the Firm's Connecticut office.  Her practice focuses on prosecuting securities fraud class actions on behalf of aggrieved investors.

Prior to joining Levi & Korsinsky, Ms. Berger practiced securities litigation with another top New York class action firm, where she represented classes of aggrieved shareholders and cryptocurrency purchasers against prominent defendants, including multiple Fortune 500 companies.

While in law school, Ms. Berger interned with a leading ESG institute, focusing on the intersection of ESG and securities law.  She was also a member of the Fordham Urban Law Journal, the Fordham Mediation and Tax Clinics, and the Immigration Advocacy Project.  Ms. Berger received the Paul R. Brenner Scholarship Award, as well as the Archibald R. Murray Public Service Award, *cum laude*, in recognition of her significant pro bono work.

Ms. Berger practices remotely from her home in St. Louis, Missouri.

---

**EDUCATION**
• Fordham University School of Law, J.D. (2019)
• Stern College for Women, Yeshiva University, B.A. Economics (2015)

**ADMISSIONS**
• New York (2020)
• United States District Court for the Southern District of New York (2020)



# JORDAN A. CAFRITZ
**ASSOCIATE**

Jordan Cafritz is an Associate with the Firm's Washington, D.C. office. While attending law school at American University he was an active member of the American University Business Law Review and worked as a Rule 16 attorney in the Criminal Justice Defense Clinic. After graduating from law school, Mr. Cafritz clerked for the Honorable Paul W. Grimm in the U.S. District Court for the District of Maryland.

---

### EDUCATION
• American University Washington College of Law, J.D. (2014)
• University of Wisconsin-Madison, B.A., Economics & History (2010)

### ADMISSIONS
• Maryland (2014)
• District of Columbia (2018)

LEVI&KORSINSKY LLP



# MORGAN EMBLETON
**ASSOCIATE**

Morgan M. Embleton is an associate in the Firm's Connecticut office. Since 2018, Ms. Embleton has focused her practice on federal securities class actions and protecting the interests of shareholders of publicly traded companies.

Prior to that, Ms. Embleton litigated matters arising under the False Claims Act, Jones Act, Longshore Harbor Workers' Compensation Act, Louisiana Whistleblower Act, and Louisiana Environmental Whistleblower Act, as well as pharmaceutical mass torts and products liability claims. Ms. Embleton has extensive experience prosecuting securities fraud matters, complex class actions, and multidistrict litigations.

Ms. Embleton received her J.D. and Environmental Law Certificate from Tulane University Law School in 2014. During her time in law school, Ms. Embleton was a student attorney in the Tulane Environmental Law Clinic, a member of the Journal of Technology and Intellectual Property, and the Assistant Director of Research and Development for the Durationator.

---

**EDUCATION**
• Tulane University Law School, J.D. and Environmental Law Certificate (2014)
• University of Colorado at Boulder, B.A., *cum laude*, Sociology (2010)

**ADMISSIONS**
• Louisiana (2014)
• United States District Court for the Eastern District of Louisiana (2015)
• United States District Court for the Middle District of Louisiana (2016)
• United States District Court for the Western District of Louisiana (2016)
• United States Court of Federal Claims (2016)
• United States Court of Appeals for the Fifth Circuit (2016)
• United States Court of Appeals for the Ninth Circuit (2017)
• United States District Court for the Eastern District of Michigan (2020)



# NOAH GEMMA
**ASSOCIATE**

Noah Gemma worked previously as a summer associate at a boutique commercial litigation firm. There, Mr. Gemma drafted briefs and other legal memoranda on behalf of national and closely held corporations in complex federal and state court litigation. In particular, Mr. Gemma helped the firm: (i) win multiple motions to dismiss on behalf of a national bank and a national bonding company in federal court cases involving alleged fraud and other alleged improprieties; (ii) settle an avoidable preference action on behalf of a national hauling company in a federal bankruptcy proceeding for a small fraction of the alleged damages; (iii) settle a negligence action on behalf of a court appointed fiduciary against officers of a defunct company and its insurance carrier on advantageous terms; and (iv) secure a favorable decision on behalf of a national bonding company before the state supreme court.

Mr. Gemma also served as a judicial intern for the Honorable Judge Bruce M. Selya in the United States Court of Appeals for the First Circuit and for the Honorable Judge Virginia M. Hernandez Covington in the United States District Court for the Middle District of Florida. Using his experience representing the interests of national and closely held corporations to analyze and assess potential cases of corporate impropriety, Mr. Gemma currently prosecutes corporate and director malfeasance through the preparation and filing of shareholder mergers and acquisitions actions and corporate governance litigation.

---

### EDUCATION
• Georgetown University Law Center, J.D., Editor for *The Georgetown Law Journal* (2021)
• Providence College, B.A. (2018)

### ADMISSIONS
• Rhode Island (2021)
• District of Columbia (2022)

LEVI&KORSINSKY LLP



# DEVYN R. GLASS
**ASSOCIATE**

Devyn R. Glass currently focuses her practice on representing investors in federal securities fraud litigation.

Prior to joining the firm, Ms. Glass gained substantial experience at a national boutique firm specializing in complex litigation across a variety of practice areas representing both plaintiffs and defendants. Since 2017, Ms. Glass has focused her practice on consumer and shareholder protection, litigating numerous class action lawsuits across the country that involved data privacy and data breach, deceptive and unfair trade practices, and securities fraud.

At her prior firms, Ms. Glass played a pivotal role in obtaining monetary recoveries and/or injunctive relief on behalf of shareholders and consumers. Notable cases include: *Lowry v. RTI Surgical Holdings, Inc. et al.*, (D. Ill.) (obtaining $10.5 million on behalf of a shareholder class alleging violations of the federal securities laws); *In re Google Plus Profile Litigation*, (N.D. Cal.) (obtaining $7.5 million on behalf of a consumer class exposed to a years-long data breach); and *Barrett v. Pioneer Natural Resources USA, Inc.*, (D. Colo.) (obtaining $500,000 on behalf of more than 8,000 current and former 401(k) plan participants alleging violations of the Employee Retirement Income Security Act).

---

### EDUCATION
• Loyola University College of Law, New Orleans, J.D., *cum laude* (2016), where she received a Certificate of Concentration in Law, Technology and Entrepreneurship, served as a member of the *Loyola Journal of Public Interest Law*, and interned for the Louisiana Second Circuit Court of Appeals
• Louisiana Tech University, B.A., *cum laude* (2013), Political Science, minor in English

### ADMISSIONS
• New York (2017)
• District of Columbia (2017)
• United States District Court District of Columbia (2018)
• United States District Court District of Colorado (2018)
• United States Court of Appeals for the Ninth Circuit (2022)

LEVI&KORSINSKYLLP



# GARY ISHIMOTO
**ASSOCIATE**

Gary Ishimoto is an Associate working remotely with Levi and Korsinsky's Consumer Litigation Team. During law school, he worked at the Small Business Law Clinic helping to draft incorporation papers, non-compete clauses, IP assignments, board consent, and stock purchase agreements for start-up businesses. He also interned for the Rossi Law Group.

___

### EDUCATION
• Pepperdine School of Law, J.D. (2020)
• California State University, Northridge, B.S. (2013)

### ADMISSIONS
• Massachusetts (2021)
• New Hampshire (2022)



# DAVID C. JAYNES
**ASSOCIATE**

David C. Jaynes focuses his practice on investor protection and securities fraud litigation. In addition to his law degree, Mr. Jaynes has graduate degrees in business administration and finance. Prior to joining the firm, David worked in the Enforcement Division of the U.S. Securities and Exchange Commission in the Salt Lake Regional Office as part of the Student Honors Program. Mr. Jaynes began his career as a prosecutor and has significant trial experience.

While at Levi & Korsinsky, Mr. Jaynes has actively represented plaintiffs in the following securities class actions:
- *In re U. S. Steel Consolidated Cases*, Civil Action No. 17-579 (W.D. Pa.)
- *Stein v. U.S. Xpress Enterprises, Inc.*, et al., 1:19-cv-98-TRM-CHS (E.D. Tenn.)
- *John P. Norton, On Behalf Of The Norton Family Living Trust UAD 11/15/2002 v. Nutanix, Inc. et al*, 3:21-cv-04080 (N.D. Cal.)

Mr. Jaynes has also had a role in litigating the following securities actions:
- *Ferraro Family Foundation, Inc. v. Corcept Therapeutics Incorporated*, 5:19-cv-1372-LHK (N.D. Cal.)
- *The Daniels Family 2001 Revocable Trust v. Las Vegas Sands Corp., et al.*, 1:20-cv-08062-JMF (D. Nev.)
- *Dan Kohl v. Loma Negra Compania Industrial Argentina Sociedad Anonima, et al.*, Index No. 653114/2018 (Sup. Ct., County of New York)

———————

### EDUCATION
- University of Utah, M.S., Finance (2020)
- University of Utah, M.B.A (2020)
- The George Washington University Law School, J.D. (2015)
- Brigham Young University, B.A., Middle East Studies and Arabic (2009)

### ADMISSIONS
- Maryland (2015)
- Utah (2016)
- United States District Court for the District of Utah (2016)
- California (2021)
- United States District Court for the Northern District of California (2022)
- United States District Court for the Central District of California (2023)



# ALEXANDER KROT
**ASSOCIATE**

### EDUCATION
• American University, Kogod School of Business, M.B.A. (2012)
• Georgetown University Law Center, LL.M., Securities and Financial Regulation, With Distinction (2011)
• American University Washington College of Law, J.D. (2010)
• The George Washington University, B.B.A., Finance and International Business (2003)

### ADMISSIONS
• Maryland (2011)
• District of Columbia (2014)
• United States District Court for the District of Colorado (2015)
• United States Court of Appeals for the Tenth Circuit (2016)
• United States District Court for the Eastern District of Wisconsin (2017)
• United States Court of Appeals for the Third Circuit (2018)



# NICHOLAS R. LANGE
**ASSOCIATE**

Based in Chicago, Illinois, Nicholas R. Lange is a remote member of the Firm's Connecticut office, where he focuses his practice in investor fraud and federal securities litigation.  Prior to joining the Firm, Nicholas specialized in complex class action litigation and multi-district proceedings, including participation in some of the country's largest actions, with a focus in technology and consumer privacy.

As recognition for his class action work, Nicholas R. Lange received the Super Lawyers Rising Star award for 2023 (Class Action/Mass Torts).

———————

**EDUCATION**
• DePaul University College of Law, J.D. (2014)
• University of Illinois and Urbana/Champaign, B.A. (2011)

**ADMISSIONS**
• Illinois (2014)
• United States District Court for the Northern District of Illinois  (2016)
• United States District Court for the Southern District of Illinois (2020)
• United States District Court for the District of Colorado (2020)

**AWARDS**

 



# COURTNEY E. MACCARONE
**ASSOCIATE**

Courtney E. Maccarone focuses her practice on prosecuting consumer class actions. Prior to joining Levi & Korsinsky, Ms. Maccarone was an associate at a boutique firm in New York specializing in class action litigation. While attending Brooklyn Law School, Ms. Maccarone served as the Executive Symposium Editor of the Brooklyn Journal of International Law and was a member of the Moot Court Honor Society. Her note, "Crossing Borders: A TRIPS-Like Treaty on Quarantines and Human Rights" was published in the Spring 2011 edition of the Brooklyn Journal of International Law.

Ms. Maccarone also gained experience in law school as an intern to the Honorable Martin Glenn of the Southern District of New York Bankruptcy Court and as a law clerk at a New York City-based class action firm. Ms. Maccarone has been recognized as a Super Lawyer "Rising Star" for the New York Metro area every year since 2014.

---

### EDUCATION
• Brooklyn Law School, J.D., *magna cum laude* (2011)
• New York University, B.A., *magna cum laude* (2008)

### ADMISSIONS
• New Jersey (2011)
• New York (2012)
• United States District Court for the District of New Jersey (2012)
• United States District Court for the Eastern District of New York (2012)
• United States District Court for the Southern District of New York (2012)

### PUBLICATIONS
• "Crossing Borders: A TRIPS-Like Treaty on Quarantines and Human Rights," published in the Spring 2011 edition of the
  *Brooklyn Journal of International Law*

### AWARDS



LEVI&KORSINSKY LLP



# ADAM C. MCCALL
**ASSOCIATE**

Mr. McCall is an Associate with the Firm.  Prior to joining Levi & Korsinsky, Mr. McCall was an extern at the Securities and Exchange Commission's Division of Corporate Finance.

---

## EDUCATION
• Georgetown University Law Center, LL.M., Securities and Financial Regulation (2015)
• California Western School of Law, J.D., *cum laude* (2013)
• Santa Clara University, Certificate of Advanced Accounting Proficiency (2010)
• University of Southern California, B.A. Economics (2008)

## ADMISSIONS
• California (2014)
• United States District Court for the Central District of California (2015)
• United States District Court for the Eastern District of California (2015)
• United States District Court for the Northern District of California (2015)
• United States District Court for the Southern District of California (2015)
• United States Court of Appeals for the Ninth Circuit (2016)
• District of Columbia (2017)



# AMANDA MILLER
**ASSOCIATE**

Amanda Miller is an Associate in Levi and Korsinsky's Stamford office where she focuses her practice on federal securities litigation.

Prior to joining Levi & Korsinsky, Amanda gained substantial experience at a boutique Boston firm where she was trained in securities and business litigation.

Amanda received her Juris Doctorate degree from Suffolk University Law School with an International Law concentration with Distinction and was selected to join the International Legal Honor Society of Phi Delta Phi. While in law school, Amanda focused her legal education on securities law & regulation, international investment law & arbitration, and business law.

---

**EDUCATION**
• Suffolk University Law School, J.D. (2021)
• Colorado State University, B.S. (2011)

**ADMISSIONS**
• Massachusetts (2021)
• United States District Court for the District of Massachusetts (2022)



# MELISSA MULLER
**ASSOCIATE**

Melissa Muller is an Associate with the Firm's New York Office focusing on federal securities litigation. Ms. Muller previously worked as a paralegal for the New York office while attending law school.

---

### EDUCATION
• New York Law School, J.D., Dean's Scholar Award, member of the Dean's Leadership Council (2018)
• John Jay College of Criminal Justice, B.A. (2013), *magna cum laude*

### ADMISSIONS
• New York (2019)
• United States District Court for the Southern District of New York (2020)



# CINAR ONEY
**ASSOCIATE**

Cinar Oney is an Associate in Levi & Korsinsky's New York office. His practice focuses on investigation and analysis of various forms of corporate misconduct, including excessive compensation, insider trading, unfair self-dealing, and corporate waste. He develops litigation strategies through which shareholders can pursue recoveries.

Prior to joining Levi & Korsinsky, Mr. Oney practiced with top firms in Turkey, where he represented shareholders, corporations, and governmental entities in commercial disputes and transactional matters.

---

### EDUCATION
• Fordham University School of Law, J.D. (2019)
• International University College of Turin, LL.M. (2014)
• Istanbul University Faculty of Law, Undergraduate Degree in Law (2011)

### ADMISSIONS
• New York (2020)

### PUBLICATIONS
•  *FinTech Industrial Banks and Beyond: How Banking Innovations Affect the Federal Safety Net*, 23 FORDHAM J. CORP. & FIN. L. 541 (2018)



# BRIAN STEWART
**ASSOCIATE**

Brian Stewart is an Associate with the Firm practicing in the Washington, D.C. office. Prior to joining the firm, Mr. Stewart was an associate at a small litigation firm in Washington D.C. and a regulatory analyst at the Financial Industry Regulatory Authority (FINRA). During law school, he interned for the Enforcement Divisions of the SEC and CFPB.

### EDUCATION
• American University Washington College of Law, J.D. (2012)
• University of Washington, B.S., Economics and Mathematics (2008)

### ADMISSIONS
• Maryland (2012)
• District of Columbia (2014)
• United States District Court for the District of Maryland (2017)
• United States District Court for the District of Colorado (2017)



# CORREY A. SUK
**ASSOCIATE**

Correy A. Suk is an experienced litigator with a focus on shareholder derivative suits, class actions, and complex commercial litigation. Correy began her career with the Investor Protection Bureau of the Office of the New York State Attorney General and spent four years prosecuting shareholder derivative actions and securities fraud litigation at one of the oldest firms in the country. Prior to joining Levi & Korsinsky, Correy represented both individuals and corporations in complex business disputes at a New York litigation boutique. Correy's unflappable disposition and composure reflect a pragmatic approach to both litigation and negotiation. She thrives under pressure and serves as an aggressive advocate for her clients in the most high-stakes situations. Correy has been recognized as a Super Lawyers Rising Star every year since 2017.

### EDUCATION
• The Ohio State University Moritz College of Law, J.D. (2011)
• Georgetown University, B.S.B.A. (2008)

### ADMISSIONS
• New Jersey (2011)
• New York (2012)
• United States District Court for the Southern District of New York (2015)
• United States District Court for the Eastern District of New York (2015)
• United States District Court for the District of New Jersey (2016)

### PUBLICATIONS
• "Unsafe Sexting: The Dangerous New Trend and the Need for Comprehensive Legal Reform," 9 Ohio St. J. Crim. L. 405 (2011)

### AWARDS






# COLE VON RICHTHOFEN
**ASSOCIATE**

Cole von Richthofen is an Associate in Levi & Korsinsky's Connecticut office. As a law student, he interned with the honorable Judge Thomas Farrish in the District of Connecticut's Hartford courthouse with an emphasis on settlements. He has also interned with the Office of the Attorney General for the State of Connecticut in the Employment Rights Division. While attending law school, Cole served as an Executive Editor of the Connecticut Public Interest Law Journal and as a member of the Connecticut Moot Court Board.

---

**EDUCATION**
• University of Connecticut School of Law, J.D. (2022)
• University of Connecticut, B.S., Business & Marketing (2015)

**ADMISSIONS**
• Connecticut (2022)



# DANIEL WEISS
**ASSOCIATE**

Daniel Weiss is an associate in the firm's Stamford, Connecticut office. His practice focuses on securities class actions, representing investors who were defrauded by false or misleading statements or omissions made to the public by companies and their officers. Daniel believes investors have a right to truthful and accurate information when making investment decisions and is deeply committed to protecting the marketplace from financial manipulation.

While attending law school, Daniel served as a Senior Staff Member of the law journal, *The Tax Lawyer*. Daniel was selected as a Super Lawyer "Rising Star" for the New York Metro area in 2022.

_____

### EDUCATION
• Georgetown University Law Center, J.D. (2012)
• Syracuse University, B.A. (2007)

### ADMISSIONS
• New Jersey (2012)
• New York (2013)
• United States District Court for the Southern District of New York (2014)
• United States District Court for the Eastern District of New York (2014)
• United States District Court for the Eastern District of Michigan (2017)

### AWARDS



LEVI&KORSINSKY LLP



# MAX WEISS
**ASSOCIATE**

Max Weiss focuses his practice on investor protection and securities fraud litigation. He is proficient in litigation, legal research, motion practice, case evaluation and settlement negotiation. Prior to joining the firm, Max practiced in the general liability area and has extensive experience litigating high-exposure personal injury claims in New York State and federal trial and appellate courts. While in law school, Max gained experience helping pro se debtors prepare and file Chapter 7 and Chapter 13 petitions with the New York Legal Assistance Group **(NYLAG)** Bankruptcy Project and served as an intern to the Honorable Sean Lane of the Southern District of New York Bankruptcy Court.

---

### EDUCATION
• St. John's School of Law, J.D. (2018), where he served as the Senior Executive Editor of the Journal of Civil Rights & Economic Development
• Colgate University, B.A., Political Science (2011)

### ADMISSIONS
• New York (2019)
• United States District Court for the Southern District of New York (2019)
• United States District Court for the Eastern District of New York (2019)



**OUR ATTORNEYS**

# Law Clerks



# AARON PARNAS
**LAW CLERK**

Aaron Parnas is a law clerk in the firm's Washington, D.C. office. Prior to joining Levi & Korsinsky, Aaron served as a law clerk for the Honorable Sheri Polster Chappell in the United States District Court for the Middle District of Florida.

While in law school, Aaron was a student attorney for the Criminal Appeals and Post-Conviction Series Clinic along with the Vaccine Injury Litigation Clinic, where he litigated matters in front of the Maryland Court of Special Appeals and the Court of Federal Claims, respectively. As a result of his successes, Aaron was named the top advocate in his graduating class and received the Graduation Award for Excellence in Pre-Trial and Trial Advocacy.

---

### EDUCATION
• The George Washington University Law School, with Honors (2020), where he served as the Managing Editor, Vol. 52 of *The George Washington International Law Review*
• Florida Atlantic University, B.A., Political Science and Criminal Justice, with Honors (2017)

### ADMISSIONS
• Florida (2020)
• United States District Court for the Southern District of Florida (2021)

# EXHIBIT "B"

**History**  Pomerantz LLP is one of the most respected law firms in the United States dedicated to representing investors. The Firm was founded in 1936 by the late Abraham L. Pomerantz, widely regarded as a legal pioneer and "dean" of the plaintiffs' securities bar, who helped secure the right of investors to bring class and derivative actions.

**Leadership**  Today, led by Managing Partner Jeremy A. Lieberman, the Firm maintains the commitments to excellence and integrity passed down by Abe Pomerantz.

**Results**  Pomerantz achieved a historic $3 billion settlement for defrauded investors in 2018 as well as precedent-setting legal rulings, in *In re Petrobras Securities Litigation*. Pomerantz consistently shapes the law, winning landmark decisions that expand and protect investor rights and initiating historic corporate governance reforms.

**Global Expertise**  The Firm has offices in Paris, France, London, the UK, and Tel Aviv, Israel. Pomerantz also partners with an extensive network of prominent law firms across the globe to assist clients, wherever they are situated, in recovering monies lost due to corporate misconduct and securities fraud. Our team of attorneys is collectively fluent in English, Arabic, Cantonese, Mandarin, French, Hebrew, Italian, Portuguese, Romanian, Russian, Spanish, and Ukrainian.

**Practice**  Pomerantz protects, expands, and vindicates shareholder rights through our securities litigation services and portfolio monitoring service. The Firm represents some of the largest pension funds, asset managers and institutional investors around the globe, monitoring assets of over $9 trillion. Pomerantz's practice includes corporate governance, antitrust, and strategic consumer litigation.

**Recognition**  Pomerantz has been a Legal 500 Tier 1 Firm since 2021. In 2020 Pomerantz was named Plaintiff Firm of the Year by Benchmark Litigation, ranked a top plaintiff firm by Chambers USA and The Legal 500, and honored with European Pensions' Thought Leadership Award. In 2019, Jeremy Lieberman was named Plaintiff Attorney of the Year by Benchmark Litigation, and Pomerantz received Benchmark Litigation's National Case Impact Award for *In re Petrobras Securities Litig*. In 2018, Pomerantz was a Law360 Securities Practice Group of the Year and a finalist for the *National Law Journal*'s Elite Trial Lawyers award; Jeremy Lieberman was named a Law360 Titan of the Plaintiffs' Bar and a Benchmark Litigation Star. Among other accolades, many of our attorneys have been chosen by their peers, year after year, as Super Lawyers® Top-Rated Securities Litigation Attorneys and Rising Stars.

