**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SUZANNE POIRIER, Individually and On Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>    v.<br><br>BAKKT HOLDINGS, INC. f/k/a VPC IMPACT ACQUISITION HOLDINGS, JOHN MARTIN, OLIBIA STAMATOGLOU, GORDON WATSON, KAI SCHMITZ, and KURT SUMMERS,<br><br>        Defendants. | Case No. 1:22-cv-02283-EK-PK<br><br>CLASS ACTION<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |

**TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT ........................................................................ 1

II.      SUMMARY OF THE LITIGATION AND SETTLEMENT ....................................... 2

     A.      Factual and Procedural Background.................................................................. 2

     B.      Terms of the Settlement ................................................................................. 2

         1.      Cash Consideration and Release.................................................................. 2

         2.      Notice to the Class ..................................................................................... 2

         3.      Exclusions and Objections........................................................................... 3

         4.      The Plan of Allocation ................................................................................. 4

III.      ARGUMENT .................................................................................................. 4

     A.      The Court Should Grant Final Approval of the Settlement............................................ 4

         1.      The Settlement is Presumptively Fair Because it Resulted From Arms'-Length Negotiations and is Not the Product of Collusion .................................................. 4

         2.      Application of the Grinnell Factors Supports the Final Approval of the Settlement as Fair, Adequate, and Reasonable ......................................................... 6

             a.      The Case is Complex and Continued Litigation Will be Protracted and Costly ............................................................................... 7

             b.      The Reaction of the Class Supports Final Approval..................................... 9

             c.      Plaintiffs and Class Counsel Were Sufficiently Informed during Settlement Negotiations ............................................................. 10

             d.      Plaintiffs Faced Risks to Establishing Liability and Damages .................... 10

             e.      The Risks of Maintaining Class Action Status Through Trial..................... 13

             f.      The Settlement Amount is Reasonable in Light of the Best Possible Recovery and Attendant Risks..................................................... 13

         3.      The Settlement Satisfies the Remaining Rule 23(e) Factors ............................... 16

     B.      The Court Should Approve the Plan of Allocation ...................................................... 17

     C.      The Court Should Approve the Notice Disseminated to the Class as Satisfying the Requirements of Rule 23 and Due Process ............................................... 19

IV.      CONCLUSION ................................................................................................ 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arbuthnot v. Pierson*,
  607 F. App'x 73 (2d Cir. 2015) ................................................................................ 8, 19, 20

B*ellifemine v. Sanofi-Aventis U.S. LLC*,
  2010 WL 31193744 (S.D.N.Y. Aug. 6, 2010 ....................................................................... 13

*Cagan v. Anchor Sav. Bank FSB*,
  No. CV-88-3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990) .................................................. 15

*Christine Asia Co. v. Yun Ma*,
  No. 115MD02631CMSDA, 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ........... 11, 13, 16, 17

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) ............................................................................. 7, 11, 13, 15

*City of Providence v. Aeropostale, Inc.*,
  No. 11 CIV. 7132 CM GWG, 2014 WL 1883494 (S.D.N.Y. May 9, 2014) .......................... 6, 8

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001) ..................................................................................................... 5

*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336 (2005) .............................................................................................................. 18

*Fleisher v. Phoenix Life Ins. Co.*,
  2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) ......................................................................... 5

*Granada Invs., Inc. v. DWG Corp.*,
  962 F.2d 1203 (6th Cir. 1992) .............................................................................................. 14

*Hicks v. Stanley*,
  No. 01 CIV. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ............................... 9

*In re "Agent Orange" Prod. L*iab. Litig.,
  611 F. Supp. 1396 (E.D.N.Y. 1985) ...................................................................................... 14

*In re Alloy, Inc. Sec. Litig.*,
  No. 03 CIV.1597(WHP), 2004 WL 2750089 (S.D.N.Y. Dec. 2, 2004) ................................... 9

*In re American Bank Note Holographics, Inc.*,
   127 F.Supp.2d 418 (S.D.N.Y.,2001)............................................................................ 12

*In re AOL Time Warner, Inc.*,
   No. 02 CIV. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ........................ 8, 10, 11

*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*,
   909 F. Supp. 2d 259 (S.D.N.Y. 2012).............................................................. 8, 10, 13

*In re Biolase, Inc. Sec. Litig.*,
   No. SACV131300JLSFFMX, 2015 WL 12720318 (C.D. Cal. Oct. 13, 2015) ...................... 18

*In re China Med. Corp. Sec. Litig.*,
   No. 8:11-1061 JLS (ANX), 2014 WL12581781, at *4 (C.D. Cal. Jan. 7, 2014) ...................... 6

*In re Citigroup Inc. Bond Litig.*,
   296 F.R.D. 147 (S.D.N.Y. 2013) .......................................................................... 5, 16

*In re Citigroup Inc. Sec. Litig.*,
   965 F. Supp. 2d 369 (S.D.N.Y. 2013)..................................................................... 7, 8

*In re Datatec Sys., Inc. Sec. Litig.*,
   No. 04-CV-525 (GEB), 2007 WL 4225828 (D.N.J. Nov. 28, 2007)...................................... 18

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
   343 F. Supp. 3d 394 (S.D.N.Y. 2018)...................................................................... 5, 14

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   No. 02-CV-3400 CM PED, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) .............................. 13

*In re Glob. Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ...................................................................... 11, 17

*In re IMAX Securities Litigation*,
   283 F.R.D. 178 (S.D.N.Y., 2012) .................................................................... 7, 10, 17