Pomerantz is headquartered in New York City, with offices in
Chicago, Los Angeles, London, Paris, and Tel Aviv.

# Securities Litigation

## Significant Landmarks

### *In re Petrobras Sec. Litig.*, No. 14-cv-9662 (S.D.N.Y. 2018)

On January 3, 2018, in a significant victory for investors, Pomerantz, as sole Lead Counsel for the class, along with Lead Plaintiff Universities Superannuation Scheme Limited ("USS"), achieved a historic $2.95 billion settlement with Petróleo Brasileiro S.A. ("Petrobras") and its related entity, Petrobras International Finance Company, as well as certain of Petrobras' former executives and directors. On February 2, 2018, Pomerantz and USS reached a $50 million settlement with Petrobras' auditors, PricewaterhouseCoopers Auditores Independentes, bringing the total recovery for Petrobras investors to $3 billion.

This is not only the largest securities class action settlement in a decade but is the largest settlement ever in a securities class action involving a foreign issuer, the fifth-largest securities class action settlement ever achieved in the United States, the largest securities class action settlement achieved by a foreign Lead Plaintiff, and the largest securities class action settlement in history not involving a restatement of financial reports.

The class action, brought on behalf of all purchasers of common and preferred American Depositary Shares ("ADSs") on the New York Stock Exchange, as well as purchasers of certain Petrobras debt, principally alleged that Petrobras and its senior executives engaged in a multi-year, multi-billion-dollar money-laundering and bribery scheme, which was concealed from investors.

In addition to the multi-billion-dollar recovery for defrauded investors, Pomerantz secured precedent-setting decisions when the Second Circuit Court of Appeals squarely rejected defendants' invitation to adopt the heightened ascertainability requirement promulgated by the Third Circuit, which would have required plaintiffs to demonstrate that determining membership in a class is "administratively feasible." The Second Circuit's rejection of this standard is not only a victory for bondholders in securities class actions, but also for plaintiffs in consumer fraud class actions and other class actions where documentation regarding Class membership is not readily attainable. The Second Circuit also refused to adopt a requirement, urged by defendants, that all securities class action plaintiffs seeking class certification prove through direct evidence (i.e., an event study) that the prices of the relevant securities moved in a particular direction in response to new information.

### *Pirnik v. Fiat Chrysler Automobiles N.V. et al.*, No. 1:15-cv-07199-JMF (S.D.N.Y)

In August 2019, Pomerantz, as Lead Counsel, achieved final approval of a $110 million settlement for the Class in this high-profile securities class action. Plaintiffs alleged that Fiat Chrysler concealed from investors that it improperly outfitted its diesel vehicles with "defeat device" software designed to cheat NOx emissions regulations in the U.S. and Europe, and that regulators had accused Fiat Chrysler of violating the emissions regulations. The *Fiat Chrysler* recovery provides the class of investors with as much as 20% of recoverable damages—an excellent result when compared to historical statistics in class action settlements, where typical recoveries for cases of this size are between 1.6% and 3.3%.

In addition to creating precedent-setting case law in successfully defending the various motions to dismiss the *Fiat Chrysler* litigation, Pomerantz also significantly advanced investors' ability to obtain critically important discovery from regulators that are often at the center of securities actions. During the litigation, Pomerantz sought the deposition of a former employee of the National Highway Traffic Safety Administration ("NHTSA"). The United States Department of Transportation ("USDOT"), like most federal agencies, has enacted a set of regulations — known as "Touhy regulations" — governing when its employees may be called by private parties to testify in court. On their face, USDOT's regulations apply to both "current" and "former" employees. In response to Pomerantz's request to depose a former employee of NHSTA that interacted with Fiat Chrysler, NHTSA denied the request, citing the Touhy regulation. Despite the widespread application, and assumed appropriateness, of applying these regulations to former employees throughout the case law, Pomerantz filed an action against USDOT and NHTSA, arguing that the statute pursuant to which the Touhy regulations were enacted speaks only of "employees," which should be interpreted to apply only to current employees. The court granted summary judgment in favor of Pomerantz's clients, holding that "USDOT's Touhy regulations are unlawful to the extent that they apply to former employees." This victory will greatly shift the discovery tools available, so that investor plaintiffs in securities class actions against highly regulated entities (for example, companies subject to FDA regulations) will now be able to depose former employees of the regulators that interacted with the defendants during the class period to get critical testimony concerning the company's violations and misdeeds.

### *Strougo v. Barclays PLC,* No. 14-cv-5797 (S.D.N.Y.)

Pomerantz, as sole Lead Counsel in this high-profile securities class action, achieved a $27 million settlement for defrauded investors in 2019. Plaintiffs alleged that defendants concealed information and misled investors regarding its management of its "LX" dark pool, a private trading platform where the size and price of the orders are not revealed to other participants. On November 6, 2017, the Second Circuit affirmed former District Court Judge Shira S. Scheindlin's February 2, 2016, Opinion and Order granting plaintiffs' motion for class certification in the case.

The Court of Appeals in *Barclays* held that direct evidence of price impact is not always necessary to demonstrate market efficiency, as required to invoke the *Basic* presumption of reliance, and was not required here. Significantly, when handing down its decision, the Second Circuit cited its own *Petrobras* decision, stating, "We have repeatedly—and recently—declined to adopt a particular test for market efficiency." *Waggoner v. Barclays PLC,* 875 F.3d 79, 94 (2d Cir. 2017).

The court held that defendants seeking to rebut the *Basic* presumption of reliance on an efficient market must do so by a preponderance of the evidence. The court further held that it would be inconsistent with *Halliburton II* to "allow [ ] defendants to rebut the *Basic* presumption by simply producing *some* evidence of market inefficiency, but not demonstrating its inefficiency to the district court." *Id.* at 100. The court rejected defendants' contention that Federal Rule of Evidence 301 applies and made clear that the *Basic* presumption is a judicially created doctrine and thus the burden of persuasion properly shifts to defendants. The court thus confirmed that plaintiffs have no burden to show price impact at the class certification stage—a significant victory for investors.

### *In re Yahoo! Inc. Sec. Litig.*, No. 17-cv-00373 (N.D. Cal.)

On September 10, 2018, Pomerantz, as Co-Lead Counsel, achieved final approval of a historic $80 million settlement for the Class in this ground-breaking litigation. The complaint, filed in January 2017, alleged

---

that the internet giant intentionally misled investors about its cybersecurity practices in the wake of massive data breaches in 2013 and 2014 that compromised the personal information of all 3 billion Yahoo customers. Plaintiffs allege that Yahoo violated federal securities laws by failing to disclose the breaches, which caused a subsequent stock price dive. This represents the first significant settlement to date of a securities fraud class action filed in response to a data breach.

As part of due diligence, Pomerantz located critical evidence showing that Yahoo's management had concurrent knowledge of at least one of the data breaches. Importantly, these records showed that Yahoo's Board of Directors, including Defendant CEO Marissa Mayer, had knowledge of and received repeated updates regarding the breach. In its public filings, Yahoo denied that the CEO knew about the breach, and the CEO's knowledge was a key issue in the case.

After receiving Plaintiffs' opposition to the motion to dismiss, but before the federal District Court ruled on the motion, the case settled for $80 million. This early and large settlement reflects the strength of the complaint's allegations.

### *Kaplan v. S.A.C. Capital Advisors, L.P*, No. 12-cv-9350 (S.D.N.Y.)

In May 2017, Pomerantz, as Co-Lead Counsel, achieved final approval of a $135 million recovery for the Class in this securities class action that stemmed from what has been called the most profitable insider trading scheme in U.S. history. After years of vigorous litigation, billionaire Steven A. Cohen's former hedge fund, S.A.C. Capital Advisors LP, agreed to settle the lawsuit by investors in the drug maker Elan Corp, who said they lost money because of insider trading by one of his portfolio managers.

### *In re BP p.l.c. Securities Litigation*, MDL No. 2185 (S.D. Tex.)

Beginning in 2012, Pomerantz pursued ground-breaking individual lawsuits for institutional investors to recover losses in BP p.l.c.'s London-traded common stock and NYSE-traded American Depository Shares (ADSs) arising from its 2010 Gulf of Mexico oil spill. Over nine years, Pomerantz briefed and argued every significant dispute on behalf of 125+ institutional plaintiffs, successfully opposed three motions to dismiss, won other contested motions, oversaw e-discovery of 1.75 million party and non-party documents, led the Individual Action Plaintiffs Steering Committee, served as sole Liaison with BP and the Court, and worked tirelessly with our clients' outside investment management firms to develop crucial case evidence.

A threshold challenge was how to litigate in U.S. court given the U.S. Supreme Court's decision in *Morrison v. National Australia Bank*, 130 S. Ct. 2869 (2010), which barred recovery for losses in foreign-traded securities under the U.S. federal securities laws. In 2013 and 2014, Pomerantz won significant victories in defeating BP's *forum non conveniens* arguments, which sought to force dismissal of the English common law claims from U.S. courts for refiling in English courts, first as regards U.S. institutions and, later, foreign institutions. Pomerantz also defeated BP's attempt to extend the U.S. federal Securities Litigation Uniform Standards Act of 1998 to reach, and dismiss, these foreign law claims in deference to non-existent remedies under the U.S. federal securities laws. These rulings paved the way for 125+ global institutional investors to pursue their claims and marked the first time, post-*Morrison*, that U.S. and foreign investors, pursuing foreign claims seeking recovery for losses in a foreign company's foreign-traded securities, did so in a U.S. court. In 2017, Pomerantz earned an important victory that expanded investor rights under English law, permitting certain BP investors to pursue a

"holder claim" theory seeking to recover losses in securities held, rather than purchased anew, in reliance on the alleged fraud - a theory barred under the U.S. federal securities laws since *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975). This win was significant, given the dearth of precedent from anywhere recognizing the viability of a "holder claim" under any non-U.S. law and holding that a given plaintiff alleged facts sufficiently evidencing reliance and documenting the resulting retention of an identifiable amount of shares on a date certain.

In Q1 2021, Pomerantz secured confidential, favorable monetary settlements from BP for our nearly three dozen clients, including public and private pension funds, money management firms, partnerships, and investment trusts from the U.S., Canada, the U.K., France, the Netherlands, and Australia.

### *In re Comverse Technology, Inc. Sec. Litig.,* No. 06-CV-1825 (E.D.N.Y.)

In June 2010, Judge Nicholas G. Garaufis of the U.S. District Court for the Eastern District of New York granted final approval of a $225 million settlement proposed by Pomerantz and Lead Plaintiff the Menora Group, with Comverse Technology and certain of Comverse's former officers and directors, after four years of highly contested litigation. The *Comverse* settlement is one of the largest securities class action settlements reached since the passage of the Private Securities Litigation Reform Act ("PSLRA").[1] It is the second-largest recovery in a securities litigation involving the backdating of options, as well as one of the largest recoveries – $60 million – from an individual officer-defendant, Comverse's founder and former CEO, Kobi Alexander.

### Other significant settlements

Even before the enactment of the PSLRA, Pomerantz represented state agencies in securities class actions, including the Treasurer of the Commonwealth of Pennsylvania (recovered $100 million) against a major investment bank. *In re Salomon Brothers Treasury Litig.*, No. 91-cv-5471 (S.D.N.Y.).

Pomerantz recovered $50 million for the Treasurer of the State of New Jersey and several New Jersey pension funds in an individual action. This was a substantially higher recovery than what our clients would have obtained had they remained in a related federal class action. *Treasurer of State of New Jersey v. AOL Time Warner, Inc.* (N.J. Super. Ct. Law Div., Mercer Cty.).

Pomerantz has litigated numerous cases for the Louisiana School Employees' Retirement System. For example, as Lead Counsel, Pomerantz recovered $74.75 million in a securities fraud class action against Citigroup, its CEO Sanford Weill, and its now infamous telecommunications analyst Jack Grubman. *In re Salomon Analyst AT&T Litig.*, No. 02-cv-6801 (S.D.N.Y.) Also, the Firm played a major role in a complex antitrust and securities class action which settled for over $1 billion. *In re NASDAQ Market-Makers Antitrust Litig.*, MDL No. 1023 (S.D.N.Y.). Pomerantz was a member of the Executive Committee in *In re Transkaryotic Therapies, Inc. Securities Litigation*, C.A. No. 03-10165 (D. Mass.), helping to win a $50 million settlement for the class.

In 2008, together with Co-Counsel, Pomerantz identified a substantial opportunity for recovery of losses in Countrywide mortgage-backed securities ("MBS") for three large New Mexico funds (New Mexico State Investment Council, New Mexico Public Employees' Retirement Association, and New Mexico

---

[1] Institutional Shareholder Services, *SCAS Top 100 Settlements Quarterly Report* (Sept. 30, 2010).

Educational Retirement Board), which had been overlooked by all of the firms then in their securities litigation pool. We then filed the first non-class lawsuit by a public institution with respect to Countrywide MBS. *See N.M. State Inv. Council v. Countrywide Fin. Corp.,* No. D-0101-CV-2008-02289 (N.M. 1st Dist. Ct.). In Fall 2010, we negotiated for our clients an extremely favorable but confidential settlement.

Over its long history, Pomerantz has achieved significant settlements in numerous cases, a sampling of which is listed below:

- *In re Petrobras Sec. Litig.*, No. 14-cv-9662 (S.D.N.Y. 2018)
  $3 billion settlement of securities class action in which Pomerantz was Lead Counsel.
- *Pirnik v. Fiat Chrysler Automobiles N.V. et al.*, No. 1:15-cv-07199-JMF (S.D.N.Y)
  $110 million settlement of securities class action in which Pomerantz was Lead Counsel
- *In re Yahoo! Inc. Sec. Litig.,* No. 17-cv-00373 (N.D. Cal. 2018)
  $80 million settlement of securities class action in which Pomerantz was Co-Lead Counsel
- *In re Libor Based Financial Instruments Antitrust Litig.,* 1:11-md-2262
  $31 million partial settlement with three defendants in this multi-district litigation in which Pomerantz represents the Berkshire Bank and the Government Development Bank for Puerto Rico
- *Kaplan v. S.A.C. Capital Advisors, L.P.*, No. 12-cv-9350 (S.D.N.Y. 2017)
  $135 million settlement of class action in which Pomerantz was Co-Lead Counsel.
- *In re Groupon, Inc. Sec. Litig.*, No. 12-cv-02450 (N.D. Ill. 2015)
  $45 million settlement of class action in which Pomerantz was sole Lead Counsel.
- *In re Elan Corp. Sec. Litig.*, No. 05-cv-2860 (S.D.N.Y. 2005)
  $75 million settlement in class action arising out of alleged accounting manipulations.
- *In re Safety-Kleen Corp. Stockholders Litig.*, No. 00-cv-736-17 (D.S.C. 2004)
  $54.5 million in total settlements in class action alleging accounting manipulations by corporate officials and auditors; last settlement reached on eve of trial.
- *Duckworth v. Country Life Ins. Co.*, No. 1998-CH-01046 (Ill. Cir. Ct., Cook Cty. 2000)
  $45 million recovery.
- *Snyder v. Nationwide Ins. Co.*, No. 97/0633 (N.Y. Sup. Ct. Onondaga Cty. 1998)
  Settlement valued at $100 million in derivative case arising from injuries to consumers purchasing life insurance policies.
- *In re National Health Lab., Inc. Sec. Litig.*, No. CV 92-1949 (S.D. Cal. 1995)
  $64 million recovery.
- *In re First Executive Corp. Sec. Litig.*, No. 89-cv-07135 (C.D. Cal. 1994)
  $102 million recovery for the class, exposing a massive securities fraud arising out of the Michael Milken debacle.
- *In re Boardwalk Marketplace Sec. Litig.*, MDL No. 712 (D. Conn. 1994)
  Over $66 million benefit in securities fraud action.
- *In re Telerate, Inc. S'holders Litig.*, C.A. No. 1115 (Del. Ch. 1989)
  $95 million benefit in case alleging violation of fiduciary duty under state law.

Pomerantz has also obtained stellar results for private institutions and Taft-Hartley funds. Below are a few examples:

- *In re Charter Commc'ns, Inc. Sec. Litig.*, No. 02-cv-1186 (E.D. Mo. 2005) (sole Lead Counsel for Lead Plaintiff StoneRidge Investment Partners LLC); $146.25 million class settlement, where Charter also agreed to enact substantive improvements in corporate governance.
- *In re Am. Italian Pasta Sec. Litig.*, No. 05-cv-865 (W.D. Mo. 2008) (sole Lead Counsel for Lead Plaintiff Ironworkers Locals 40, 361 and 417; $28.5 million aggregate settlements).
- *Richardson v. Gray*, No. 116880/1995 (N.Y. Sup. Ct. N.Y. Cty. 1999); and *In re Summit Metals*, No. 98-2870 (Bankr. D. Del. 2004) (two derivative actions where the Firm represented C.C. Partners Ltd. and obtained judgment of contempt against controlling shareholder for having made "extraordinary" payments to himself in violation of a preliminary injunction; persuaded the court to jail him for two years upon his refusal to pay; and, in a related action, won a $43 million judgment after trial and obtained turnover of stock of two companies).

## Shaping the Law

Not only has Pomerantz established a long track record of obtaining substantial monetary recoveries for our clients; whenever appropriate, we also pursue corporate governance reforms on their behalf. In *In re Chesapeake Shareholders Derivative Litig*ation, No. CJ-2009-3983 (Okla. Dist. Ct., Okla. Cty. 2011), for example, the Firm served as Co-Lead Counsel, representing a public pension client in a derivative case arising from an excessive compensation package granted to Chesapeake's CEO and founder. This was a derivative action, not a class action. Yet it is illustrative of the results that can be obtained by an institutional investor in the corporate governance arena. There we obtained a settlement which called for the repayment of $12.1 million and other consideration by the CEO. The Wall Street Journal (Nov. 3, 2011) characterized the settlement as "a rare concession for the 52-year-old executive, who has run the company largely by his own rules since he co-founded it in 1989." The settlement also included comprehensive corporate governance reforms.

The Firm has won many landmark decisions that have enhanced shareholders' rights and improved corporate governance. These include decisions that established that:

- defendants seeking to rebut the *Basic* presumption of reliance on an efficient market must do so by a preponderance of the evidence. *Waggoner v. Barclays PLC*, 875 F.3d 79 (2d Cir. 2017) (*Strougo v. Barclays PLC,* in the court below);
- plaintiffs have no burden to show price impact at the class certification stage. *Waggoner v. Barclays PLC*, 875 F.3d 79 (2d Cir. 2017) (*Strougo v. Barclays PLC,* in the court below);
- the ascertainability doctrine requires only that a class be defined using objective criteria that establish a membership with definite boundaries. *Universities Superannuation Scheme Ltd. v. Petróleo Brasileiro S.A. Petrobras*, 862 F.3d 250 (2d Cir. 2017);
- companies cannot adopt bylaws to regulate the rights of former stockholders. *Strougo v. Hollander*, C.A. No. 9770-CB (Del. Ch. 2015);
- a temporary rise in share price above its purchase price in the aftermath of a corrective disclosure does not eviscerate an investor's claim for damages. *Acticon AG v. China Ne. Petroleum Holdings Ltd.,* 692 F.3d 34 (2d Cir. 2012);
- an MBS holder may bring claims if the MBS price declines even if all payments of principal and interest have been made. Transcript of Proceedings, *N.M. State Inv. Council v. Countrywide Fin. Corp.,* No. D-0101-CV-2008-02289 (N.M. 1st Dist. Ct. Mar. 25, 2009);

- when a court selects a Lead Plaintiff under the Private Securities Litigation Reform Act ("PSLRA"), the standard for calculating the "largest financial interest" must take into account sales as well as purchases. *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-cv-1825, 2007 U.S. Dist. LEXIS 14878 (E.D.N.Y. Mar. 2, 2007);
- a managing underwriter can owe fiduciary duties of loyalty and care to an issuer in connection with a public offering of the issuer stock, even in the absence of any contractual agreement. Professor John C. Coffee, a renowned Columbia University securities law professor, commenting on the ruling, stated: "It's going to change the practice of all underwriting." *EBC I, Inc. v. Goldman Sachs & Co.*, 5 N.Y. 3d 11 (2005);
- purchasers of options have standing to sue under federal securities laws. *In re Green Tree Fin. Corp. Options Litig.*, No. 97-2679, 2002 U.S. Dist. LEXIS 13986 (D. Minn. July 29, 2002);
- shareholders have a right to a jury trial in derivative actions. *Ross v. Bernhard*, 396 U.S. 531 (1970);
- a company may have the obligation to disclose to shareholders its Board's consideration of important corporate transactions, such as the possibility of a spin-off, even before any final decision has been made. *Kronfeld v. Trans World Airlines, Inc.*, 832 F.2d 726 (2d Cir. 1987);
- specific standards for assessing whether mutual fund advisors breach fiduciary duties by charging excessive fees. *Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 740 F.2d 190 (2d Cir. 1984);
- investment advisors to mutual funds are fiduciaries who cannot sell their trustee positions for a profit. *Rosenfeld v. Black*, 445 F.2d 1337 (2d Cir. 1971); and
- management directors of mutual funds have a duty to make full disclosure to outside directors "in every area where there was even a possible conflict of interest." *Moses v. Burgin*, 445 F.2d 369 (1st Cir. 1971).

## Comments from the Courts

Throughout its history, courts time and again have acknowledged the Firm's ability to vigorously pursue and successfully litigate actions on behalf of investors.

U.S. District Judge Noel L. Hillman, in approving the *In re Toronto-Dominion Bank Securities Litigation* settlement in October 2019, stated:

> I commend counsel on both sides for their hard work, their very comprehensive and thoughtful submissions during the motion practice aspect of this case. … It's clear to me that this was comprehensive, extensive, thoughtful, meaningful litigation leading up to the settlement. … This settlement appears to have been obtained through the hard work of the Pomerantz firm. … It was through their efforts and not piggybacking on any other work that resulted in this settlement.

In approving the settlement in *Strougo v. Barclays PLC* in June 2019, Judge Victor Marrero of the Southern District of New York wrote:

> Let me thank counsel on both sides for the extraordinary work both sides did in bringing this matter to a reasonable conclusion. As the parties have indicated, the matter was intensely litigated, but it was done in the most extraordinary fashion with cooperation, collaboration, and high levels of professionalism on both sides, so I thank you.