*In re Luxottica Grp. S.p.A. Sec. Litig.*,
   233 F.R.D. 306 (E.D.N.Y. 2006) ............................................................................ 9

*In re Marsh ERISA Litig.*,
   265 F.R.D. 128 (S.D.N.Y. 2010) ............................................................................ 7

*In re MetLife Demutualization Litig.*,
   689 F. Supp. 2d 297 (E.D.N.Y. 2010) ................................................................ 14, 15

*In re PaineWebber Ltd. Partnerships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) ................................................................. 5, 12

*In re PPDAI Grp. Inc. Sec. Litig.*,
    2022 WL 198491 (E.D.N.Y. Jan. 21, 2022) ................................................ 16

*In re Revolution Lighting Techs., Inc. Sec. Litig.*,
    No. 1:19-CV-00980-JPO, 2020 WL 4596811 (S.D.N.Y. Aug. 11, 2020) ................ 10

*In re Sony Corp. SXRD*,
    448 F. App'x 85 (2d Cir. 2011) ...................................................................... 8

*In re Tremont Sec. Law, State Law & Ins. Litig.*,
    No. 08-CV-11117, 2015 WL 5333494 (S.D.N.Y. Sept. 14, 2015) ................... 17

*In re Veeco Instruments Inc. Sec. Litig.*,
    No. 05 MDL 01695 (CM), 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) .............. 9

*In re Warner Commc'ns. Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985) ............................................................... 10

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005) ......................................................... 17

*Kommer v. Ford Motor Co.*,
    2020 WL 7356715 (N.D.N.Y. Dec. 15, 2020) ................................................. 9

*Lea v. Tal Educ. Grp.*,
    No. 18-CV-5480 (KHP), 2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) ............... 9

*Maley v. Del Glob. Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) ......................................................... 11

*Marsh & McLennan*,
    2009 WL 5178546 ...................................................................................... 17

*Morris v. Affinity Health Plan, Inc.*,
    859 F. Supp. 2d 611 (S.D.N.Y. 2012) ......................................................... 15

*Pearlstein v. Blackberry Ltd.*,
    No. 13 Civ. 7060 (CM) (KHP), 2022 WL 4554858 (S.D.N.Y. Sep. 29, 2022) ........ 7

*Rodriguez v. CPI Aerostructures, Inc.*,
    No. 20 CV 982 (ENV) (CLP), 2023 WL 2184496 (E.D.N.Y. Feb. 16, 2023) .......... 4

*Thompson v. Metro. Life Ins. Co.*,
   216 F.R.D. 55 (S.D.N.Y. 2003) ................................................................................ 5, 7

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005).................................................................................. passim

*Yang v. Focus Media Holding Ltd.*,
   No. 11 CIV. 9051 CM GWG, 2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014) ............................ 5

**Statutes**

15 U.S.C. §78u-4(a)(7) ........................................................................................ 19, 20

**Rules**

Fed. R. Civ. P. 23................................................................................................ passim

**Other Authorities**

Manual for Complex Litigation (Third) § 30.42 (1995) .................................................. 5

## I.    PRELIMINARY STATEMENT

On September 21, 2023, the Court preliminarily approved the Settlement of this Action as fair, reasonable, and adequate.[1] Dkt. No. 60 ("Preliminary Approval Order"). Through the Court-approved Claims Administrator, Plaintiffs timely executed the notice program as the Court ordered. To date, no Class Members have filed an objection to any aspect of the Settlement, and only two Class Members have submitted a valid request for exclusion from the Class. Lead Plaintiffs Rachna Mehrotra, Tse Winston Wing Kuen, and James Liner (collectively, "Plaintiffs"), individually and on behalf of the Class, respectfully submit this memorandum in support of their motion seeking for final approval of the Settlement, releasing Claims against all Released Parties in exchange for a cash payment of $3,000,000.

The Settlement resolves this litigation, between Plaintiffs and Defendants Bakkt Holdings, Inc. (f/k/a VPC Impact Acquisition Holdings), John Martin, Olibia Stamatoglou, Gordon Watson, Kai Schmitz, and Kurt Summers (collectively, "Defendants"). The Settlement is the product of arms'-length negotiations after the Parties' participation in a full-day mediation with neutral mediator Robert A. Meyer of JAMS in February 2023. These arms'-length negotiations among experienced counsel with a neutral mediator, along with the positive reaction of the Class, render the Settlement presumptively fair.

In advance of the Settlement, Plaintiffs, through Class Counsel, thoroughly investigated their claims and filed an amended complaint that detailed numerous factual allegations supporting their theory of liability against Defendants. While Plaintiffs believe that they would be able to prove their claims at trial, Defendants have denied and continue to deny liability and damages.

---

[1] Unless otherwise indicated, all capitalized terms herein shall have the same meanings as set forth in the Stipulation and Agreement of Settlement dated April 17, 2023 (Dkt. No. 53) ("Stipulation").

Plaintiffs faced significant challenges in obtaining a full judgment on their claims, including defeating Defendants' anticipated motion(s) for dismissal on the pleadings and summary judgment, obtaining class certification, and subsequently prevailing at trial on complex securities fraud claims, and on the expected post-trial motions and appeal. Thus, even were Plaintiffs to prevail at trial, there is no guarantee the Class would have recovered as much, or anything at all.

For the following reasons, therefore, this Court should approve the Settlement as fair, reasonable, and adequate, and it should likewise approve the Plan of Allocation.