In approving the $3 billion settlement in *In re Petrobras Securities Litigation* in June 2018, Judge Jed S. Rakoff of the Southern District of New York wrote:

> [T]he Court finds that Class Counsel's performance was in many respects exceptional, with the result that, as noted, the class is poised to enjoy a substantially larger per share recovery [65%] than the recovery enjoyed by numerous large and sophisticated plaintiffs who separately settled their claims.

At the hearing for preliminary approval of the settlement in *In re Petrobras Securities Litigation* in February 2018, Judge Rakoff stated:

> [T]he lawyers in this case [are] some of the best lawyers in the United States, if not in the world.

Two years earlier, in certifying two Classes in *In re Petrobras Securities Litigation* in February 2016, Judge Rakoff wrote:

> [O]n the basis not only of USS's counsel's prior experience but also the Court's observation of its advocacy over the many months since it was appointed Lead Counsel, the Court concludes that Pomerantz, the proposed class counsel, is "qualified, experienced and able to conduct the litigation." ... [T]he Pomerantz firm has both the skill and resources to represent the Classes adequately.

In approving the settlement in *Thorpe v. Walter Investment Management Corp.*, No. 14-cv-20880, 2016 U.S. Dist. LEXIS 144133 (S.D. Fla. Oct. 14, 2016) Judge Ursula Ungaro wrote:

> Class Counsel has developed a reputation for zealous advocacy in securities class actions. ... The settlement amount of $24 million is an outstanding result.

At the May 2015 hearing wherein the court approved the settlement in *Courtney v. Avid Technology, Inc.*, No. 13-cv-10686 (D. Mass. May 12, 2015), following oral argument by Jeremy A. Lieberman, Judge William G. Young stated:

> This has been very well litigated. It is always a privilege. I don't just say that as a matter of form. And I thank you for the vigorous litigation that I've been permitted to be a part of. [Tr. at 8-9.]

At the January 2012 hearing wherein the court approved the settlement in *In re Chesapeake Energy Corp. Shareholder Derivative Litigation*, No. CJ-2009-3983 (Okla. Dist. Ct., Okla. Cty. Jan. 30, 2012), following oral argument by Marc I. Gross, Judge Daniel L. Owens stated:

> Counsel, it's a pleasure, and I mean this and rarely say it. I think I've said it two times in 25 years. It is an extreme pleasure to deal with counsel of such caliber.
> [Tr. at 48.])

In approving the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 06-CV-1825 (E.D.N.Y.) in June 2010, Judge Nicholas G. Garaufis stated:

As outlined above, the recovery in this case is one of the highest ever achieved in this type of securities action. … The court also notes that, throughout this litigation, it has been impressed by Lead Counsel's acumen and diligence. The briefing has been thorough, clear, and convincing, and … Lead Counsel has not taken short cuts or relaxed its efforts at any stage of the litigation.

In approving a $146.25 million settlement in *In re Charter Communications Securities Litigation*, No. 02-CV-1186, 2005 U.S. Dist. LEXIS 14772 (E.D. Mo. June 30, 2005), in which Pomerantz served as sole Lead Counsel, Judge Charles A. Shaw praised the Firm's efforts, citing "the vigor with which Lead Counsel … investigated claims, briefed the motions to dismiss, and negotiated the settlement." He further stated:

This Court believes Lead Plaintiff achieved an excellent result in a complex action, where the risk of obtaining a significantly smaller recovery, if any, was substantial.

In approving a $24 million settlement in *In re Force Protection, Inc.,* No. 08 CV 845 (D.S.C. 2011), Judge C. Weston Houk described the Firm as "attorneys of great ability and great reputation" and commended the Firm for having "done an excellent job."

In certifying a class in a securities fraud action against analysts in *DeMarco v. Robertson Stephens Inc.*, 228 F.R.D. 468 (S.D.N.Y. 2005), Judge Gerard D. Lynch stated that Pomerantz had "ably and zealously represented the interests of the class."

Numerous courts have made similar comments:

- Appointing Pomerantz Lead Counsel in *American Italian Pasta Co. Securities Litigation*, No 05-CV-0725 (W.D. Mo.), a class action that involved a massive fraud and restatements spanning several years, the District Court observed that the Firm "has significant experience (and has been extremely effective) litigating securities class actions, employs highly qualified attorneys, and possesses ample resources to effectively manage the class litigation and protect the class's interests."

- In approving the settlement in *In re Wiring Devices Antitrust Litigation*, MDL No. 331 (E.D.N.Y. Sept. 9, 1980), Chief Judge Jack B. Weinstein stated that "Counsel for the plaintiffs I think did an excellent job. … They are outstanding and skillful. The litigation was and is extremely complex. They assumed a great deal of responsibility. They recovered a very large amount given the possibility of no recovery here which was in my opinion substantial."

- In *Snyder v. Nationwide Insurance Co.*, No. 97/0633, (N.Y. Supreme Court, Onondaga Cty.), a case where Pomerantz served as Co-Lead Counsel, Judge Tormey stated, "It was a pleasure to work with you. This is a good result. You've got some great attorneys working on it."

- In *Steinberg v. Nationwide Mutual Insurance Co.* (E.D.N.Y. 2004), Judge Spatt, granting class certification and appointing the Firm as class counsel, observed: "The Pomerantz firm has a strong reputation as class counsel and has demonstrated its competence to serve as class counsel in this motion for class certification." (224 F.R.D. 67, 766.)

- In *Mercury Savings & Loan*, No. 90-cv-00087 LHM (C.D. Cal. 1993), Judge McLaughlin commended the Firm for the "absolutely extraordinary job in this litigation."

- In *Boardwalk Marketplace Securities Litigation*, MDL No. 712 (D. Conn.), Judge Eginton described the Firm's services as "exemplary," praised it for its "usual fine job of lawyering ...[in] an extremely complex matter," and concluded that the case was "very well-handled and managed." (Tr. at 6, 5/20/92; Tr. at 10, 10/10/92.)

- In *Nodar v. Weksel*, No. 84 Civ. 3870 (S.D.N.Y.), Judge Broderick acknowledged "that the services rendered [by Pomerantz] were excellent services from the point of view of the class represented, [and] the result was an excellent result." (Tr. at 21-22, 12/27/90.)

- In *Klein v. A.G. Becker Paribas, Inc.*, No. 83 Civ. 6456 (S.D.N.Y.), Judge Goettel complimented the Firm for providing "excellent ...absolutely top-drawer representation for the class, particularly in light of the vigorous defense offered by the defense firm." (Tr. at 22, 3/6/87.)

- In *Digital Securities Litigation*, No. 83-3255 (D. Mass.), Judge Young lauded the Firm for its "[v]ery fine lawyering." (Tr. at 13, 9/18/86.)

- In *Shelter Realty Corp. v. Allied Maintenance Corp*., 75 F.R.D. 34, 40 (S.D.N.Y. 1977), Judge Frankel, referring to Pomerantz, said: "Their experience in handling class actions of this nature is known to the court and certainly puts to rest any doubt that the absent class members will receive the quality of representation to which they are entitled."

- In *Rauch v. Bilzerian*, No. 88 Civ. 15624 (N.J. Sup. Ct.), the court, after trial, referred to Pomerantz partners as "exceptionally competent counsel," and as having provided "top drawer, topflight [representation], certainly as good as I've seen in my stay on this court."

# Corporate Governance Litigation

Pomerantz is committed to ensuring that companies adhere to responsible business practices and practice good corporate citizenship. We strongly support policies and procedures designed to give shareholders the ability to oversee the activities of a corporation. We vigorously pursue corporate governance reform, particularly in the area of excess compensation, where it can address the growing disparity between the salaries of executives and the workers of major corporations. We have successfully utilized litigation to bring about corporate governance reform in numerous cases, and always consider whether such reforms are appropriate before any case is settled.

Pomerantz's Corporate Governance Practice Group, led by Partner Gustavo F. Bruckner, enforces shareholder rights and prosecutes actions challenging corporate transactions that arise from an unfair process or result in an unfair price for shareholders.

In September 2017, New Jersey Superior Court Judge Julio Mendez, of Cape May County Chancery Division, approved Pomerantz's settlement in a litigation against Ocean Shore Holding Co. The settlement provided non-pecuniary benefits for a non-opt out class. In so doing, Judge Mendez became the first New Jersey state court judge to formally adopt the Third Circuit's nine-part *Girsh* factors, *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975). There has never before been a published New Jersey state court opinion setting out the factors a court must consider in evaluating whether a class action settlement should be determined to be fair and adequate. After conducting an analysis of each of the nine *Girsh* factors and holding that "class actions settlements involving non-monetary benefits to the class are subject to more exacting scrutiny," Judge Mendez held that the proposed settlement provided a material benefit to the shareholders.

In February 2018, the Maryland Circuit Court, Montgomery County, approved a $17.5 million settlement that plaintiffs achieved as additional consideration on behalf of a class of shareholders of American Capital, Ltd. *In re Am. Capital, Ltd. S'holder Litig.*, C.A. No. 422598-V (2018). The settlement resolved Plaintiffs' claims regarding a forced sale of American Capital.

Pomerantz filed an action challenging the sale of American Capital, a Delaware corporation with its headquarters in Maryland. Among other things, American Capital's board of directors (the "Board") agreed to sell the company at a price below what two other bidders were willing to offer. Worse, the merger price was even below the amount that shareholders would have received in the company's planned phased liquidation, which the company was considering under pressure from Elliott Management, an activist hedge fund and holder of approximate 15% of American Capital stock. Elliott was not originally named as a defendant, but after initial discovery showed the extent of its involvement in the Board's breaches of fiduciary duty, Elliott was added as a defendant in an amended complaint under the theory that Elliott exercised actual control over the Board's decision-making. Elliott moved to dismiss on jurisdictional grounds and additionally challenged its alleged status as a controller of American Capital. In June 2017, minutes before the hearing on defendants' motion to dismiss, a partial settlement was entered into with the members of the Board for $11.5 million. The motion to dismiss hearing proceeded despite the partial settlement, but only as to Elliott. In July 2017, the court denied the motion to dismiss, finding that Elliott, "by virtue solely of its own conduct, … has easily satisfied the transacting business prong of the Maryland long arm statute." The court also found that the "amended complaint in this case sufficiently pleads that Elliott was a controller with respect to" the sale, thus implicating a higher standard of review. Elliott subsequently settled the remaining claims for an additional $6 million. Pomerantz served as Co-Lead Counsel.

In May 2017, the Circuit Court of the State of Oregon approved the settlement achieved by Pomerantz and co-counsel of a derivative action brought by two shareholders of Lithia Motors, Inc. The lawsuit alleged breach of fiduciary duties by the board of directors in approving, without any meaningful review, the Transition Agreement between Lithia Motors and Sidney DeBoer, its founder, controlling shareholder, CEO, and Chairman, who was stepping down as CEO. DeBoer and his son, the current CEO, Bryan DeBoer, negotiated virtually all the material terms of the Agreement, by which the company agreed to pay the senior DeBoer $1,060,000 and a $42,000 car allowance annually for the rest of his life, plus other benefits, in addition to the $200,000 per year that he would receive for continuing to serve as Chairman.

The *Lithia* settlement extracted corporate governance therapeutics that provide substantial benefits to Lithia and its shareholders and redress the wrongdoing alleged by plaintiffs. The board will now be required to have at least five independent directors -- as defined under the New York Stock Exchange rules -- by 2020; a number of other new protocols will be in place to prevent self-dealing by board members. Further, the settlement calls for the Transition Agreement to be reviewed by an independent auditor who will determine whether the annual payments of $1,060,000 for life to Sidney DeBoer are reasonable. Lithia has agreed to accept whatever decision the auditor makes.

In January 2017, the Group received approval of the Delaware Chancery Court for a $5.6 million settlement it achieved on behalf of a class of shareholders of Physicians Formula Holdings Inc. over an ignored merger offer in 2012. *In re Physicians Formula Holdings Inc.*, C.A. No. 7794-VCL (Del. Ch.).

The Group obtained a landmark ruling in *Strougo v. Hollander*, C.A. No. 9770-CB (Del. Ch.), that fee-shifting bylaws adopted after a challenged transaction do not apply to shareholders affected by the transaction. They were also able to obtain a *25% price increase* for members of the class cashed out in the going private transaction.

In *Miller v. Bolduc*, No. SUCV 2015-00807 (Mass. Super. Ct.), the Group caused Implant Sciences to hold its first shareholder annual meeting in five years and put an important compensation grant up for a shareholder vote.

In *Smollar v. Potarazu*, C.A. No. 10287-VCN (Del. Ch.), the Group pursued a derivative action to bring about the appointment of two independent members to the board of directors, retention of an independent auditor, dissemination of financials to shareholders and the holding of first ever in-person annual meeting, among other corporate therapeutics.

In *Hallandale Beach Police Officers & Firefighters' Personnel Retirement Fund vs. Lululemon athletica, Inc.,* C.A. No. 8522-VCP (Del. Ch.), in an issue of first impression in Delaware, the Chancery Court ordered the production of the chairman's 10b5-1 stock trading plan. The court found that a stock trading plan established by the company's chairman, pursuant to which a broker, rather than the chairman himself, would liquidate a portion of the chairman's stock in the company, did not preclude potential liability for insider trading.

In *Strougo v. North State Bancorp*, No. 15 CVS 14696 (N.C. Super. Ct.), the Group caused the Merger Agreement to be amended to provide a "majority of the minority" provision for the holders of North State Bancorp's common stock in connection with the shareholder vote on the merger. As a result of the Action, common shareholders could stop the merger if they did not wish it to go forward.

Pomerantz's commitment to advancing sound corporate governance principles is further demonstrated by the more than 26 years that we have co-sponsored the Abraham L. Pomerantz Lecture Series with Brooklyn Law School. These lectures focus on critical and emerging issues concerning shareholder rights and corporate governance and bring together top academics and litigators.

Our bi-monthly newsletter, *The Pomerantz Monitor*, provides institutional investors updates and insights on current issues in corporate governance.

## Strategic Consumer Litigation

Pomerantz's Strategic Consumer Litigation practice group, led by Partner Jordan Lurie, represents consumers in actions that seek to recover monetary and injunctive relief on behalf of class members while also advocating for important consumer rights. The attorneys in this group have successfully prosecuted claims involving California's Unfair Competition Law, California's Consumers Legal Remedies Act, the Song Beverly Consumer Warranty Act and the Song Beverly Credit Card Act. They have resolved data breach privacy cases and cases involving unlawful recording, illegal background checks, unfair business practices, misleading advertising, and other consumer finance related actions. All of these actions also have resulted in significant changes to defendants' business practices.

Pomerantz currently represents consumers in a nationwide class action against Facebook for mistargeting ads. Plaintiff alleges that Facebook programmatically displays a material percentage of ads to users outside the defined target market and displays ads to "serial Likers" outside the defined target audience in order to boost Facebook's revenue. *IntegrityMessageBoards.com v. Facebook, Inc. (N.D. Cal.) Case No. 4:18 -cv-05286 PJH.*

Pomerantz has pioneered litigation to establish claims for public injunctive relief under California's unfair business practices statute. For example, Pomerantz has filed cases seeking to prevent major auto manufacturers from unauthorized access to, and use of, drivers' vehicle data without compensation, and seeking to require the auto companies to share diagnostic data extracted from drivers' vehicles. The Strategic Consumer Litigation practice group also is prosecuting class cases against auto manufacturers for failing to properly identify high-priced parts that must be covered in California under extended emissions warranties.

Other consumer matters handled by Pomerantz's Strategic Consumer Litigation practice group include actions involving cryptocurrency, medical billing, price fixing, and false advertising of various consumer products and services.

# Antitrust Litigation

Pomerantz has earned a reputation for prosecuting complex antitrust and consumer class actions with vigor, innovation, and success. Pomerantz's Antitrust and Consumer Group has recovered billions of dollars for the Firm's business and individual clients and the classes that they represent. Time and again, Pomerantz has protected our free-market system from anticompetitive conduct such as price fixing, monopolization, exclusive territorial division, pernicious pharmaceutical conduct, and false advertising. Pomerantz's advocacy has spanned across diverse product markets, exhibiting the Antitrust and Consumer Group's versatility to prosecute class actions on any terrain.

Pomerantz has served and is currently serving in leadership or Co-Leadership roles in several high-profile multi-district litigation class actions. In December 2018, the Firm achieved a $31 billion partial settlement with three defendants on behalf of a class of U.S. lending institutions that originated, purchased or held loans paying interest rates tied to the U.S. Dollar London Interbank Offered Rate (USD LIBOR). It is alleged that the class suffered damages as a result of collusive manipulation by the LIBOR contributor panel banks that artificially suppressed the USD LIBOR rate during the class period, causing the class members to receive lower interest payments than they would have otherwise received. *In re Libor Based Financial Instruments Antitrust Litig.,* 1:11-md-2262.

Pomerantz represented baseball and hockey fans in a game-changing antitrust class action against Major League Baseball and the National Hockey League, challenging the exclusive territorial division of live television broadcasts, internet streaming, and the resulting geographic blackouts. *See Laumann v. NHL* and *Garber v. MLB* (S.D.N.Y. 2012).

Pomerantz has spearheaded the effort to challenge harmful anticompetitive conduct by pharmaceutical companies—including Pay-for-Delay Agreements—that artificially inflates the price of prescription drugs by keeping generic versions off the market.

Even prior to the 2013 precedential U.S. Supreme Court decision in *Actavis*, Pomerantz litigated and successfully settled the following generic-drug-delay cases:

- *In re Flonase Antitrust Litig.* (E.D. Pa. 2008) ($35 million);
- *In re Toprol XL Antitrust Litig.* (D. Del. 2006) ($11 million); and
- *In re Wellbutrin SR Antitrust Litig.* (E.D. Pa. 2004) ($21.5 million).

Other exemplary victories include Pomerantz's prominent role in *In re NASDAQ Market-Makers Antitrust Litigation* (S.D.N.Y.), which resulted in a settlement in excess of $1 billion for class members, one of the largest antitrust settlements in history. Pomerantz also played prominent roles in *In re Sorbates Direct Purchaser Antitrust Litigation* (N.D. Cal.), which resulted in over an $82 million recovery, and in *In re Methionine Antitrust Litigation* (N.D. Cal.), which resulted in a $107 million recovery. These cases illustrate the resources, expertise, and commitment that Pomerantz's Antitrust Group devotes to prosecuting some of the most egregious anticompetitive conduct.

# A Global Advocate for Asset Managers and Public and Taft-Hartley Pension Funds

Pomerantz represents some of the largest pension funds, asset managers, and institutional investors around the globe, monitoring assets of $8 trillion, and growing. Utilizing cutting-edge legal strategies and the latest proprietary techniques, Pomerantz protects, expands, and vindicates shareholder rights through our securities litigation services and portfolio monitoring program.

Pomerantz partners routinely advise foreign and domestic institutional investors on how best to evaluate losses to their investment portfolios attributable to financial misconduct and how best to maximize their potential recoveries worldwide. In particular, Pomerantz Partners, Jeremy Lieberman, Jennifer Pafiti, and Marc Gross regularly travel throughout the U.S. and across the globe to meet with clients on these issues and are frequent speakers at investor conferences and educational forums in North America, Europe, and the Middle East.

Pomerantz was honored by European Pensions with its 2020 Thought Leadership award in recognition of significant contributions the Firm has made in the European pension environment.

## Institutional Investor Services

Pomerantz offers a variety of services to institutional investors. Through the Firm's proprietary system, PomTrack®, Pomerantz monitors client portfolios to identify and evaluate potential and pending securities fraud, ERISA and derivative claims, and class action settlements. Monthly customized PomTrack® reports are included with the service. PomTrack® currently monitors assets of over $9 trillion for some of the most influential institutional investors worldwide.

When a potential securities claim impacting a client is identified, Pomerantz offers to analyze the case's merits and provide a written analysis and recommendation. If litigation is warranted, a team of Pomerantz attorneys will provide efficient and effective legal representation. The experience and

expertise of our attorneys – which have consistently been acknowledged by the courts – allow Pomerantz to vigorously pursue the claims of investors, taking complex cases to trial when warranted.

Pomerantz is committed to ensuring that companies adhere to responsible business practices and practice good corporate citizenship. The Firm strongly support policies and procedures designed to give shareholders the ability to oversee the activities of a corporation. Pomerantz has successfully utilized litigation to bring about corporate governance reform, and always considers whether such reforms are appropriate before any case is settled.

Pomerantz provides clients with insightful and timely commentary on matters essential to effective fund management in our bi-monthly newsletter, *The Pomerantz Monitor* and regularly sponsors conferences and roundtable events around the globe with speakers who are experts in securities litigation and corporate governance matters.

# Attorneys

## Partners

### Jeremy A. Lieberman

Jeremy A. Lieberman is Pomerantz's Managing Partner. He became associated with the Firm in August 2004 and was elevated to Partner in January 2010. The Legal 500, in honoring Jeremy as a Leading Lawyer and Pomerantz as a 2021 Tier 1 Plaintiffs Securities Law Firm, stated that "Jeremy Lieberman is super impressive – a formidable adversary for any defense firm." Among the client testimonials posted on The Legal 500's website: "Jeremy Lieberman led the case for us with remarkable and unrelenting energy and aggression. He made a number of excellent strategic decisions which boosted our recovery." Lawdragon named Jeremy among the 2021 Leading 500 Lawyers in the United States. Super Lawyers® named him among the Top 100 Lawyers in the New York Metro area in 2021. In 2020, Jeremy won a Distinguished Leader award from the *New York Law Journal*. He was honored as Benchmark Litigation's 2019 Plaintiff Attorney of the Year. In 2018, Jeremy was honored as a Titan of the Plaintiffs Bar by Law360 and as a Benchmark Litigation Star. The Pomerantz team that Jeremy leads was named a 2018 Securities Practice Group of the Year.

Jeremy led the securities class action litigation *In re Petrobras Securities Litigation,* which arose from a multi-billion-dollar kickback and bribery scheme involving Brazil's largest oil company, Petróleo Brasileiro S.A. – Petrobras, in which Pomerantz was sole Lead Counsel. The biggest instance of corruption in the history of Brazil ensnared not only Petrobras' former executives but also Brazilian politicians, including former president Lula da Silva and one-third of the Brazilian Congress. In January and February 2018, Jeremy achieved a historic $3 billion settlement for the Class. This is not only the largest securities class action settlement in a decade but is the largest settlement ever in a securities class action involving a foreign issuer, the fifth-largest securities class action settlement ever achieved in the United States, the largest securities class action settlement achieved by a foreign Lead Plaintiff, and the largest securities class action settlement in history not involving a restatement of financial reports.