## II.     SUMMARY OF THE LITIGATION AND SETTLEMENT

### A.     Factual and Procedural Background

The procedural history of this Action is set out in detail in the Declaration of Jeremy A. Lieberman and Adam M. Apton in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement and Approval of Notice to the Settlement Class (Dkt. No. 54-2) (the "Joint Decl.") at ¶¶10-38.

### B.     Terms of the Settlement

#### 1.     Cash Consideration and Release

The Settlement provides for a payment of $3,000,000 in cash to the Class. If the Court grants final approval of the Settlement, Plaintiffs and the Class Members will forever release their claims against the Released Parties that were alleged or could have been alleged in this Action. Defendants will release any claims that could have been brought against the Releasing Parties related to the prosecution of this Action.

#### 2.     Notice to the Class

Pursuant to the Preliminary Approval Order, the Court appointed A.B. Data Ltd. ("A.B. Data") as Claims Administrator. A.B. Data provided potential Class Members, brokers, and nominee holders with notice of the Settlement. *See* Declaration of Adam D. Walter ("Walter

2

Decl."), ¶¶2-9. The notice advised potential Class Members: (1) of the terms of the Settlement and Plan of Allocation; (2) that Plaintiffs, on behalf of Class Counsel and themselves, would seek: (a) a fee award not to exceed one-third of the Settlement Amount, plus interest, (b) recovery of actual litigation expenses, not to exceed $80,000, (c) awards to Plaintiffs not to exceed $15,000 in total; and (3) informed potential Class Members: (a) how to exclude themselves from the Class or object to the Settlement or to the fee and expense requests, and (b) that any request for exclusion or objection to any aspect of the Settlement or to the fee and expense requests must be filed with the Court and transmitted to counsel no later than February 6, 2024. Walter Decl., Exs. A, B (Postcard Notice and Notice and Claim Form).

To date, A.B. Data has notified 76,386 potential Class Members either by mailed Postcard Notice or emailed a direct link to the Notice and Proof of Claim. Walter Decl. ¶¶7-8. The Claims Administrator also established and continues to maintain a website dedicated to the Settlement: https://www.bakktsecuritiessettlement.com/. *Id*. at ¶11. The website provides a link for online claim filing and lists important deadlines. *Id*. at ¶12. The Claims Administrator also disseminated the Summary Notice over *PR Newswire* and *Investor's Business Daily*. *Id*. at ¶9.

### 3.    Exclusions and Objections

The Preliminary Approval Order mandates that members of the Class must request exclusion from the Class no later than February 6, 2024. It also notifies Class Members that, and how, they may object to the Settlement or the requests for fees and expenses. Dkt. No. 60 at 25-28. To date, not one Class Member has objected to any aspect of the Settlement, the Plan of Allocation, or the requests for attorneys' fees, reimbursement of expenses, and awards to Plaintiffs. Walter Decl. at ¶¶14-15. Only two Class member have submitted requests for exclusion from the Settlement. *Id*. at ¶14. Plaintiffs will update the Court about requests for exclusion and respond to objections, if any are filed, in Plaintiffs' reply in further support of their motion for final approval.

3

**4.      The Plan of Allocation**

The Notice describes the Plan of Allocation in full detail. *See* Walter Decl., Ex. A at 6-10. The Plan of Allocation fairly and reasonably distributes the Net Settlement Fund to Class Members consistent with the federal securities laws and principles of loss causation. The Plan of Allocation establishes a formula that determines authorized claimants' recognized losses and calculates Class Members' *pro rata* share of the Net Settlement Fund (*i.e.*, Settlement Amount less attorneys' fees and expenses, and award to Plaintiffs). *See id.*

## III.    ARGUMENT

### A.      The Court Should Grant Final Approval of the Settlement

Rule 23(e) requires judicial approval of any class action settlement, which must be "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Public policy favors settlement, particularly in class actions. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("We are mindful of the 'strong judicial policy in favor of settlements, particularly in the class action context'"). Class actions readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of litigation. When evaluating a proposed settlement under Fed. R. Civ. P. 23(e), courts determine whether a settlement, taken as a whole, is fair, reasonable, and adequate, ensuring that it was not the product of collusion. *Id.*; *see also Rodriguez v. CPI Aerostructures, Inc.*, No. 20 CV 982 (ENV) (CLP), 2023 WL 2184496, at *8 (E.D.N.Y. Feb. 16, 2023).

#### 1.      The Settlement is Presumptively Fair Because it Resulted From Arms'-Length Negotiations and is Not the Product of Collusion

"So long as the integrity of the arm's-length negotiation process is preserved … a strong initial presumption of fairness attaches to the proposed settlement, and great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying

4

litigation." *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y.); *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003) (same); Manual for Complex Litigation (Third) § 30.42 (1995) (same).[2]   Courts should give "proper deference to the private consensual decision of the parties" and bear in mind "the unique ability of class and defense counsel to assess the potential risks and rewards of litigation." *Fleisher v. Phoenix Life Ins. Co.*, 2015 WL 10847814, at *4 (S.D.N.Y. Sept. 9, 2015).