Jeremy also secured a significant victory for Petrobras investors at the Second Circuit Court of Appeals, when the court rejected the heightened ascertainability requirement for obtaining class certification that had been imposed by the Third Circuit Courts of Appeals. The ruling will have a positive impact on plaintiffs in securities fraud litigation. Indeed, the *Petrobras* litigation was honored in 2019 as a National Impact Case by Benchmark Litigation.

Jeremy was Lead Counsel in *Pirnik v. Fiat Chrysler Automobiles N.V. et al.*, No. 1:15-cv-07199-JMF (S.D.N.Y), in which the Firm achieved a $110 million settlement for the class. Plaintiff alleged that Fiat Chrysler concealed from investors that it improperly outfitted its diesel vehicles with "defeat device" software designed to cheat NOx emissions regulations in the U.S. and Europe, and that regulators had accused Fiat Chrysler of violating the emissions regulations. The *Fiat Chrysler* recovery provided the class of investors with as much as 20% of recoverable damages—an excellent result when compared to historical statistics in class action settlements, where typical recoveries for cases of this size are between 1.6% and 3.3%.

In November 2019, Jeremy achieved a critical victory for investors in the securities fraud class action against Perrigo Co. plc when Judge Arleo of the United States District Court for the District of New Jersey certified classes of investors that purchased Perrigo securities on both the New York Stock Exchange and the Tel Aviv Stock Exchange. Pomerantz represents a number of institutional investors that purchased Perrigo securities on both exchanges after an offer by Mylan N.V. to tender Perrigo shares. This is the first time since *Morrison* that a U.S. court has independently analyzed the market of a security traded on a non-U.S. exchange and found that it met the standards of market efficiency necessary allow for class certification.

Jeremy heads the Firm's individual action against pharmaceutical giant Teva Pharmaceutical Industries Ltd. and Teva Pharmaceuticals USA, Inc. (together, "Teva"), and certain of Teva's current and former employees and officers, relating to alleged anticompetitive practices in Teva's sales of generic drugs. Teva is a dual-listed company, and the Firm represents several Israeli institutional investors who purchased Teva shares on the Tel Aviv Stock Exchange. In early 2021, Pomerantz achieved a major victory for global investors when the district court agreed to exercise supplemental jurisdiction over the Israeli law claims. *Clal Insurance Company Ltd. v. Teva Pharmaceutical Industries Ltd.*

In 2019, Jeremy achieved a $27 million settlement for the Class in *Strougo v. Barclays PLC*, a high-profile securities class action in which Pomerantz was Lead Counsel. Plaintiffs alleged that Barclays PLC misled institutional investors about the manipulation of the banking giant's so-called "dark pool" trading systems in order to provide a trading advantage to high-frequency traders over its institutional investor clients. This case turned on the duty of integrity owed by Barclays to its clients. In November 2017, Jeremy achieved precedent-setting victories for investors, when the Second Circuit Court of Appeals held that direct evidence of price impact is not always necessary to demonstrate market efficiency to invoke the presumption of reliance, and that defendants seeking to rebut the presumption of reliance must do so by a preponderance of the evidence rather than merely meeting a burden of production.

Jeremy led the Firm's securities class action litigation against Yahoo! Inc., in which Pomerantz, as Lead Counsel, achieved an $80 million settlement for the Class in 2018. The case involved the biggest data breaches in U.S. history, in which over 3 billion Yahoo accounts were compromised. This was the first significant settlement to date of a securities fraud class action filed in response to a data breach.

In 2018 Jeremy achieved a $3,300,000 settlement for the Class in the Firm's securities class action against Corinthian Colleges, one of the largest for-profit college systems in the country, for alleged misrepresentations about its job placement rates, compliance with applicable regulations, and enrollment statistics. Pomerantz prevailed in the motion to dismiss the proceedings, a particularly noteworthy victory because Chief Judge George King of the Central District of California had dismissed two prior lawsuits against Corinthian with similar allegations. *Erickson v. Corinthian Colleges, Inc.* (C.D. Cal.).

Jeremy led the Firm's litigation team that in 2018 secured a $31 million partial settlement with three defendants in *In re Libor Based Financial Instruments Antitrust Litigation*, a closely watched multi-district litigation, which concerns the London Interbank Offered Rate (LIBOR) rigging scandal.

In *In re China North East Petroleum Corp. Securities Litigation*, Jeremy achieved a significant victory for shareholders in the United States Court of Appeals for the Second Circuit, whereby the Appeals Court ruled that a temporary rise in share price above its purchase price in the aftermath of a corrective disclosure did not eviscerate an investor's claim for damages. The Second Circuit's decision was deemed "precedential" by the *New York Law Journal* and provides critical guidance for assessing damages in a § 10(b) action.

Jeremy had an integral role in *In re Comverse Technology, Inc. Securities Litigation*, in which he and his partners achieved a historic $225 million settlement on behalf of the Class, which was the second-largest options backdating settlement to date.

Jeremy regularly consults with Pomerantz's international institutional clients, including pension funds, regarding their rights under the U.S. securities laws. Jeremy is working with the Firm's international clients to craft a response to the Supreme Court's ruling in *Morrison v. National Australia Bank, Ltd.*, which limited the ability of foreign investors to seek redress under the federal securities laws.

Jeremy is a frequent lecturer worldwide regarding current corporate governance and securities litigation issues.

Jeremy graduated from Fordham University School of Law in 2002. While in law school, he served as a staff member of the *Fordham Urban Law Journal*. Upon graduation, he began his career at a major New York law firm as a litigation associate, where he specialized in complex commercial litigation.

Jeremy is admitted to practice in New York; the United States District Courts for the Southern and Eastern Districts of New York, the Southern District of Texas, the District of Colorado, the Eastern District of Michigan, the Eastern District of Wisconsin, and the Northern District of Illinois; the United States Courts of Appeals for the First, Second, Third, Fourth, Fifth, Sixth, Ninth, and Tenth Circuits; and the United States Supreme Court.

### Gustavo F. Bruckner

Gustavo F. Bruckner heads Pomerantz's Corporate Governance practice group, which enforces shareholder rights and prosecutes litigation challenging corporate actions that harm shareholders. Under Gustavo's leadership, the Corporate Governance group has achieved numerous noteworthy litigation successes. He has been quoted on corporate governance issues by *The New York Times, The*

*Wall Street Journal*, *Bloomberg*, *Law360*, and *Reuters*, and was honored from 2016 through 2021 by Super Lawyers® as a "Top-Rated Securities Litigation Attorney," a recognition bestowed on no more than 5% of eligible attorneys in the New York Metro area. Gustavo regularly appears in state and federal courts across the nation. Gustavo presented at the prestigious Institute for Law and Economic Policy conference.

Gustavo is a fierce advocate of aggressive corporate clawback policies that allow companies to recover damages from officers and directors for reputational and financial harm. Most recently, in *McIntosh vs Keizer*, *et al.*, Docket No. 2018-0386 (Del. Ch.), Pomerantz filed a derivative suit on behalf of Hertz Global Holdings, Inc. shareholders, seeking to compel the Hertz board of directors to claw back millions of dollars in unearned and undeserved payments that the Company made to former officers and directors who significantly damaged Hertz through years of wrongdoing and misconduct. Under pressure from plaintiff's ligation efforts, the Hertz board of directed elected to take unprecedented action and mooted plaintiff's claims, initiating litigation to recover tens of millions of dollars in incentive compensation and more than $200 million in damages from culpable former Hertz executives.

Pomerantz through initiation and prosecution of a shareholder derivative action, forced the Hertz board to seek clawback from former officers and directors of the company, unjustly enriched after causing the Company to file inaccurate and false financial statements leading to a $235 million restatement and $16 million fee to the SEC.

In September 2017, Gustavo's Corporate Governance team achieved a settlement in New Jersey Superior Court that provided non-pecuniary benefits for a non-opt out class. In approving the settlement, Judge Julio Mendez, of Cape May County Chancery Division, became the first New Jersey state court judge to formally adopt the Third Circuit's nine-part *Girsh* factors, *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975). Never before has there been a published New Jersey state court opinion setting out the factors a court must consider in evaluating whether a class action settlement should be determined to be fair and adequate.

Gustavo successfully argued *Strougo v. Hollander*, C.A. No. 9770-CB (Del. Ch. 2015), obtaining a landmark ruling in Delaware that bylaws adopted after shareholders are cashed out do not apply to shareholders affected by the transaction. In the process, Gustavo and the Corporate Governance team beat back a fee-shifting bylaw and were able to obtain a 25% price increase for members of the class cashed out in the "going private" transaction. Shortly thereafter, the Delaware Legislature adopted legislation to ban fee-shifting bylaws.

In *Stein v. DeBoer* (Or. Cir. Ct. 2017), Gustavo and the Corporate Governance group achieved a settlement that provides significant corporate governance therapeutics on behalf of shareholders of Lithia Motors, Inc. The company's board had approved, without meaningful review, the Transition Agreement between the company and Sidney DeBoer, its founder, controlling shareholder, CEO, and Chairman, who was stepping down as CEO. DeBoer and his son, the current CEO, negotiated virtually all the material terms of the Agreement, by which the company agreed to pay the senior DeBoer $1,060,000 and a $42,000 car allowance annually for the rest of his life, plus other benefits, in addition to the $200,000 per year that he would receive for continuing to serve as Chairman.

In *Miller v. Bolduc*, No. SUCV 2015-00807 (Mass. Sup. Ct. 2015), Gustavo and the Corporate Governance group, by initiating litigation, caused Implant Sciences to hold its first shareholder annual meeting in 5 years and to place an important compensation grant up for a shareholder vote.

In *Strougo v. North State Bancorp*, No. 15 CVS 14696 (N.C. Super. Ct. 2015), Gustavo and the Corporate Governance team caused the North State Bancorp merger agreement to be amended to provide a "majority of the minority" provision for common shareholders in connection with the shareholder vote on the merger. As a result of the action, common shareholders had the ability to stop the merger if they did not wish it to go forward.

In *Hallandale Beach Police Officers and Firefighters' Personnel Retirement Fund vs. Lululemon athletica, Inc.*, C.A. No. 8522-VCP (Del. Ch. 2014), in an issue of first impression in Delaware, Gustavo successfully argued for the production of the company chairman's Rule 10b5-1 stock trading plan. The court found that a stock trading plan established by the company's chairman, pursuant to which a broker, rather than the chairman himself, would liquidate a portion of the chairman's stock in the company, did not preclude potential liability for insider trading.

Gustavo was Co-Lead Counsel in *In re Great Wolf Resorts, Inc. Shareholders Litigation*, C.A. No. 7328-VCN (Del. Ch. 2012), obtaining the elimination of stand-still provisions that allowed third parties to bid for Great Wolf Resorts, Inc., resulting in the emergence of a third-party bidder and approximately $94 million (57%) in additional merger consideration for Great Wolf shareholders.

Gustavo received his law degree in 1992 from the Benjamin N. Cardozo School of Law, where he served as an editor of the Moot Court Board and on the Student Council. Upon graduation, he received the award for outstanding student service.

After graduating law school, Gustavo served as Chief-of-Staff to a New York City legislator.

Gustavo is a Mentor and Coach to the NYU Stern School of Business, Berkley Center for Entrepreneurial Studies, New Venture Competition. He was a University Scholar at NYU where he obtained a B.S. in Marketing and International Business in 1988 and an MBA in Finance and International Business in 1989.

Gustavo is a Trustee and former Treasurer of the Beit Rabban Day School, and an arbitrator in the Civil Court of the City of New York.

Gustavo is admitted to practice in New York and New Jersey; the United States District Courts for the Eastern, Northern, and Southern Districts of New York and the District of New Jersey; the United States Courts of Appeals for the Second and Seventh Circuits; and the United States Supreme Court.

## **Brian Calandra**

Brian Calandra joined Pomerantz in June 2019 as Of Counsel and was elevated to Partner in January 2023. He has extensive experience in securities, antitrust, complex commercial, and white-collar matters in federal and state courts nationwide. Brian has represented issuers, underwriters, and individuals in securities class actions involving the financial, telecommunications, real estate, and pharmaceutical

industries. He has also represented financial institutions in antitrust class actions concerning foreign exchange; supra-national, sub-sovereign and agency bonds; bonds issued by the government of Mexico; and credit card fees. In 2021, Brian was honored as a Super Lawyers® "Top-Rated Securities Litigation Attorney".

Brian has written multiple times on developments in securities law and other topics, including co-authoring an overview of insider trading law and enforcement for *Practical Compliance & Risk Management for the Securities Industry*, co-authoring an analysis of anti-corruption compliance risks posed by sovereign wealth funds for *Risk & Compliance*, and authoring an analysis of the effects of the 2005 Bankruptcy Abuse Prevention and Consumer Protection Act on women in bankruptcy for the *Women's Rights Law Reporter*.

Before joining Pomerantz, Brian was a litigation associate at Shearman & Sterling LLP. Brian graduated from Rutgers School of Law-Newark in 2009, *cum laude*, Order of the Coif. While at Rutgers, Brian was co-editor-in-chief of the *Women's Rights Law Reporter* and received the Justice Henry E. Ackerson Prize for Distinction in Legal Skills and the Carol Russ Memorial Prize for Distinction in Promoting Women's Rights.

## Justin D. D'Aloia

Justin D. D'Aloia is a Partner in Pomerantz's New York office, where he specializes in securities class action litigation.  He has extensive experience litigating high-profile securities cases in federal and state courts across the country. Justin has represented issuers, underwriters, and senior executives in matters involving a range of industries, including the financial services, life sciences, real estate, technology, and consumer retail sectors. His practice covers the full spectrum of proceedings from pre-suit demand through settlement.

Justin joined Pomerantz as a Partner in October 2022.  Before joining Pomerantz, Justin was counsel at a large international law firm where he focused on securities litigation and other complex shareholder class action litigation. He previously served as a law clerk to Judge Mark Falk of the United States District Court for the District of New Jersey.

Justin received his J.D. from Fordham University School of Law, where he was Editor-in-Chief of the Fordham International Law Journal.  He earned his undergraduate degree from Rutgers University with a concentration in Business and Economics.

Justin is admitted to practice in New York; United States District Courts for the Southern and Eastern Districts of New York and the District of Colorado; United States Courts of Appeals for the Second, Third, and Tenth Circuits.

**Emma Gilmore**

Emma Gilmore is a Partner at Pomerantz and is regularly involved in high-profile class-action litigation. In 2022, Benchmark Litigation shortlisted her for Plaintiff Attorney of the Year. In 2021, Emma was awarded a spot on *National Law Journal*'s prestigious Elite Women of the Plaintiffs Bar list. In 2021 and 2020, she was named by Benchmark Litigation as one of the Top 250 Women in Litigation — an honor bestowed on only seven plaintiffs' lawyers in the U.S. those years. The *National Law Journal* and the *New York Law Journal* honored her as a "Plaintiffs' Lawyer Trailblazer". Emma was honored by Law360 in 2018 as an MVP in Securities Litigation, part of an "elite slate of attorneys [who] have distinguished themselves from their peers by securing hard-earned successes in high-stakes litigation, complex global matters and record-breaking deals." Only up to six attorneys nationwide are selected each year as MVPs in Securities Litigation. Emma is the first woman plaintiff attorney to receive this outstanding award since it was initiated in 2011. Emma has been honored since 2018 as a Super Lawyer®. She has been recognized by Lawdragon as one of the top 500 Leading Plaintiff Financial Lawyers.

Emma is regularly invited to speak about recent trends and developments in securities litigation. She serves on the New York City Bar Association's Securities Litigation Committee. Emma regularly counsels clients around the world on how to maximize recoveries on their investments.

Emma played a leading role in the Firm's class action case in the Southern District of New York against Brazil's largest oil company, Petrobras, arising from a multi-billion-dollar kickback and bribery scheme, in which the Firm was sole Lead Counsel. In a significant victory for investors, Pomerantz achieved a historic $3 billion settlement with Petrobras. This is not only the largest securities class action settlement in a decade but is the largest settlement ever in a class action involving a foreign issuer, the fifth-largest class action settlement ever achieved in the United States, and the largest settlement achieved by a foreign lead plaintiff. The biggest instance of corruption in the history of Brazil had ensnared not only Petrobras' former executives but also Brazilian politicians, including former president Lula da Silva and one-third of the Brazilian Congress. Emma traveled to Brazil to uncover evidence of fraud and drafted the complaint. She deposed and defended numerous fact and expert witnesses, including deposing the former CEO of Petrobras, the whistleblower, and the chief accountant. She drafted the appellate brief, playing an instrumental role in securing a significant victory for investors in this case at the Second Circuit Court of Appeals, when the Court rejected the heightened ascertainability requirement for obtaining class certification that had been imposed by other circuit courts. She opposed defendants' petition for a writ of certiorari to the Supreme Court. Emma successfully obtained sanctions against a professional objector challenging the integrity of the settlement, both in the District Court and in the Court of Appeals for the Second Circuit.

Emma organized a group of twenty-seven of the foremost U.S. scholars in the field of evidence and spearheaded the effort to submit an amicus brief to the U.S. Supreme Court on their behalf in a critical issue for investors. One of the two pending issues before the High Court in *Goldman Sachs Group Inc. et*

*al v. Arkansas Teachers Retirement System, et al.* (No. 20-222) squarely affected investors' ability to pursue claims collectively as a class: whether, in order to rebut the presumption of reliance originated by the Court in the landmark *Basic v. Levinson* decision, defendants bear the burden of persuasion, or whether they bear only the much lower burden of production. The scholars argued that defendants carry the higher burden of persuasion. In a 6-3 decision, the Supreme Court sided with Pomerantz and the scholars.

Emma led the Firm's class action litigation against Deutsche Bank and its executives, arising from the Bank's improper anti-money-laundering and know-your-customer procedures. Plaintiffs alleged that, despite the Bank's representations that it implemented a "robust and strict" Know Your Customer program with "special safeguards" for politically exposed persons (PEPs), defendants repeatedly exempted high-net-worth individuals and PEPs from any meaningful due diligence, enabling their criminal activities through the Bank's facilities. For example, Deutsche Bank continued "business as usual" with Jeffrey Epstein even after learning that 40 underage girls had come forward with testimony that he had sexually assaulted them. Deutsche Bank's former CEOs also onboarded, retained, and serviced Russian oligarchs and other clients reportedly engaged in criminal activities, with little or no due diligence. On October 20, 2022, Emma secured for investors nearly 50% of recoverable damages, which reflects a premium for the palpable misconduct and is exceptionally high for securities class action settlements. The Deutsche Bank litigation and settlement serve as important legal precedents aimed to deter financial institutions from enabling the wealthy and powerful to commit crimes in return for financial benefits to the institutions.

Emma co-leads the Firm's securities class action against Amazon arising from the behemoth's anti-competitive practices, which are also the subject of investigations by the U.S Congress and foreign regulators. Amazon is accused of misrepresenting its business dealing with third-party sellers on its market platform. Unbeknownst to investors, Amazon repeatedly misappropriated third-party sellers' data to create competing products, tied and bundled its products, exploited its power over third party sellers and favored its private-label products to the detriment of third-party sellers and consumers. The lawsuit seeks to recover billions of dollars in damages on behalf of defrauded investors.

Emma played a leading role in *Strougo v. Barclays PLC*, a high-profile securities class action that alleged Barclays PLC misled institutional investor clients about the extent of the banking giant's use of so-called "dark pool" trading systems. She secured an important precedent-setting opinion from the Second Circuit. Emma organized a group of leading evidence experts who filed amicus briefs supporting plaintiffs' position in the Second Circuit.

Emma secured a unanimous decision by a panel of the Ninth Circuit Court of Appeals, benefiting defrauded investors in *Costa Brava Partnership III LP v. ChinaCast Education Corp*. In an issue of first impression, the Ninth Circuit held that imputation of the CEO's scienter to the company was warranted vis-a-vis innocent third parties, despite the fact that the executive acted for his own benefit and to the company's detriment.

She has also devoted a significant amount of time to pro bono matters. She played a critical role in securing a unanimous ruling by the Arkansas Supreme Court striking down as unconstitutional a state law banning cohabiting individuals from adopting children or serving as foster parents. The ruling was a relief for the 1,600-plus children in the state of Arkansas who needed a permanent family. The litigation generated significant publicity, including coverage by the *Arkansas Times, the Wall Street Journal, and the New York Times.*

She is Lead Counsel in the Firm's class action litigation against Arconic, arising from the deadliest U.K. fire in more than a century. Arconic is the U.S. company that manufactured the highly flammable aluminum cladding allegedly responsible for the inferno that eradicated the public housing, killing 71 people and injuring over 70 other tenants. Arconic repeatedly misrepresented to the market its safety protocols and the safety classification of its cladding products. When the truth about Arconic's unsafe practices emerged, investors lost over $1 billion in damages.

Before joining Pomerantz, Emma was a litigation associate with the firms of Skadden, Arps, Slate, Meagher and Flom, LLP, and Sullivan & Cromwell, LLP. She worked on the *WorldCom Securities Litigation,* which settled for $2 billion.

She also served as a law clerk to the Honorable Thomas C. Platt, former U.S. Chief Judge for the Eastern District of New York.

Emma graduated *cum laude* from Brooklyn Law School, where she served as a staff editor for the *Brooklyn Law Review*. She was the recipient of two CALI Excellence for the Future Awards, in the subjects of evidence and discovery. She graduated *summa cum laude* from Arizona State University, with a BA in French and a minor in Business.

She serves on the Firm's Anti-Harassment and Discrimination Committee.

## Michael Grunfeld

Michael Grunfeld joined Pomerantz in July 2017 as Of Counsel and was elevated to Partner in 2019.

Michael has extensive experience in securities, complex commercial, and white-collar matters in federal and state courts around the country.

He has played a leading role in some of the Firm's significant class action litigation, including its case against Yahoo! Inc. arising out of the biggest data breaches in U.S. history, in which the Firm, as Lead Counsel, achieved an $80 million settlement on behalf of the Class. This settlement made history as the first substantial shareholder recovery in a securities fraud class action related to a cybersecurity breach. Michael also plays a leading role in many of the Firm's other ongoing class actions.

Michael is an honoree of Benchmark Litigation's 40 & Under Hot List 2020, 2021, and 2022, granted to a few of the "best and brightest law firm partners who stand out in their practices." He was named a 2019 Rising Star by Law360, a prestigious honor awarded to a select few top litigators under 40 years old

"whose legal accomplishments transcend their age." In 2020, 2021, and 2022, Michael was recognized by Super Lawyers® as a Top-Rated Securities Litigation Attorney;" in 2018 and 2019 he was honored as a New York Metro Rising Star.