Accordingly, this Court may presume that the Settlement is fair, adequate, and reasonable as the product of "arms-length negotiations between experienced, capable counsel." *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 155 (S.D.N.Y. 2013) (quoting *Wal-Mart*, 396 F.3d at 116). Because counsel are "most closely acquainted with the facts of the underlying litigation," courts give "great weight" to counsel's settlement recommendations, especially when negotiations are facilitated by an experienced, third-party mediator, like they were here with Mr. Robert A. Meyer. *See In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 408-09 (S.D.N.Y. 2018) (a settlement procedurally fair where it was "based on the suggestion by a neutral mediator"), *aff'd*, 822 F. App'x 40 (2d Cir. 2020); *see also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (mediator's involvement in settlement negotiations "helps to ensure that the proceedings were free of collusion and undue pressure"); *Yang v. Focus Media Holding Ltd.*, No. 11 CIV. 9051 CM GWG, 2014 WL 4401280, at *5 (S.D.N.Y. Sept. 4, 2014) ("participation of this highly qualified mediator strongly supports a finding that negotiations were conducted at arms-length and without collusion."); *City of Providence v. Aeropostale, Inc.*, No. 11 CIV. 7132 CM GWG, 2014 WL 1883494, at *4 (S.D.N.Y. May 9, 2014) ("A strong initial presumption of fairness attaches to a proposed settlement if it is reached by experienced counsel after arms-length

---

[2] Emphasis is added and internal citations and quotations are omitted unless otherwise indicated.

negotiations"); *In re China Med. Corp. Sec. Litig.*, No. 8:11-1061 JLS (ANX), 2014 WL 12581781, at *4 (C.D. Cal. Jan. 7, 2014) (that settlement was reached as a result of mediation before Mr. Melnick favors approval).

The Parties and their counsel thoroughly understood the strengths and weaknesses of the Action prior to Settlement. Plaintiffs and Class Counsel: (a) conducted a lengthy investigation by reviewing and analyzing publicly available information regarding Defendants, including SEC filings, online and newspaper articles, analyst reports, press releases, stock price movements, earnings conference call transcripts, and analysts presentations; (b) found and spoke with confidential witnesses about Defendants' business; (c) researched and consulted with experts concerning complex accounting regulations and practices concerning SPACs and treatment of warrants; (d) consulted with a damages expert to evaluate recoverable losses; (e) drafted and filed an amended complaint with multiple claims and theories of liability; and (f) participated in a full-day mediation before an experienced mediator. Joint Decl. at. ¶¶30-44.

That the Settlement is fair is also reflected by the fact that the proposed Plan of Allocation treats all Class Members equally, allocating funds on a *pro rata* basis. Joint Decl. at ¶¶75-81. Similar plans have repeatedly been approved by courts in this District. *See*, *e.g.*, *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 386–87 (S.D.N.Y. 2013); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145–46 (S.D.N.Y. 2010).

For these reasons, the Settlement enjoys a presumption of fairness. *See Thompson*, 216 F.R.D. at 61.

> **2.    Application of the *Grinnell* Factors Supports the Final Approval of the Settlement as Fair, Adequate, and Reasonable**

With the presumption of fairness, this Court will evaluate the Settlement, "examin[ing] the fairness, adequacy, and reasonableness of a class settlement according to the *Grinnell* factors," including:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Wal-Mart*, 396 F.3d at 117 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)); *Pearlstein v. Blackberry Ltd.*, No. 13 Civ. 7060 (CM) (KHP), 2022 WL 4554858, at *3 (S.D.N.Y. Sep. 29, 2022).

While courts consider each *Grinnell* factor, "not every factor must weigh in favor of settlement[. R]ather court[s] should consider the totality of these factors in light of the particular circumstances." *In re IMAX Securities Litigation*, 283 F.R.D. 178, 189 (S.D.N.Y., 2012). "[W]hen evaluating a settlement agreement, the court is not to substitute its judgment for that of the parties, nor is it to turn consideration of the adequacy of the settlement into a trial or a rehearsal of the trial." *In re Sony Corp. SXRD*, 448 F. App'x 85, 87 (2d Cir. 2011). Plaintiffs submit that the proposed settlement is fair, reasonable and adequate when measured under the foregoing criteria and should be approved by this Court.

### a.    The Case is Complex and Continued Litigation Will be Protracted and Costly

In general, "the more complex, expensive, and time consuming the future litigation, the more beneficial settlement becomes as a matter of efficiency to the parties and to the Court." *In re*

*Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 381–82 (S.D.N.Y. 2013). This is particularly true here, as "securities class actions are by their very nature complicated and district courts in this Circuit have 'long recognized' that securities class actions are 'notably difficult and notoriously uncertain' to litigate." *Aeropostale*, 2014 WL 1883494, at *5 (quoting *In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 266 (S.D.N.Y. 2012)), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015). This Action is no exception. While Plaintiffs believe that their claims are meritorious, uncertainty in litigation always remains. Further litigation would have required substantial additional expenditures of time and resources, with a material risk of a lower recovery, if any. *See In re AOL Time Warner, Inc.*, No. 02 CIV. 5575 (SWK), 2006 WL 903236, at *9 (S.D.N.Y. Apr. 6, 2006) ("In addition to the complex issues of fact involved in this case, the legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages").

In the absence of the Settlement, Plaintiffs would have to survive dispositive motion practice, and then prepare for and prevail at trial, and then prevail *again* on the inevitable post-trial motions and appeals. Throughout each additional step of litigation, Plaintiffs would continue to face a robust defense from experienced and capable counsel. *See In re Alloy, Inc. Sec. Litig.*, No. 03 CIV.1597(WHP), 2004 WL 2750089, at *2 (S.D.N.Y. Dec. 2, 2004) (securities fraud issues are "likely to be litigated aggressively, at substantial expense to all parties").