Michael also leads Pomerantz's litigation on behalf of the Colorado Public Employees' Retirement System as an intervenor in *The Doris Behr 2012 Irrevocable Trust v. Johnson & Johnson.* At issue is an activist investor's attempt to have Johnson & Johnson ("J&J") shareholders vote on a proxy proposal instituting a corporate bylaw that would require all securities fraud claims against the company to be pursued through mandatory arbitration, and that would waive shareholder's rights to bring securities class actions. In March 2022, the district court handed down an important victory for shareholders when it granted J&J's and the Intervenors' Motion to Dismiss the Third Amended Complaint.

Michael is the co-author of a chapter on damages in securities class actions in the LexisNexis treatise, *Litigating Securities Class Actions*.

Michael served as a clerk for Judge Ronald Gilman of the Sixth Circuit Court of Appeals and as a foreign law clerk for Justice Asher Grunis of the Israeli Supreme Court. Before joining Pomerantz, he was a litigation associate at Shearman & Sterling LLP and Paul, Weiss, Rifkind, Wharton & Garrison LLP.

Michael graduated from Columbia Law School in 2008, where he was a Harlan Fiske Stone Scholar and Submissions Editor of the Columbia Business Law Review. He graduated from Harvard University with an A.B. in Government, *magna cum laude*, in 2004.

Michael is admitted to practice in New York; the United States District Courts for the Southern and Eastern Districts of New York and the District of Colorado; and the United States Courts of Appeal for the Second, Third, Fourth, Sixth, Ninth, and Tenth Circuits.

## J. Alexander Hood II

J. Alexander Hood II joined Pomerantz in June 2015 and was elevated to Of Counsel to the Firm in 2019. He was elevated to Partner in 2022. Alex leads the Firm's case origination team, identifying and investigating potential violations of the federal securities laws. He has been named a Super Lawyers® Rising Star each year since 2019.

Alex played a key role in securing Pomerantz's appointment as Lead Counsel in actions against Yahoo! Inc., Fiat Chrysler Automobiles N.V., Wynn Resorts Limited, Mylan N.V., The Western Union Company, Perrigo Company plc, Blue Apron Holdings, Inc., AT&T Inc., Wells Fargo & Company, and Raytheon Technologies Corporation, among others.

Alex also oversees the firm's involvement on behalf of institutional investors in non-U.S. litigations, assisting Pomerantz clients with respect to evaluating and pursuing recovery in foreign jurisdictions, including matters in the Netherlands, Germany, the UK, Australia, Brazil, Denmark, and elsewhere.

Prior to joining Pomerantz, Alex practiced at nationally recognized law firms, where he was involved in commercial, financial services, corporate governance and securities matters.

Alex graduated from Boston University School of Law (J.D.) and from the University of Oregon School of Law (LL.M.). During law school, he served as a member of the Boston University Review of Banking & Financial Law and participated in the Thomas Tang Moot Court Competition. In addition, Alex clerked for the American Civil Liberties Union of Tennessee and, as a legal extern, worked on the Center for Biological Diversity's Clean Water Act suit against BP in connection with the Deepwater Horizon oil spill.

Alex is admitted to practice in New York; the United States District Courts for the Southern, Eastern, Western and Northern Districts of New York; the District of Colorado; the Eastern District of Michigan; the Eastern District of Wisconsin; the Northern District of Illinois; the Northern District of Indiana; the Southern District of Texas; and the United States Courts of Appeals for the Second Circuit.

## **Omar Jafri**

Omar Jafri is a Partner at Pomerantz.  He represents defrauded investors in individual and class action securities litigation.  In 2021, Omar was recognized by the *National Law Journal* as a Rising Star of the Plaintiffs' Bar.  The *National Law Journal* selected lawyers who "demonstrated repeated success in cutting-edge work on behalf of plaintiffs over the last 18 months [and] possess a solid track record of client wins over the past three to five years." In 2021, 2022 and 2023, Omar was recognized by Super Lawyers® as a Rising Star in Securities Litigation.

Omar has played an integral role in numerous cases where the Firm achieved significant recoveries for defrauded shareholders as Lead, Co-Lead or Additional Counsel, including: *In re Chicago Bridge & Iron Co. N.V. Securities Litigation* ($44 million recovery); *In re Juno Therapeutics, Inc. Securities Litigation* ($24 million recovery); *In re Aveo Pharmaceuticals, Inc. Securities Litigation* ($18 million recovery, which was more than four times larger than the SEC's fair fund recovery in its parallel litigation); *Sudunagunta v. NantKwest, Inc.* ($12 million settlement); *Cooper v. Thoratec Corporation et. al.* ($11.9 million settlement following a reversal in the United States Court of Appeals for the Ninth Circuit after the lower court repeatedly dismissed the case); *Thomas v. MagnaChip Semiconductor Corp. Securities Litigation* ($6.2 million settlement with majority shareholder, Avenue Capital); *Schaeffer v. Nabriva Therapeutics plc et. al.* ($3 million settlement); and *In re Sequans Communications S.A. Securities Litigation* ($2.75 million settlement).

Together with Partner Joshua Silverman, Omar regularly plays a lead role in the Firm's representation of defrauded investors in connection with complex cases that involve billions of dollars in damages.

Through vigorous litigation, Omar has helped shape important precedents for all investors.  *NantKwest* was the first case in the United States to recognize statistical proof of traceability.  In *Roofer's Pension Fund v. Papa et. al.*, the District Court independently analyzed the market of a security traded on a foreign exchange and found that it met the standards of market efficiency to allow for class certification for the first time since the U.S. Supreme Court decided *Morrison*.  *Nabriva* was the first case in the Second Circuit to sustain a complaint based on the failure to disclose the FDA's serious criticisms identified in a Form 483 letter.  And in *Yan v. ReWalk Robotics et. al.*, while the United States Court of Appeals for the First Circuit disagreed on the merits, the Circuit held that it is erroneous to dismiss a case for lack of standing when a named plaintiff can be substituted with another class member, shutting the door on such defense tactics in any future case filed in that Circuit.

Omar started his legal career at the height of the financial crisis in 2008, and has litigated major disputes on behalf of institutional investors arising out of the credit crisis, including disputes related to Collateralized Debt Obligations, Residential Mortgage-Backed Securities, Credit Default Swaps and other complex financial investments. Omar also represented the Examiner in the *Lehman Brothers* bankruptcy, the largest in history at the time, and helped draft a report that identified colorable claims against Lehman's senior executives for violating their fiduciary duties.  He also has a robust *pro bono* criminal defense practice and has represented indigent defendants charged with crimes that range from simple battery to arson and murder.

Before joining Pomerantz, Omar was a law clerk to Judge William S. Duffey, Jr. of the United States District Court for the Northern District of Georgia, and an associate at an international law firm where he represented clients in a wide variety of matters, including securities litigation, complex commercial litigation, white collar criminal defense, and internal investigations.

Omar is a 2004 honors graduate of the University of Texas at Austin, and a 2008, *magna cum laude*, graduate of the University of Illinois College of Law, where he was inducted into the *Order of the Coif* and received the Rickert Award for Excellence in Advocacy.  He is a fellow of the American Bar Foundation.

Omar is admitted to practice in Illinois; the United States District Courts for the Northern District of Illinois (Trial Bar) and the Northern District of Indiana; and the United States Courts of Appeals for the First, Second, Fifth, and Ninth Circuits.

## Jordan L. Lurie

Jordan L. Lurie joined Pomerantz as a partner in the Los Angeles office in December 2018. Jordan heads Pomerantz's Strategic Consumer Litigation practice. He was named a 2021 Southern California Super Lawyer®.

Jordan has litigated shareholder class and derivative actions, complex corporate securities and consumer litigation, and a wide range of fraud and misrepresentation cases brought under state and federal consumer protection statutes involving unfair competition, false advertising, and privacy rights. Among his notable representations, Jordan served as Lead Counsel in the prosecution and successful resolution of major nationwide class actions against Nissan, Ford, Volkswagen, BMW, Toyota, Chrysler and General Motors. He also successfully preserved a multi-million dollar nationwide automotive class action settlement by convincing the then Chief Judge of the Ninth Circuit and his wife, who were also class members and had filed objections to the settlement, to withdraw their objections and endorse the settlement.

Jordan has argued cases in the California Court of Appeals and in the Ninth Circuit that resulted in published opinions establishing class members' rights to intervene and clarifying the standing requirements for an objector to appeal. He also established a Ninth Circuit precedent for obtaining attorneys' fees in a catalyst fee action. Jordan has tried a federal securities fraud class action to verdict. He has been a featured speaker at California Mandatory Continuing Legal Education seminars and is a trained ombudsman and mediator.

Outside of his legal practice, Jordan is an active educator and community leader and has held executive positions in various organizations in the Los Angeles community. Jordan participated in the first Wexner Heritage Foundation leadership program in Los Angeles and the first national cohort of the Board Member Institute for Jewish Nonprofits at the Kellogg School of Management.

Prior to joining Pomerantz, Jordan was the Managing Partner of the Los Angeles office of Weiss & Lurie and Senior Litigator at Capstone Law APC.

Jordan graduated cum laude from Yale University in 1984 with a B.A in Political Science and received his law degree in 1987 from the University of Southern California Law Center, where he served as Notes Editor of the *University of Southern California Law Review*.

Jordan is a member of the State Bar of California and has been admitted to practice before the United States District Courts for the Northern, Southern, Central and Eastern Districts of California, the Eastern and Western Districts of Michigan, and the District of Colorado.

## Jennifer Pafiti

Jennifer Pafiti became associated with the Firm in April 2014 and was elevated to Partner in December 2015. A dually qualified U.K. solicitor and U.S. attorney, she is the Firm's Head of Client Services and also takes an active role in complex securities litigation, representing clients in both class and non-class action securities litigation.

In 2021, Jennifer was selected as a "Women, Influence and Power in Law" honoree by Corporate Counsel, in the Collaborative Leadership – Law Firm category. Lawdragon named Jennifer among the 2021 Leading 500 Lawyers in the United States. In 2020 she was named a California Rising Star by Super Lawyers® and was recognized by Benchmark Litigation as a Future Star. Lawdragon has recognized Jennifer as a Leading Plaintiff Financial Attorney from 2019 through 2021. In 2019, she was also honored by Super Lawyers® as a Southern California Rising Star in Securities Litigation, named to Benchmark Litigation's *40 & Under Hot List* of the best young attorneys in the United States, and recognized by *Los Angeles Magazine* as one of Southern California's Top Young Lawyers. In 2018, Jennifer was recognized as a Lawyer of Distinction. She was honored by Super Lawyers® in 2017 as both a Rising Star and one of the Top Women Attorneys in Southern California. In 2016, the *Daily Journal* selected Jennifer for its "Top 40 Under 40" list of the best young attorneys in California.

Jennifer was an integral member of the Firm's litigation team for *In re Petrobras Securities Litigation,* a case relating to a multi-billion-dollar kickback and bribery scheme at Brazil's largest oil company, Petróleo Brasileiro S.A.- Petrobras, in which the Firm was sole Lead Counsel. She helped secure a significant victory for investors in this case at the Second Circuit Court of Appeals, when the court rejected the heightened ascertainability requirement for obtaining class certification that had been imposed by other Circuit courts such as the Third and Sixth Circuit Courts of Appeals. Working closely with Lead Plaintiff, Universities Superannuation Scheme Limited, she was also instrumental in achieving the historic settlement of $3 billion for Petrobras investors. This is not only the largest securities class action settlement in a decade but is the largest settlement ever in a securities class action involving a foreign issuer, the fifth-largest securities class action settlement ever achieved in the United States, the

largest securities class action settlement achieved by a foreign Lead Plaintiff, and the largest securities class action settlement in history not involving a restatement of financial reports.

Jennifer was involved, among other cases, in the securities class action against rare disease biopharmaceutical company, KaloBios, and certain of its officers, including CEO Martin Shkreli. In 2018, Pomerantz achieved a settlement of $3 million plus 300,000 shares for defrauded investors – an excellent recovery in light of the company's bankruptcy. *Isensee v. KaloBios*. Jennifer also helped achieve a $10 million recovery for the class in a securities litigation against the bankrupt Californian energy company, PG&E, which arose from allegedly false statements made by the company about its rolling power outages in the wake of the catastrophic wildfire incidents that occurred in California in 2015, 2017, and 2018. *Vataj v. Johnson, et al.*

Jennifer earned a Bachelor of Science degree in Psychology at Thames Valley University in England, prior to studying law. She earned her law degrees at Thames Valley University (G.D.L.) and the Inns of Court School of Law (L.P.C.) in the U.K.

Before studying law in England, Jennifer was a regulated financial advisor and senior mortgage underwriter at a major U.K. financial institution. She holds full CeFA and CeMAP qualifications. After qualifying as a solicitor, Jennifer specialized in private practice civil litigation, which included the representation of clients in high-profile cases in the Royal Courts of Justice. Prior to joining Pomerantz, Jennifer was an associate with Robbins Geller Rudman & Dowd LLP in their San Diego office.

Jennifer regularly travels throughout the U.S. and Europe to advise clients on how best to evaluate losses to their investment portfolios attributable to financial fraud or other misconduct, and how best to maximize their potential recoveries. Jennifer is also a regular speaker at events on securities litigation and fiduciary duty.

Jennifer served on the Honorary Steering Committee of Equal Rights Advocates ("ERA"), which focuses on specific issues that women face in the legal profession. ERA is an organization that protects and expands economic and educational access and opportunities for women and girls.

Jennifer is a member of the National Association of Pension Fund Attorneys and represents the Firm as a member of the California Association of Public Retirement Systems, the State Association of County Retirement Systems, the National Association of State Treasurers, the National Conference of Employee Retirement Systems, the Texas Association of Public Employee Retirement Systems, and the U.K.'s National Association of Pension Funds.

Jennifer is admitted to practice in England and Wales; California; the United States District Courts for the Northern, Central and Southern Districts of California; and the United States Court of Appeals for the Ninth Circuit.

**Joshua B. Silverman**

Joshua B. Silverman is a partner in the Firm's Chicago office. He specializes in individual and class action securities litigation.

Josh was Lead Counsel in *In re Groupon, Inc. Securities Litigation,* achieving a $45 million settlement, one of the highest percentage recoveries in the Seventh Circuit. He was also Lead or Co-Lead Counsel in *In re MannKind Corp. Securities Litigation* ($23 million settlement); *In re AVEO Pharmaceuticals, Inc. Securities Litigation* ($18 million settlement, more than four times larger than the SEC's fair fund recovery in parallel litigation); *New Mexico State Investment Council v. Countrywide Financial Corp.* (very favorable confidential settlement); *New Mexico State Investment Council v. Cheslock Bakker & Associates* (summary judgment award in excess of $30 million); *Sudunagunta v. NantKwest, Inc.* ($12 million settlement); *Bruce v. Suntech Power Holdings Corp.* ($5 million settlement); *In re AgFeed, Inc. Securities Litigation* ($7 million settlement); and *In re Hemispherx BioPharma Securities Litigation* ($2.75 million settlement). Josh also played a key role in the Firm's representation of investors before the United States Supreme Court in *StoneRidge,* and prosecuted many of the Firm's other class cases, including *In re Sealed Air Corp. Securities Litigation* ($20 million settlement).

Josh, together with Managing Partner Jeremy Lieberman, achieved a critical victory for investors in the securities fraud class action against Perrigo Co. plc when Judge Arleo of the United States District Court for the District of New Jersey certified classes of investors that purchased Perrigo securities on both the New York Stock Exchange and the Tel Aviv Stock Exchange. Pomerantz represents a number of institutional investors that purchased Perrigo securities on both exchanges after an offer by Mylan N.V. to tender Perrigo shares. This is the first time since *Morrison* that a U.S. court has independently analyzed the market of a security traded on a non-U.S. exchange, and found that it met the standards of market efficiency necessary allow for class certification.

Several of Josh's cases have set important precedent. For example, *In re MannKind* established that investors may support complaints with expert information. *New Mexico v. Countrywide* recognized that investors may show Section 11 damages for asset-backed securities even if there has been no interruption in payment or threat of default. More recently, *NantKwest* was the first Section 11 case in the nation to recognize statistical proof of traceability.

In addition to prosecuting cases, Josh regularly speaks at investor conferences and continuing legal education programs.

Before joining Pomerantz, Josh practiced at McGuireWoods LLP and its Chicago predecessor, Ross & Hardies, where he represented one of the largest independent futures commission merchants in commodities fraud and civil RICO cases. He also spent two years as a securities trader, and continues to actively trade stocks, futures, and options for his own account.

Josh is a 1993 graduate of the University of Michigan, where he received Phi Beta Kappa honors, and a 1996 graduate of the University of Michigan Law School.

Josh is admitted to practice in Illinois; the United States District Court for the Northern District of Illinois; the United States Courts of Appeals for the First, Second, Third, Seventh, Eighth and Ninth Circuits; and the United States Supreme Court.

### Brenda Szydlo

Brenda Szydlo joined Pomerantz in January 2016 as Of Counsel and was elevated to Partner in 2022. She brings to the Firm extensive experience in complex civil litigation in federal and state court on behalf of

plaintiffs and defendants, with a particular focus on securities and financial fraud litigation, litigation against pharmaceutical corporations, accountants' liability, and commercial litigation. In 2020, 2021, and 2022, Brenda was recognized by Super Lawyers® as a "Top-Rated Securities Litigation Attorney. Brenda was also included on the Lawdragon 500 Leading Plaintiff Financial Lawyers list for 2022.

Brenda played a leading role in the Firm's securities class action case in the Southern District of New York against Brazil's largest oil company, Petrobras, arising from a multi-billion-dollar kickback and bribery scheme, in which the Firm, as sole Lead Counsel, achieved a precedent-setting legal ruling and a historic $3 billion settlement for the Class. This is not only the largest securities class action settlement in a decade but is the largest settlement ever in a securities class action involving a foreign issuer, the fifth-largest securities class action settlement ever achieved in the United States, the largest securities class action settlement achieved by a foreign Lead Plaintiff, and the largest securities class action settlement in history not involving a restatement of financial reports.

Brenda has represented investors in additional class and private actions that have resulted in significant recoveries, such as *In re Pfizer, Inc. Securities Litigation*, where the recovery was $486 million, and *In re Refco, Inc. Securities Litigation*, where the recovery was in excess of $407 million. She has also represented investors in opt-out securities actions, such as investors opting out of *In re Bank of America Corp. Securities, Derivative & ERISA Litigation* in order to pursue their own securities action.

Prior to joining Pomerantz, Brenda served as Senior Counsel in a prominent plaintiff advocacy firm, where she represented clients in securities and financial fraud litigation, and litigation against pharmaceutical corporations and accounting firms. Brenda also served as Counsel in the litigation department of one of the largest premier law firms in the world, where her practice focused on defending individuals and corporation in securities litigation and enforcement, accountants' liability actions, and commercial litigation.

Brenda is a graduate of St. John's University School of Law, where she was a St. Thomas More Scholar and member of the Law Review. She received a B.A. in economics from Binghamton University.

Brenda is admitted to practice in New York; United States District Courts for the Southern and Eastern Districts of New York; the U.S. Courts of Appeals for the Second and Ninth Circuits; and the United States Supreme Court.

## Matthew L. Tuccillo

A Partner since 2013, Matthew L. Tuccillo joined Pomerantz in 2011.  With 23+ years of experience, he is recognized as a top national securities litigator.

Matt serves as the Firm's lead litigator on high-stakes securities class action litigation in courts nationwide.  He closely advises his institutional clients, which are regularly appointed to serve as lead plaintiffs overseeing such lawsuits.  His current caseload includes multiple billion-dollar lawsuits headed by his clients.  Matt's representative cases include:

    • In *In re Miniso Group Holding Limited Securities Litigation*, No. CV-22-5815 (MR Wx) (S.D.N.Y.), one of Matt's foreign pension fund clients has been appointed lead plaintiff to oversee class action

claims arising from a China-based retail company's U.S. IPO. An amended complaint will be filed and a motion to dismiss will be litigated in 2023.

• In *In re Emergent Biosolutions, Inc. Securities Litigation*, No. 8:21-cv-00955-PWG (D. Md.), arising from a company's COVID-19 vaccine manufacturing failures, one of Matt's foreign pension fund clients serves as court-appointed lead plaintiff. Matt filed a robust amended complaint, based on confidential sources and extensive U.S. government documents, and has opposed the motion to dismiss, with a ruling expected in 2023.

• In *Edwards v. McDermott Int'l, Inc.*, No. 4:18-cv-4330-AB (S.D. Tex.), Matt successfully opposed a motion to dismiss a class action lawsuit, led by one of his foreign pension fund clients, alleging a years-long, multi-prong fraud by an engineering and construction company that did a risky merger, belatedly reported massive write-downs, and declared bankruptcy. Matt has secured court orders in discovery requiring defendants to review for production over 1.25 million documents identified by running plaintiff-authored search terms on plaintiff-selected custodians.

• In *Chun v. Fluor Corp., et al.*, No. 3:18-cv-01338-S (N.D. Tex.), with two of his U.S. municipal pension fund clients serving as co-lead plaintiffs, Matt served as co-lead counsel in hard-fought litigation concerning underperforming, large-scale, fixed-bid projects through two motions to dismiss. A months-long mediation and negotiation process resulted in a court-approved $33 million settlement, which was a 37.5% recovery of the upheld claim value.

• In *Odonate Therapeutics, Inc., et al.*, No. 3:20-01828-H-LL (S.D. Cal.), Matt successfully opposed a motion to dismiss in a securities lawsuit arising from a pharmaceuticals company's failure to advance its lead drug candidate to FDA approval. Notably, the court held that defendants' scienter (intent) was sufficiently pled, even though they bought, rather than sold, company stock during the period of alleged fraud. A successful mediation resulted in a court-approved $12.75 million settlement.

• In *In re BP p.l.c. Secs. Litig.*, No. 4:10-md-2185 (S.D. Tex.), where the court praised the "uniformly excellent" "quality of lawyering," Matt spearheaded lawsuits over BP's Gulf of Mexico oil spill by 125+ global institutional investors. Over 9 years, he successfully opposed three motions to dismiss, oversaw e-discovery of 1.75 million documents, led the Plaintiffs Steering Committee, was the sole interface with BP and the Court, and secured some of the Firm's most ground-breaking rulings. In a ruling of first impression, he successfully argued that investors asserted viable English law "holder claims" for losses due to retention of already-owned shares in reliance on a fraud, a theory barred under U.S. law since *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975). He successfully argued against *forum non conveniens* (wrong forum) dismissal of 80+ global institutions' lawsuits - the first ruling after *Morrison v. Nat'l Australia Bank Ltd.*, 130 S. Ct. 2869 (2010), to permit foreign investors to pursue in U.S. court their foreign law claims for losses in a foreign company's securities traded on a foreign exchange. He successfully argued that the U.S. Securities Litigation Uniform Standards Act of 1998 (SLUSA), which extinguishes U.S. state law claims in deference to the U.S. federal law, should not extend to the foreign law claims of U.S. and foreign investors, a ruling that

saved those claims from dismissal where U.S. federal law afforded no remedy after *Morrison*.  In 2021, Matt achieved mediator-assisted, confidential, favorable monetary settlement for all 35 Firm clients including public and private pension funds, money management firms, partnerships, and trusts from the U.S., Canada, the U.K., France, the Netherlands, and Australia.  Notably, seven of these plaintiffs were Matt's institutional clients from the U.S., U.K., and Canada.