Even if Plaintiffs prevailed in securing a larger judgment after a trial, the additional delay through post-trial motions and the appellate process could deny the Settlement Class any recovery for years, reducing its value in comparison to the present proposed recovery. *See Kommer v. Ford Motor Co.* 2020 WL 7356715, at *4 (N.D.N.Y. Dec. 15, 2020) ("even if a shareholder or class

8

member was willing to assume all the risks of pursuing . . . further litigation [.]. . . the passage of time would introduce yet more risks . . . and would in light of the time value of money, make future recoveries less valuable than this current recovery"). Accordingly, material risk exists that further litigation might yield a smaller recovery, years in the future—or no recovery at all. *See*, *e.g.*, *Hicks v. Stanley*, No. 01 CIV. 10071 (RJH), 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further costs; justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action."). The expense, duration, and difficulties of the Action were it to proceed through trial and appeals weigh in favor of final approval of the Settlement.

### b.      The Reaction of the Class Supports Final Approval

"It is well-settled that the reaction of the class to a settlement is considered perhaps the most significant factor to be weighed in considering its adequacy." *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 WL 4115809, at *7 (S.D.N.Y. Nov. 7, 2007) (internal citations and quotations omitted). "Lack of objection is strong evidence of the settlement's fairness." *In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 311 (E.D.N.Y. 2006); *see also Lea v. Tal Educ. Grp.*, No. 18-CV-5480 (KHP), 2021 WL 5578665, at *2 (S.D.N.Y. Nov. 30, 2021) (approving the settlement where there were no objectors and only three requests for exclusion); *In re Revolution Lighting Techs., Inc. Sec. Litig.*, No. 1:19-CV-00980-JPO, 2020 WL 4596811, at *1 (S.D.N.Y. Aug. 11, 2020) (finding a settlement fair and granting final approval where there were no objections from the class).

To date, only two Class Members have submitted requests for exclusion and none has objected to any aspect of the Settlement. Walter Decl. at ¶14-15. The absence of objections to the Settlement and such a small number of requests for exclusions from the Class supports final

approval of the Settlement. Plaintiffs will address any subsequent requests for exclusion or objections in their Reply.

### c. Plaintiffs and Class Counsel Were Sufficiently Informed during Settlement Negotiations

Courts also evaluate whether Plaintiffs and Class Counsel were sufficiently informed about the merits of the claims and defenses and the value thereof when they entered into the Settlement. *Bear Stearns*, 909 F. Supp. 2d at 267. Considering the stage of the proceedings, *Wal-Mart*, 396 F.3d at 117, discovery need not be comprehensive so long as the Court is satisfied that Plaintiffs "'have engaged in sufficient investigation of the facts to enable the Court to intelligently make … an appraisal of the settlement.'" *AOL Time Warner*, 2006 WL 903236, at *10; *IMAX*, 283 F.R.D. at 190 (The "sufficiently informed" factor is "not an overly burdensome one to achieve.").

Plaintiffs achieved this Settlement only after thoroughly investigating the alleged claims and consulting with both liability and damages experts. Plaintiffs developed an intricate understanding of the various accounting practices at issue and were able to negotiate effectively during the mediation that led to the Settlement. *See* Joint Decl. at ¶¶37-38; *see also In re Warner Commc'ns. Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) (settlement approved where the parties "have a clear view of the strengths and weaknesses of their cases"). Therefore, Class Counsel and Plaintiffs had a thorough understanding of the strengths and weaknesses of the case, further supporting final approval.

### d. Plaintiffs Faced Risks to Establishing Liability and Damages

In evaluating fairness, courts consider the "risks of establishing liability [and] the risks of establishing damages." *Grinnell*, 495 F.2d at 463; *Wal-Mart*, 396 F.3d at 117. Courts should not "adjudicate the disputed issues or decide unsettled questions; rather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *In re Glob.*

*Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004); *AOL Time Warner*, 2006 WL 903236, at *11 (same). In other words, "the Court should balance the benefits afforded to members of the Class and the immediacy and certainty of a substantial recovery for them against the continuing risks of litigation." *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 364 (S.D.N.Y. 2002). Courts should, therefore, "approve settlements where plaintiffs would have faced significant legal and factual obstacles to proving their case." *Global Crossing*, 225 F.R.D. at 459.

"The difficulty of establishing liability is a common risk of securities litigation." *AOL Time Warner*, 2006 WL 903236, at *11. *See also Christine Asia Co. v. Yun Ma*, No. 115MD02631CMSDA, 2019 WL 5257534, at *10 (S.D.N.Y. Oct. 16, 2019). Here, Defendants vigorously challenged Plaintiffs' theory of scienter, arguing that they did not intend to mislead investors by classifying a portion of their Class A shares as permanent equity. For support, Defendants relied on industry practices at the time (*i.e.*, accounting practices implemented by other SPACs) as well as advice from their auditors. *See* Joint Decl. at ¶¶60-63.

Defendants also raised arguments concerning the materiality of the alleged misstatements, arguing that their accounting treatment of the Class A shares did not constitute a misrepresentation let alone one that was materially misleading. Defendants claim to have genuinely believed that their accounting of the shares was appropriate under the circumstances. *Id*. at ¶¶65-66.