• In *In re Toronto-Dominion Bank Securities Litigation*, No. 1:17-cv-01735 (D.N.J.), Matt pled a multi-year fraud arising at one of Canada's largest banks, based on extensive statements by former employees detailing underlying retail banking misconduct.  Matt persuaded the court to reject a motion to dismiss in an order noteworthy because it validated the scienter (intent) pleading despite no witness speaking directly to the individual defendants' state of mind.  The court approved a $13.25 million class-wide settlement achieved after mediation.

• In *Perez v. Higher One Holdings, Inc., et al.*, No. 14-cv-00755-AWT (D. Conn.), Matt persuaded the court, after an initial dismissal, to uphold a second amended complaint asserting five threads of fraud by an education funding company and its founders and to approve a $7.5 million class-wide settlement.  Notably, the court held that the company's reported financial results violated SEC Regulation S-K, Item 303, for failure to disclose known trends and impacts from underlying misconduct – a rare ruling absent an accounting restatement.

• In *In re KaloBios Pharmaceuticals, Inc. Securities Litigation*, No. 15-cv-05841 (N.D. Cal.), a lawsuit against a bankrupt drug company and its jailed ex-CEO, Matt negotiated two class-wide settlements totaling $3.25+ million, including cash payments and stock from the company, that were approved by the bankruptcy and district courts.

• In *In re Silvercorp Metals, Inc. Securities Litigation*, No. 1:12-cv-09456 (S.D.N.Y.), Matt worked with mining, accounting, damages, and market efficiency experts to survive a motion to dismiss by a Canadian company with mining operations in China and NYSE-traded stock.  In approving the $14 million settlement achieved after two mediations, Judge Rakoff called the case "unusually complex," given the technical nature of mining metrics, the need to compare mining standards in Canada, China, and the U.S., and the volume of Chinese-language evidence.

Matt was also on the multi-firm team that represented commercial real estate investors against the Empire State Building's long-term lessees/operators regarding a consolidation, REIT formation, and IPO in *In re Empire State Realty Trust, Inc. Investor Litig.*, No. 650607/2012 (N.Y. Sup. Ct.), which was resolve for a $55 million cash/securities settlement fund, a $100 million tax benefit from restructured terms, remedial disclosures, and deal protections.

Matt regularly counsels institutional investors, foreign and domestic, regarding pending or potential complex litigation in the U.S.  He is skilled at identifying potential securities frauds early, regularly providing clients with the first opportunity to evaluate and pursue their claims, and he has worked extensively with outside investment management firms retained by clients to identify a winning set of supporting evidence.  When litigation is filed, he fully oversees its conduct and resolution, counseling

clients throughout every step of the process, while handling all significant motions and courtroom arguments.  These skills have enabled him to sign numerous institutional clients for litigation and portfolio monitoring services, including public and private pension plans, investment management firms and sponsored investment vehicles, from both the U.S. and abroad.  Matt's clients have spearheaded the Firm's litigation efforts in the *BP*, *Fluor*, *McDermott*, *Emergent*, and *Miniso* litigations discussed above.

Matt takes great pride in representing union clients.  He got his own union card as a teenager (United Food & Commercial Workers International Union, Local 371), following in the footsteps of his grandfather (International Brotherhood of Teamsters, Local 560).

Before joining Pomerantz, Matt worked at a large full-service firm then plaintiff-side boutique firms in Boston and Connecticut, litigating complex business disputes and securities, consumer, and employment class actions.  His pro bono work included securing Social Security benefits for a veteran with non-service-related disabilities.
Matt graduated from the Georgetown University Law Center in 1999, where he made the Dean's List. He graduated from Wesleyan University in 1995, and among his various volunteer activities, he served as President of the Wesleyan Lawyers Association from 2017-2020.

His has been named a *Super Lawyers®* "Top-Rated Securities Litigation Attorney" (2016-present), *Benchmark* Litigation Star (2021-present), *Legal 500* Recommended Securities Litigator (2016, 2021), *American Lawyer* Northeast Trailblazer (2021), *Lawdragon* Leading Plaintiff Financial Lawyer (2019-2020), and a *Martindale-Hubbell* AV® Preeminent™ peer-rated attorney (2014-present).  His advocacy has been covered by Bloomberg, Law360, the *Houston Chronicle*, the *Hartford Business Journal*, and other outlets.

He is a member of the Bars the Supreme Court of the United States; the State of New York; the State of Connecticut; the Commonwealth of Massachusetts; the Second and Ninth Circuit Courts of Appeals; and the United States District Courts for the Southern and Eastern District of New York, Connecticut, Massachusetts, the Northern District of Illinois, the Eastern District of Wisconsin, and the Southern District of Texas.  He is regularly admitted *pro hac vice* in state and federal courts nationwide.

**Austin P. Van**

Austin focuses his practice on high-profile securities class actions. In 2020, Austin was named by Law360 in 2020 as an MVP in Securities Litigation, part of an "elite slate of attorneys [who] have distinguished themselves from their peers by securing hard-earned successes in high-stakes litigation, complex global matters and record-breaking deals." Only up to six attorneys nationwide are selected each year as MVPs in Securities Litigation. Austin was name to Benchmark Litigations "40 and Under Hotlist" in 2020 and 2021. Austin has been recognized by Lawdragon as one of the top 500 Leading Plaintiff Financial Lawyers and has been named as a Recommended Lawyer by The Legal 500. Every year from 2018 through 2021, Austin has been honored as a Super Lawyers® Rising Star.

With Pomerantz Managing Partner Jeremy Lieberman, Austin heads the firm's representation of lead plaintiffs in a securities class action against drug behemoth Mylan N.V. This multi-billion-dollar litigation is one of the largest securities class actions pending anywhere. The complaint alleges that Mylan misled investors about wide-ranging wrongful conduct in what some estimate to be the largest price-fixing conspiracy in U.S. history. Austin devised the central theories of the case and authored all three amended complaints in this matter, which has continued to expand. He authored all of lead plaintiffs' three successful opposition briefs to defendants' motions to dismiss, in 2018, 2019, and 2020 respectively, as well as lead plaintiffs' successful arguments for class certification in 2019. In April 2020, the court rejected the Defendants' motion to dismiss the third amended complaint in a precedent-setting decision concerning scheme liability, and certified a class of investors spanning five years, all based on Austin's arguments. He led fact discovery in the matter, which consisted of review and distillation of millions of documents, orchestrated the Class's thirty fact depositions, and most recently, completed overseeing the Class's submission of five expert reports, totaling thousands of pages of expert disclosures.

Austin led Pomerantz's securities class action against TechnipFMC, an oil and gas services provider. He uncovered the theory of this case: that TechnipFMC massively overstated its net income in its initial registration statement due to its use of incorrect foreign exchange rates. Austin successfully argued at oral argument in 2018 that the Court should deny defendants' motion to dismiss the central claim in the matter. In 2019, Austin successfully argued lead plaintiff's motion for class certification. He led the class through complete preparations for trial. The case settled in 2020 for approximately $20 million.

Austin led a successful securities class action at Pomerantz against Rockwell Medical, Inc. and served as co-lead counsel on the matter with another firm. Austin extensively investigated the facts of this case and drafted the operative complaint. At a pre-motion conference for Defendants' motion to dismiss, District Senior Judge Allyn R. Ross stated: "based on what I have reviewed, it is virtually inconceivable to me that the consolidated amended complaint could possibly be dismissed on a Rule 12(b)(6) motion or a Rule 9(b) motion" and that the proposed motion practice "would be a complete waste of time and resources of counsel, of the clients' money, and my time." Defendants declined even to move to dismiss the complaint and settled the case in 2019 for $3.7 million—a highly favorable settlement for the Class.

Austin received a J.D. from Yale Law School, where he was an editor of the Yale Law Journal and the Yale Journal of International Law. He has a B.A. from Yale University and an M.Sc. from the London School of Economics.

Austin is admitted to practice law in New York and New Jersey; the United States District Courts for the Southern and Eastern Districts of New York, the District of New Jersey, the Northern District of Illinois, and the Southern District of Texas; and the United States Courts of Appeals for the First and Second Circuits.

## Murielle Steven Walsh

Murielle Steven Walsh joined the Firm in 1998 and was elevated to Partner in 2007. In 2022, Murielle was selected to participate on Law360's Securities Editorial Board. She was named a 2020 Plaintiffs' Lawyer Trailblazer by the *National Law Journal*, an award created to "honor a handful of individuals from each practice area that are truly agents of change" and was also honored as a 2020 Plaintiffs'

Trailblazer by the *New York Law Journal*. Murielle was honored in 2019, 2020 and 2021 as a Super Lawyers® "Top-Rated Securities Litigation Attorney," a recognition bestowed on 5% of eligible attorneys in the New York Metro area. Lawdragon name her a Top Plaintiffs' Financial Lawyer in 2019 and 2020.

During her career at Pomerantz, Murielle has prosecuted highly successful securities class action and corporate governance cases. She was one of the lead attorneys litigating *In re Livent Noteholders' Securities Litigation*, a securities class action in which she obtained a $36 million judgment against the company's top officers, a ruling which was upheld by the Second Circuit on appeal. Murielle was also part of the team litigating *EBC I v. Goldman Sachs*, where the Firm obtained a landmark ruling from the New York Court of Appeals, that underwriters may owe fiduciary duties to their issuer clients in the context of a firm-commitment underwriting of an initial public offering.

Murielle leads the Firm's securities class action against Wynn Resorts Ltd., in which Pomerantz is lead counsel. The litigation arises from the company's concealment of a long-running pattern of sexual misconduct against Wynn employees by billionaire casino mogul Stephen Wynn, the company's founder and former Chief Executive Officer. In May 2020, the court granted the defendants' motion to dismiss while granting Pomerantz leave to amend. In May 2020, the court granted the defendants' motion to dismiss while granting Pomerantz leave to amend its complaint. The defendants moved to dismiss the newly amended complaint, but the court denied their motion in part, sustaining claims that arose from critical misstatements by the company. The case is now in discovery. *Ferris v. Wynn Resorts Ltd.*, No. 18-cv-479 (D. Nev.)

In a securities class action against Ormat Technologies, Inc., Murielle achieved a $3,750,000 settlement on behalf of defrauded investors in January 2021. Ormat's securities are dual-listed on the NYSE and the Tel Aviv Stock Exchange. Murielle persuaded the district court in exercise supplemental jurisdiction in order to apply U.S. securities law to the claims in the case, regardless of where investors purchased their securities.

Murielle led the Firm's ground-breaking litigation that arose from the popular Pokémon Go game, in which Pomerantz was lead counsel. Pokémon Go is an "augmented reality" game in which players use their smart phones to "catch" Pokémon in real-world surroundings. GPS coordinates provided by defendants to gamers included directing the public to private property without the owners' permission, amounting to an alleged mass nuisance. *In re Pokémon Go Nuisance*, No. 3:16-cv-04300 (N.D. Cal.)

Murielle was co-lead counsel in *Thorpe v. Walter Investment Management Corp.*, No. 14-cv-20880 (S.D. Fla.), a securities fraud class action challenging the defendants' representations that their lending activities were regulatory-compliant, when in fact the company's key subsidiary engaged in rampant violations of federal consumer financial protection laws, subjecting it to various government investigations and a pending enforcement action by the CFPB and FTC. In 2016, the Firm obtained a $24 million settlement on behalf of the class. She was also co-lead counsel in *Robb v. Fitbit Inc.*, No. 16-cv-00151 (N.D. Cal.), a securities class action alleging that the defendants misrepresented that their key product delivered "highly accurate" heart rate readings when in fact their technology did not consistently deliver accurate readings during exercise and its inaccuracy posed serious health risks to users of Fitbit's products. The Firm obtained a $33 million settlement on behalf of the investor class in this action.

In 2018 Murielle, along with then-Senior Partner Jeremy Lieberman, achieved a $3,300,000 settlement for the Class in the Firm's case against Corinthian Colleges, one of the largest for-profit college systems in the country, for alleged misrepresentations about its job placement rates, compliance with applicable regulations, and enrollment statistics. Pomerantz prevailed in the motion to dismiss the proceedings, a particularly noteworthy victory because Chief Judge George King of the Central District of California had dismissed two prior lawsuits against Corinthian with similar allegations. *Erickson v. Corinthian Colleges, Inc.*, No. 2:13-cv-07466 (C.D. Cal.).

Murielle serves as a member and on the Executive Committee of the Board of Trustees of the non-profit organization Court Appointed Special Advocates for Children ("CASA") of Monmouth County. She served on the Honorary Steering Committee of Equal Rights Advocates ("ERA"), which focuses on and discusses specific issues that women face in the legal profession. ERA is an organization that protects and expands economic and educational access and opportunities for women and girls. In the past, Murielle served as a member of the editorial board for Class Action Reports, a Solicitor for the Legal Aid Associates Campaign, and has been involved in political asylum work with the Association of the Bar of the City of New York.

Murielle serves on the Firm's Anti-Harassment and Discrimination Committee.

Murielle graduated *cum laude* from New York Law School in 1996, where she was the recipient of the Irving Mariash Scholarship. During law school, Murielle interned with the Kings County District Attorney and worked within the mergers and acquisitions group of Sullivan & Cromwell.

Murielle is admitted to practice in New York; the United States District Court for the Southern District of New York; and the United States Courts of Appeals for the Second and Sixth Circuits.

## Tamar A. Weinrib

Tamar A. Weinrib joined Pomerantz in 2008. She was Of Counsel to the Firm from 2014 through 2018 and was elevated to Partner in 2019. In 2020, The Legal 500 honored her as a Next Generation Partner. Tamar was named a 2018 Rising Star under 40 years of age by Law360, a prestigious honor awarded to a select few "top litigators and dealmakers practicing at a level usually seen from veteran attorneys." Tamar has been recognized by Super Lawyers® as a 2021 "Top-Rated Securities Litigation Attorney;" she was honored as a New York Metro Rising Star every year from 2014 to 2019.

In 2019, Tamar and Managing Partner Jeremy Lieberman achieved a $27 million settlement for the Class in *Strougo v. Barclays PLC*, a high-profile securities class action in which Pomerantz was Lead Counsel. Plaintiffs alleged that Barclays PLC misled institutional investor clients about the extent of the banking giant's use of so-called "dark pool" trading systems. This case turned on the duty of integrity owed by Barclays to its clients. In November 2016, Tamar and Jeremy achieved precedent-setting victories for investors, when the Second Circuit Court of Appeals held that direct evidence of price impact is not always necessary to demonstrate market efficiency to invoke the presumption of reliance, and that defendants seeking to rebut the presumption of reliance must do so by a preponderance of the evidence rather than merely meeting a burden of production. In 2018, Tamar successfully opposed Defendants' petition to the Supreme Court for a writ of certiorari.

In approving the settlement in *Strougo v. Barclays PLC* in June 2019, Judge Victor Marrero of the Southern District of New York stated:

> Let me thank counsel on both sides for the extraordinary work both sides did in bringing this matter to a reasonable conclusion. As the parties have indicated, the matter was intensely litigated, but it was done in the most extraordinary fashion with cooperation, collaboration, and high levels of professionalism on both sides, so I thank you.

Tamar headed the litigation of *In re Delcath Systems, Inc. Securities Litigation*, in which Pomerantz achieved a settlement of $8,500,000 for the class. She successfully argued before the Second Circuit in *In re China North East Petroleum Securities Litigation,* to reverse the district court's dismissal of the defendants on scienter grounds.

Among other securities fraud class actions that Tamar led to successful settlements are *KB Partners I, L.P. v. Pain Therapeutics, Inc.* ($8,500,000); *New Oriental Education & Technology Group, Inc.* ($3,150,000 pending final approval); and *Whiteley v. Zynerba Pharmaceuticals Inc. et al.* ($4,000,000 pending final approval).

Before coming to Pomerantz, Tamar had over three years of experience as a litigation associate in the New York office of Clifford Chance US LLP, where she focused on complex commercial litigation. Tamar has successfully tried pro bono cases, including two criminal appeals and a housing dispute filed with the Human Rights Commission.

Tamar graduated from Fordham University School of Law in 2004 and while there, won awards for successfully competing in and coaching Moot Court competitions.

Tamar is admitted to practice in New York; the United States District Courts for the Southern and Eastern Districts of New York; and the United States Courts of Appeals for the Second, Third, Fourth, and Ninth Circuits.

## Michael J. Wernke

Michael J. Wernke joined Pomerantz as Of Counsel in 2014 and was elevated to Partner in 2015. He was named a 2020 Plaintiffs' Lawyer Trailblazer by the *National Law Journal*, an award created to "honor a handful of individuals from each practice area that are truly agents of change."

Michael, along with Managing Partner Jeremy Lieberman, led the litigation in *Pirnik v. Fiat Chrysler Automobiles N.V. et al.*, No. 1:15-cv-07199-JMF (S.D.N.Y), in which the Firm, as Lead Counsel, achieved a $110 million settlement for the class. This high-profile securities class action alleges that Fiat Chrysler concealed from investors that it improperly outfitted its diesel vehicles with "defeat device" software designed to cheat NOx emissions regulations in the U.S. and Europe, and that regulators had accused Fiat Chrysler of violating the emissions regulations. The *Fiat Chrysler* recovery provides the class of investors with as much as 20% of recoverable damages—an excellent result when compared to historical statistics in class action settlements, where typical recoveries for cases of this size are between 1.6% and 3.3%.

Michael led the securities class action *Zwick Partners, LP v. Quorum Health Corp., et al.*, No. 3:16-cv-2475, achieving a settlement of $18,000,000 for the class in June 2020. The settlement represented between 12.7% and 42.9% of estimated recoverable damages. Plaintiff alleged that defendants misrepresented to investors the poor prospects of hospitals that the parent company spun off into a stand-alone company. In defeating defendants' motions to dismiss the complaint, Michael successfully argued that company from which Quorum was spun off was a "maker" of the false statements even though all the alleged false statements concerned only Quorum's financials and the class involved only purchasers of Quorum's common stock. This was a tremendous victory for plaintiffs, as cases alleging false statements of goodwill notoriously struggle to survive motions to dismiss.

Along with Managing Partner Jeremy Lieberman, Michael leads the Firm's individual action against pharmaceutical giant Teva Pharmaceutical Industries Ltd. and Teva Pharmaceuticals USA, Inc. (together, "Teva"), and certain of Teva's current and former employees and officers, relating to alleged anticompetitive practices in Teva's sales of generic drugs. Teva is a dual-listed company; the Firm represents several Israeli institutional investors who purchased Teva shares on the Tel Aviv Stock Exchange. In early 2021, Pomerantz achieved a major victory for global investors when the district court agreed to exercise supplemental jurisdiction over the Israeli law claims. *Clal Insurance Company Ltd. v. Teva Pharmaceutical Industries Ltd.*

In December 2018, Michael, along with Pomerantz Managing Partner Jeremy A. Lieberman, secured a $31 million partial settlement with three defendants in *In re Libor Based Financial Instruments Antitrust Litigation*, a closely watched multi-district litigation, which concerns the LIBOR rigging scandal.

In October 2018, Michael secured a $15 million settlement in *In re Symbol Technologies, Inc. Securities Litigation*, No. 2:05-cv-03923-DRH-AKT (E.D.N.Y.), a securities class action that alleges that, following an accounting fraud by prior management, Symbol's management misled investors about state of its internal controls and the Company's ability to forecast revenues.

He was Lead Counsel in *Thomas v. Magnachip Semiconductor Corp.*, in which he achieved a $23.5 million partial settlement with certain defendants, securing the settlement despite an ongoing investigation by the Securities and Exchange Commission and shareholder derivative actions. He played a leading role in *In re Lumber Liquidators, Inc. Securities Litigation*, in which Pomerantz, as Co-Lead Counsel, achieved a settlement of $26 million in cash and 1,000,000 shares of Lumber Liquidators common stock for the Class. Michael also secured a $7 million settlement (over 30% of the likely recoverable damages) in the securities class action *Todd v. STAAR Surgical Company, et. al.*, No. 14-cv-05263-MWF-RZ (C.D. Cal.), which alleged that STAAR concealed from investors violations of FDA regulations that threatened the approval of STAAR's long awaited new product.

In the securities class action *In re Atossa Genetics, Inc. Securities Litigation*, No. 13-cv-01836-RSM (W.D. Wash.), Michael secured a decision by the Ninth Circuit Court of Appeals that reversed the district court's dismissal of the complaint. The Ninth Circuit held that the CEO's public statements that the company's flagship product had been approved by the FDA were misleading despite the fact that the company's previously filed registration statement stated that that the product did not, at that time, require FDA approval.

During the nine years prior to coming to Pomerantz, Michael was a litigator with Cahill Gordon & Reindel LLP, with his primary focus in the securities defense arena, where he represented multinational

financial institutions and corporations, playing key roles in two of only a handful of securities class actions to go to jury verdict since the passage of the PSLRA.

In 2020 and 2021, Michael was honored as a Super Lawyers® "Top Rated Securities Litigation Attorney." In 2014 and 2015, he was recognized as a Super Lawyers® New York Metro Rising Star.

Michael received his J.D. from Harvard Law School in 2004. He also holds a B.S. in Mathematics and a B.A. in Political Science from Ohio State University, where he graduated *summa cum laude*.

He serves on the Firm's Anti-Harassment and Discrimination Committee.

Michael is admitted to practice in New York; the United States District Court for the Southern District of New York; and the United States Supreme Court.

## Senior Counsel

### Stanley M. Grossman

Stanley M. Grossman, Senior Counsel, is a former Managing Partner of Pomerantz. Widely recognized as a leader in the plaintiffs' securities bar, he was honored in 2020 with a Lifetime Achievement award by the *New York Law Journal*. Martindale Hubbell awarded Stan its 2021 AV Preeminent Rating®, "given to attorneys who are ranked at the highest level of professional excellence for their legal expertise, communication skills, and ethical standards by their peers." Stan was selected by *Super Lawyers*® as an outstanding attorney in the United States for the years 2006 through 2020 and was featured in the *New York Law Journa*l article *Top Litigators in Securities Field -- A Who's Who of City's Leading Courtroom Combatants*. Lawdragon named Stan a Leading Plaintiff Financial Lawyer in 2019 and 2020, and in 2021, he was inducted into the Lawdragon Hall of Fame. In 2013, Brooklyn Law School honored Stan as an Alumnus of the Year.