The elements of "loss causation" and "damages" also presented obstacles for Plaintiffs. Specifically, while Plaintiffs estimated damages to be approximately $80 million, Defendants maintained that the declines in the stock price behind that figure were not "statistically significant" and therefore could not be proven to have resulted in damages caused by the alleged fraud. If a jury ultimately disregarded those stock price declines, overall damages would have decreased to below $5 million. *Id*. at ¶70. In addition, Defendants also argued that the stock price declines

11

identified by Plaintiffs did not reveal any new information to the market, as the information contained in the disclosures on corrective disclosure dates had already been transmitted in earlier filings and public statements; whatever declines occurred were caused by non-fraud related information, according to Defendants. Thus, Plaintiffs faced the real possibility that the alleged misrepresentation did not cause any damages, *i.e.*, zero. *Id.* at ¶¶71-72. Plaintiffs' Section 11 claims also faced unique obstacles and risks. Given that Bakkt Holdings was a SPAC, the initial offering price was calculated to be $10 per share. Thus, damages under Section 11 were not available if the stock price of Bakkt Holdings was over $10 per share, which was the case for much of the relevant period. *Id.* at ¶73.

Finally, in addition to each of the above risks, Plaintiffs also faced the risk that Bakkt Holdings appeared to be on shaky financial footing. Just prior to the mediation, Bakkt Holdings announced it was discontinuing its consumer-facing app. The company's stock price had also fallen to new lows and its balance sheet reflected less than $100 million by the end of 2022. *Id.* at ¶58.

Even if Plaintiffs were to prove Defendants' liability, proving damages would be complex, requiring technical expert testimony from financial economist experts from both sides who disagree as to the range or existence of recoverable damages. Defendants challenged Plaintiff's calculation of statutory damages, and if this Action were to proceed to summary judgment and trial, Class Counsel anticipate that the proper calculation of damages would become fodder for expert testimony, likely leading to an expensive (and always unpredictable) "battle of the experts." Defendants would assert at summary judgment and trial that per-share damages are materially lower than Plaintiffs seek to prove, or are entirely unprovable. Before verdict, neither the Parties nor a court can predict which expert's testimony or methodology the jury would adopt, and thus

12

courts recognize the need for compromise. *See generally In Re American Bank Note Holographics*, 127 F. Supp. 2d 418, 426-27 (S.D.N.Y, 2001) (approving settlement based, in part, on counsel's recognizing that a jury might accept defendants' expert and eliminate or reduce damages materially); *see also In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997).

Accordingly, the material risks of Plaintiffs failing to establish liability or the full amount of per share damages and the Class recovering less than the Settlement Amount or even nothing at all, favors final approval of the Settlement, which eliminates these risks.

### e.  The Risks of Maintaining Class Action Status Through Trial

The Court has not yet certified the Class. A material risk existed in that the Court might have declined to certify the proposed Class. Even if the Court certified a class over Defendants' opposition, Defendants may have moved to decertify the class before trial or on appeal, as class certification "may be altered or amended before the final judgment" under Rule 23(c)(1)(C). *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at \*13 (S.D.N.Y. Oct. 16, 2019); *see also Bellifemine v. Sanofi-Aventis U.S. LLC*, 2010 WL 3119374, at \*4 (S.D.N.Y. Aug. 6, 2010). Thus, the risks of maintaining the class action status support final approval of the Settlement.

### f.  The Settlement Amount is Reasonable in Light of the Best Possible Recovery and Attendant Risks

Courts typically analyze the last two *Grinnell* factors together. *See Grinnell*, 495 F.2d at 463. In so doing, courts "consider[] and weigh[] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 CM PED, 2010 WL 4537550, at \*20 (S.D.N.Y. Nov. 8, 2010) (quoting *Grinnell*, 495 F.2d at 462). A court's "determination of whether a given settlement amount is reasonable in light of the best

13

possibl[e] recovery does not involve the use of a mathematical equation yielding a particularized sum." *Bear Stearns*, 909 F. Supp. 2d at 269. Instead, the Second Circuit has held "[t]here is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Wal-Mart*, 396 F.3d at 119.

Here, under the best-case scenario—assuming Plaintiffs overcome all the obstacles noted above at and beyond trial, and Defendants do not prevail on any of their arguments—Plaintiffs' expert's estimate of the maximum, potentially recoverable Class-wide damages is approximately $80,000,000. Joint Decl. at ¶69. That maximum damages number is reached only if: (1) Plaintiffs establish Defendants' liability on the alleged misrepresentations and omissions at trial, (2) a jury credits Plaintiffs' expert's calculation of the full amount of per-share damages, and (3) every potential Class Member that Plaintiffs' damages expert estimates purchased Bakkt Holding's stock during the Class Period submits a valid claim. Should Plaintiffs fail to establish liability or the full amount of per share damages, or if significantly fewer Class Members file claims than Plaintiffs' expert estimates, recoverable damages could be materially less than that maximum amount, or none at all. *See Facebook,* 343 F. Supp. 3d at 414 ("Because Plaintiffs face serious challenges to establishing liability, consideration of Plaintiffs' best possible recovery must be accompanied by the risk of non-recovery").

In factually and legally complex securities class actions, responsible counsel cannot be certain that they will be able to obtain a judgment at or near the full amount of the class-wide damages that they will seek to prove at trial. The possibility that a class "might have received more if the case had been fully litigated is no reason not to approve the settlement." *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1206 (6th Cir. 1992). Money in Class Members' pockets now is

more valuable than a speculative recovery that Class Members might obtain after a complex trial, undertaking the substantial risk that the Class may end up with nothing given the challenges that Plaintiffs face in establishing liability and damages. *See In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1396, 1405 (E.D.N.Y. 1985) ("[M]uch of the value of a settlement lies in the ability to make funds available promptly.").