Stan has primarily represented plaintiffs in securities and antitrust class actions, including many of those listed in the Firm biography. *See, e.g., Ross v. Bernhard*, 396 U.S. 531 (1970); *Rosenfeld v. Black*, 445 F.2d 137 (2d Cir. 1971); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433 (9th Cir. 1987); and *In re Salomon Bros. Treasury Litig.*, 9 F.3d 230 (2d Cir. 1993). In 2008 he appeared before the United States Supreme Court to argue that scheme liability is actionable under Section 10(b) and Rule 10b-5(a) and (c). *See StoneRidge Inv. Partners, LLC v. Sci.-Atlanta*, *Inc.,* No. 06-43 (2008). Other cases where he was the Lead or Co-Lead Counsel include: *In re Salomon Brothers Treasury Litigation*, No. 91 Civ. 5471 (S.D.N.Y. 1994) ($100 million cash recovery); *In re First Executive Corporation Securities Litigation*, No. CV-89-7135 (C.D. Cal. 1994) ($100 million settlement); and *In re Sorbates Direct Purchaser Antitrust Litigation*, No. C98-4886 (N.D. Cal. 2000) (over $80 million settlement for the class).

In 1992, Senior Judge Milton Pollack of the Southern District of New York appointed Stan to the Executive Committee of counsel charged with allocating to claimants hundreds of millions of dollars obtained in settlements with Drexel Burnham & Co. and Michael Milken.

Many courts have acknowledged the high quality of legal representation provided to investors by Stan. In *Gartenberg v. Merrill Lynch Asset Management, Inc.*, No. 79 Civ. 3123 (S.D.N.Y.), where Stan was lead trial counsel for plaintiff, Judge Pollack noted at the completion of the trial:

> [I] can fairly say, having remained abreast of the law on the factual and legal matters that have been presented, that I know of no case that has been better presented so as to give the Court an opportunity to reach a determination, for which the court thanks you.

Stan was also the lead trial attorney in *Rauch v. Bilzerian* (N.J. Super. Ct.) (directors owed the same duty of loyalty to preferred shareholders as common shareholders in a corporate takeover), where the court described the Pomerantz team as "exceptionally competent counsel." He headed the six week trial on liability in *Walsh v. Northrop Grumman* (E.D.N.Y.) (a securities and ERISA class action arising from Northrop's takeover of Grumman), after which a substantial settlement was reached.

Stan frequently speaks at law schools and professional organizations. In 2010, he was a panelist on *Securities Law: Primary Liability for Secondary Actors*, sponsored by the Federal Bar Council, and he presented *Silence Is Golden – Until It Is Deadly: The Fiduciary's Duty to Disclose*, at the Institute of American and Talmudic Law. In 2009, Stan was a panelist on a Practicing Law Institute "Hot Topic Briefing" entitled StoneRidge - *Is There Scheme Liability or Not?*

Stan served on former New York State Comptroller Carl McCall's Advisory Committee for the NYSE Task Force on corporate governance. He is a former president of NASCAT. During his tenure at NASCAT, he represented the organization in meetings with the Chairman of the Securities and Exchange Commission and before members of Congress and of the Executive Branch concerning legislation that became the PSLRA.

Stan served for three years on the New York City Bar Association's Committee on Ethics, as well as on the Association's Judiciary Committee. He is actively involved in civic affairs. He headed a task force on behalf of the Association, which, after a wide-ranging investigation, made recommendations for the future of the City University of New York. He was formerly on the board of the Appleseed Foundation, a national public advocacy group.

Stan is admitted to practice in New York; the United States District Courts for the Southern and Eastern Districts of New York, Central District of California, Eastern District of Wisconsin, District of Arizona, District of Colorado; the United States Courts of Appeals for the First, Second, Third, Ninth and Eleventh Circuits; and the United States Supreme Court.

### Marc I. Gross

Marc I. Gross is Senior Counsel at Pomerantz LLP where he has litigated securities fraud class actions for over four decades, serving as its Managing Partner from 2009 to 2016. His major lawsuits include SAC Capital (Steven Cohen - insider trading); Chesapeake Energy (Aubrey McClendon - insider bail out); Citibank (analyst Jack Grubman – false AT&T stock recommendation);  and Charter Communications (Paul Allen - accounting fraud). He also litigated market efficiency issues in the firm's landmark $3 billion recovery in *Petrobras*.

Mr. Gross has also served as President of the Institute of Law and Economic Policy ("ILEP"), which has organized symposiums each year where leading academics have presented papers on securities law and consumer protection issues. These papers have been cited in over 200 cases, including several in the United States Supreme Court. http://www.ilep.org.

Mr. Gross has addressed numerous forums in the United States on shareholder-related issues, including ILEP; Loyola-Chicago School of Law's Institute for Investor Protection Conference; the National Conference on Public Employee Retirement Systems' ("NCPERS") Legislative Conferences; PLI conferences on Current Trends in Securities Law; a panel entitled *Enhancing Consistency and Predictability in Applying Fraud-on-the-Market Theory*, sponsored by the Duke Law School Center for Judicial Studies, as well as securities law students at NYU and Georgetown Law schools.

Among other articles, Mr. Gross authored, *Cooking Books? The Valuation Treadmill*, 50 Sec.Reg.L.Jrl 363 (2022);*Reputation and Securities Litigation*, 47 Sec. Reg. l Jrl. 99 (2019) *Back to Basic(s): Common Sense Trumps Econometrics*, N.Y.L.J. (Jan. 8, 2018) (with Jeremy Lieberman); and *Class Certification in a Post-Halliburton II World*, 46 Loyola-Chicago L.J. 485 (2015).

Mr. Gross was honored in 2022 by T'ruah, the Rabbinic Call to Human Rights, for his pro bono work in support of the Coalition of Immokalee Workers in Florida in their battle for recognition by Wendy's Restaurants, and recently joined the Board of Mainchance, a homeless drop-in shelter operating in Manhattan.

Mr. Gross is a graduate of NYU Law '76 and Columbia College '73.


**Patrick V. Dahlstrom**

Patrick Dahlstrom joined Pomerantz as an associate in 1991 and was elevated to Partner in January 1996. He served as Co-Managing Partner with Jeremy Lieberman in 2017 and 2018 and is now Senior Counsel. Patrick heads the Firm's Chicago office. He was honored as a Super Lawyers® "Top-Rated Securities Litigation Attorney" from 2018 – 2021. In 2021, Patrick was inducted into the Lawdragon Hall of Fame.

Patrick, a member of the Firm's Institutional Investor Practice and New Case Groups, has extensive experience litigating cases under the PSLRA. He led *In re Comverse Technology, Inc. Securities Litigation*, No. 06-CV-1825 (E.D.N.Y.), in which the Firm, as Lead Counsel, recovered a $225 million settlement for the Class – the second-highest ever for a case involving back-dating options, and one of the largest recoveries ever from an individual officer-defendant, the company's founder and former CEO. In *Comverse*, the Firm obtained an important clarification of how courts calculate the "largest financial interest" in connection with the selection of a Lead Plaintiff, in a manner consistent with *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005). Judge Garaufis, in approving the settlement, lauded Pomerantz: "The court also notes that, throughout this litigation, it has been impressed by Lead Counsel's acumen and diligence. The briefing has been thorough, clear, and convincing, and ... Lead Counsel has not taken short cuts or relaxed its efforts at any stage of the litigation."

In *DeMarco v. Robertson Stephens Inc.*, 228 F.R.D. 468 (S.D.N.Y. 2005), Patrick obtained the first class certification in a federal securities case involving fraud by analysts.

Patrick's extensive experience in litigation under the PSLRA has made him an expert not only at making compelling arguments on behalf of Pomerantz' clients for Lead Plaintiff status, but also in discerning weaknesses of competing candidates. *In re American Italian Pasta Co. Securities Litigation* and *Comverse* are the most recent examples of his success in getting our clients appointed sole Lead Plaintiff despite competing motions by numerous impressive institutional clients.

Patrick was a member of the trial team in *In re ICN/Viratek Securities Litigation* (S.D.N.Y. 1997), which, after trial, settled for $14.5 million. Judge Wood praised the trial team: "[P]laintiffs counsel did a superb job here on behalf of the class. ...This was a very hard fought case. You had very able, superb opponents, and they put you to your task. ...The trial work was beautifully done and I believe very efficiently done."

Patrick's speaking engagements include interviews by NBC and the CBC regarding securities class actions, and among others, a presentation at the November 2009 State Association of County Retirement Systems Fall Conference as the featured speaker at the Board Chair/Vice Chair Session entitled: "Cleaning Up After the 100 Year Storm. How trustees can protect assets and recover losses following the burst of the housing and financial bubbles."

Patrick is a 1987 graduate of the Washington College of Law at American University in Washington, D.C., where he was a Dean's Fellow, Editor in Chief of the *Administrative Law Journal*, a member of the Moot Court Board representing Washington College of Law in the New York County Bar Association's Antitrust Moot Court Competition, and a member of the Vietnam Veterans of America Legal Services/Public Interest Law Clinic. Upon graduating, Patrick served as the Pro Se Staff Attorney for the United States District Court for the Eastern District of New York and was a law clerk to the Honorable Joan M. Azrack, United States Magistrate Judge.

Patrick is admitted to practice in New York and Illinois; the United States District Courts for the Southern and Eastern Districts of New York, Northern District of Illinois, Northern District of Indiana, Eastern District of Wisconsin, District of Colorado, and Western District of Pennsylvania; the United States Courts of Appeals for the First, Fourth, Sixth, Seventh, Eighth, and Ninth Circuits; and the United States Supreme Court.

## Of Counsel

### Samuel J. Adams

Samuel J. Adams became an Associate at Pomerantz in January 2012 and was elevated to Of Counsel to the Firm in 2021. He has been recognized as a Super Lawyers® "Rising Star" every year from 2015 through 2021.

Sam focuses his practice on corporate governance litigation and has served as a member of the litigation team in numerous actions that concluded in successful resolutions for stockholders. He was an integral member of the litigation team that secured a $5.6 million settlement on behalf of a class of shareholders

of Physicians Formula Holdings, Inc. following an ignored merger offer. *In re Physicians Formula Holdings Inc. S'holder Litig.*, C.A. No. 7794-VCL (Del. Ch. Ct.). Sam was also instrumental in achieving a settlement in *Strougo v. Hollander*, C.A. No. 9770-CB (Del. Ch. Ct.) which provided for a 25% price increase for members of the class cashed out in the going-private transaction and established that fee-shifting bylaws adopted after a challenged transaction do not apply to stockholders affected by the transaction. Additionally, he was on the team of Pomerantz attorneys who obtained the elimination of stand-still provisions that allowed third parties to bid for Great Wolf Resorts, Inc., resulting in the emergence of a third-party bidder and approximately $94 million (57%) in additional merger consideration for Great Wolf shareholders. *In re Great Wolf Resorts, Inc. S'holder Litig.*, C.A. No. 7328-VCN (Del. Ch.).

Sam is a 2009 graduate of the University of Louisville Louis D. Brandeis School of Law. While in law school, he was a member of the National Health Law Moot Court Team. He also participated in the Louis D. Brandeis American Inn of Court.

Sam is admitted to practice in New York; and the United States District Courts for the Southern, Northern, and Eastern Districts of New York and the Eastern District of Wisconsin.

### Ari Y. Basser

Ari Y. Basser joined Pomerantz as an associate in April 2019 and was elevated to Of Counsel in January 2022. He focuses his practice on strategic consumer litigation by representing consumers in unfair competition, fraud, false advertising, and auto defect actions that recover monetary and injunctive relief on behalf of class members while also advocating for important consumer rights. Ari has successfully prosecuted claims involving California's Unfair Competition Law, California's Consumers Legal Remedies Act, the Song-Beverly Consumer Warranty Act, and the Magnusson-Moss Warranty Act.

Prior to joining Pomerantz, Ari was an associate at major litigation law firms in Los Angeles. Ari also worked as a Law Clerk in the Economic Crimes Unit of the Santa Clara County Office of the District Attorney. Ari has litigated antitrust violations, product defect matters, and a variety of fraud and misrepresentation cases brought under state and federal consumer protection statutes involving unfair competition and false advertising. He has also been deputized in private attorneys general enforcement actions to recover civil penalties from corporations, on behalf of the State of California, for violations of the Labor Code.

Ari is a contributing author to the *Competition Law Journal*, the official publication of the Antitrust, UCL, and Privacy Section of the State Bar of California, where he has examined trends in antitrust litigation and the regulatory authority of the Federal Trade Commission.

Ari received dual degrees in Economics and Psychology from the University of California, San Diego in 2004. He earned his Juris Doctor in 2010 from Santa Clara University School of Law.

### Cheryl D. Hamer

Cheryl D. Hamer joined Pomerantz in 2003 as an associate, served as a partner from 2007 to 2015 and is now Of Counsel to the Firm. She is based in San Diego.

Before joining Pomerantz, she served as counsel to nationally known securities class action law firms focusing on the protection of investors rights. In private practice for over 20 years, she has litigated, at both state and federal levels, Racketeer Influenced and Corrupt Organizations, Continuing Criminal Enterprise, death penalty and civil rights cases and grand jury representation. She has authored numerous criminal writs and appeals.

Cheryl was an Adjunct Professor at American University, Washington College of Law from 2010-2011 and served as a pro bono attorney for the Mid-Atlantic Innocence Project. She was an Adjunct Professor at Pace University, Dyson College of Arts and Sciences, Criminal Justice Program and The Graduate School of Public Administration from 1996-1998. She has served on numerous non-profit boards of directors, including Shelter From The Storm, the Native American Preparatory School and the Southern California Coalition on Battered Women, for which she received a community service award.

Cheryl has been a member of the Litigation and Individual Rights and Responsibilities Sections of the American Bar Association, the Corporation, Finance & Securities Law and Criminal Law and Individual Rights Sections of the District of Columbia Bar, the Litigation and International Law Sections of the California State Bar, and the National Association of Public Pension Attorneys (NAPPA) and represents the Firm as a member of the Council of Institutional Investors (CII), the National Association of State Treasurers (NAST), the National Conference on Public Employees Retirement Systems (NCPERS), the International Foundation of Employee Benefit Plans (IFEBP), the State Association of County Retirement Systems (SACRS), the California Association of Public Retirement Systems (CALAPRS) and The Association of Canadian Pension Management (ACPM/ACARR).

Cheryl is a 1973 graduate of Columbia University and a 1983 graduate of Lincoln University Law School. She studied tax law at Golden Gate University and holds a Certificate in Journalism from New York University and a Certificate in Photography: Images and Techniques from The University of California San Diego.

## Louis C. Ludwig

Louis C. Ludwig joined Pomerantz in April 2012 and was elevated to Of Counsel in 2019. He has been honored as a 2016 and 2017 Super Lawyers® Rising Star and as a 2018 and 2019 Super Lawyers® Top-Rated Securities Litigation Attorney.

Louis focuses his practice on securities litigation, and has served as a member of the litigation team in multiple actions that concluded in successful settlements for the Class, including *Satterfield v. Lime Energy Co.*, (N.D. Ill.); *Blitz v. AgFeed Industries*, *Inc.* (M.D. Tenn.); *Frater v. Hemispherx Biopharma, Inc.* (E.D. Pa.); *Bruce v. Suntech Power Holdings Co.* (N.D. Cal.); *In re: Groupon, Inc. Securities Litigation* (N.D. Ill.); *Flynn v. Sientra, Inc.* (C.D. Cal.); *Thomas v. MagnaChip Semiconductor Corp.* (N.D. Cal.); *In re: AVEO Pharmaceuticals, Inc. Securities Litigation* (N.D. Cal.); and *In re: Akorn, Inc. Securities Litigation* (N.D. Ill.).

Louis graduated from Rutgers University School of Law in 2007, where he was a Dean's Law Scholarship Recipient. He served as a law clerk to the Honorable Arthur Bergman, Superior Court of New Jersey. Prior to joining Pomerantz, Louis specialized in litigating consumer protection class actions at Bock & Hatch LLC in Chicago, Illinois.

Louis is admitted to practice in New Jersey and Illinois; the United States District Courts for the District of New Jersey and the Northern District of Illinois; and the United States Courts of Appeals for the Seventh and Ninth Circuits.

## Jonathan D. Park

Jonathan D. Park joined Pomerantz as Of Counsel in April 2022. Prior to joining Pomerantz, he was associated with a prominent plaintiff-side litigation firm, where he represented clients in securities and investment litigation. He has been recognized as a Super Lawyers® Rising Star every year from 2017 through 2021.

Jonathan focuses his practice on securities litigation. He was a key member of the litigation team that obtained $19 million for the class in *In re Synchronoss Technologies, Inc. Securities Litigation*, and he represented investors in *In re JPMorgan Chase & Co. Securities Litigation*, which arose from the "London Whale" scandal and was settled for $150 million. He has also represented investors in opt-out securities actions against pharmaceutical manufacturers and other companies.

Jonathan also has experience representing investors in breach of contract actions. He was a key member of the team representing institutional investors injured by the early redemption of bonds issued by CoBank, ACB and AgriBank, FCB. In the litigation against CoBank, the plaintiffs secured a summary judgment ruling on liability, and in the litigation against AgriBank, the plaintiffs defeated a motion to dismiss, permitting the claims to proceed though the plaintiffs were beneficial owners and not record holders of the bonds at issue. Both cases were resolved on confidential terms.

At the New York City Bar Association, Jonathan has served on the Task Force on Puerto Rico, the New Lawyers Council, and the International Human Rights Committee. He also served on the board of his non-profit running club, the Dashing Whippets Running Team.

Jonathan earned his J.D. in 2013 from Fordham University School of Law, where he served on the school's Moot Court Board as the Editor of the Jessup International Law Competition Team. During law school, he was a Crowley Scholar in International Human Rights, received the Archibald R. Murray Public Service Award, and interned with a refugee law project in Cairo, Egypt. He received a B.A. in 2006 from Vassar College, where he majored in Africana Studies.

## Lesley Portnoy

Lesley Portnoy joined Pomerantz as Of Counsel in January 2020, bringing to the Firm more than a decade of experience representing investors and consumers in recovering losses caused by corporate fraud and wrongdoing. Lesley is based in Los Angeles.

Lesley has assisted in the recovery of billions of dollars on behalf of aggrieved investors, including the victims of the Bernard M. Madoff bankruptcy. Courts throughout the United States have appointed him as Lead Counsel to represent investors in securities fraud class actions. Lesley has been recognized as a Super Lawyers® Rising Star every year from 2017 through 2021.

As co-Lead Counsel with Pomerantz in *In re Yahoo! Inc. Sec. Litig.*, a high-profile class action litigation against Yahoo! Inc., Lesley helped achieve an $80 million settlement for the Class in 2018. The case involved the biggest data breaches in U.S. history, in which over 3 billion Yahoo accounts were compromised.

Other securities fraud cases that Lesley successfully litigated include *Parmelee v. Santander Consumer USA Holdings Inc.*; *In re Fifth Street Asset Management, Inc. Sec. Litig.*; *In re ITT Educational Services, Inc. Sec. Litig.*; *In re Penn West Petroleum Ltd. Sec. Litig.*; *Elkin v. Walter Investment Management Corp.*; *In re CytRx Corporation Sec. Litig.*; *Carter v. United Development Funding IV*; and *In re Akorn, Inc. Sec. Litig.*

Lesley received his B.A. in 2004 from the University of Pennsylvania. In 2009, he simultaneously received his JD magna cum laude from New York Law School and his Master's of Business Administration from City University of New York. At New York Law School, Lesley was on the Dean's List-High Honors and an Articles Editor for the New York Law School Law Review.

Lesley is admitted to practice in New York and California; the United States District Courts for the Southern and Eastern Districts of New York, the Central, Northern, and Southern Districts of California and the Northern District of Texas; and the United States Court of Appeals for the Second Circuit.

## Jennifer Banner Sobers

Jennifer Banner Sobers is Of Counsel to the Firm.

In 2021, Jennifer was honored as a Super Lawyers® "Top-Rated Securities Litigation Attorney". She was also named a 2020 Rising Star by Super Lawyers®, Law360, and the *New York Law Journal*, all separate and highly competitive awards that honor attorneys under 40 whose legal accomplishments transcend their age. After a rigorous nomination and vetting process, Jennifer was honored in 2019 and 2020 as a member of the National Black Lawyers Top 100, an elite network of the top 100 African American attorneys from each state.

Jennifer played an integral role on the team litigating *In re Petrobras Securities Litigation,* in the Southern District of New York*,* a securities class action arising from a multi-billion-dollar kickback and bribery scheme involving Brazil's largest oil company, Petróleo Brasileiro S.A. - Petrobras. The Firm, as sole Lead Counsel, achieved a historic $3 billion settlement on behalf of investors in Petrobras securities. Among Jennifer' contributions to the team's success were: managing the entire third-party discovery in the United States, which resulted in the discovery of key documents and witnesses; deposing several underwriter bank witnesses; drafting portions of Plaintiffs' amended complaints that withstood motions to dismiss the claims and Plaintiffs' successful opposition to Defendants' appeal in the Second Circuit, which resulted in precedential rulings, including the Court rejecting the heightened ascertainability requirement for obtaining class certification that had been imposed by other circuit courts; and second chaired argument in the Second Circuit that successfully led to the Court upholding the award of sanctions against a professional objector challenging the integrity of the settlement.

Jennifer played a leading role in *In re Toronto-Dominion Bank Securities Litigation*, an action in the District of New Jersey alleging a multi-year fraud arising from underlying retail banking misconduct by one of Canada's largest banks that was revealed by investigative news reports. Jennifer undertook

significant work drafting the briefing to oppose Defendants' motion to dismiss the claims, which the Court denied. She oversaw the discovery in the action, which included, among other things, heading the complicated process of obtaining documents in Canada and being a principal drafter of the motion to partially lift the PSLRA stay in order to obtain discovery. Jennifer successfully presented oral argument which led to the Court approval of a $13.25 million class-wide settlement.

U.S. District Judge Noel L. Hillman, in approving the *Toronto-Dominion Bank* settlement, stated, "I commend counsel on both sides for their hard work, their very comprehensive and thoughtful submissions during the motion practice aspect of this case. I paused on it because it was a hard case. I paused on it because the lawyering was so good. So, I appreciate from both sides your efforts." He added, "It's clear to me that this was comprehensive, extensive, thoughtful, meaningful litigation leading up to the settlement." Singling out Pomerantz's role as lead counsel, the judge also said, "This settlement appears to have been obtained through the hard work of the Pomerantz firm… It was through their efforts and not piggybacking on any other work that resulted in this settlement."