Cornerstone Research, a leading economics consulting firm, publishes a report each year analyzing securities class action settlements. In its most recent report titled *Securities Class Action Settlements—2022 Review and Analysis*, Cornerstone Research provided median settlements as a percentage of total class-wide damages in securities fraud cases. A copy of the Cornerstone Research report is attached to the accompanying Declaration of Adam M. Apton as Exhibit D. Notably, for cases with damages ranging from $75 million to $149 million the median settlement as a percentage is 4.9%. *Id.* at 6 (Figure 5). Assuming Plaintiffs' classwide damages are $80 million, the recovery under the proposed Settlement equals 3.75% of the total recoverable damages. In light of the aforementioned material risks that Plaintiffs and the Class might recover less, or nothing, without the Settlement, this Settlement is well within the range of reasonableness. *Grinnell*, 495 F.2d at 455 n.2 ("[T]here is no reason … why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery"); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012) (granting final approval which amounted to 2% of potential recovery); *Cagan v. Anchor Sav. Bank FSB*, No. CV-88-3024, 1990 WL 73423, at *12–13 (E.D.N.Y. May 22, 1990) (granting final approval amounting to approximately 1.9% of best possible recovery).

For the foregoing reasons, the proposed Settlement is both procedurally and substantively fair, reasonable, and adequate, and in the Class's best interests. These *Grinnell* factors weigh in favor of granting final approval of the Settlement.

### 3.     The Settlement Satisfies the Remaining Rule 23(e) Factors

Rule 23(e), as recently amended, lists four factors for a court to consider in determining fairness:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's-length; (C) the relief provided for the class was adequate, taking into account: (i) the cost, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23 (e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e).

Rule 23's factors A, B, and C (i-ii) are addressed above.  The proposed fee award (factor C (iii)) is discussed in the accompanying Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Awards to Plaintiffs, which demonstrates that Class Counsel's request for one-third of the Settlement Fund is fair and reasonable.  With respect to identifying agreements pursuant to Rule 23(e)(3)(C)(iv), the Stipulation previously filed with the Court, Dkt. No. 53, identifies that the parties have entered into a Supplemental Agreement, which the Parties filed under seal with the Court (Dkt. No. 58).  The Supplemental Agreement provides Defendants with the option to terminate the Settlement if Class Members who meet certain criteria exclude themselves from the Class. *Id*.  To protect the Class, the Supplemental Agreement is confidential. *See In re PPDAI Grp. Inc. Sec. Litig.*, 2022 WL 198491, at \*13 (E.D.N.Y. Jan. 21, 2022) (finding that the supplemental agreement does not pose an impediment to final approval); *Christine Asia*, 2019 WL 5257534, at \*15 (same).  Finally, the Plan of Allocation treats all Class Members

16

equitably, as discussed below.

In sum, the Settlement is fair, reasonable, and adequate under Rule 23(e) and the *Grinnell* factors, supporting Plaintiff's request for final approval of the Settlement.

### B.    The Court Should Approve the Plan of Allocation

The Court must also evaluate whether the Settlement treats Class Members equitably relative to one another. Fed. R. Civ. P. 23(e)(2)(D). The Settlement does not offer preferential treatment to any Class Member, including Plaintiffs. Courts preliminarily approve proposed plans of allocation if the proposed plan has a "reasonable, rational basis." *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 158 (S.D.N.Y. 2013). The Plan is fair, reasonable, and adequate because it does not treat Plaintiffs or any other Class Member preferentially. *In re Tremont Sec. Law, State Law & Ins. Litig.*, No. 08-CV-11117, 2015 WL 5333494, at *6 (S.D.N.Y. Sept. 14, 2015), *aff'd in part, vacated in part*, 699 F. App'x 8 (2d Cir. 2017). In its Preliminary Approval Order, the Court preliminarily approved the Plan of Allocation, which was detailed in the Long Notice. Craig Decl., Ex. A at 6-9. The Plan of Allocation ensures that the Settlement treats Class Members, including Plaintiffs, equitably relative to one another. Plaintiffs now seek final approval of the Plan of Allocation to administer the Settlement.

The Plan of Allocation "must be fair and adequate." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005). "When formulated by competent and experienced counsel, a plan for allocation of net settlement proceeds need have only a reasonable, rational basis." *IMAX*, 283 F.R.D. at 192; *see also Christine Asia,* 2019 WL 5257534, at 15-16. A fair and rational plan may take into account "the relative strength and values of different categories of claims." *Global Crossing*, 225 F.R.D. at 462; *see also Marsh & McLennan*, 2009 WL 5178546, at *13 ("In determining whether a plan of allocation is fair, courts look largely to the opinion of counsel").

17

The Notice sets forth the proposed Plan of Allocation, Walter Decl., Ex. A at 6-10, which has a reasonable, rational basis. Class Counsel developed the Plan with the Claims Administrator and Plaintiffs' damages expert. Joint Decl. at ¶76. The Plan of Allocation distributes the Net Settlement Fund equitably among Class Members who were injured by Defendants' alleged misconduct and who submit valid Claim Forms. *Id*. Each eligible Class Member who submits a valid Proof of Claim form will receive a *pro rata* distribution pursuant to the Plan. The Plan calculates a claimant's relative loss proximately caused by Defendants' alleged misrepresentations and omissions, based on factors such as when and at what prices the claimant purchased and sold Bakkt Holdings stock. The Plan of Allocation does not compensate losses resulting from "in and out" transactions, *i.e.* when shares are sold prior to revelation of the truth. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005) ("But if, say, the purchaser sells the shares before the relevant truth begins to leak out, the misrepresentation will not have led to any loss").