Jennifer was a key member of the team litigating individual securities actions against BP p.l.c. in the Northern District of Texas on behalf of institutional investors in BP p.l.c. to recover losses in BP's common stock (which trades on the London Stock Exchange), arising from BP's 2010 Gulf oil spill. The actions were resolved in 2021 in a confidential, favorable monetary settlement for all 35 Firm clients.

Jennifer is a lead litigator in *Crutchfield v. Match Group, Inc.*, pending. Jennifer is also a key member of the litigation teams of other nationwide securities class action cases, including: *In re Ubiquiti Networks, Inc. Sec. Litig.*, an action in the Southern District of New York, for which Jennifer was one of the principal drafters of the amended complaint—the strength of which led the Court to deny permission to the defendants to file a formal motion to dismiss it—which secured a court-approved $15 million class-wide settlement; *In re KaloBios Pharmaceuticals Inc. Securities Litigation,* an action in the Northern District of California, which successfully secured settlements from the bankrupt company and its jailed CEO worth over $3.25 million for the Class that were approved by the Court as well as the bankruptcy court; *Perez v. Higher One Holdings, Inc.,* an action in the District of Connecticut, for which Jennifer was one of the principal drafters of the successful opposition to Defendants' motion to dismiss, and which secured a court-approved $7.5 million class-wide settlement; *Edwards v. McDermott Int'l, Inc.* pending in the Southern District of Texas; *Chun v. Fluor Corp.* pending in the Northern District of Texas; and *Kendall v. Odonate Therapeutics, Inc.*, pending in the Southern District of California.

Prior to joining Pomerantz, Jennifer was an associate with a prominent law firm in New York where her practice focused on complex commercial litigation, including securities law and accountants' liability. An advocate of pro bono representation, Jennifer earned the Empire State Counsel honorary designation from the New York State Bar Association and received an award from New York Lawyers for the Public Interest for her pro bono work.

Jennifer received her B.A. from Harvard University (with honors), where she was on the Dean's List, a Ron Brown Scholar, and a recipient of the Harvard College Scholarship. She received her J.D. from University of Virginia School of Law where she was a participant in the Lile Moot Court Competition and was recognized for her pro bono service.

She is a member of the Securities Litigation and Public Service Committees of the Federal Bar Council, and the New York City Bar Association.

Jennifer is admitted to practice in New York; the United States District Court for the Southern and Eastern Districts of New York; and the United States Courts of Appeals for the Second and Ninth Circuits.

## Nicolas Tatin

French lawyer Nicolas Tatin joined Pomerantz in April 2017 as Of Counsel. He heads the Firm's Paris office and serves as its Director-Business Development Consultant for France, Benelux, Monaco and Switzerland. Nicolas advises institutional investors in the European Union on how best to evaluate losses to their investment portfolios attributable to financial misconduct, and how best to maximize their potential recoveries in U.S. and international securities litigations.

Nicolas was previously a financial lawyer at ERAFP, France's €24bn pension and retirement fund for civil servants, where he provided legal advice on the selection of management companies and the implementation of mandates entrusted to them by ERAFP.

Nicolas began his career at Natixis Asset Management, before joining BNP Paribas Investment Partners, where he developed expertise in the legal structuring of investment funds and acquired a global and cross-functional approach to the asset management industry.

Nicolas graduated in International law and received an MBA from IAE Paris, the Sorbonne Graduate Business School.

## Associates

## Genc Arifi

Genc Arifi focuses his practice on securities litigation.

Prior to joining Pomerantz in its Chicago office, Genc was an associate with a prominent Chicago law firm and represented an expansive range of businesses in employment law matters as well as complex commercial litigation in both state and federal courts. Genc's experience includes handling complex civil matters, such as cases arising out of the Racketeer Influenced and Corrupt Organizations Act (RICO), shareholder derivative lawsuits, and employment law matters. He has also advised technology start-up clients as well as established financial institutions with risk assessment and litigation strategies.

Genc earned his J.D. from DePaul University College of Law and his B.S. from Western Illinois University, *summa cum laude*. He demonstrated strong academic credentials throughout law school; most notably when he achieved the highest grade in Business Organizations, which earned him the CALI Excellence for the Future Award. Genc was a recipient of the Dean's Certificate of Service awarded to law students who provided 100 hours of community service. Genc participated in a criminal appeals clinic and successfully reduced an indigent client's prison sentence.

Genc is co-author of "Valuation," Chapter 6 in "Disputes Involving Closely Held Companies 2020 Edition." Published by the Illinois Institute for Continuing Legal Education in Feb. 2020, it is the essential guide for Illinois attorneys who represent closely held corporations, partnerships, or LLCs.

Genc currently serves as the Secretary and board member of the Albanian-American Community of Illinois, a 501(c)(3) non-profit whose mission is to preserve and promote Albanian culture, history, and tradition through civic engagement and educational initiatives.

Genc is admitted to practice in Illinois and the United States District Court for the Northern District of Illinois.


**Brandon M. Cordovi**

Brandon M. Cordovi focuses his practice on securities litigation.

Prior to joining Pomerantz, Brandon was an associate at a law firm in New York that specializes in the defense of insurance claims. Brandon's practice focused on the defense of transportation, premises and construction liability matters.

Brandon earned his J.D. in 2018 from Fordham University School of Law, where he served on the Moot Court Board and was the recipient of a merit-based scholarship. While at Fordham Law, Brandon participated in the Securities Litigation and Arbitration Clinic, where he prepared for the negotiation and arbitration of claims brought on behalf of clients with limited resources. During his second summer of law school, Brandon was a summer associate at a major plaintiffs securities firm.

Brandon earned his B.S. from the University of Delaware where he double-majored in Sport Management and Marketing.

Brandon is admitted to practice in New York and New Jersey.

**Jessica N. Dell**

Jessica Dell focuses her practice on securities litigation.

She has worked on dozens of cases at Pomerantz, including the Firm's securities fraud lawsuits arising from BP's 2010 Gulf oil spill, pending in Multidistrict Litigation. Jessica has expertise in managing discovery and a nose for investigating complex fraud across many sectors, including pharmaceuticals, medical devices, and data security. True to her roots in public interest law, she has also worked in complex pro bono class action litigation at Pomerantz.

Jessica graduated from CUNY School of Law in 2005. She was the recipient of an Everett fellowship for her work at Human Rights Watch. She also interned at the Urban Justice Center and National Advocates for Pregnant Women. While in the CUNY clinical program, she represented survivors of domestic violence facing deportation and successfully petitioned under the Violence Against Women Act. She also

successfully petitioned for the release of survivors incarcerated as drug mules in Central America. After Hurricane Katrina, Jessica traveled to Louisiana to aid emergency efforts to reunite families and restore legal process for persons lost in the prison system weeks after the flood.

Jessica is a member of the New York City and State Bar Associations and the National Lawyers Guild.

**Dolgora Dorzhieva**

Dolgora Dorzhieva focuses her practice on securities litigation. In 2022, she was named a New York Metro Super Lawyers Rising Star.

Prior to joining Pomerantz, Dolgora was an associate at a major plaintiffs firm, where her practice focused on consumer fraud litigation.

Dolgora earned her J.D. in 2015 from the University of California, Berkeley, School of Law, where she served as an Executive Editor of the *California Law Review*. In 2010, she graduated *summa cum laude*, Phi Beta Kappa from City College of New York.

Following graduation from law school, she clerked for the Honorable Edward M. Chen in the United States District Court for the Northern District of California.

Dolgora is admitted to practice in New York; the United States District Courts for the Southern and Eastern Districts of New York; and the United States Court of Appeals for the Second Circuit.

**Dean P. Ferrogari**

Dean P. Ferrogari focuses his practice on securities litigation.

Dean earned his Juris Doctor in 2020 from Brooklyn Law School, where he served as an Associate Managing Editor for the Brooklyn Law Review. While in law school, Dean was initiated into the International Legal Honor Society of Phi Delta Phi and was an extern for the Brooklyn Volunteer Lawyers Project. He was recognized by the New York State Unified Court System's Office for Justice Initiatives for his distinguished service in assisting disadvantaged civil litigants in obtaining due process in consumer credit actions. Dean also authored the publication "The Dark Web: A Symbol of Freedom Not Cybercrime," New York County Lawyers Association CLE Institute, Security in a Cyber World: Whistle Blowers, Cyber Threats, Domestic Terrorism, Financial Fraud, Policy by Twitter … and the Evolving Role of the Attorney and Firm, Oct. 4, 2019, at 321.

Dean earned his B.A. from the University of Maryland, where he majored in Economics and was awarded the President's Transfer Scholarship.

Dean is admitted to practice in the United States Districts Courts for the Southern and Eastern Districts of New York.

**James M. LoPiano**

James M. LoPiano focuses his practice on securities litigation.

Prior to joining Pomerantz, James served as a Fellow at Lincoln Square Legal Services, Inc., a non-profit law firm run by faculty of Fordham University School of Law.

James earned his J.D. in 2018 from Fordham University School of Law, where he was awarded the Archibald R. Murray Public Service Award, *cum laude*, and merit-based scholarship. While in law school, James served as Senior Notes and Articles Editor of the *Fordham Intellectual Property, Media and Entertainment Law Journal*. James also completed a legal internship at Lincoln Square Legal Services, Inc.'s *Samuelson-Glushko Intellectual Property and Information Law Clinic*, where he counseled clients and worked on matters related to Freedom of Information Act litigation, trademarks, and copyrights. As part of his internship, James was granted temporary permission to appear before the United States Patent and Trademark Office for trademark-related matters. Additionally, James completed both a legal externship and legal internship with the Authors Guild. James also served as a judicial intern to the Honorable Stephen A. Bucaria in the Nassau County Supreme Court, Commercial Division, of the State of New York, where he drafted legal memoranda on summary judgment motions, including one novel issue pertaining to whether certain service fees charged by online travel companies were commingled with county taxes.

James earned his B.A. from Stony Brook University, where he double-majored in English and Cinema and Cultural Studies, completed the English Honors Program, and was inducted into the Stony Brook University chapter of the International English Honors Society. Additionally, James earned the university's Thomas Rogers Award, given to one undergraduate student each year for the best analytical paper in an English course.

James has authored several publications over the course of his legal career, including "Public Fora Purpose: Analyzing Viewpoint Discrimination on the President's Twitter Account," Note, 28 FORDHAM INTELL. PROP. MEDIA & ENT. L.J. 511 (2018); "Lessons Abroad: How *Access Copyright v. York University* Helped End Canada's Educational Pirating Regime," Legal Watch, Authors Guild Fall 2017/Winter 2018 Bulletin; and "International News: Proposal for New EU Copyright Directive and India High Court's Educational Photocopy Decision," Legal Watch, Authors Guild Summer 2017 Bulletin.

James is admitted to practice in New York and the United States District Courts for the Southern and Eastern Districts of New York.

**Lauren K. Molinaro**

Lauren K. Molinaro focuses her practice on securities litigation.

Lauren earned her J.D. in 2021 from Fordham University School of Law, where was a staff editor for the Fordham International Law Journal. She was awarded the Archibald R. Murray Award for demonstrable commitment to public service and was the recipient of a merit-based scholarship. Lauren served as a judicial intern to the Honorable Gerald Lebovits of the New York State Supreme Court. She also completed an internship at the Law Reform Commission of Ireland in Dublin, Ireland, where she

performed research on knowledge or belief concerning consent in Ireland's rape law. The law was subsequently amended to raise the threshold for consent.

Lauren earned her B.A. from the University of Wisconsin-Madison where she double-majored in English Literature and Communications – Radio, Television, and Film.

Lauren is admitted to practice in New York and the United States District Courts for the Southern and Eastern Districts of New York.

**Brian P. O'Connell**

Brian P. O'Connell focuses his practice on securities and financial services litigation. Prior to joining Pomerantz in its Chicago office, Brian was an associate at a Cafferty Clobes Meriwether & Sprengel LLP, where he specialized in antitrust and commodity futures litigation. Brian has successfully litigated complex class actions involving securities, as well as manipulation of futures and options contracts. Brian also previously worked at the Financial Regulatory Authority (FINRA) as a contractor focusing on options trading regulation. Following law school, Brian was a legal fellow at the chambers of Judge Marvin E. Aspen in the United States District Court for the Northern District of Illinois.

Brian is passionate about finance and securities law, having previously interned for the Chicago Board Options Exchange and for Susquehanna International Group. Brian serves as Vice Chair of the Chicago Bar Association Securities Law Committee. Brian was recently recognized as a Super Lawyers® Rising Star for 2023.

Brian earned his Juris Doctor from Northwestern University Pritzker School of Law. During his time there, he had the opportunity to work at the Center on Wrongful Convictions, where he argued in court on behalf of a client serving a life sentence and later exonerated. Brian also served as Executive Articles Editor on the Journal of International Human Rights Law and as a teaching assistant for the Northwestern Center on Negotiation and Mediation.

A graduate of Stanford University, Brian majored in Political Science and minored in Economics. During his senior year, he was Editor-in-Chief of The Stanford Review, where he had previously been a Features Editor and a staff writer.

Brian is admitted to practice in Illinois and California, the United States District Courts for the Northern District of Illinois, and the Northern and Central Districts of California, and the United States Court of Appeals for the Ninth Circuit.

**Thomas H. Przybylowski**

Thomas H. Przybylowski focuses his practice on securities litigation.

Prior to joining Pomerantz, Thomas was an associate at a large New York law firm, where his practice focused on commercial and securities litigation, and regulatory investigations. In 2020 and 2021, Thomas was honored as a Super Lawyers® Rising Star.

Thomas earned his J.D. in 2017 from the Georgetown University Law Center. While in law school, Thomas served as a Notes Editor for the *Georgetown Journal of Legal Ethics* and authored the publication "A Man of Genius Makes No Mistakes: Judicial Civility and the Ethics of the Opinion," Note, 29 Geo. J. Legal Ethics 1257 (2016). Thomas earned his B.A. from Lafayette College in 2014, where he double majored in English and Philosophy.

Thomas is admitted to practice in New York and New Jersey, and the United States District Courts for the Eastern and Southern Districts of New York and the District of New Jersey.

### Ankita Sangwan

Ankita Sangwan focuses her practice on corporate governance matters.

She graduated in 2022 from the LL.M. program at Columbia Law School as a Harlan Fiske Stone Scholar. Prior to attending Columbia Law School, Ankita worked for four years in the Commercial Litigation Team of a prominent law firm in Bombay, India, at which she focused her practice on complex commercial and civil disputes. Ankita assisted in arguments before various courts in India, including the Supreme Court.

In 2017, Ankita graduated with Honors from the B.A. LL.B. program at Jindal Global Law School, India. She was a member of the university's Moot Court Society, which finished as semi-finalists at the World Rounds of the International Investment Moot Court Competition, held in Frankfurt, Germany (2016). Ankita's moot court experience was recognized by her university; she was awarded the "Outstanding Contribution to Moot Court" prize upon graduation.

### Villi Shteyn

Villi Shteyn focuses his practice on securities litigation.

Villi worked on individual securities lawsuits concerning BP's 2010 Gulf of Mexico oil spill, which proceeded in *In re BP p.l.c. Secs Litig.*, No. 4:10-md-2185 (S.D. Tex.) and were resolved in 2021 in a confidential, favorable monetary settlement for all 35 firm clients, including public private pension funds, money management firms, partnerships, and investment trusts from U.S., Canada, the U.K., France, and the Netherlands, and Australia. He also worked on a successful 2021 settlement for investors in a case against Chinese company ChinaCache.

Villi is currently pursing claims against Deutsche Bank for its lending activities to disgraced financier Jeffrey Epstein and is involved in the Firm's class action litigation against Arconic, arising from the deadliest U.K. fire in more than a century. He is also representing investors in a case against AT&T for widespread fraud relating to their rollout of DirecTVNow, and against Frutarom for fraud related to widespread bribery in Russia and Ukraine. He also represents Safra Bank in a class action against Samarco Mineração S.A., in connection with Fundao dam-burst disaster, which is widely regarded as the worst environmental disaster in Brazil's history. He is also representing investors against Recro Pharma in relation to their non-opioid pain-relief product IV Meloxicam, and against online education companies 2U and K12. Villi also worked on a pending consumer class action against Apple Inc. in relation to alleged slowdowns of the iPhone product.

Before joining Pomerantz, Villi was employed by a boutique patent firm, where he worked on patent validity issues in the wake of the landmark *Alice* decision and helped construct international patent maintenance tools for clients and assisted in pursuing injunctive relief for a patent-holder client against a large tech company.

Villi was recently recognized as a 2021 Super Lawyers® Rising Star.

Villi graduated from The University of Chicago Law School (J.D., 2017). In 2014, he graduated *summa cum laude* from Baruch College with a Bachelor of Science in Public Affairs.

Villi is admitted to practice in New York, and the United States District Courts for the Southern District of New York and the Eastern District of New York, and the United States Court of Appeals for the Second Circuit.

## Christopher Tourek

Christopher Tourek focuses his practice on securities litigation.

Prior to joining Pomerantz in its Chicago office, Christopher was an associate at a prominent complex-litigation firm and specialized in consumer protection, antitrust, and securities litigation. Christopher has successfully litigated securities fraud, antitrust violations, and consumer protection violations on behalf of plaintiffs in state and federal court. His litigation experience has led to his being honored as a Super Lawyers® Rising Star in the area of Mass Torts litigation from 2016 through 2021, and in the area of Securities litigation for 2022 and 2023.

Christopher graduated *cum laude* in 2013 from the University of Illinois College of Law, where he obtained his pro bono notation, honors in legal research, and was a member of the Federal Civil Rights Clinic, in which he first-chaired the case of *Powers v. Coleman* in the United States District Court for the Central District of Illinois. He earned his bachelor's degree in Government & Law, with a minor in Anthropology & Sociology, from Lafayette College in 2010.

Christopher is admitted to practice in Illinois and the United States District Courts for the District of Columbia, the Northern and Southern Districts of Illinois, the Eastern District of Michigan, and the Eastern District of Missouri.

# Staff Attorneys

## Jay Douglas Dean

Jay Dean focuses on class action securities litigation. He has been a commercial litigator for more than 30 years.

Jay has been practicing with Pomerantz since 2008, including as an associate from 2009-2014, interrupted by a year of private practice in 2014-2015. More recently, he was part of the Pomerantz

teams prosecuting the successful *Petrobras* and *Yahoo* actions. Prior to joining Pomerantz, he served as an Assistant Corporation Counsel in the Office of the Corporation Counsel of the City of New York, most recently in its Pensions Division. While at Pomerantz, in the Corporation Counsel's office and previously in large New York City firms, Jay has taken leading roles in trials, motions and appeals.

Jay graduated in 1988 from Yale Law School, where he was Senior Editor of the *Yale Journal of International Law*.

Jay is admitted to practice in New York; the United States District Courts for the Southern and Eastern Districts of New York; and the United States Court of Appeals for the Second Circuit. Jay has also earned the right to use the Chartered Financial Analyst designation.

### Timor Lahav

Timor Lahav focuses his practice on securities litigation.

Timor participated in the Firm's securities class action case against Brazil's largest oil company, Petrobras, arising from a multi-billion-dollar kickback and bribery scheme, in which the Firm, as sole Lead Counsel, achieved a historic $3 billion settlement for the Class, as well as precedent-setting legal rulings. Timor also participated in the firm's landmark litigation against Yahoo! Inc., for the massive security breach that compromised 1.5 billion users' personal information.

Timor received his LL.B. from Tel Aviv University School of Law in Israel, following which he clerked at one of Israel's largest law firms. He was an associate at a law firm in Jerusalem, where, among other responsibilities, he drafted motions and appeals, including to the Israeli Supreme Court, on various civil matters.

He received his LL.M. from Benjamin N. Cardozo School of Law in New York. There, Timor received the Uriel Caroline Bauer Scholarship, awarded to exceptional Israeli law graduates.

Timor brings to Pomerantz several years' experience as an attorney in New York, including examining local SOX anti-corruption compliance policies in correlation with the Foreign Corrupt Practices Act; and analysis of transactions in connection with DOJ litigation and SEC enforcement actions.

Timor was a Captain in the Israeli Defense Forces. He is a native Hebrew speaker and is fluent in Russian.

He is admitted to practice in New York and Israel.

### Laura M. Perrone

Laura M. Perrone focuses on class action securities litigation.

Prior to joining Pomerantz, Laura worked on securities class action cases at Labaton Sucharow. Preceding that experience, she represented plaintiffs at her own securities law firm, the Law Offices of Laura M. Perrone, PLLC.

At Pomerantz, Laura participated in the Firm's securities class action case against Brazil's largest oil company, Petrobras, arising from a multi-billion-dollar kickback and bribery scheme, in which the Firm, as sole Lead Counsel, achieved a historic $3 billion settlement for the Class, as well as precedent-setting legal rulings.

Laura has also represented bondholders against Citigroup for its disastrous investments in residential mortgage-backed securities, shareholders against Barclays PLC for misrepresentations about its dark pool trading system known as Barclays LX, and shareholders against Fiat Chrysler Automobiles for misrepresentations about its recalls and its diesel emissions defeat devices.

Laura graduated from the Benjamin N. Cardozo School of Law, where she was on the editorial staff of Cardozo's Arts and Entertainment Law Journal and was the recipient of the Jacob Burns Merit Scholarship.

Laura is admitted to practice in New York; the United States District Courts for the Southern and Eastern Districts of New York; and the United States Court of Appeals for the Second Circuit.

## Jason Ratigan

Jason Ratigan brings to Pomerantz over a decade of litigation and e-discovery practice experience. Prior to joining the Firm, Jason worked on a wide variety of large-scale civil and government discovery cases.

Jason earned his law degree from Washington & Lee University School of Law where he served as senior articles editor for the Journal of Civil Rights and Social Justice and graduated magna cum laude. In 2006, he graduated magna cum laude and Phi Beta Kappa from Texas Christian University with a B.A. in History.

Jason is also an avid photographer and data analyst.

He is admitted to practice in New York.

## Allison Tierney

Allison Tierney focuses her practice on securities litigation.

Allison brings to Pomerantz her 10 years' expertise in large-scale securities class action litigation. She participated in the Firm's securities class action case against Brazil's largest oil company, Petrobras, arising from a multi-billion-dollar kickback and bribery scheme, in which the Firm, as sole Lead Counsel, achieved a historic $3 billion settlement for the Class, as well as precedent-setting legal rulings.

Prior to joining Pomerantz, Allison worked on securities class action cases at several top New York law firms, representing institutional investors. She has represented plaintiffs in disputes related to antitrust violations, corporate financial malfeasance, and residential mortgage-backed securities fraud.

Allison earned her law degree from Hofstra University School of Law, where she served as notes and comments editor for the *Cyberlaw Journal*. She received her B.A. in Psychology from Boston University, where she graduated magna cum laude.

Allison is conversant in Spanish and studying to become fluent.

Allison is admitted to practice in New York.