The Plan of Allocation closely tracks the form of plans of allocation commonly approved in similar securities class action settlements. In securities class actions, "plans that allocate money depending on the timing of purchases and sales of the securities at issue are common" because they tend to mirror the complaint's allegations. *In re Datatec Sys., Inc. Sec. Litig.*, No. 04-CV-525 (GEB), 2007 WL 4225828, at *5 (D.N.J. Nov. 28, 2007); *see also In re Biolase, Inc. Sec. Litig.*, No. SACV131300JLSFFMX, 2015 WL 12720318, at *5 (C.D. Cal. Oct. 13, 2015) (finding a plan that awarded a *pro rata* share of the net settlement fund to be "a fair and reasonable method of distributing settlement proceeds").

If any funds remain after the initial distribution from the Net Settlement Fund to Authorized Claimants, A.B. Data will conduct a second distribution to Authorized Claimants as long as the second distribution is cost effective. Accordingly, it is likely that only a small amount of funds

will remain in the Net Settlement Fund after such distribution(s). Any residual funds will be distributed to a non-profit charitable organization selected by Class Counsel.

To date, no Class Member has objected to the Plan of Allocation. Walter Decl. at ¶15. Accordingly, the Court should approve the proposed Plan of Allocation.

### C. The Court Should Approve the Notice Disseminated to the Class as Satisfying the Requirements of Rule 23 and Due Process

The notice program, alerting the Class to their rights to file a claim or request exclusion, the right to object, and the consequences of any particular choice, complies with this Court's Preliminary Approval Order and satisfies Fed. R. Civ. P. 23(c)(2) and Rule 23(e)(1), the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4(a)(7), and due process.

Courts evaluate a notice program's compliance with Rule 23 and due process in terms of its reasonableness. Fed. R. Civ. P. 23(e)(1); *Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015). Notice is reasonable where it "fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Id.* at 73-74. Notice need not be perfect but only "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B) and 23(e)(2)(C)(ii). In its Preliminary Approval Order, the Court approved the notice program and its substance, (Dkt. No. 60 at 23-24), and appointed A.B. Data as Claims Administrator. *Id.* at 22.

Under Class Counsel's direction, A.B. Data executed the notice program exactly as the Court directed in the Preliminary Approval Order. A.B. Data mailed more than 76,000 copies of the Court-approved Postcard Notice to potential Class Members and their nominees who could be identified with reasonable effort. Walter Decl. at ¶¶7-8. A.B. Data also published the Court-approved Summary Notice online in *PR Newswire* and in print in *Investor's Business Daily*. *Id.* at

19

¶9. A.B. Data also established and maintains a toll-free telephone number for Class Members to call and obtain information about the Settlement, and published all information regarding the Settlement online on the Settlement website. *Id.* at ¶¶10-13.

The Notice provided to the Class also provided all necessary information for Class Members to make an informed decision regarding the proposed Settlement. The notice "fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Arbuthnot*, 607 F. App'x at 73-74. The Notice gave Class Members all the information they needed to decide whether to opt out, object, or file a claim. It told Class Members, among other things: (1) the amount of the Settlement; (2) why the parties propose the Settlement; (3) the estimated average recovery per damaged share; (4) the maximum amount of attorneys' fees and expenses that Class Counsel would seek; (5) Class Counsel's contact information; (6) that Class Members could object to the Settlement or exclude themselves from the Class, and the consequences thereof; and (7) the dates and deadlines for certain Settlement-related events. *See* PSLRA, 15 U.S.C. § 78u-4(a)(7). The Notice further explained that the Net Settlement Fund would be distributed to eligible Class Members who submit valid and timely claim forms under the Plan of Allocation as described in the Notice.

In sum, the Notice fairly apprised Class Members of their rights, is the best notice practicable under the circumstances, and complies with the Court's Preliminary Approval Order, Federal Rule of Civil Procedure 23, the PSLRA, and due process.

## IV.    CONCLUSION

For the forgoing reasons, the Court should grant final approval of the proposed Settlement, Plan of Allocation, and notice program as executed. The Court should enter the proposed Final Judgment.

DATED: January 23, 2024          Respectfully submitted,

**LEVI & KORSINSKY, LLP**

 s/ Adam M. Apton
Adam M. Apton
Devyn R. Glass
33 Whitehall Street, 17th Floor
New York, New York 10004
Telephone: (212) 363-7500
Fax: (212) 363-7171
aapton@zlk.com
dglass@zlk.com

**POMERANTZ LLP**
Jeremy A. Lieberman
Jonathan D. Park
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
jpark@pomlaw.com

*Co-Lead Counsel for Plaintiffs and the Class*

**HAO LAW FIRM**
Junbo Hao
Room 3-401 No. 2 Building
No. 1 Shaungliubei Street
100024 Beijing
People's Republic of China
Telephone: +86 137-1805-2888
jhao@haolaw.cn

*Additional Counsel for Plaintiff Tse Winston Wing Kuen*

21