**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SUZANNE POIRIER, Individually and On Behalf of All Others Similarly Situated, | Case No. 1:22-cv-02283-EK-PK |
| Plaintiff, | **DECLARATION OF ADAM M. APTON** |
| v. | |
| BAKKT HOLDINGS, INC. f/k/a VPC IMPACT ACQUISITION HOLDINGS, JOHN MARTIN, OLIBIA STAMATOGLOU, GORDON WATSON, KAI SCHMITZ, and KURT SUMMERS, | |
| Defendants. | |

I, Adam M. Apton, declare as follows:

1.      I am a partner at the law firm Levi & Korsinsky, LLP ("L&K"). I submit this declaration in support of Plaintiffs' application for an award of attorneys' fees in connection with services rendered in the Action, as well as for reimbursement of litigation expenses incurred in connection with the Action.  I have personal knowledge of the facts set forth herein and, if called upon, could and would testify thereto.

2.      L&K, as Co-Lead Counsel, was involved in all aspects of the Action and its settlement, as set forth in the Joint Declaration of Adam M. Apton and Jeremy A. Lieberman in Support of Plaintiffs' Motions for (1) Final Approval of Proposed Class Action Settlement; and (2) Award of Attorneys' Fees, Reimbursement of Expenses, and Awards to Plaintiffs

3.      The schedule attached hereto as Exhibit A is a detailed summary indicating the amount of time spent by attorneys and professional support staff of my firm who, from inception of the Action through and including January 19, 2024, billed ten or more hours to the Action, and

1

the lodestar calculation for those individuals based on my firm's current billing rates. For personnel who are no longer employed by my firm, the lodestar calculation is based upon the billing rates for such personnel in his or her final year of employment by my firm. The schedule was prepared from contemporaneous daily time records regularly prepared and maintained by my firm.

4.    I am the partner who oversaw or conducted the day-to-day activities in the Action and I reviewed these daily time records in connection with the preparation of this declaration. The purpose of this review was to confirm both the accuracy of the records as well as the necessity for, and reasonableness of, the time committed to the litigation. Based on this review, I believe that the time of L&K attorneys and staff reflected in Exhibit A was reasonable and necessary for the effective and efficient prosecution and resolution of the Action.

5.    The hourly rates for the attorneys and professional support staff in my firm included in Exhibit A are consistent with the rates approved by courts in other securities or shareholder litigation when conducting a lodestar cross-check.

6.    The total number of hours reflected in Exhibit A is 326.30 hours. The total lodestar reflected in Exhibit A is $232,520.75, consisting solely of attorney and legal professional time.

7.    My firm's lodestar figures are based upon the firm's billing rates, which rates do not include charges for expense items. Expense items are billed separately and such charges are not duplicated in my firm's billing rates.

8.    As detailed in Exhibit B, my firm incurred a total of $23,338.51 in expenses in connection with the prosecution of this Action. This includes an estimated allotment of $100 for anticipated travel that will be required for the Settlement Hearing.

9.      The litigation expenses incurred in the Action are reflected on the books and records of my firm.  These books and records are prepared from expense vouchers, check records, and other source materials and are an accurate record of the expenses incurred.  The expenses reflected in Exhibit B are the expenses actually incurred by my firm.

10.     Attached hereto as Exhibit C is a brief biography of L&K, including the attorneys who were involved in the Action.

11.     Attached hereto as Exhibit D is a true and accurate copy of *Securities Class Action Settlements—2022 Review and Analysis*.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 23rd day of January 2024.

Adam M. Apton

**EXHIBIT A**

*Poirier v. Bakkt Holdings, Inc., et al.*
**Case No. 1:22-cv-02283-EK-PK**

**Levi & Korsinsky, LLP**

**LODESTAR REPORT**
**FROM INCEPTION THROUGH JANUARY 19, 2024**

| TIMEKEEPER/CASE | STATUS | HOURS | RATE | LODESTAR |
|---|---|---|---|---|
| **ATTORNEYS:** | | | | |
| Adam M. Apton | Partner | 128.00 | $900 | $115,200.00 |
| Shannon Hopkins | Partner | 4.50 | $1,000 | $4,500.00 |
| David Jaynes | Associate | 9.75 | $600 | $5,850.00 |
| Devyn Glass | Associate | 37.50 | $600 | $22,500.00 |
| Udeme Ikpe | Associate | 141.70 | $585 | $82,894.50 |
| Stephanie Viera | Paralegal | 1.70 | $325 | $552.50 |
| Amanda Herda | Paralegal | 3.15 | $325 | $1,023.75 |
| **TOTAL LODESTAR** | | **326.30** | | **$232,520.75** |

**EXHIBIT B**

*Poirier v. Bakkt Holdings, Inc., et al.*
**Case No. 1:22-cv-02283-EK-PK**

**Levi & Korsinsky, LLP**

**EXPENSE REPORT**
**FROM INCEPTION THROUGH JANUARY 19, 2024**

| ITEM | AMOUNT |
|------|--------|
| INVESTIGATOR | $3,088.50 |
| MEDIATION | $5,037.50 |
| ELECTRONIC RESEARCH | $781.56 |
| NOTICE FEES | $11,753.15 |
| PHOTOCOPIES | $112.40 |
| TRAVEL | $2,565.40 |
| **GRAND TOTAL** | **$23,338.51** |

\* Travel expenses include estimated costs ($100) associated with appearing at the Settlement Hearing scheduled for February 27, 2024.

**EXHIBIT C**

**Levi & Korsinsky, LLP**

**FIRM RESUME**



# Levi & Korsinsky

## Firm Resume

# Representation.
# Where & When You Need.

**New York**

33 Whitehall Street
17th Floor
New York, NY 10004
Tel : 212-363-7500
Fax : 212-363-7171

**Washington, D.C.**

1101 Vermont Ave. NW
Suite 700
Washington, D.C. 20005
Tel: 202-524-4290
Fax: 202-333-2121

**Connecticut**

1111 Summer Street,
Suite 403
Stamford, CT 06905
Tel : 203-992-4523

**Los Angeles**

445 South Figueroa Street
31st Floor
Los Angeles, CA 90071
Tel: 213-985-7290

**San Francisco**

1160 Battery Street East,
Suite 100 - #3425
San Francisco, CA 94111
Tel: 415-373-1671
Fax: 415-484-1294

in  Levi & Korsinsky, LLP

🐦  Merger Alerts

🌐  www.ZLK.com

# Contents

## About The Firm

## Practice Areas

Securities Fraud Class Actions

Derivative, Corporate Governance & Executive Compensation

Mergers & Acquisitions

Consumer Litigation

## Our Attorneys

### Managing Partners
- EDUARD KORSINSKY
- JOSEPH E. LEVI

### Partners
- ADAM M. APTON
- DONALD J. ENRIGHT
- SHANNON L. HOPKINS
- GREGORY M. NESPOLE
- GREGORY M. POTREPKA
- NICHOLAS I. PORRITT
- MARK S. REICH
- DANIEL TEPPER
- ELIZABETH K. TRIPODI

## Of Counsel
- ANDREW E. LENCYK
- COURTNEY E. MACCARONE
- BRIAN STEWART

## Our Attorneys

### Senior Associates
- ADAM C. MCCALL
- MORGAN EMBLETON
- DAVID C. JAYNES
- JORDAN A. CAFRITZ

### Associates
- RACHEL BERGER
- NOAH GEMMA
- DEVYN R. GLASS
- GARY ISHIMOTO
- ALEXANDER KROT
- NICHOLAS LANGE
- AMANDA FOLEY
- MELISSA MULLER
- CINAR ONEY
- COLE VON RICHTHOFEN
- CORREY A. SUK
- MAX WEISS
- AARON PARNAS

## Staff Attorneys
- KATHY AMES-VALDIVIESO
- KAROLINA CAMPBELL
- CHRISTINA FUHRMAN
- RUBEN MARQUEZ
- COLIN BROWN
- LEAH FARRAR



# About The Firm

Levi & Korsinsky, LLP is a national law firm with decades of combined experience litigating complex securities, class, and consumer actions in state and federal courts throughout the country. Our main office is located in New York City and we also maintain offices in Connecticut, California, and Washington, D.C.

We represent the interests of aggrieved shareholders in class action and derivative litigation through the vigorous prosecution of corporations that have committed securities fraud and boards of directors who have breached their fiduciary duties. We have served as Lead and Co-Lead Counsel in many precedent–setting litigations, recovered hundreds of millions of dollars for shareholders via securities fraud lawsuits, and obtained fair value, multi-billion dollar settlements in merger transactions.

We also represent clients in high-stakes consumer class actions against some of the largest corporations in America. Our legal team has a long and successful track record of litigating high-stakes, resource-intensive cases and consistently achieving results for our clients.

Our attorneys are highly skilled and experienced in the field of securities class action litigation. They bring a vast breadth of knowledge and skill to the table and, as a result, are frequently appointed Lead Counsel in complex shareholder and consumer litigations in various jurisdictions. We are able to allocate substantial resources to each case, reviewing public documents, interviewing witnesses, and consulting with experts concerning issues particular to each case. Our attorneys are supported by exceptionally qualified professionals including financial experts, investigators, and administrative staff, as well as cutting-edge technology and e-discovery systems. Consequently, we are able to quickly mobilize and produce excellent litigation results. Our ability to try cases, and win them, results in substantially better recoveries than our peers.

We do not shy away from uphill battles – indeed, we routinely take on complex and challenging cases, and we prosecute them with integrity, determination, and professionalism.












# Practice Areas

## Levi & Korsinsky

- Securities Fraud Class Actions
- Derivative, Corporate Governance & Executive Compensation
- Mergers & Acquisitions
- Consumer Litigation

4

# Practice Areas



## Securities Class Action

Over the last four years, Levi & Korsinsky has been lead, or co-lead counsel in 35 separate settlements that have resulted in nearly $200 million in recoveries for shareholders. During that time, Levi & Korsinsky has consistently ranked in the Top 10 in terms of number of settlements achieved for shareholders each year, according to reports published by ISS. In Lex Machina's Securities Litigation Report, Levi & Korsinsky ranked as one of the Top 5 Securities Firms for the period from 2018 to 2020. Law360 dubbed the Firm one of the "busiest securities firms" in what is "on track to be one of the busiest years for federal securities litigation" in 2018. In 2019, Lawdragon Magazine ranked multiple members of Levi & Korsinsky among the 500 Leading Plaintiff Financial Lawyers in America. Our firm has been appointed Lead Counsel in a significant number of class actions filed in both federal and state courts across the country.

In **In re Tesla Inc. Securities Litigation**, No. 3:18-cv-4865-EMC (N.D. Cal.), the firm represents a certified class of Tesla investors who sustained damages when Elon Musk tweeted "Am considering taking Tesla private at $420. Funding secured," on August 7, 2018. In a monumental win for the class, our attorneys successfully obtained partial summary judgment against Mr. Musk on

the issues of falsity and scienter, meaning that trial will primarily focus on damages, which are presently estimated to be well in excess of $2 billion.

In **In re U.S. Steel Consolidated Cases**, No. 2:17-579-CB (W.D. Pa.), the firm represents a certified class of U.S. Steel investors who sustained damages in connection with the company's false and materially misleading statements about its Carnegie Way initiative.

In two related actions, **In re Nutanix, Inc. Securities Litigation**, No. 3:19-cv-01651-WHO (the "Stock Case") and **John P. Norton, on Behalf of the Norton Family Living Trust UAD 11/15/2002 v. Nutanix, Inc., et. al.**, No. 3:21-cv-04080-WHO (the "Options Case") Levi & Korsinsky achieved a settlement providing for the payment of $71 million to eligible class members. Lead Plaintiff of the Stock Case, California Ironworkers Field Pension Trust, and Lead Plaintiff of the Options Case, John P. Norton, alleged violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 based on false and misleading misstatements that the company made that allegedly concealed from shareholders its rapidly declining sales pipeline, revenue, and billings.



5

## Practice Areas

## Securities Class Action

As Lead Counsel in **In re Avon Products Inc. Securities Litigation**, No. 1:19-cv-1420-MKV (S.D.N.Y.), having been commenced in the U.S. District Court for the Southern District of New York, the Firm achieved a $14.5 million cash settlement to successfully end claims alleged by a class of investors that the beauty company loosened its recruiting standards in its critical market in Brazil, eventually causing the company's stock price to crater. The case raised important issues concerning the use of confidential witnesses located abroad in support of scienter allegations and the scope of the attorney work product doctrine with respect to what discovery could be sought of confidential sources who are located in foreign countries.

In **Rougier v. Applied Optoelectronics, Inc.,** No. 4:17-cv-2399-GHC-CAB (S.D. Tex.), the Firm served as sole Lead Counsel, prevailed against Defendants' Motion to Dismiss, and achieved class certification before the Parties reached a settlement. The Court granted final approval of a $15.5 million settlement on November 24, 2020.

> **"** "Plaintiffs' selected Class Counsel, the law firm of Levi & Korsinsky, LLP, has demonstrated the zeal and competence required to adequately represent the interests of the Class. The attorneys at Levi & Korsinsky have experience in securities and class actions issues and have been appointed lead counsel in a significant number of securities class actions across the country."

The Honorable Christina Bryan in Rougier v. Applied Optoelectronics, Inc., No. 4:17-cv-02399-GHC-CAB (S.D. Tex. Nov. 13, 2019)

In **In Re Helios and Matheson Analytics, Inc. Sec. Litig.,** No. 1:18-cv-6965-JGK (S.D.N.Y.), the Firm served as sole Lead Counsel. Although the company had filed a voluntary Bankruptcy petition for liquidation and had numerous creditors (including private parties and various state and federal regulatory agencies), the Firm was able to reach a settlement. The settlement was obtained at a time when a motion to dismiss filed by the defendants was still pending and a risk to the Class. In its role as Lead Counsel, the Firm achieved a settlement of $8.25 million on behalf of the class. The Court granted final approval of the settlement on May 13, 2021.



## Practice Areas

 **Securities Class Action**

In **In re Restoration Robotics, Inc. Sec. Litig.,** No. 5:18-cv-3712-EJD (N.D. Cal.), the Firm was sole Lead Counsel and acheived a settlement of $4,175,000 for shareholders.

In **Kirkland, et al. v. WideOpenWest, Inc.,** et al., Index No. 653248/2018 (N.Y. Sup.) the Firm was Co-Lead Counsel and acheived a settlement of $7,025,000 for shareholders.

In **Stein v. U.S. Xpress Enterprises, Inc.,** et al., No. 1:19-cv-98-TRM-CHS (E.D. Tenn.), the Firm is Co-Lead Counsel representing a certified class of USX investors and has prevailed on a Motion to Dismiss. The class action is in the early stages of discovery and shareholders stand to recover damages in connection with an Initial Public Offering.

> **"I find the firm to be well-qualified to serve as Lead Counsel."**
>
> The Honorable Andrew L. Carter, Jr. In Snyder v. Baozun Inc., No. 1:19-cv-11290-ALC-KNF (S.D.N.Y. Sept. 8, 2020)

 Levi & Korsinsky



# Practice Areas

## Securities Class Action

Appointed Lead or Co-Lead Counsel in the following securities class actions:

• **Gurevitch v. KeyCorp et al.,**

1:23-cv-01520-DCN (N.D. Ohio December 26, 2023)

• **Lowe v. Tandem Diabetes Care, Inc. et al.,**

3:23-cv-01657-H-BLM (S.D. Cal. December 5, 2023)

• **Perez v. Target Corporation et al.,**

0:23-cv-00769-PJS-TNL (D. Minn. November 13, 2023)

• **Thant v. Rain Oncology Inc. et al.,**

5:23-cv-03518-EJD (N.D. Cal. November 1, 2023)

• **Villanueva v. Proterra Inc. et al.,**

No. 5:23-cv-03519-BLF (N.D. Cal. October 23, 2023)

• **Martin v. BioXcel Therapeutics, Inc. et al.,**

No. 3:23-cv-00915-SVN (U.S.D.C Ct. October 4, 2023)

• **Scott Petersen V. Stem, Inc,**

No. 23-cv-02329-MMC (C.N.D.C. August 22, 2023)

• **Solomon v. Peloton Interactive, Inc. et al.,**

No. 1:23-cv-04279-MKB-JRC (E.D.N.Y. September 7, 2023)

• **Thant et al. v. Veru, Inc., et al.,**

No. 1:22-cv-23960-KMW (S.D. Fla. July 27, 2023)



**" In appointing the Firm Lead Counsel, the Honorable Analisa Torres noted our "extensive experience" in securities litigation.**

White Pine Invs. v. CVR Ref., LP, No. 1:20-CV-2863-AT (S.D.N.Y. Jan. 5, 2021)

• **Zhang V. Gaotu Techedu Inc., et al.,**

No. 1:22-cv-07966-PKC-CLP (E.D.N.Y. July 16, 2023)

• **Miguel Jaramillo v. Dish Network Corporation, et al.,**

No. 1:23-cv-00734-GPG-SKC (U.S.D.C. Colorado July 16, 2023)

• **Howard M. Rensin, Trustee Of The Rensin Joint Trust v. United States Cellular Corporation, et al.,**

No. 1:23-cv-02764-MMR (N.D. Ill. July 11, 2023)

• **Holland et al., v. Rite Aid Corporation, et al.,**

No. 23-cv-589 (N.D. Ohio June 22, 2023)

• **Rhonda Baylor v. Honda Motor Co., Ltd., et al.,**

No. 2:23-cv-00794-GW-AGR (C.D. Cal. May 8, 2023)

• **Sophia Olsson v. PLDT Inc. et al.,**

No. 2:23-cv-00885-CJC-MAA (C.D. Cal. April 26, 2023)

• **Sean Ryan v. FIGS, Inc. et al.,**

No. 2:22-cv-07939-ODW (C.D. Cal. February 14, 2023)



# Practice Areas

## Securities Class Action

- **Schoen v. Eiger Biopharmaceuticals, Inc., et al.,**

No. 3:22-cv-6985-RS (N.D. Cal. February 3, 2023)

- **Jamia Fernandes v. Centessa Pharmaceuticals plc, et al.,**

No. 1:22-cv-08805-GHW-SLC (S.D.N.Y. December 12, 2022)

- **Gilbert v. Azure Power Global Limited, et al.,**

No. 1:22-cv-07432-GHW (S.D.N.Y. December 8, 2022

- **Pugley v. Fulgent Genetics, Inc. et al.,**

No. 2:22-cv-06764-CAS-KLS (C.D. Cal. November 30, 2022)

- **Michalski v. Weber Inc., et al.,**

No. 1:22-cv-03966-EEB (N.D. Ill. November 29, 2022)

- **Edge v. Tupperware Brands Corporation, et al.,**

No. 6:22-cv-1518-RBD-LHP (M.D. Fla. September 16, 2022)

- **Carpenter v. Oscar Health, Inc., et al.,**

No. 1:22-cv-03885-VSB-VF (S.D.N.Y. September 27, 2022)

- **In re Nano-X Imagining Ltd. Securities Litigation,**

No. 1:20-cv-04355-WFK-MMH (E.D.N.Y. August 30, 2022)



## "I find the firm to be well-qualified to serve as Lead Counsel."

The Honorable Andrew L. Carter, Jr. In Snyder v. Baozun Inc., No. 1:19-CV-11290 (S.D.N.Y. Sept. 8, 2020)

- **Patterson v. Cabaletto Bio, Inc., et al.,**

No. 2:22-cv-00737-JMY (E.D. Pa. August 10, 2022)

- **Rose v. Butterfly Network, Inc., et al.,**

No. 2:22-cv-00854-MEF-JBC (D.N.J. August 8, 2022)

- **Winter v. Stronghold Digital Mining, Inc., et al.,**

No. 1:22-cv-03088-RA (S.D.N.Y. August 4, 2022)

- **Poirer v. Bakkt Holdings, Inc.,**

No. 1:22-cv-02283-EK-PK (E.D.N.Y. August 3, 2022)

- **In re Meta Materials Inc. Securities Litigation,**

No. 1:21-cv-07203-CBA-JRC (E.D.N.Y. July 15, 2022)

- **Deputy v. Akebia Therapeutics, Inc. et al.,**

No. 1:22-cv-01411-AMD-VMS (E.D.N.Y. June 28, 2022)

- **In re Grab Holdings Limited Securities Litigation,**

No. 1:22-cv-02189-JLR (S.D.N.Y. June 7, 2022)

- **Jiang v. Bluecity Holdings Limited et al.,**

No. 1:21-cv-04044-FB-CLP (E.D.N.Y. December 22, 2021)



## Practice Areas

## Securities Class Action

· **In re AppHarvest Securities Litigation,**

No. 1:21-cv-07985-LJL (S.D.N.Y. December 13, 2021)

· **In re Coinbase Global, Inc. Securities Litigation,**

No. 3:21-cv-05634-TLT (N.D. Cal. November 5, 2021)

· **Miller v. Rekor Systems, Inc. et al.,**

No. 1:21-cv-01604-GLR (D. Md. September 16, 2021)

· **Zaker v. Ebang International Holdings Inc. et al.,**

No. 1:21-cv-03060-KPF (S.D.N.Y. July 21, 2021)

· **Valdes v. Kandi Technologies Group, Inc. et al.,**

No. 2:20-cv-06042-LDH-AYS (E.D.N.Y. April 20, 2021)

· **John P. Norton, On Behalf Of The Norton Family Living Trust UAD 11/15/2002 V. Nutanix, Inc. Et Al,**

No. 3:21-cv-04080-WHO (N.D. Cal. September 8, 2021)

· **The Daniels Family 2001 Revocable Trust v. Las Vegas Sands Corp., et al.,**

No. 1:20-cv-08062-JMF (D. Nev. Jan. 5, 2021)

· **In re QuantumScape Securities Class Action Litigation,**

No. 3:21-cv-00058-WHO (N.D. Cal. April 20, 2021)

· **In re Minerva Neurosciences, Inc. Sec. Litig.,**

No. 1:20-cv-12176-GAO (D. Mass. March 5, 2021)

 "Class Counsel have demonstrated that they are skilled in this area of the law and therefore adequate to represent the Settlement Class as well."

The Honorable Barry Ted Moskowitz in In re Regulus Therapeutics Inc. Sec. Litig., No. 3:17-CV-182-BTM-RBB (S.D. Cal. Oct. 30, 2020)

· **White Pine Investments v. CVR Refining, LP, et al.,**

No. 1:20-cv-02863-AT (S.D.N.Y Jan. 5, 2021)

· **Yaroni v. Pintec Technology Holdings Limited, et al.,**

No. 1:20-cv-08062-JMF (S.D.N.Y. Dec. 15, 2020)

· **Nickerson v. American Electric Power Company, Inc., et al.,**

No. 2:20-cv-04243-SDM-EPD (S.D. Ohio Nov. 24, 2020)

· **Ellison v. Tufin Software Technologies Ltd., et al.,**

No. 1:20-cv-05646-GHW (S.D.N.Y. Oct. 19, 2020)

· **Hartel v. The GEO Group, Inc., et al.,**

No. 9:20-cv-81063-RS-SMM (S.D. Fla. Oct. 1, 2020)

· **Posey v. Brookdale Senior Living, Inc., et al.,**

No. 3:20-cv-00543-AAT (M.D. Tenn. Sept. 14, 2020)

 Levi & Korsinsky

## Practice Areas

### Securities Class Action

· **Snyder v. Baozun Inc.,**

No. 1:19-cv-11290-ALC-KNF (S.D.N.Y. Sept. 8, 2020)

· **Mehdi v. Karyopharm Therapeutics Inc.,**

No. 1:19-cv-11972-NMG (D. Mass. Apr. 29, 2020)· **Brown v. Opera Ltd.,**

No. 1:20-cv-00674-JGK (S.D.N.Y. Apr. 17, 2020)

· **In re Dropbox Sec. Litig.,**

No. 5:19-cv-06348-BLF-SVK (N.D. Cal. Jan. 16, 2020)

· **In re Yunji Inc. Sec. Litig.,**

No. 1:19-cv-6403-LDH-RML (E.D.N.Y. Feb. 3, 2020)

· **Zhang v. Valaris plc,**

No. 1:19-cv-7816-NRB (S.D.N.Y. Dec. 23, 2019)

· **In re Sundial Growers Inc. Sec. Litig.,**

No. 1:19-cv-08913-ALC-SN (S.D.N.Y. Dec. 20, 2019)

· **Costanzo v. DXC Technology Co.,**

No. 5:19-cv-05794-BLF-VKD (N.D. Cal. Nov. 20, 2019)

· **Ferraro Family Foundation, Inc. v. Corcept Therapeutics Incorporated,**

No. 5:19-cv-1372-LHK-SVK (N.D. Cal. Oct. 7, 2019)

· **Roberts v. Bloom Energy Corp.,**

No. 4:19-cv-02935-HSG (N.D. Cal. Sept. 3, 2019)

> Vice Chancellor Sam Glasscock, III said "it's always a pleasure to have counsel who are articulate and exuberant…" and referred to our approach to merger litigation as "wholesome" and "a model of… plaintiffs' litigation in the merger arena."
>
> Ocieczanek v. Thomas Properties Group, C.A. No. 9029-VCG (Del. Ch. May 15, 2014)

· **Luo v. Sogou Inc.,**

No. 1:19-cv-00230-LJL (S.D.N.Y. Apr. 2, 2019)

· **In re Aphria Inc. Sec. Litig.,**

No. 1:18-cv-11376-GBD-JEW (S.D.N.Y. Mar. 27, 2019)

· **Chew v. MoneyGram International, Inc.,**

No. 1:18-cv-07537-MMP (N.D. Ill. Feb. 12, 2019)

· **Johnson v. Costco Wholesale Corp.,**

No. 2:18-cv-01611-TSZ (W.D. Wash. Jan. 30, 2019)

· **Tung v. Dycom Industries, Inc.,**

No. 9:18-cv-81448-RS-WM (S.D. Fla. Jan. 11, 2019)

· **Guyer v. MGT Capital Investments, Inc.,**

No. 1:18-cv-09228-ER (S.D.N.Y. Jan. 9, 2019)



# Practice Areas

## Securities Class Action

· **In re Adient plc Sec. Litig.,**

No. 1:18-cv-09116-RA (S.D.N.Y. Dec. 21, 2018)

· **In re Prothena Corp. plc Sec. Litig.,**

No. 1:18-cv-06425-ALC (S.D.N.Y. Oct. 31, 2018)

· **Pierrelouis v. Gogo Inc.,**

No. 1:18-cv-04473-JLA (N.D. Ill. Oct. 10, 2018)

· **Balestra v. Cloud With Me Ltd.,**

No. 2:18-cv-00804-MRH-LPL (W.D. Pa. Oct. 18, 2018)

· **Balestra v. Giga Watt, Inc.,**

No. 2:18-cv-00103-MKD (E.D. Wash. June 28, 2018)

· **Chandler v. Ulta Beauty, Inc.,**

No. 1:18-cv-01577-MMP (N.D. Ill. June 26, 2018)

· **In re Longfin Corp. Sec. Litig.,**

No. 1:18-cv-2933-DLC (S.D.N.Y. June 25, 2018)

· **Chahal v. Credit Suisse Group AG,**

No. 1:18-cv-02268-AT-SN (S.D.N.Y. June 21, 2018)

· **In re Bitconnect Sec. Litig.,**

No. 9:18-cv-80086-DMM-DLB (S.D. Fla. June 19, 2018)

· **In re Aqua Metals Sec. Litig.,**

No. 4:17-cv-07142-HSG (N.D. Cal. May 23, 2018)

· **Davy v. Paragon Coin, Inc.,**

No. 4:18-cv-00671-JSW (N.D. Cal. May 10, 2018)

· **Rensel v. Centra Tech, Inc.,**

No. 1:17-cv-24500-RNS-JB (S.D. Fla. Apr. 11, 2018)

· **Cullinan v. Cemtrex, Inc.**

No. 2:17-cv-01067-SJF-AYS (E.D.N.Y. Mar. 3, 2018)

· **In re Navient Corporation Sec. Litig.,**

No. 1:17-cv-08373-RBK-AMD (D.N.J. Feb. 2, 2018)

· **Huang v. Depomed, Inc.,**

No. 3:17-cv-04830-JST (N.D. Cal. Dec. 8, 2017)

· **In re Regulus Therapeutics Inc. Sec. Litig.,**

No. 3:17-cv-00182-BTM-RBB (S.D. Cal. Oct. 26, 2017)

· **Murphy III v. JBS S.A.,**

No. 1:17-cv-03084-ILG-RER (E.D.N.Y. Oct. 10, 2017)

· **Ohren v. Amyris, Inc.,**

No. 3:17-cv-002210-WHO (N.D. Cal. Aug. 8, 2017)

· **Beezley v. Fenix Parts, Inc.,**

No. 2:17-cv-00233-SRC-CLW (D.N.J. June 28, 2017)

· **M & M Hart Living Trust v. Global Eagle Entertainment, Inc.,**

No. 2:17-cv-01479-PA-MRW (C.D. Cal. June 26, 2017)



## Practice Areas

## Securities Class Action

- **In re Insys Therapeutics, Inc.,**
No. 1:17-cv-1954-PAC (S.D.N.Y. May 31, 2017)
- **Clevlen v. Anthera Pharmaceuticals, Inc.,**
No. 3:17-cv-00715-RS (N.D. Cal. May 18, 2017)
- **In re Agile Therapeutics, Inc. Sec. Litig.,**
No. 3:17-cv-00119-AET-LHG (D.N.J. May 15, 2017)
- **Roper v. SITO Mobile Ltd.,**
No. 2:17-cv-01106-ES-MAH (D.N.J. May 8, 2017)
- **In re Illumina, Inc. Sec. Litig.,**
No. 3:16-cv-03044-JL-MSB (S.D. Cal. Mar. 30, 2017)
- **In re PTC Therapeutics, Inc.,**
No. 2:16-cv-01224-KM-MAH (D.N.J. Nov. 14, 2016)
- **The TransEnterix Investor Group v. TransEnterix, Inc.,**
No. 5:16-cv-00313-JCD (E.D.N.C. Aug. 30, 2016)
- **Gormley v. magicJack Vocaltec Ltd.,**
No. 1:16-cv-01869-VM (S.D.N.Y. July 12, 2016)
- **Azar v. Blount Int'l Inc.,**
No. 3:16-cv-00483-MHS (D. Or. July 1, 2016)
- **Plumley v. Sempra Energy,**
No. 3:16-cv-00512-RTB-AGS (S.D. Cal. June 6, 2016)
- **Francisco v. Abengoa, S.A.,**
No. 1:15-cv-06279-ER (S.D.N.Y. May 24, 2016)

- **De Vito v. Liquid Holdings Group, Inc.,**
No. 2:15-cv-06969-KM-JBC (D.N.J. Apr. 7, 2016)
- **Ford v. Natural Health Trends Corp.,**
No. 2:16-cv-00255-TJH-AFM (C.D. Cal. Mar. 29, 2016)
- **Levin v. Resource Capital Corp.,**
No. 1:15-cv-07081-LLS (S.D.N.Y. Nov. 24, 2015)
- **Martin v. Altisource Residential Corp.,**
No. 1:15-cv-00024-AET-GWC (D.V.I. Oct. 7, 2015)
- **Paggos v. Resonant, Inc.,**
No. 2:15-cv-01970-SJO-MRW (C.D. Cal. Aug. 7, 2015)
- **Fragala v. 500.com Ltd.,**
No. 2:15-cv-01463-JFW-CFE (C.D. Cal. July 7, 2015)
- **Stevens v. Quiksilver Inc.,**
No. 8:15-cv-00516-JVS-JCG (C.D. Cal. June 26, 2015)
- **In re Ocean Power Technologies, Inc. Sec. Litig.,**
No. 3:14-cv-3799-FLW-LHG (D.N.J. Mar. 17, 2015)
- **In re Energy Recovery Inc. Sec. Litig.,**
No. 3:15-cv-00265-EMC-LB (N.D. Cal. Jan. 20, 2015)



# Practice Areas

## Securities Class Action

· **Ford v. TD Ameritrade Holding Corporation, et al.,**
No. 8:14-cv-00396-JFB-SMB (D. Neb. Dec. 2, 2014)

· **In re China Commercial Credit Sec. Litig.,**
No. 1:15-cv-00557-ALC (D.N.J. Oct. 31, 2014)

· **In re Violin Memory, Inc. Sec. Litig.,**
No. 4:13 cv-05486-YGR (N.D. Cal. Feb. 26, 2014)

· **Berry v. KiOR, Inc.,**
No. 4:13-cv-02443-LHR (S.D. Tex. Nov. 25, 2013)

· **In re OCZ Technology Group, Inc. Sec. Litig.,**
No. 3:12-cv-05265-RS (N.D. Cal. Jan. 4, 2013)

· **In re Digital Domain Media Group, Inc. Sec. Litig.,**
No. 2:12-cv-14333-JEM-FJL (S.D. Fla. Sept. 20, 2012)



# Practice Areas



## Derivative, Corporate Governance & Executive Compensation

As a leader in achieving important corporate governance reforms for the benefit of shareholders, the Firm protects shareholders by enforcing the obligations of corporate fiduciaries. Our efforts include the prosecution of derivative actions in courts around the country, making pre-litigation demands on corporate boards to investigate misconduct, and taking remedial action for the benefit of shareholders. In situations where a company's board responds to a demand by commencing its own investigation, we frequently work with the board's counsel to assist with and monitor the investigation, ensuring that the investigation is thorough and conducted in an appropriate manner.

We have also successfully prosecuted derivative and class action cases to hold corporate executives and board members accountable for various abuses and to help preserve corporate assets through longlasting and meaningful corporate governance changes, thus ensuring that prior misconduct does not reoccur. We have extensive experience challenging executive compensation and recapturing assets for the benefit of companies and their shareholders. We have secured corporate governance changes to ensure that executive compensation is consistent with shareholder-approved compensation plans, company performance, and federal securities laws.

In **Franchi v. Barabe**, No. 2020-0648-KSJM (Del. Ch.), the Firm secured $6.7 million in economic benefits for Selecta Biosciences, Inc. in connection with insiders' participation in a private placement while in possession of material non-public information as well as the adoption of significant governance reforms designed to prevent a recurrence of the alleged misconduct.

"The Firm was lead counsel in the derivative action styled **Police & Retirement System of the City of Detroit et al. v. Robert Greenberg et al.**, C.A No. 2019-0578-MTZ (Del. Ch.). The action resulted in a settlement where Skechers Inc. cancelled approximately $20 million in equity awards issued to Skechers' founder Robert Greenberg and two top officers in 2019 and 2020. Also, under the settlement, Skechers' board of directors must retain a consultant to advise on compensation decisions going forward."



## Practice Areas



# Derivative, Corporate Governance & Executive Compensation

In **In re Google Inc. Class C Shareholder Litigation**, C.A. No. 7469-CS (Del. Ch.), we challenged a stock recapitalization transaction to create a new class of nonvoting shares and strengthen the corporate control of the Google founders. We helped achieve an agreement that provided an adjustment payment to existing shareholders harmed by the transaction as well as providing enhanced board scrutiny of the Google founders' ability to transfer stock. Ultimately, Google's shareholders received payments of $522 million.

In **In re Activision, Inc. Shareholder Derivative Litigation**, No. 06-cv-04771-MRP-JTL (C.D. Cal.), we were Co-Lead Counsel and challenged executive compensation related to the dating of options. This effort resulted in the recovery of more than $24 million in excessive compensation and expenses, as well as the implementation of substantial corporate governance changes.

 **"...A Model For How [The] Great Legal Profession Should Conduct Itself."**

Justice Timothy S. Driscoll in Grossman v. State Bancorp, Inc., Index No. 600469/2011 (N.Y. Sup. Ct. Nassau Cnty. Nov. 29, 2011)

In **Pfeiffer v. Toll** (Toll Brothers Derivative Litigation), No. 4140-VCL (Del. Ch.), we prevailed in defeating defendants' motion to dismiss in a case seeking disgorgement of profits that company insiders reaped through a pattern of insider-trading. After extensive discovery, we secured a settlement returning $16.25 million in cash to the company, including a significant contribution from the individuals who traded on inside information.

In **Rux v. Meyer,** No. 11577-CB (Del. Ch.), we challenged the re-purchase by Sirius XM of its stock from its controlling stockholder, Liberty Media, at an inflated, above-market price. After defeating a motion to dismiss and discovery, we obtained a settlement where SiriusXM recovered $8.25 million, a substantial percentage of its over-payment.

"In **In re EZCorp Inc. Consulting Agreement Derivative Litig.**, C.A. No. 9962-VCL (Del. Ch.), we challenged lucrative consulting agreements between EZCorp and its controlling stockholders. After surviving multiple motions to dismiss. We obtained a settlement where EZCorp was repaid $6.45 million it had paid in consulting fees, or approximately 33% of the total at issue and the consulting agreements were discontinued."



## Practice Areas



# Derivative, Corporate Governance & Executive Compensation

In **Scherer v. Lu** (Diodes Incorporated), No. 13-358-GMS (D. Del.), we secured the cancellation of $4.9 million worth of stock options granted to the company's CEO in violation of a shareholder-approved plan, and obtained additional disclosures to enable shareholders to cast a fullyinformed vote on the adoption of a new compensation plan at the company's annual meeting.

In **MacCormack v. Groupon, Inc.,** No. 13-940-GMS (D. Del.), we caused the cancellation of $2.3 million worth of restricted stock units granted to a company executive in violation of a shareholder-approved plan, as well as the adoption of enhanced corporate governance procedures designed to ensure that the board of directors complies with the terms of the plan; we also obtained additional material disclosures to shareholders in connection with a shareholder vote on amendments to the plan.

In **Edwards v. Benson** (Headwaters Incorporated), No. 13-cv-330 (D. Utah), we caused the cancellation of $3.2 million worth of stock appreciation rights granted to the company's CEO in violation of a shareholder-approved plan and the adoption of enhanced corporate governance procedures designed to ensure that the board of directors complies with the terms of the plan.

In **Pfeiffer v. Begley** (DeVry, Inc.), No. 12-CH-5105 (Ill. Cir. Ct. DuPage Cty.), we secured the cancellation of $2.1 million worth of stock options granted to the company's CEO in 2008-2012 in violation of a shareholder-approved incentive plan.

In **Basch v. Healy** (EnerNOC), No. 13-cv-766 (D. Del.), we obtained a cash payment to the company to compensate for equity awards issued to officers in violation of the company's compensation plan and caused significant changes in the company's compensation policies and procedures designed to ensure that future compensation decisions are made consistent with the company's plans, charters and policies. We also impacted the board's creation of a new compensation plan and obtained additional disclosures to stockholders concerning the board's administration of the company's plan and the excess compensation.

In **Kleba v. Dees,** No. 3-1-13 (Tenn. Cir. Ct. Knox Cty.), we recovered approximately $9 million in excess compensation given to insiders and the cancellation of millions of shares of stock options issued in violation of a shareholder-approved compensation plan. In addition, we obtained the adoption of formal corporate governance procedures designed to ensure that future compensation decisions are made independently and consistent with the plan.



17

## Practice Areas

## Derivative, Corporate Governance & Executive Compensation

In **Lopez v. Nudelman** (CTI BioPharma Corp.), No. 14-2-18941-9 SEA (Wash. Super. Ct. King Cty.), we recovered approximately $3.5 million in excess compensation given to directors and obtained the adoption of a cap on director compensation, as well as other formal corporate governance procedures designed to implement best practices with regard to director and executive compensation.

In **In re Corinthian Colleges, Inc. Shareholder Derivative Litigation**, No. 06-cv-777-AHS (C.D. Cal.), we were Co-Lead Counsel and achieved a $2 million benefit for the company, resulting in the re-pricing of executive stock options and the establishment of extensive corporate governance changes.

In **In re Corinthian Colleges, Inc. Shareholder Derivative Litigation**, No. 06-cv-777-AHS (C.D. Cal.), we were Co-Lead Counsel and achieved a $2 million benefit for the company, resulting in the re-pricing of executive stock options and the establishment of extensive corporate governance changes.

In **Pfeiffer v. Alpert (Beazer Homes Derivative Litigation)**, No. 10-cv-1063-PD (D. Del.), we successfully challenged certain aspects of the company's executive compensation structure, ultimately forcing the company to improve its compensation practices.

In **In re Cincinnati Bell, Inc., Derivative Litigation**, No. A1105305 (Ohio, Hamilton Cty. C.P.), we achieved significant corporate governance changes and enhancements related to the company's compensation policies and practices in order to better align executive compensation with company performance. Reforms included the formation of an entirely independent compensation committee with staggered terms and term limits for service.

In **Woodford v. Mizel** (M.D.C. Holdings, Inc.), No. 1:11-cv-879 (D. Del.), we challenged excessive executive compensation, ultimately obtaining millions of dollars in reductions of that compensation, as well as corporate governance enhancements designed to implement best practices with regard to executive compensation and increased shareholder input.



18

# Practice Areas

 ## Mergers & Acquisitions

Levi & Korsinsky has achieved an impressive record in obtaining injunctive relief for shareholders, and we are one of the premier law firms engaged in mergers & acquisitions and takeover litigation, consistently striving to maximize shareholder value. In these cases, we regularly fight to obtain settlements that enable the submission of competing buyout bid proposals, thereby increasing consideration for shareholders.

We have litigated landmark cases that have altered the landscape of mergers & acquisitions law and resulted in multi-million dollar awards to aggrieved shareholders.

In **In re Schuff International, Inc. Stockholders Litigation**, No. 10323-VCZ (Del. Ch.), we served as Co-Lead Counsel for the plaintiff class in achieving the largest recovery as a percentage of the underlying transaction consideration in Delaware Chancery Court merger class action history, obtaining an aggregate recovery of more than $22 million -- a gross increase from $31.50 to $67.45 in total consideration per share (a 114% increase) for tendering stockholders.

In **In re Bluegreen Corp. Shareholder Litigation**, No. 502011CA018111 (Cir. Ct. for Palm Beach Cty., FL), as Co-Lead Counsel, we achieved a common fund recovery of $36.5 million for minority shareholders in connection with a management-led buyout, increasing gross consideration to shareholders in connection with the transaction by 25% after three years of intense litigation.

In **In re CNX Gas Corp. Shareholder Litigation**, No. 5377-VCL (Del. Ch.), as Plaintiffs' Executive Committee Counsel, we obtained a landmark ruling from the Delaware Chancery Court that set forth a unified standard for assessing the rights of shareholders in the context of freeze-out transactions and ultimately led to a common fund recovery of over $42.7 million for the company's shareholders.

In **Chen v. Howard-Anderson**, No. 5878-VCL (Del. Ch.), we represented shareholders in challenging the merger between Occam Networks, Inc. and Calix, Inc., obtaining a preliminary injunction against the merger after showing that the proxy statement by which the shareholders were solicited to vote for the merger was materially false and misleading. Post-closing, we took the case to trial and recovered an additional $35 million for the shareholders.



# Practice Areas

## 🤝 Mergers & Acquisitions

In **In re Sauer-Danfoss Stockholder Litig.**, No. 8396 (Del. Ch.), as one of plaintiffs' co-lead counsel, we recovered a $10 million common fund settlement in connection with a controlling stockholder merger transaction.

In **In re Yongye International, Inc. Shareholders' Litigation**, No. A-12-670468-B (District Court, Clark County, Nevada), as one of plaintiffs' co-lead counsel, we recovered a $6 million common fund settlement in connection with a management-led buyout of minority stockholders in a China-based company incorporated under Nevada law.

In **In re Great Wolf Resorts, Inc. Shareholder Litigation**, No. 7328-VCN (Del. Ch.), we achieved tremendous results for shareholders, including partial responsibility for a $93 million (57%) increase in merger consideration and the waiver of several "don't-ask-don't-waive" standstill agreements that were restricting certain potential bidders from making a topping bid for the company.
In In re Talecris Biotherapeutics Holdings Shareholder Litigation, C.A. No. 5614-VCL (Del. Ch.), we served as counsel for one of the Lead Plaintiffs, achieving a settlement that increased the merger consideration to Talecris shareholders by an additional 500,000 shares of the acquiring company's stock and providing shareholders with appraisal rights.

In **In re Minerva Group LP v. Mod-Pac Corp.**, Index No. 800621/2013 (N.Y. Sup. Ct. Erie Cty.), we obtained a settlement in which defendants increased the price of an insider buyout from $8.40 to $9.25 per share, representing a recovery of $2.4 million for shareholders.

In **Stephen J. Dannis v. J.D. Nichols**, No. 13-CI-00452 (Ky. Cir. Ct. Jefferson Cty.), as Co-Lead Counsel, we obtained a 23% increase in the merger consideration (from $7.50 to $9.25 per unit) for shareholders of NTS Realty Holdings Limited Partnership. The total benefit of $7.4 million was achieved after two years of hard-fought litigation, challenging the fairness of the going-private, squeeze-out merger by NTS's controlling unitholder and Chairman, Defendant Jack Nichols. The unitholders bringing the action alleged that Nichols' proposed transaction grossly undervalued NTS's units. The 23% increase in consideration was a remarkable result given that on October 18, 2013, the Special Committee appointed by the Board of Directors had terminated the existing merger agreement with Nichols. Through counsel's tenacious efforts the transaction was resurrected and improved.



## Practice Areas

## ⛓ Mergers & Acquisitions

In **Dias v. Purches**, No. 7199-VCG (Del. Ch.), Vice Chancellor Sam Glasscock, III of the Delaware Chancery Court partially granted shareholders' motion for preliminary injunction and ordered that defendants correct a material misrepresentation in the proxy statement related to the acquisition of Parlux Fragrances, Inc. by Perfumania Holding, Inc.

In **In re Complete Genomics, Inc. Shareholder Litigation**, No. 7888-VCL (Del. Ch.), we obtained preliminary injunctions of corporate merger and acquisition transactions, and Plaintiffs successfully enjoined a "don't-ask-don't-waive" standstill agreement.

In **Forgo v. Health Grades, Inc.**, No. 5716-VCS (Del. Ch.), as Co-Lead Counsel, our attorneys established that defendants had likely breached their fiduciary duties to Health Grades' shareholders by failing to maximize value as required under Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc., No. 506 A.2d 173 (Del. 1986). We secured an agreement with defendants to take numerous steps to seek a superior offer for the company, including making key modifications to the merger agreement, creating an independent committee to evaluate potential offers, extending the tender offer period, and issuing a "Fort Howard" release affirmatively stating that the company would participate in good faith discussions with any party making a bona fide acquisition proposal.

In **In re Pamrapo Bancorp Shareholder Litigation**, Docket C-89-09 (N.J. Ch. Hudson Cty.) & HUD-L-3608-12 (N.J. Law Div. Hudson Cty.), we defeated defendants' motion to dismiss shareholders' class action claims for money damages arising from the sale of Pamrapo Bancorp to BCB Bancorp at an allegedly unfair price through an unfair process. We then survived a motion for summary judgment, ultimately securing a settlement recovering $1.95 million for the Class plus the Class's legal fees and expenses up to $1 million (representing an increase in consideration of 15-23% for the members of the Class).

In **In re Integrated Silicon Solution, Inc. Stockholder Litigation**, No. 115CV279142 (Super. Ct. Santa Clara, Cal.), we won an injunction requiring corrective disclosures concerning "don't-ask-don't-waive" standstill agreements and certain financial advisor conflicts of interests, and contributed to the integrity of a post-agreement bidding contest that led to an increase in consideration from $19.25 to $23 per share, a bump of almost 25 percent.

❝ **"I think you've done a superb job and I really appreciate the way this case was handled."**

Justice Timothy S. Driscoll in Grossman v. State Bancorp, Inc., Index No. 600469/2011 (N.Y. Sup. Ct. Nassau Cnty. Nov. 29, 2011)



21

# Practice Areas

 ## Consumer Litigation

Levi & Korsinsky works hard to protect consumers by holding corporations accountable for defective products, false and misleading advertising, unfair or deceptive business practices, antitrust violations, and privacy right violations.

Our litigation and class action expertise combined with our in-depth understanding of federal and state laws enable us to fight for consumers who have been aggrieved by deceptive and unfair business practices and who purchased defective products, including automobiles, appliances, electronic goods, and other consumer products. The Firm also represents consumers in cases involving data breaches and privacy right violations. The Firm's attorneys have received a number of leadership appointments in consumer class action cases, including multidistrict litigation ("MDL"). Recently, Law.com identified the Firm as one of the top firms with MDL leadership appointments in the article titled, "There Are New Faces Leading MDLs. And They Aren't All Men" (July 6, 2020). Representative settled and ongoing cases include:

In **NV Security, Inc. v. Fluke Networks**, No. CV05-4217 GW (SSx) (C.D. Cal. 2005), we negotiated a settlement on behalf of purchasers of Test Set telephones in an action alleging that the Test Sets contained a defective 3-volt battery. We benefited the consumer class by obtaining the following relief: free repair of the 3-volt battery, reimbursement for certain prior repair, an advisory concerning the 3-volt battery on the outside of packages of new Test Sets, an agreement that defendants would cease to market and/or sell certain Test Sets, and a 42-month warranty on the 3-volt battery contained in certain devices sold in the future.

In **Re: Apple Inc. Device Performance Litig.**, No. 5:18-md-02827-EJD (N.D. Cal.): Plaintiffs' Executive Committee Counsel in proposed nationwide class action alleging that Apple purposefully throttled iPhone; Apple has agreed to pay up to $310 million in cash (proposed settlement pending).



# Practice Areas

## Consumer Litigation

**In re: Intel Corp. CPU Marketing, Sales Practices and Products Liability Litig.**, No. 3:18-MD-02828 (D. Or.): Co-Lead Interim Class Counsel in proposed nationwide class action alleging that Intel manufactured and sold defective central processing units that allowed unauthorized access to consumer stored confidential information.

**In re: ZF-TRW Airbag Control Units Products Liability Litig.**, No. 2:19-ML-02905-JAK-FFM (C.D. Cal.): Plaintiffs' Steering Committee Counsel in proposed nationwide class action alleging that defendant auto manufacturers sold vehicles with defective airbags.

**In re: EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litig.**, No. 2:17-MD-02785 (D. Kan.): Plaintiffs' Executive Committee Counsel in action alleging that Mylan and Pfizer violated antitrust laws and committed other violations relating to the sale of EpiPens. Nationwide class and multistate classes certified.

**Sung, et al. v. Schurman Retail Group**, No. 3:17-cv-02760-LB (N.D. Cal.): Co-Lead Class Counsel in nationwide class action alleging unauthorized disclosure of employee financial information; obtained final approval of nationwide class action settlement providing credit monitoring and identity theft restoration services through 2022 and cash payments of up to $400.

**Scott, et al. v. JPMorgan Chase Bank, N.A.**, No. 1:17-cv-00249-APM (D.D.C.): Co-Lead Class Counsel in nationwide class action settlement of claims alleging improper fees deducted from payments awarded to jurors; 100% direct refund of improper fees collected.

**In re: Citrix Data Breach Litig.**, No. 19-cv-61350-RKA-PMH (S.D. Fla.): Interim Class Counsel in action alleging company failed to implement reasonable security measures to protect employee financial information; common fund settlement of $2.25 million pending.

**Bustos v. Vonage America, Inc.**, No. 2:06-cv-2308-HAA-ES (D.N.J.): Common fund settlement of $1.75 million on behalf of class members who purchased Vonage Fax Service in an action alleging that Vonage made false and misleading statements in the marketing, advertising, and sale of Vonage Fax Service by failing to inform consumers that the protocol defendant used for the Vonage Fax Service was unreliable and unsuitable for facsimile communications.

**Masterson v. Canon U.S.A.**, No. BC340740 (Cal. Super. Ct. L.A. Cty.): Settlement providing refunds to Canon SD camera purchasers for certain broken LCD repair charges and important changes to the product warranty.





# Our Attorneys

## Managing Partners

· **EDUARD KORSINSKY**
· **JOSEPH E. LEVI**

24

## Our Attorneys    Managing Partners

# EDUARD KORSINSKY
## Managing Partner



Eduard Korsinsky is the Managing Partner and Co-Founder of Levi & Korsinsky, LLP, a national securities firm that has recovered billions of dollars for investors since its formation in 2003. For more than 24 years Mr. Korsinsky has represented investors and institutional shareholders in complex securities matters. He has achieved significant recoveries for stockholders, including a $79 million recovery for investors of E-Trade Financial Corporation and a payment ladder indemnifying investors of Google, Inc. up to $8 billion in losses on a ground-breaking corporate governance case. His firm serves as lead counsel in some of the largest securities matters involving Tesla, US Steel, Kraft Heinz and others. He has been named a New York "Super Lawyer" by Thomson Reuters and is recognized as one of the country's leading practitioners in class action and derivative matters.

Mr. Korsinsky is also a co- founder of CORE Monitoring Systems LLC, a technology platform designed to assist institutional clients more effectively monitor their investment portfolios and maximize recoveries on securities litigation.

**Cases he has litigated include:**

· **E-Trade Financial Corp. Sec. Litig.,** No. 07-cv-8538 (S.D.N.Y. 2007), $79 million recovery
· **In re Activision, Inc. S'holder Derivative Litig.,** No. 06-cv-04771-MRP (JTLX)(C.D. Cal. 2006), recovered $24 million in excess compensation
· **Corinthian Colleges, Inc., S'holder Derivative Litig.,** No. SACV-06-0777-AHS (C.D. Cal. 2009), obtained repricing of executive stock options providing more than $2 million in benefits to the company

· **Pfeiffer v. Toll,** No. 4140-VCL (Del. Ch. 2010), $16.25 million in insider trading profits recovered
· **In re Net2Phone, Inc. S'holder Litig.,** No. 1467-N (Del. Ch. 2005), obtained increase in tender offer price from $1.70 per share to $2.05 per share
· **In re Pamrapo Bancorp S'holder Litig.,** No. C-89-09 (N.J. Ch. Hudson Cty. 2011) & No. HUD-L-3608-12 (N.J. Law Div. Hudson Cty. 2015), obtained supplemental disclosures following the filing of a motion for preliminary injunction, pursued case post-closing, secured key rulings on issues of first impression in New Jersey and defeated motion for summary judgment



Case 1:22-cv-02283-PK    Document 61-2    Filed 01/23/24    Page 32 of 113 PageID #: 1175

# EDUARD KORSINSKY
## Managing Partner

**Cases he has litigated include:**

· **In re Google Inc. Class C S'holder Litig.,** No. 19786 (Del. Ch. 2012), obtained payment ladder indemnifying investors up to $8 billion in losses stemming from trading discounts expected to affect the new stock

· **Woodford v. M.D.C. Holdings,** Inc., No. 1:2011cv00879 (D. Del. 2012), one of a few successful challenges to say on pay voting, recovered millions of dollars in reductions to compensation

· **Pfeiffer v. Alpert (Beazer Homes),** No. 10-cv-1063-PD (D. Del. 2011), obtained substantial revisions to an unlawful executive compensation structure

· **In re NCS Healthcare, Inc. Sec. Litig.,** No. CA 19786, (Del. Ch. 2002), case settled for approximately $100 million

· **Paraschos v. YBM Magnex Int'l, Inc.,** No. 98-CV-6444 (E.D. Pa.), United States and Canadian cases settled for $85 million Canadian

## PUBLICATIONS

· "Board Diversity: The Time for Change is Now, Will Shareholders Step Up?," *National Council on Teacher Retirement. FYI Newsletter* May 2021

· "The Dangers of Relying on Custodians to Collect Class Action Settlements.", *The Texas Association of Public Employee Retirement Systems (TEXPERS) Investment Insights* April-May Edition (2021)

· "The Dangers of Relying on Custodians to Collect Class Action Settlements.", *Michigan Association of Public Employee Retirement Systems* (MAPERS) Newsletter (2021)

· "The Dangers of Relying on Custodians to Collect Class Action Settlements.", *Florida Public Pension Trustees Association* (FPPTA) (2021)

· "NY Securities Rulings Don't Constitute Cyan Backlash", *Law360* (March 8, 2021)

· "Best Practices for Monitoring Your Securities Portfolio in 2021.", *Building Trades News Newsletter* (2020-2021)

· "Best Practices for Monitoring Your Securities Portfolio in 2021.", *The Texas Association of Public Employee Retirement Systems (TEXPERS) Monitor* (2021)

· "Best Practices for Monitoring Your Securities Portfolio in 2021.", *Michigan Association of Public Employee Retirement Systems (MAPERS) Newsletter* (2021)

· "Best Practices for Monitoring Your Securities Portfolio in 2021.", *Florida Public Pension Trustees Association (FPPTA)* (2021)

· Delaware Court Dismisses Compensation Case Against Goldman Sachs, ABA Section of Securities Litigation News & Developments (Nov. 7, 2011)

· SDNY Questions SEC Settlement Practices in Citigroup Settlement, ABA Section of Securities Litigation News & Developments (Nov. 7, 2011)

· New York Court Dismisses Shareholder Suit Against Goldman Sachs, ABA Section of Securities Litigation News & Developments (Oct. 31, 2011)



Case 1:22-cv-02283-PK    Document 61-2    Filed 01/23/24    Page 33 of 113 PageID #: 1176

# EDUARD KORSINSKY
## Managing Partner

### EDUCATION

· New York University School of Law, LL.M. Master of Law(s) Taxation (1997)
· Brooklyn Law School, J.D. (1995)
· Brooklyn College, B.S., Accounting, *summa cum laude* (1992)

### AWARDS









### ADMISSIONS

· New York (1996)
· New Jersey (1996)
· United States District Court for the Southern District of New York (1998)
· United States District Court for the Eastern District of New York (1998)
· United States Court of Appeals for the Second Circuit (2006)
· United States Court of Appeals for the Third Circuit (2010)
· United States District Court for the Northern District of New York (2011)
· United States District Court of New Jersey (2012)
· United States Court of Appeals for the Sixth Circuit (2013)



**Our Attorneys**   **Managing Partners**

# JOSEPH E. LEVI
## Managing Partner



Joseph E. Levi is a central figure in shaping and managing the Firm's securities litigation practice. Mr. Levi has been lead or co-lead in dozens of cases involving the enforcement of shareholder rights in the context of mergers & acquisitions and securities fraud. In addition to his involvement in class action litigation, he has represented numerous patent holders in enforcing their patent rights in areas including computer hardware, software, communications, and information processing, and has been instrumental in obtaining substantial awards and settlements.

Mr. Levi and the Firm achieved success on behalf of the former shareholders of Occam Networks in litigation challenging the Company's merger with Calix, Inc., obtaining a preliminary injunction against the merger due to material representations and omissions in the proxy solicitation. **Chen v. Howard-Anderson**, No. 5878-VCL (Del. Ch.). Vigorous litigation efforts continued to trial, resulting in a $35 million recovery for shareholders.

Mr. Levi and the Firm served as lead counsel in **Weigard v. Hicks,** No. 5732-VCS (Del. Ch.), which challenged the acquisition of Health Grades by affiliates of Vestar Capital Partners. Mr. Levi successfully demonstrated to the Court of Chancery that the defendants had likely breached their fiduciary duties to Health Grades' shareholders by failing to maximize shareholder value. This ruling was used to reach a favorable settlement where defendants agreed to a host of measures designed to increase the likelihood of superior bid. Vice Chancellor Strine "applaud[ed]" the litigation team for their preparation and the extraordinary high-quality of the briefing.

 **"[The court] appreciated very much the quality of the argument..., the obvious preparation that went into it, and the ability of counsel..."**

Vice Chancellor Sam Glasscock, III In Dias V. Purches, No. 7199-VCG (Del. Ch. Apr. 5, 2012)



**Our Attorneys** | **Managing Partners**

# JOSEPH E. LEVI
## Managing Partner

**EDUCATION**

· Brooklyn Law School, J.D., *magna cum laude* (1995)
· Polytechnic University, B.S., Electrical Engineering, *summa cum laude* (1984); M.S. Systems Engineering (1986)

**AWARDS**

  



**ADMISSIONS**

· New York (1996)
· New Jersey (1996)
· United States Patent and Trademark Office (1997)
· United States District Court for the Southern District of New York (1997)
· United States District Court for the Eastern District of New York (1997)



29



# Our Attorneys

## Partners

- ADAM M. APTON
- DONALD J. ENRIGHT
- SHANNON L. HOPKINS
- GREGORY M. NESPOLE
- GREGORY M. POTREPKA
- NICHOLAS I. PORRITT
- MARK S. REICH
- DANIEL TEPPER
- ELIZABETH K. TRIPODI

# ADAM M. APTON
## Partner



Adam M. Apton focuses his practice on investor protection. He represents institutional investors and high net worth individuals in securities fraud, corporate governance, and shareholder rights litigation. Prior to joining the firm, Mr. Apton defended corporate clients against complex mass tort, commercial, and products liability lawsuits. Thomson Reuters has selected Mr. Apton to the Super Lawyers "Rising Stars" list every year since 2016, a distinction given to only the top 2.5% of lawyers. He has also been awarded membership to the prestigious Lawyers of Distinction for his excellence in the practice of law and named to the "Lawdragon 500 X" list out of thousands of candidates in recognition of his place at the forefront of the legal profession.

Mr. Apton's past representations and successes include:

· **In re Tesla, Inc. Securities Litigation**, No. 3:18-cv-04865-EMC (N.D. Cal.) (trial counsel in class action representing Tesla investors who were harmed by Elon Musk's "funding secured" tweet from August 7, 2018)

· **In re Navient Corp. Securities Litigation**, No. 17-8373 (RBK/AMD) (D.N.J.) (lead counsel in class action against leading provider of student loans for alleged false and misleading statements about compliance with consumer protection laws)

· **In re Prothena Corporation Plc Securities Litigation**, No. 1:18-cv-06425-ALC (S.D.N.Y.) ($15.75 million settlement fund against international drug company for false statements about development of lead biopharmaceutical product)

· **Martin v. Altisource Residential Corporation**, et al., No. 15-00024 (AET) (GWC) (D.V.I.) ($15. 5 million settlement fund against residential mortgage company for false statements about compliance with consumer regulations and corporate governance protocols)

· **Levin v. Resource Capital Corp., et al.**, No. 1:15-cv-07081-LLS (S.D.N.Y.) ($9.5 million settlement in class action over fraudulent statements about toxic mezzanine loan assets)



Our Attorneys    Partners

# ADAM M. APTON
## Partner

• **Rux v. Meyer (Sirius XM Holdings Inc.)**, No. 11577 (Del. Ch.) (recovery of $8.25 million against SiriusXM's Board of Directors for engaging in harmful related-party transactions with controlling stockholder, John. C. Malone and Liberty Media Corp.)

### PUBLICATIONS

• "Pleading Section 11 Liability for Secondary Offerings" *American Bar Association: Practice Points* (Jan. 4, 2017)
• "Second Circuit Rules in Indiana Public Retirement System v. SAIC, Inc." *American Bar Association: Practice Points* (Apr. 4, 2016)
• "Second Circuit Applies Omnicare to Statements of Opinion in Sanofi" *American Bar Association: Practice Points* (Mar. 30, 2016)
• "Second Circuit Rules in Action AG v. China North" American Bar Association: Practice Points (Sept. 14, 2015)

### EDUCATION

• New York Law School, J.D., *cum laude* (2009), where he served as Articles Editor of the New York Law School Law Review and interned for the New York State Supreme Court, Commercial Division
• University of Minnesota, B.A., Entrepreneurial Management & Psychology, With Distinction (2006)

### AWARDS




### ADMISSIONS

• New York (2010)
• United States District Court for the Southern District of New York (2010)
• United States District Court for the Eastern District of New York (2010)
• United States Court of Appeals for the Ninth Circuit (2015)
• United States Court of Appeals for the Second Circuit (2016)
• United States Court of Appeals for the Third Circuit (2016)
• California (2017)
• United States District Court for the Northern District of California (2017)
• United States District Court for the Central District of California (2017)
• United States District Court for the Southern District of California (2017)
• New Jersey (2020)
• United States District Court for the District of New Jersey (2020)



# DONALD J. ENRIGHT
## Partner



During his 26 years as a litigator and trial lawyer, Mr. Enright has handled matters in the fields of securities, commodities, consumer fraud and commercial litigation, with a particular emphasis on shareholder M&A and securities fraud class action litigation. He has been named as one of the leading financial litigators in the nation by Lawdragon, as a Washington, DC "Super Lawyer" by Thomson Reuters, and as one of the city's "Top Lawyers" by Washingtonian magazine.

Mr. Enright has shown a track record of achieving victories in federal trials and appeals, including:

- **Nathenson v. Zonagen**, Inc., No. 267 F. 3d 400, 413 (5th Cir. 2001)
- **SEC v. Butler**, No. 2005 U.S. Dist. LEXIS 7194 (W.D. Pa. April 18, 2005)
- **Belizan v. Hershon**, No. 434 F. 3d 579 (D.C. Cir. 2006)
- **Rensel v. Centra Tech, Inc.**, No. 2021 WL 2659784 (11th Cir. June 29, 2021)

Most recently, in **In re Schuff International, Inc. Stockholders Litigation**, No. 10323-VCZ, Mr. Enright served as Co-Lead Counsel for the plaintiff class in achieving the largest recovery as a percentage of the underlying transaction consideration in Delaware Chancery Court merger class action history, obtaining an aggregate recovery of more than $22 million -- a gross increase from $31.50 to $67.45 in total consideration per share (a 114% increase) for tendering stockholders.

Similarly, as Co-Lead Counsel in **In re Bluegreen Corp. Shareholder Litigation**, No. 502011CA018111 (Cir. Ct. for Palm Beach Cnty., Fla.), Mr. Enright achieved a $36.5 million common fund settlement in the wake of a majority shareholder buyout, representing a 25% increase in total consideration to the minority stockholders.



# DONALD J. ENRIGHT
## Partner

Also, in **In re CNX Gas Corp. Shareholders Litigation**, No. 53377-VCL (Del. Ch. 2010), in which Levi & Korsinsky served upon plaintiffs' Executive Committee, Mr. Enright helped obtain the recovery of a common fund of over $42.7 million for stockholders.

Mr. Enright has also played a leadership role in numerous securities and shareholder class actions from inception to conclusion. Most recently, he has served as lead counsel in several cryptocurrency-related securities class actions. His leadership has produced multi-million-dollar recoveries in shareholder class actions involving such companies as:

- Allied Irish Banks PLC
- Iridium World Communications, Ltd.
- En Pointe Technologies, Inc.
- PriceSmart, Inc.
- Polk Audio, Inc.
- Meade Instruments Corp.
- Xicor, Inc.
- Streamlogic Corp.
- Interbank Funding Corp.
- Riggs National Corp.
- UTStarcom, Inc.
- Manugistics Group, Inc.

Mr. Enright also has a successful track record of obtaining injunctive relief in connection with shareholder M&A litigation, having won preliminary injunctions or other injunctive relief in the cases of:

- **In re Portec Rail Products, Inc. S'holder Litig.**, No. G.D. 10-3547 (Ct. Com. Pleas Pa. 2010)
- **In re Craftmade International, Inc. S'holder Litig.**, No. 6950-VCL (Del. Ch. 2011)
- **Dias v. Purches**, No. 7199-VCG (Del. Ch. 2012)
- **In re Complete Genomics, Inc. S'holder Litig.**, No. 7888-VCL (Del. Ch. 2012)
- **In re Integrated Silicon Solution, Inc. Stockholder Litig.**, No. 115CV279142 (Sup. Ct. Santa Clara, CA 2015)



**Our Attorneys**   **Partners**

# DONALD J. ENRIGHT
## Partner

Mr. Enright has also demonstrated considerable success in obtaining deal price increases for shareholders in M&A litigation. As Co-Lead Counsel in the matter of **In re Great Wolf Resorts, Inc. Shareholder Litigation**, No. 7328-VCN (Del. Ch. 2012), Mr. Enright was partially responsible for a $93 million (57%) increase in merger consideration and waiver of several "don't-ask-don't-waive" standstill agreements that were precluding certain potential bidders from making a topping bid for the company.

Similarly, Mr. Enright served as Co-Lead Counsel in the case of **Berger v. Life Sciences Research, Inc.**, No. SOM-C-12006-09 (NJ Sup. Ct. 2009), which caused a significant increase in the transaction price from $7.50 to $8.50 per share, representing additional consideration for shareholders of approximately $11.5 million.

Mr. Enright also served as Co-Lead Counsel in **Minerva Group, LP v. Keane**, Index No. 800621/2013 (NY Sup. Ct. of Erie Cnty.) and obtained a settlement in which Defendants increased the price of an insider buyout from $8.40 to $9.25 per share.

The courts have consistently recognized and praised the quality of Mr. Enright's work. In **In re Interbank Funding Corp. Securities Litigation** (D.D.C. 02-1490), Judge Bates of the United States District Court for the District of Columbia observed that Mr. Enright had "...skillfully, efficiently, and zealously represented the class, and... worked relentlessly throughout the course of the case."

Similarly, in **Freeland v. Iridium World Communications**, LTD, (D.D.C. 99-1002), Judge Nanette Laughrey stated that Mr. Enright had done "an outstanding job" in connection with the recovery of $43.1 million for the shareholder class.

And, in the matter of **Osieczanek v. Thomas Properties Group**, No. 9029-VCG (Del. Ch. 2013), Vice Chancellor Sam Glasscock of the Chancery Court of Delaware observed that "it's always a pleasure to have counsel [like Mr. Enright] who are articulate and exuberant in presenting their position," and that Mr. Enright's prosecution of a merger case was "wholesome" and served as "a model of . . . plaintiffs' litigation in the merger arena."


Levi & Korsinsky

35

Case 1:22-cv-02283-PK    Document 61-2    Filed 01/23/24    Page 42 of 113 PageID #: 1185

# DONALD J. ENRIGHT
## Partner

### PUBLICATIONS

• "SEC Enforcement Actions and Investigations in Private and Public Offerings," Securities: Public and Private Offerings, Second Edition, West Publishing 2007
• "Dura Pharmaceuticals: Loss Causation Redefined or Merely Clarified?" J. Tax'n & Reg. Fin. Inst. September/October 2007, Page 5

### EDUCATION

• George Washington University School of Law, J.D. (1996), where he was a Member Editor of The George Washington University Journal of International Law and Economics from 1994 to 1996
• Drew University, B.A., Political Science and Economics, *cum laude* (1993)

### AWARDS

### ADMISSIONS

• Maryland (1996)
• New Jersey (1996)
• United States District Court for the District of Maryland (1997)
• United States District Court for the District of New Jersey (1997)
• District of Columbia (1999)
• United States Court of Appeals for the Fourth Circuit (1999)
• United States Court of Appeals for the Fifth Circuit (1999)
• United States District Court for the District of Columbia (1999)
• United States Court of Appeals for the District of Columbia (2004)
• United States Court of Appeals for the Second Circuit (2005)
• United States Court of Appeals for the Third Circuit (2006)
• United States District Court for the District of Colorado (2017)








## Our Attorneys — Partners

# SHANNON L. HOPKINS
## Partner



Shannon L. Hopkins manages the Firm's Connecticut office. She was selected in 2013 as a New York "Super Lawyer" by Thomson Reuters. For more than two decades Ms. Hopkins has been prosecuting a wide range of complex class action matters in securities fraud, mergers and acquisitions, and consumer fraud litigation on behalf of individuals and large institutional clients. Ms. Hopkins has played a lead role in numerous shareholder securities fraud and merger and acquisition matters and has been involved in recovering multimillion-dollar settlements on behalf of shareholders, including:

- **E-Trade Financial Corp. S'holder Litig.**, No. 07-cv-8538 (S.D.N.Y. 2007), $79 million recovery for the shareholder class
- **In re U.S. Steel Consolidated Cases**, No. 17-559-CB (W.D. Pa.), $40 million recovery for shareholder class
- **In re Nutanix, Inc. Securities Litigation**, No. 3:19-cv-01651-WHO (the "Stock Case"), $71 million for shareholder class
- **Rougier v. Applied Optoelectronics, Inc.**, No. 17-cv-2399 (S.D. Tex.), $15.5 million recovery for shareholder class
- **In Re Helios and Matheson Analytics, Inc. Sec. Litig.**, No. 18-cv-6965-JGK (S.D.N.Y.), $8.25 Million shareholder recovery
- **In re Restoration Robotics, Inc. Sec. Litig.**, No. 18-cv-03712-EJD (N.D. Cal.), $4.175 million shareholder recovery
- **In Stein v. U.S. Xpress Enterprises, Inc.**, et al., No. 1:19-cv-98-TRM-CHS (E.D. Tenn.), $4.3 million shareholder recovery
- **Kirkland, et al. v. WideOpenWest, Inc.**, et al., Index No. 653248/2018, $7.025 million recovery for shareholder class



## Our Attorneys / Partners

# SHANNON L. HOPKINS
## Partner

> "Plaintiffs' selected Class Counsel, the law firm of Levi & Korsinsky, LLP, has demonstrated the zeal and competence required to adequately represent the interests of the Class. The attorneys at Levi & Korsinsky have experience in securities and class actions issues and have been appointed lead counsel in a significant number of securities class actions across the country."

The Honorable Christina Bryan In Rougier V. Applied Optoelectronics, Inc., No. 4:17-CV-02399 (S.D. Tex. Nov. 13, 2019)

In addition to her legal practice, Ms. Hopkins is a Certified Public Accountant (1998 Massachusetts). Prior to becoming an attorney, Ms. Hopkins was a senior auditor with PricewaterhouseCoopers LLP, where she led audit engagements for large publicly held companies in a variety of industries.

> In appointing the Firm Lead Counsel, the Honorable Gary Allen Feess noted our "significant prior experience in securities litigation and complex class actions."

Zaghian V. THQ, Inc., No. 2:12-Cv-05227-GAF-JEM (C.D. Cal. Sept. 14, 2012)



38

Case 1:22-cv-02283-PK    Document 61-2    Filed 01/23/24    Page 45 of 113 PageID #: 1188

# SHANNON L. HOPKINS
## Partner

### PUBLICATIONS

• "Cybercrime Convention: A Positive Beginning to a Long Road Ahead," 2 J. High Tech. L. 101 (2003)

### EDUCATION

• Suffolk University Law School, J.D., *magna cum laude* (2003), where she served on the Journal for High Technology and as Vice Magister of the Phi Delta Phi International Honors Fraternity
• Bryant University, B.S.B.A., Accounting and Finance, *cum laude* (1995), where she was elected to the Beta Gamma Sigma Honor Society

### AWARDS




### ADMISSIONS

• Massachusetts (2003)
• United States District Court for the District of Massachusetts (2004)
• New York (2004)
• United States District Court for the Southern District of New York (2004)
• United States District Court for the Eastern District of New York (2004)
• United States District Court for the District of Colorado (2004)
• United States Court of Appeals for the First Circuit (2008)
• United States Court of Appeals for the Third Circuit (2010)
• Connecticut (2013)
• United States Court of Appeals for the Ninth Circuit (2023)



## Our Attorneys  Partners

# GREGORY M. NESPOLE
## Partner



Gregory Mark Nespole is a Partner of the Firm, having been previously a member of the management committee of one of the oldest firms in New York, as well as chair of that firm's investor protection practice. He specializes in complex class actions, derivative actions, and transactional litigation representing institutional investors such as public and labor pension funds, labor health and welfare benefit funds, and private institutions. Prior to practicing law, Mr. Nespole was a strategist on an arbitrage desk and an associate in a major international investment bank where he worked on structuring private placements and conducting transactional due diligence.

For over twenty years, Mr. Nespole has played a lead role in numerous shareholder securities fraud and merger and acquisition matters and has been involved in recovering multi-million-dollar settlements on behalf of shareholders, including:

- Served as co-chair of a Madoff Related Litigation Task Force that recovered over several hundred million dollars for wronged investors;
- Obtained a $90 million award on behalf of a publicly listed company against a global bank arising out of fraudulently marketed auction rated securities;
- Successfully obtained multi-million-dollar securities litigation recoveries and/or corporate governance reforms from Cablevision, JP Morgan, American Pharmaceutical Partners, Sepracor, and MBIA, among many others.

Mr. Nespole is a member of The Federalist Society, the Federal Bar Council, and the FBC's Securities Litigation Committee. Mr. Nespole's peers have elected him a "Super Lawyer" in the class action field annually since 2009. He is active in his community as a youth sports coach.



**Our Attorneys**    Partners

# GREGORY M. NESPOLE
## Partner

**EDUCATION**

· Brooklyn Law School, J.D. (1993)
· Bates College, B.A. (1989)

**AWARDS**

  

**ADMISSIONS**

· New York (1994)
· United States District Court for the Southern District of New York (1994)
· United States District Court for the Eastern District of New York (1994)
· United States Court of Appeals for the Second Circuit (1994)
· United States Court of Appeals for the Fourth Circuit (1994)
· United States Court of Appeals for the Fifth Circuit (1994)
· United States District Court for the Northern District of New York (2018)
· United States Court of Appeals for the Eighth Circuit (2019)
· United States Court of Appeals for the Third Circuit (2020)



# GREGORY M. POTREPKA
## Partner



Gregory M. Potrepka is a partner of the Firm in its Connecticut office. Mr. Potrepka's practice specializes in vindicating investor rights, including the interests of shareholders of publicly traded companies. Specifically, Mr. Potrepka has considerable experience prosecuting complex class actions, securities fraud matters, and similar commercial litigation. Mr. Potrepka's role in the Firm's securities litigation practice has significantly contributed to many of the Firm's successes, including the following representative matters:

· **In re Nutanix, Inc. Sec. Litig.,** No. 3:19-01651-WHO (N.D. Cal.); Norton v. Nutanix, Inc., 3:21-cv-04080-WHO (N.D. Cal.) ($71 million recovery)
· **In re U.S. Steel Consolidated Cases**, No. 17-579 (W.D. Pa.) ($40 million recovery)
· **Rougier v. Applied Optoelectronics, Inc.,** No. 4:17-cv-2399 (S.D. Tex.) ($15.5 million recovery)
· **In re Helios and Matheson Analytics, Inc. Securities Litigation**, No. 1:18-cv-06965 (S.D.N.Y.) ($8.25 million recovery)
· **In re Aqua Metals Securities Litigation**, No. 17-cv-07142-HSG (N.D. Cal.) ($7 million recovery)

## ADMISSIONS

· Connecticut (2015)
· Mashantucket Pequot Tribal Court (2015)
· United States District Court for the District of Connecticut (2016)
· United States District Court for the Southern District of New York (2018)
· United States District Court for the Eastern District of New York (2018)
· United States Court of Appeals for the Third Circuit (2020)
· New York (2023)
· United States District of Colorado (2023)

## EDUCATION

· University of Connecticut School of Law, J.D. (2015)
· University of Connecticut Department of Public Policy, M.P.A. (2015)
· University of Connecticut, B.A., Political Science (2010)

## AWARD





42

## Our Attorneys | Partners

# NICHOLAS I. PORRITT
## Partner



Nicholas Porritt prosecutes securities class actions, shareholder class actions, derivative actions, and mergers and acquisitions litigation. He has extensive experience representing plaintiffs and defendants in a wide variety of complex commercial litigation, including civil fraud, breach of contract, and professional malpractice, as well as defending SEC investigations and enforcement actions. Mr. Porritt has helped recover hundreds of millions of dollars on behalf of shareholders. He was one of the Lead Counsel in **In re Google Inc. Class C Shareholder Litigation**, No. 7469-CS (Del. Ch.), which resulted in a payment of $522 million to shareholders and overall benefit of over $3 billion to Google's minority shareholders. He was one of the lead counsel in **Chen v. Howard-Anderson**, No. 5878-VCL (Del. Ch.) that settled during trial resulting in a $35 million payment to the former shareholders of Occam Networks, Inc., one of the largest quasi-appraisal recoveries for shareholders. Amongst other cases, he is currently lead counsel in In re Tesla, Inc. Securities Litigation, No. 3:18-cv-04865-EMC (N.D. Cal.), representing Tesla investors who were harmed by Elon Musk's "funding secured" tweet from August 7, 2018 as well as lead counsel in Ford v. TD Ameritrade Holding Corp., No. 14-cv-396 (D. Neb.), representing TD Ameritrade customers harmed by its improper routing of their orders. Both cases involve over $1 billion in estimated damages.

**Some of Mr. Porritt's recent cases include:**

- **In re Tesla, Inc. Sec. Litig.,** No. 2020 WL 1873441 (N.D. Cal.2020)
- **In Re Aphria, Inc. Securities Litigation,** No. 2020 WL 5819548 (S.D.N.Y. 2020)
- **Voulgaris, v. Array Biopharma Inc.,** No. 17CV02789KLMCONSOLID, 2020 WL 8367829 (D. Colo.2020)
- **In Re Aphria, Inc. Securities Litigation,** No. 18 CIV. 11376 (GBD), 2020 WL 5819548 (S.D.N.Y. 2020)

- **In re Clovis Oncology, Inc. Deriv. Litig.,** No. 2019 WL 4850188 (Del. Ch. 2019)
- **Martin v. Altisource Residential Corp.,** No. 2019 WL 2762923 (D.V.I. 2019)
- **In re Navient Corp. Sec. Litig.,** No. 2019 WL 7288881 (D.N.J.2019)
- **In re Bridgestone Inv. Corp.,** No. 789 Fed. App'x 13 (9th Cir. 2019)
- **Klein v. TD Ameritrade Holding Corp.,** No. 327 F.R.D. 283 (D. Neb. 2018)



43

**Our Attorneys** | **Partners**

# NICHOLAS I. PORRITT
## Partner

**Some of Mr. Porritt's recent cases include:**

- **Beezley v. Fenix Parts, Inc.,** No. 2018 WL 3454490 (N.D. Ill. 2018)
- **In re PTC Therapeutics Sec. Litig.,** No. 2017 WL 3705801 (D.N.J. 2017)
- **Zaghian v. Farrell,** No. 675 Fed. Appx. 718, (9th Cir. 2017)
- **SEC v. Cuban,** No. 620 F.3d 551 (5th Cir. 2010)
- **Cozzarelli v. Inspire Pharmaceuticals, Inc.,** No. 549 F.3d 618 (4th Cir. 2008)
- **Teachers' Retirement System of Louisiana v. Hunter,** No. 477 F.3d 162 (4th Cir. 2007)
- **In re PTC Therapeutics Sec. Litig.,** No. 2017 WL 3705801 (D.N.J. Aug. 28, 2017)

- **Gormley magicJack VocalTec Ltd.,** No. 220 F. Supp. 3d 510 (S.D.N.Y. 2016)
- **Carlton v. Cannon,** No. 184 F. Supp. 3d 428 (S.D. Tex. 2016)
- **Zola v. TD Ameritrade, Inc.,** No. 172 F. Supp. 3d 1055 (D. Neb. 2016)
- **In re Energy Recovery Sec. Litig.,** No. 2016 WL 324150 (N.D. Cal. Jan. 27, 2016)
- **In re EZCorp Inc. Consulting Agreement Deriv. Litig.,** No. 2016 WL 301245 (Del. Ch. Jan. 25, 2016)
- **In re Violin Memory Sec. Litig.,** No. 2014 WL 5525946 (N.D. Cal. Oct. 31, 2014)
- **Garnitschnig v. Horovitz,** No. 48 F. Supp. 3d 820 (D. Md. 2014)

## PUBLICATIONS

- "Current Trends in Securities Litigation: How Companies and Counsel Should Respond," *Inside the Minds. Recent Developments in Securities Law* (Aspatore Press 2010)

## EDUCATION

- University of Chicago Law School, J.D., With Honors (1996)
- University of Chicago Law School, LL.M. (1993)
- Victoria University of Wellington, LL.B. (Hons.), With First Class Honors, Senior Scholarship (1990)

## ADMISSIONS

- New York (1997)
- District of Columbia (1998)
- United States District Court for the District of Columbia (1999) · United States District Court for the Southern District of New York (2004)
- United States Court of Appeals for the Fourth Circuit (2004)
- United States Court of Appeals for the District of Columbia Circuit (2006)
- United States Supreme Court (2006)
- United States District Court for the District of Maryland (2007) · United States District Court for the Eastern District of New York (2012)
- United States Court of Appeals for the Second Circuit (2014)
- United States Court of Appeals for the Ninth Circuit (2015)
- United States District Court for the District of Colorado (2015) · United States Court of Appeals for the Tenth Circuit (2016)
- United States Court of Appeals for the Eleventh Circuit (2017) · United States Court of Appeals for the Eighth Circuit (2019)
- United States Court of Appeals for the Third Circuit (2019)

## AWARDS







## Our Attorneys    Partners

# MARK S. REICH
## Partner



Mark Samuel Reich is a Partner of the Firm. Mark's practice focuses on consumer class actions, including cases involving privacy and data breach issues, deceptive and unfair trade practices, advertising injury, product defect, and antitrust violations. Mark, who has experience and success outside the consumer arena, also supports the Firm's securities and derivative practices.

Mark is attentive to clients' interests and fosters their activism on behalf of class members. Clients he has worked with consistently and enthusiastically endorse Mark's work:

> **Mark attentively guided me through each stage of the litigation, prepared me for my deposition, and ensured that I and other wronged consumers were compensated and that purchasers in the future could not be duped by the appliance manufacturer's misleading marketing tactics."**

Katherine Danielkiewicz, Michigan

> **After my experience working with Mark and his colleague, any hesitancy I may have had in the past about leading or participating in a class action has gone away. Mark expertly countered every roadblock that the corporate defendant tried using to dismiss our case and we ultimately reached a resolution that exceeded my expectations"**

Barry Garfinkle, Pennsylvania



45

# Our Attorneys    Partners

# MARK S. REICH
## Partner

Before joining Levi & Korsinsky, Mark practiced at the largest class action firm in the country for more than 15 years, including 8 years as a Partner. Prior to becoming a consumer and shareholder advocate, Mark practiced commercial litigation with an international law firm based in New York, where he defended litigations on behalf of a variety of corporate clients.

Mark has represented investors in securities litigation, devoted to protecting the rights of institutional and individual investors who were harmed by corporate misconduct. His case work involved **State Street Yield Plus Fund Litig.** ($6.25 million recovery); **In re Doral Fin. Corp. Sec. Litig., SDNY** ($129 million recovery); **Lockheed Martin Corp. Sec. Litig.** ($19.5 million recovery); **Tile Shop Holdings, Inc.** ($9.5 million settlement); **Curran v. Freshpet Inc.** ($10.1 million settlement); **In re Jakks Pacific, Inc.** ($3,925,000 settlement); **Fidelity Ultra Short Bond Fund Litig.** ($7.5 million recovery); and **Cha v. Kinross Gold Corp.** ($33 million settlement).

> **Never having been involved in a class action, I was uninformed and apprehensive. Mark and his colleagues not only explained the complexities, but maintained extensive ongoing, communications, involved us fully in all phases of the process; provided appropriate professional counsel and guidance to each participant, and achieved results that satisfied the original goals of the litigation"**
>
> Fred Sharp, New York

> **It was a pleasure being represented by Mark. Above all he was patient throughout the tedious process of litigation. He is a good listener and a good communicator, which enhanced my participation and understanding of the process. He also provided excellent follow up throughout, making the process feel more like a team effort."**
>
> Louise Miljenovic, New Jersey



## Our Attorneys | Partners

# MARK S. REICH
## Partner

At his prior firm, Mark achieved notable success challenging unfair mergers and acquisitions in courts throughout the country. Among the M&A litigation that Mark handled or participated in, his notable cases include: **In re Aramark Corp. S'holders Litig.,** where he attained a $222 million increase in consideration paid to shareholders of Aramark and a substantial reduction to management's voting power – from 37% to 3.5% – in connection with the approval of the going-private transaction; **In re Delphi Fin. Grp. S'holders Litig.,** resulting in a $49 million post-merger settlement for Class A Delphi shareholders; **In re TD Banknorth S'holders Litig.,** where Mark played a significant role in raising the inadequacy of the $3 million initial settlement, which the court rejected as wholly inadequate, and later resulted in a vastly increased $50 million recovery. Mark has also been part of ERISA litigation teams that led to meaningful results, including **In re Gen. Elec. Co. ERISA Litig.,** which resulting in structural changes to company's 401(k) plan valued at over $100 million, benefiting current and future plan participants.

> **We contacted Mark about our concerns about our oven's failure to perform as advertised. He worked with us to formulate a strategy that ultimately led to a settlement that achieved our and others' goals and specific needs."**

Candace Oliarny, Idaho

> **My wife and I never having been involved with a law firm or Class Action had no idea what to expect. Within the first few phone meetings with Mark, we became assured as Mark explained in detail how the process worked, Mark is a great communicator. Mr. Reich is a true professional, his integrity through the years he worked with us was impeccable. Working with Mark was a truly positive experience, and have no reservations if we ever had to call on his services again."**

Louise Miljenovic, New Jersey


Levi & Korsinsky

Case 1:22-cv-02283-PK    Document 61-2    Filed 01/23/24    Page 54 of 113 PageID #: 1197

# MARK S. REICH
## Partner

Before joining the Firm, Mark graduated with a Bachelor of Arts degree from Queens College in New York. He earned his Juris Doctor degree from Brooklyn Law School, where he served on the Moot Court Honor Society and The Journal of Law and Policy.

Mark regularly practices in federal and state courts throughout the country and is a member of the bar in New York. He has been recognized for his legal work by being named a New York Metro Super Lawyer by Super Lawyers Magazine every year since 2013. Mark is active in his local community and has been distinguished for his neighborhood support with a Certificate of Recognition by the Town of Hempstead.

**EDUCATION**

- Brooklyn Law School, J.D. (2000)
- Queens College, B.A., Psychology and Journalism (1997)

**AWARDS**

  

**ADMISSIONS**

- New York (2001)
- United States District Court for the Southern District of New York (2001)
- United States District Court for the Eastern District of New York (2001)
- United States District Court for the Northern District of New York (2005)
- United States District Court for the Eastern District of Michigan (2017)



Our Attorneys    Partners

# DANIEL TEPPER
## Partner



Daniel Tepper is a Partner of the Firm with extensive experience in shareholder derivative suits, class actions and complex commercial litigation. Before he joined Levi & Korsinsky, Mr. Tepper was a partner in one of the oldest law firms in New York. He is an active member of the CPLR Committee of the New York State Bar Association and was an early member of its Electronic Discovery Committee. Mr. Tepper has been selected as a New York "Super Lawyer" in 2016 – 2023.

Some of the notable matters where Mr. Tepper had a leading role include:

• **Siegmund v. Bian**, No. 16-62506 (S.D. Fla.), achieving an estimated recovery of $29.93 per share on behalf of a class of public shareholders of Linkwell Corp. who were forced to sell their stock at $0.88 per share.
• **In re Platinum-Beechwood Litigation**, No. 18-06658 (S.D.N.Y.), achieved dismissal on behalf of an individual investor in Platinum Partners-affiliated investment fund.
• **Lakatamia Shipping Co. Ltd. v. Nobu Su**, Index No. 654860/2016 (Sup. Ct., N.Y. Co. 2016), achieved dismissal on suit attempting to domesticate a $40 million UK judgment in New York State.
• **Zelouf Int'l Corp. v. Zelouf**, No. 45 Misc.3d 1205(A) (Sup.Ct. N.Y. Co., 2014), representing the plaintiff in an appraisal proceeding triggered by freeze-out merger of closely-held corporation. Achieved a $10 million verdict after eleven day trial, with the Court rejecting a discount for lack of marketability.
• **Sacher v. Beacon Assocs. Mgmt. Corp.**, No. 114 A.D.3d 655 (2d Dep't 2014), affirming denial of defendants' motion to dismiss shareholder derivative suit by Madoff feeder fund against fund's auditor for accounting malpractice.
• **In re Belzberg**, No. 95 A.D.3d 713 (1st Dep't 2012), compelling a non-signatory to arbitrate brokerage agreement dispute arising under doctrine of direct benefits estoppel.
• **Estate of DeLeo**, No. 353758/A (Surrog. Ct., Nassau Co. 2011), achieving a full plaintiff's verdict after a seven day trial which restored a multi-million dollar family business to its rightful owner.



# DANIEL TEPPER
## Partner

• **CMIA Partners Equity Ltd. v. O'Neill**, No. 2010 NY Slip Op 52068(U) (Sup. Ct. N.Y. Co., 2010). Representing the independent directors of a Cayman Islands investment fund, won a dismissal on the pleadings in the first New York State case examining shareholder derivative suits under Cayman Islands law.
• **Hecht v. Andover Assocs. Mgmt. Corp.**, No. 27 Misc 3d 1202(A) (Sup. Ct. Nassau Co., 2010), aff'd, 114 A.D.3d 638 (2d Dep't 2014). Participated in a $213 million global settlement in the first Madoff related lawsuit in the country to defeat a motion to dismiss.

### EDUCATION

• New York University School of Law, J.D. (2000)
• The University of Texas at Austin, B.A. with Honors (1997), National Merit Scholar

### AWARDS

  

### ADMISSIONS

• Massachusetts (2001)
• New York (2002)
• United States District Court for the Eastern District of New York (2004)
• United States District Court for the Southern District of New York (2010)
• United States District Court for the Western District of New York (2019)



# ELIZABETH K. TRIPODI
## Partner



Elizabeth K. Tripodi focuses her practice on shareholder protection, representing investors in securities fraud litigation, corporate derivative litigation, and litigation involving mergers, acquisitions, tender offers, and change-in-control transactions. Ms. Tripodi has been named as a Washington, D.C. "Super Lawyer" in the securities field and was selected as a "Rising Star" by Thomson Reuters for several consecutive years.

Ms. Tripodi's current representations include:

• **In re Tesla, Inc. Securities Litigation**, No. 3:18-cv-04865-EMC (N.D. Cal.) (lead counsel in class action representing Tesla investors who were harmed by Elon Musk's "funding secured" tweet from August 7, 2018)

Ms. Tripodi has played a lead role in obtaining monetary recoveries for shareholders in M&A litigation:

• **In re Schuff International, Inc. Stockholders Litigation**, No. 10323-VCZ, achieving the largest recovery as a percentage of the underlying transaction consideration in Delaware Chancery Court merger class action history, obtaining an aggregate recovery of more than $22 million -- a gross increase from $31.50 to $67.45 in total consideration per share (a 114% increase) for tendering stockholders
• **In re Bluegreen Corp. S'holder Litig.**, No. 502011CA018111 (Circuit Ct. for Palm Beach Cty., FL), creation of a $36.5 million common fund settlement in the wake of a majority shareholder buyout, representing a 25% increase in total consideration to the minority stockholders
• **In re Cybex International S'holder Litig**, Index No. 653794/2012 (N.Y. Sup. Ct. 2014), recovery of $1.8 million common fund, which represented an 8% increase in stockholder consideration in connection with management-led cash-out merger
• **In re Great Wolf Resorts, Inc. S'holder Litig**, No. 7328-VCN (Del. Ch. 2012), where there was a $93 million (57%) increase in merger consideration



# ELIZABETH K. TRIPODI
## Partner

• **Minerva Group, LP v. Keane**, Index No. 800621/2013 (N.Y. Sup. Ct. 2013), settlement in which Defendants increased the price of an insider buyout from $8.40 to $9.25 per share

Ms. Tripodi has played a key role in obtaining injunctive relief while representing shareholders in connection with M&A litigation, including obtaining preliminary injunctions or other injunctive relief in the following actions:

• **In re Portec Rail Products, Inc. S'holder Litig**, No. G.D. 10-3547 (Ct. Com. Pleas Pa. 2010)
• **In re Craftmade International, Inc. S'holder Litig**, No. 6950-VCL (Del. Ch. 2011) • Dias v. Purches, et al., No. 7199-VCG (Del. Ch. 2012)
• **In re Complete Genomics, Inc. S'holder Litig**, No. 7888-VCL (Del. Ch. 2012)
• **In re Integrated Silicon Solution, Inc. Stockholder Litig.**, No. 115CV279142 (Sup. Ct. Santa Clara, CA 2015)

Prior to joining Levi & Korsinsky, Ms. Tripodi was a member of the litigation team that served as Lead Counsel in, and was responsible for, the successful prosecution of numerous class actions, including: **Rudolph v. UTStarcom** (stock option backdating litigation obtaining a $9.5 million settlement); **Grecian v. Meade Instruments** (stock option backdating litigation obtaining a $3.5 million settlement).



# ELIZABETH K. TRIPODI
## Partner

### EDUCATION

· American University Washington College of Law, *cum laude* (2006), where she served as Co-Editor in Chief of the Business Law Journal (f/k/a Business Law Brief), was a member of the National Environmental Moot Court team, and interned for Environmental Enforcement Section at the Department of Justice
· Davidson College, B.A., Art History (2000)

### AWARDS

 

### ADMISSIONS

· Virginia (2006)
· United States District Court for the Eastern District of Virginia (2006)
· District of Columbia (2008)
· United States District Court for the District of Columbia (2010)
· United States Court of Appeals for the Seventh Circuit (2018)





**Our Attorneys**

**Of Counsel**

Levi & Korsinsky

- ANDREW E. LENCYK
- COURTNEY E. MACCARONE
- BRIAN STEWART

54

## Our Attorneys    Of Counsel

# ANDREW E. LENCYK
## Of Counsel



Andrew E. Lencyk is Counsel to the Firm. Prior to joining the Firm, Mr. Lencyk was a partner in an established boutique firm in New York specializing in securities litigation. He was graduated magna cum laude from Fordham College, New York, with a B.A. in Economics and History, where he was a member of the College's Honors Program, and was elected to Phi Beta Kappa. Mr. Lencyk received his J.D. from Fordham University School of Law, where he was a member of the Fordham Urban Law Journal. He was named to the 2013, 2014, 2015, 2016, 2017, 2018 and 2019 Super Lawyers®, New York Metro Edition.

Mr. Lencyk has co-authored the following articles for the Practicing Law Institute's Accountants' Liability Handbooks:

- *Liability in Forecast and Projection Engagements: Impact of Luce v. Edelstein*
- *An Accountant's Duty to Disclose Internal Control Weaknesses*
- *Whistle-blowing: An Accountants' Duty to Disclose A Client's Illegal Acts*
- *Pleading Motions under the Private Securities Litigation Reform Act of 1995*
- *Discovery Issues in Cases Involving Auditors (co-authored and appeared in the 2002 PLI Handbook on Accountants' Liability After Enron.)*

In addition, he co-authored the following article for the Association of the Bar of the City of New York, Corporate & Securities Law Updates:

• Safe Harbor Provisions for Forward-Looking Statements (co-authored and published by the Association of the Bar of the City of New York, Corporate & Securities Law Updates, Vol. II, May 12, 2000)



## Our Attorneys — Of Counsel

# ANDREW E. LENCYK
## Of Counsel

Cases in which Mr. Lencyk actively represented plaintiffs include:

• **Kirkland et al. v. WideOpenWest, Inc.,** No. 653248/2018 (Sup. Ct, NY County) (substantially denying defendants' motion to dismiss Section 11 and 12(a)(2) claims)
• **In re Community Psychiatric Centers Securities Litigation**, No. SA CV-91-533-AHS (Eex) (C.D. Cal.) and McGann v. Ernst & Young, SA CV-93-0814-AHS (Eex) (C.D. Cal.)(recovery of $54.5 million against company and its outside auditors)
• **In re Danskin Securities Litigation**, Master File No. 92 CIV. 8753 (JSM) (S.D.N.Y.);
• **In re JWP Securities Litigation**, Master File No. 92 Civ. 5815 (WCC) (S.D.N.Y.) (class recovery of approximately $36 million)
• **In re Porta Systems Securities Litigation**, Master File No. 93 Civ. 1453 (TCP) (E.D.N.Y.);
• **In re Leslie Fay Cos. Securities Litigation**, No. 92 Civ. 8036 (S.D.N.Y.)($35 million recovery)
• **Berke v. Presstek, Inc.,** No. 96-347-M (MDL Docket No. 1140) (D.N.H.) ($22 million recovery)
• **In re Micro Focus Securities Litigation**, No. C-01-01352-SBA-WDB (N.D. Cal.)
• **Dusek v. Mattel, Inc., et al.,** No. CV99-10864 MRP (C.D. Cal.) ($122 million global settlement)
• **In re Sonus Networks, Inc. Securities Litigation-II**, No. 06-CV-10040 (MLW) (D. Mass.)
• **In re AIG ERISA Litigation**, No. 04 Civ. 9387 (JES) (S.D.N.Y.) ($24.2 million recovery)
• **In re Mutual Funds Investment Litigation**, MDL No. 1586 (D. Md.)
• **In re Alger, Columbia, Janus, MFS, One Group, Putnam, Allianz Dresdner**, MDL No. 15863-JFM - Allianz Dresdner subtrack (D. Md.)
• **In re Alliance, Franklin/Templeton, Bank of America/Nations Funds and Pilgrim Baxter**, MDL No. 15862-AMD – Franklin/Templeton subtrack (D. Md.)
• **In re AIG ERISA Litigation II**, No. 08 Civ. 5722 (LTS) (S.D.N.Y.) ($40 million recovery); and
• **Flynn v. Sientra, Inc.,** No. CV-15-07548 SJO (RAOx) (C.D. Cal.) ($10.9 million recovery) (co-lead counsel)
Court decisions in which Mr. Lencyk played an active role on behalf of plaintiffs include:
• **Pub. Empls' Ret. Sys. of Miss. v. TreeHouse Foods**, No. 2018 U.S. Dist. LEXIS 22717 (N.D. Ill. Feb. 12, 2018) (denying defendants' motion to dismiss in its entirety)



**Our Attorneys**    **Of Counsel**

# ANDREW E. LENCYK
## Of Counsel

• **Flynn v. Sientra, Inc.,** No. 2016 U.S. Dist. LEXIS 83409 (C.D. Cal. June 9, 2016) (denying in substantial part defendants' motions to dismiss Section 10(b), Section 11 and 12(b)(2) claims), motion for reconsideration denied, slip op. (C.D. Cal. Aug 12, 2016)

• **In re Principal U.S. Property Account ERISA Litigation**, No. 274 F.R.D. 649 (S.D. Iowa 2011) (denying defendants' motion to dismiss)

• **In re AIG ERISA Litigation II**, No. 08 Civ. 5722(LTS), 2011 U.S. Dist. LEXIS 35717 (S.D.N.Y. May 31, 2011) (denying in substantial part defendants' motions to dismiss), renewed motion to dismiss denied, slip op. (S.D.N.Y. June 26, 2014)

• **In re Mutual Funds Investment Litigation**, No. 384 F. Supp. 2d 845 (D. Md. 2005) (denying in substantial part defendants' motions to dismiss), In re Alger, Columbia, Janus, MFS, One Group, Putnam, Allianz Dresdner, MDL No. 15863-JFM - Allianz Dresdner subtrack (D. Md. Nov. 3, 2005) (denying in substantial part defendants' motions to dismiss), and In re Alliance, Franklin/Templeton, Bank of America/Nations Funds and Pilgrim Baxter, MDL No. 15862-AMD – Franklin/Templeton subtrack (D. Md. June 27, 2008) (same)

• **In re AIG ERISA Litigation**, No. 04 Civ. 9387 (JES) (S.D.N.Y. Dec. 12, 2006) (denying defendants' motions to dismiss in their entirety)

• **Dusek v. Mattel, Inc., et al.,** No. CV99-10864 MRP (C.D. Cal. Dec. 17, 2001) (denying defendants' motions to dismiss Section 14(a) complaint in their entirety) • In re Micro Focus Sec. Litig., Case No. C-00-20055 SW (N.D. Cal. Dec. 20, 2000) (denying motion to dismiss Section 11 complaint);

• **Zuckerman v. FoxMeyer Health Corp.,** No. 4 F. Supp.2d 618 (N.D. Tex. 1998) (denying defendants' motion to dismiss in its entirety in one of the first cases decided in the Fifth Circuit under the Private Securities Litigation Reform Act of 1995)

• **In re U.S. Liquids Securities Litigation**, Master File No. H-99-2785 (S.D. Tex. Jan. 23, 2001) (denying motion to dismiss Section 11 claims)

• **Sands Point Partners, L.P., et al. v. Pediatrix Medical Group, Inc., et al.,** No. 99-6181-CIV-Zloch (S.D. Fla. June 6, 2000) (denying defendants' motion to dismiss in its entirety)

• **Berke v. Presstek, Inc.,** No. 96-347-M (MDL Docket No. 1140) (D.N.H. Mar. 30, 1999) (denying defendants' motion to dismiss)

• **Chalverus v. Pegasystems, Inc.,** No. 59 F. Supp. 2d 226 (D. Mass. 1999) (denying defendants' motion to dismiss);



# ANDREW E. LENCYK
## Of Counsel

• **Danis v. USN Communications, Inc.,** No. 73 F. Supp. 2d 923 (N.D. Ill. 1999) (denying defendants' motion to dismiss)

### EDUCATION

• Fordham University School of Law, J.D. (1992)
• Fordham College, B.A. *magna cum laude*, 1988)

### AWARDS





### ADMISSIONS

• Connecticut (1992)
• New York (1993)
• United States District Court for the Southern District of New York (2004)
• United States District Court for the Eastern District of New York (2004)
• United States Court of Appeals for the Second Circuit (2015)



58

Case 1:22-cv-02283-PK    Document 61-2    Filed 01/23/24    Page 65 of 113 PageID #: 1208

# COURTNEY E. MACCRONE
## Of Counsel



Courtney E. Maccarone focuses her practice on prosecuting consumer class actions. Prior to joining Levi & Korsinsky, Ms. Maccarone was an associate at a boutique firm in New York specializing in class action litigation. While attending Brooklyn Law School, Ms. Maccarone served as the Executive Symposium Editor of the Brooklyn Journal of International Law and was a member of the Moot Court Honor Society. Her note, "Crossing Borders: A TRIPS-Like Treaty on Quarantines and Human Rights" was published in the Spring 2011 edition of the Brooklyn Journal of International Law.

Ms. Maccarone also gained experience in law school as an intern to the Honorable Martin Glenn of the Southern District of New York Bankruptcy Court and as a law clerk at a New York City-based class action firm. Ms. Maccarone has been recognized as a Super Lawyer "Rising Star" for the New York Metro area every year since 2014.

**EDUCATION**

· Brooklyn Law School, J.D., *magna cum laude* (2011)
· New York University, B.A., *magna cum laude* (2008)

**AWARDS**




**ADMISSIONS**

· New Jersey (2011)
· New York (2012)
· United States District Court for the District of New Jersey (2012)
· United States District Court for the Eastern District of New York (2012)
· United States District Court for the Southern District of New York (2012)



Case 1:22-cv-02283-PK    Document 61-2    Filed 01/23/24    Page 66 of 113 PageID #: 1209

# BRIAN STEWART
## Of Counsel



Brian Stewart is an Associate with the Firm practicing in the Washington, D.C. office. Prior to joining the firm, Mr. Stewart was an associate at a small litigation firm in Washington D.C. and a regulatory analyst at the Financial Industry Regulatory Authority (FINRA). During law school, he interned for the Enforcement Divisions of the SEC and CFPB.

**EDUCATION**

• American University Washington College of Law, J.D. (2012)
• University of Washington, B.S., Economics and Mathematics (2008)

**ADMISSIONS**

• Maryland (2012)
• District of Columbia (2014)
• United States District Court for the District of Maryland (2017)
• United States District Court for the District of Colorado (2017)





## Our Attorneys
### Senior Associates

**Levi & Korsinsky**

- ADAM C. MCCALL
- MORGAN EMBLETON
- DAVID C. JAYNES
- JORDAN A. CAFRITZ

61

## Our Attorneys      Senior Associates

# ADAM C. MCCALL
## Senior Associate



Mr. McCall is an Associate with the Firm. Prior to joining Levi & Korsinsky, Mr. McCall was an extern at the Securities and Exchange Commission's Division of Corporate Finance.

### EDUCATION

- Georgetown University Law Center, LL.M., Securities and Financial Regulation (2015)
- California Western School of Law, J.D., *cum laude* (2013)
- Santa Clara University, Certificate of Advanced Accounting Proficiency (2010)
- University of Southern California, B.A. Economics (2008)

### ADMISSIONS

- California (2014)
- United States District Court for the Central District of California (2015)
- United States District Court for the Eastern District of California (2015)
- United States District Court for the Northern District of California (2015)
- United States District Court for the Southern District of California (2015)
- United States Court of Appeals for the Ninth Circuit (2016)
- District of Columbia (2017)



## Our Attorneys | Senior Associates

# MORGAN EMBLETON
## Senior Associate



Morgan M. Embleton is an associate in the Firm's Connecticut office. Since 2018, Ms. Embleton has focused her practice on federal securities class actions and protecting the interests of shareholders of publicly traded companies.

Prior to that, Ms. Embleton litigated matters arising under the False Claims Act, Jones Act, Longshore Harbor Workers' Compensation Act, Louisiana Whistleblower Act, and Louisiana Environmental Whistleblower Act, as well as pharmaceutical mass torts and products liability claims. Ms. Embleton has extensive experience prosecuting securities fraud matters, complex class actions, and multidistrict litigations.

Ms. Embleton received her J.D. and Environmental Law Certificate from Tulane University Law School in 2014. During her time in law school, Ms. Embleton was a student attorney in the Tulane Environmental Law Clinic, a member of the Journal of Technology and Intellectual Property, and the Assistant Director of Research and Development for the Durationator.

**EDUCATION**

• Tulane University Law School, J.D. and Environmental Law Certificate (2014)
• University of Colorado at Boulder, B.A., *cum laude*, Sociology (2010)

**ADMISSIONS**

• Louisiana (2014)
• United States District Court for the Eastern District of Louisiana (2015)
• United States District Court for the Middle District of Louisiana (2016)
• United States District Court for the Western District of Louisiana (2016)
• United States Court of Federal Claims (2016)
• United States Court of Appeals for the Fifth Circuit (2016)
• United States Court of Appeals for the Ninth Circuit (2017)
• United States District Court for the Eastern District of Michigan (2020)



# DAVID C. JAYNES
## Senior Associate



David C. Jaynes focuses his practice on investor protection and securities fraud litigation. In addition to his law degree, Mr. Jaynes has graduate degrees in business administration and finance. Prior to joining the firm, David worked in the Enforcement Division of the U.S. Securities and Exchange Commission in the Salt Lake Regional Office as part of the Student Honors Program. Mr. Jaynes began his career as a prosecutor and has significant trial experience.

While at Levi & Korsinsky, Mr. Jaynes has actively represented plaintiffs in the following securities class actions:

- **In re U. S. Steel Consolidated Cases**, No. 17-579 (W.D. Pa.)
- **Stein v. U.S. Xpress Enterprises, Inc.,** et al., No. 1:19-cv-98-TRM-CHS (E.D. Tenn.)
- **John P. Norton, On Behalf Of The Norton Family Living Trust** UAD 11/15/2002 v. Nutanix, Inc. et al, No. 3:21-cv-04080 (N.D. Cal.)

Mr. Jaynes has also had a role in litigating the following securities actions:

- **Ferraro Family Foundation, Inc. v. Corcept Therapeutics Incorporated**, No.5:19-cv-1372-LHK (N.D. Cal.)
- **The Daniels Family 2001 Revocable Trust v. Las Vegas Sands Corp.,** et al., No. 1:20-cv-08062-JMF (D. Nev.)
- **Dan Kohl v. Loma Negra Compania Industrial Argentina Sociedad Anonima**, et al., Index No. 653114/2018 (Sup. Ct., County of New York)

### EDUCATION

- University of Utah, M.S., Finance (2020)
- University of Utah, M.B.A (2020)
- The George Washington University Law School, J.D. (2015)
- Brigham Young University, B.A., Middle East Studies and Arabic (2009)

### ADMISSIONS

- Maryland (2015)
- Utah (2016)
- United States District Court for the District of Utah (2016)
- California (2021)
- United States District Court for the Northern District of California (2022)
- United States District Court for the Central District of California (2023)
- District of Colorado (2023)



## Our Attorneys    Senior Associates

# JORDAN A. CAFRITZ
## Senior Associate



Jordan Cafritz is an Associate with the Firm's Washington, D.C. office. While attending law school at American University he was an active member of the American University Business Law Review and worked as a Rule 16 attorney in the Criminal Justice Defense Clinic. After graduating from law school, Mr. Cafritz clerked for the Honorable Paul W. Grimm in the U.S. District Court for the District of Maryland.

**EDUCATION**

- American University Washington College of Law, J.D. (2014)
- University of Wisconsin-Madison, B.A., Economics & History (2010)

**ADMISSIONS**

- Maryland (2014)
- District of Columbia (2018)



65



### Our Attorneys
### Associates

**Levi & Korsinsky**

- RACHEL BERGER
- NOAH GEMMA
- DEVYN R. GLASS
- GARY ISHIMOTO
- ALEXANDER KROT
- NICHOLAS R. LANGE
- AMANDA FOLEY
- MELISSA MULLER
- CINAR ONEY
- CORREY A. SUK
- COLE VON RICHTHOEFEN
- MAX WEISS
- AARON PARNAS

66

# RACHEL BERGER
## Associate



Rachel Berger is an Associate with the Firm's Connecticut office. Her practice focuses on prosecuting securities fraud class actions on behalf of aggrieved investors.

Prior to joining Levi & Korsinsky, Ms. Berger practiced securities litigation with another top New York class action firm, where she represented classes of aggrieved shareholders and cryptocurrency purchasers against prominent defendants, including multiple Fortune 500 companies.

While in law school, Ms. Berger interned with a leading ESG institute, focusing on the intersection of ESG and securities law. She was also a member of the Fordham Urban Law Journal, the Fordham Mediation and Tax Clinics, and the Immigration Advocacy Project. Ms. Berger received the Paul R. Brenner Scholarship Award, as well as the Archibald R. Murray Public Service Award, cum laude, in recognition of her significant pro bono work.

Ms. Berger practices remotely from her home in St. Louis, Missouri.

**EDUCATION**

· Fordham University School of Law, J.D. (2019)
· Stern College for Women, Yeshiva University, B.A. Economics (2015)

**ADMISSIONS**

· New York (2020)
· United States District Court for the Southern District of New York (2020)
· District of Colorado (2023)



Our Attorneys Associates

# NOAH GEMMA
## Associate



Noah Gemma worked previously as a summer associate at a boutique commercial litigation firm. There, Mr. Gemma drafted briefs and other legal memoranda on behalf of national and closely held corporations in complex federal and state court litigation. In particular, Mr. Gemma helped the firm: (i) win multiple motions to dismiss on behalf of a national bank and a national bonding company in federal court cases involving alleged fraud and other alleged improprieties; (ii) settle an avoidable preference action on behalf of a national hauling company in a federal bankruptcy proceeding for a small fraction of the alleged damages; (iii) settle a negligence action on behalf of a court appointed fiduciary against officers of a defunct company and its insurance carrier on advantageous terms; and (iv) secure a favorable decision on behalf of a national bonding company before the state supreme court.

Mr. Gemma also served as a judicial intern for the Honorable Judge Bruce M. Selya in the United States Court of Appeals for the First Circuit and for the Honorable Judge Virginia M. Hernandez Covington in the United States District Court for the Middle District of Florida. Using his experience representing the interests of national and closely held corporations to analyze and assess potential cases of corporate impropriety, Mr. Gemma currently prosecutes corporate and director malfeasance through the preparation and filing of shareholder mergers and acquisitions actions and corporate governance litigation.

### EDUCATION

· Georgetown University Law Center, J.D., Editor for *The Georgetown Law Journal* (2021)
· Providence College, B.A. (2018)

### ADMISSIONS

· Rhode Island (2021)
· District of Columbia (2022)



# DEVYN R. GLASS
## Associate



Devyn R. Glass currently focuses her practice on representing investors in federal securities fraud litigation.

Prior to joining the firm, Ms. Glass gained substantial experience at a national boutique firm specializing in complex litigation across a variety of practice areas representing both plaintiffs and defendants. Since 2017, Ms. Glass has focused her practice on consumer and shareholder protection, litigating numerous class action lawsuits across the country that involved data privacy and data breach, deceptive and unfair trade practices, and securities fraud.

At her prior firms, Ms. Glass played a pivotal role in obtaining monetary recoveries and/or injunctive relief on behalf of shareholders and consumers. Notable cases include: Lowry v. RTI Surgical Holdings, Inc. et al., (D. Ill.) (obtaining $10.5 million on behalf of a shareholder class alleging violations of the federal securities laws); In re Google Plus Profile Litigation, (N.D. Cal.) (obtaining $7.5 million on behalf of a consumer class exposed to a years-long data breach); and Barrett v. Pioneer Natural Resources USA, Inc., (D. Colo.) (obtaining $500,000 on behalf of more than 8,000 current and former 401(k) plan participants alleging violations of the Employee Retirement Income Security Act).

**EDUCATION**

• Loyola University College of Law, New Orleans, J.D., *cum laude* (2016), where she received a Certificate of Concentration in Law, Technology and Entrepreneurship, served as a member of the *Loyola Journal of Public Interest Law*, and interned for the Louisiana Second Circuit Court of Appeals
• Louisiana Tech University, B.A., *cum laude* (2013), Political Science, minor in English

**ADMISSIONS**

• New York (2017)
• District of Columbia (2017)
• United States District Court District of Columbia (2018)
• United States District Court District of Colorado (2018)
• United States Court of Appeals for the Ninth Circuit (2022)



## Our Attorneys      Associates

# GARY ISHIMOTO
## Associate



Gary Ishimoto is an Associate working remotely with Levi and Korsinsky's Consumer Litigation Team. During law school, he worked at the Small Business Law Clinic helping to draft incorporation papers, non-compete clauses, IP assignments, board consent, and stock purchase agreements for start-up businesses. He also interned for the Rossi Law Group.

**EDUCATION**

· Pepperdine School of Law, J.D. (2020)
· California State University, Northridge, B.S. (2013)

**ADMISSIONS**

· Massachusetts (2021)
· New Hampshire (2022)



70

## ALEXANDER KROT
### Associate



**EDUCATION**

• American University, Kogod School of Business, M.B.A. (2012)
• Georgetown University Law Center, LL.M., Securities and Financial Regulation, With Distinction (2011)
• American University Washington College of Law, J.D. (2010)
• The George Washington University, B.B.A., concentrations in Finance and International Business (2003)

**ADMISSIONS**

• Maryland (2011)
• District of Columbia (2014)
• United States District Court for the District of Colorado (2015)
• United States Court of Appeals for the Tenth Circuit (2016)
• United States District Court for the Eastern District of Wisconsin (2017)
• United States Court of Appeals for the Third Circuit (2018)
• United States Court of Appeals for the Ninth Circuit (2020)

# NICHOLAS R. LANGE
## Associate



Based in Chicago, Illinois, Nicholas R. Lange is a remote member of the Firm's Connecticut office, where he focuses his practice in investor fraud and federal securities litigation. Prior to joining the Firm, Nicholas specialized in complex class action litigation and multi-district proceedings, including participation in some of the country's largest actions, with a focus in technology and consumer privacy.

As recognition for his class action work, Nicholas R. Lange received the Super Lawyers Rising Star award for 2023 (Class Action/Mass Torts).

## EDUCATION

- DePaul University College of Law, J.D. (2014)
- University of Illinois and Urbana/Champaign, B.A. (2011)

## ADMISSIONS

- Illinois (2014)
- United States District Court for the Northern District of Illinois (2016)
- United States District Court for the Southern District of Illinois (2020)
- United States District Court for the District of Colorado (2020)

## AWARDS






## Our Attorneys | Associates

# AMANDA FOLEY
## Associate



Amanda Foley is an Associate in Levi & Korsinsky's Stamford office where she focuses her practice on federal securities litigation.
Prior to joining Levi & Korsinsky, Amanda gained substantial experience at a boutique Boston firm where she was trained in securities and business litigation.

Amanda received her Juris Doctorate degree from Suffolk University Law School with an International Law concentration with Distinction and was selected to join the International Legal Honor Society of Phi Delta Phi. While in law school, Amanda focused her legal education on securities law & regulation, international investment law & arbitration, and business law.

**EDUCATION**

- Suffolk University Law School, J.D. (2021)
- Colorado State University, B.S. (2011)

**ADMISSIONS**

- Massachusetts (2021)
- United States District Court for the District of Massachusetts (2022)

Case 1:22-cv-02283-PK    Document 61-2    Filed 01/23/24    Page 80 of 113 PageID #: 1223

# MELISSA MULLER
## Associate



Melissa Muller is an Associate with the Firm's New York Office focusing on federal securities litigation. Ms. Muller previously worked as a paralegal for the New York office while attending law school.

### EDUCATION

- New York Law School, J.D., Dean's Scholar Award, member of the Dean's Leadership Council (2018)
- John Jay College of Criminal Justice, B.A. (2013), *magna cum laude*

### ADMISSIONS

- New York (2019)
- United States District Court for the Southern District of New York (2020)



## Our Attorneys — Associates

# CINAR ONEY
## Associate



Cinar Oney is an Associate in Levi & Korsinsky's New York office. His practice focuses on investigation and analysis of various forms of corporate misconduct, including excessive compensation, insider trading, unfair self-dealing, and corporate waste. He develops litigation strategies through which shareholders can pursue recoveries.

Prior to joining Levi & Korsinsky, Mr. Oney practiced with top firms in Turkey, where he represented shareholders, corporations, and governmental entities in commercial disputes and transactional matters.

### PUBLICATIONS

- *FinTech Industrial Banks and Beyond: How Banking Innovations Affect the Federal Safety Net*, 23 FORDHAM J. CORP. & FIN. L. 541 (2018)

### EDUCATION

- Fordham University School of Law, J.D. (2019)
- International University College of Turin, LL.M. (2014)
- Istanbul University Faculty of Law, Undergraduate Degree in Law (2011)

### ADMISSIONS

- New York (2020)



75

# Our Attorneys — Associates

# CORREY A. SUK
## Associate



Correy A. Suk is an experienced litigator with a focus on shareholder derivative suits, class actions, and complex commercial litigation. Correy began her career with the Investor Protection Bureau of the Office of the New York State Attorney General and spent four years prosecuting shareholder derivative actions and securities fraud litigation at one of the oldest firms in the country. Prior to joining Levi & Korsinsky, Correy represented both individuals and corporations in complex business disputes at a New York litigation boutique. Correy's unflappable disposition and composure reflect a pragmatic approach to both litigation and negotiation. She thrives under pressure and serves as an aggressive advocate for her clients in the most high-stakes situations. Correy has been recognized as a Super Lawyers Rising Star every year since 2017.

### PUBLICATIONS

• "Unsafe Sexting: The Dangerous New Trend and the Need for Comprehensive Legal Reform," 9 Ohio St. J. Crim. L. 405 (2011)

### EDUCATION

• The Ohio State University Moritz College of Law, J.D. (2011)
• Georgetown University, B.S.B.A. (2008)

### AWARDS




### ADMISSIONS

• New Jersey (2011)
• New York (2012)
• United States District Court for the Southern District of New York (2015)
• United States District Court for the Eastern District of New York (2015)
• United States District Court for the District of New Jersey (2016)



## Our Attorneys — Associates

# COLE VON RICHTHOFEN
## Associate



Cole von Richthofen is an Associate in Levi & Korsinsky's Connecticut office. As a law student, he interned with the honorable Judge Thomas Farrish in the District of Connecticut's Hartford courthouse with an emphasis on settlements. He has also interned with the Office of the Attorney General for the State of Connecticut in the Employment Rights Division. While attending law school, Cole served as an Executive Editor of the Connecticut Public Interest Law Journal and as a member of the Connecticut Moot Court Board.

**EDUCATION**

- University of Connecticut School of Law, J.D. (2022)
- University of Connecticut, B.S., Business & Marketing (2015)

**ADMISSIONS**

- Connecticut (2022)



# MAX WEISS
## Associate



Max Weiss focuses his practice on investor protection and securities fraud litigation. He is proficient in litigation, legal research, motion practice, case evaluation and settlement negotiation. Prior to joining the firm, Max practiced in the general liability area and has extensive experience litigating high-exposure personal injury claims in New York State and federal trial and appellate courts. While in law school, Max gained experience helping pro se debtors prepare and file Chapter 7 and Chapter 13 petitions with the New York Legal Assistance Group **(NYLAG)** Bankruptcy Project and served as an intern to the Honorable Sean Lane of the Southern District of New York Bankruptcy Court.

**EDUCATION**

• St. John's School of Law, J.D. (2018), where he served as the Senior Executive Editor of the Journal of Civil Rights & Economic Development
• Colgate University, B.A., Political Science (2011)

**ADMISSIONS**

• New York (2019)
• United States District Court for the Southern District of New York (2019)
• United States District Court for the Eastern District of New York (2019)



## Our Attorneys   Associates

# AARON PARNAS
## Associate



Aaron Parnas is an Associate in the firm's Washington, D.C. office. Prior to joining Levi & Korsinsky, Aaron served as a law clerk for the Honorable Sheri Polster Chappell in the United States District Court for the Middle District of Florida.

While in law school, Aaron was a student attorney for the Criminal Appeals and Post-Conviction Series Clinic along with the Vaccine Injury Litigation Clinic, where he litigated matters in front of the Maryland Court of Special Appeals and the Court of Federal Claims. respectively. As a result of his successes, Aaron was named the top advocate in his graduating class and received the Graduation Award for Excellence in Pre-Trial and Trial Advocacy.

### EDUCATION

· The George Washington University Law School, with Honors (2020), where he served as the Managing Editor, Vol. 52 of The George Washington International Law Review
· Florida Atlantic University, B.A., Political Science and Criminal Justice, with Honors (2017)

### ADMISSIONS

· Florida (2020)
· United States District Court for the Southern District of Florida (2021)
· District of Columbia (pending)*

*Pending admission to the D.C. bar, practicing under the supervision of a D.C. licensed attorney



**EXHIBIT D**

**Cornerstone Research Report**



# CORNERSTONE RESEARCH
Economic and Financial Consulting and Expert Testimony

# Securities Class Action Settlements

2022 Review and Analysis

# Table of Contents

| | |
|---|---|
| 2022 Highlights | 1 |
| Author Commentary | 2 |
| Total Settlement Dollars | 3 |
| Settlement Size | 4 |
| Type of Claim | 5 |
|     Rule 10b-5 Claims and "Simplified Tiered Damages" | 5 |
|     '33 Act Claims and "Simplified Statutory Damages" | 7 |
| Analysis of Settlement Characteristics | 9 |
|     GAAP Violations | 9 |
|     Derivative Actions | 10 |
|     Corresponding SEC Actions | 11 |
|     Institutional Investors | 12 |
| Time to Settlement and Case Complexity | 13 |
| Case Stage at the Time of Settlement | 14 |
| Cornerstone Research's Settlement Analysis | 15 |
| Research Sample | 16 |
| Data Sources | 16 |
| Endnotes | 17 |
| Appendices | 18 |
| About the Authors | 23 |

# Figures and Appendices

| | |
|---|---|
| Figure 1: Settlement Statistics | 1 |
| Figure 2: Total Settlement Dollars | 3 |
| Figure 3: Distribution of Settlements | 4 |
| Figure 4: Median and Average "Simplified Tiered Damages" in Rule 10b-5 Cases | 5 |
| Figure 5: Median Settlement as a Percentage of "Simplified Tiered Damages" by Damages Ranges in Rule 10b-5 Cases | 6 |
| Figure 6: Settlements by Nature of Claims | 7 |
| Figure 7: Median Settlement as a Percentage of "Simplified Statutory Damages" by Damages Ranges in '33 Act Claim Cases | 8 |
| Figure 8: Median Settlement as a Percentage of "Simplified Tiered Damages" and Allegations of GAAP Violations | 9 |
| Figure 9: Frequency of Derivative Actions | 10 |
| Figure 10: Frequency of SEC Actions | 11 |
| Figure 11: Median Settlement Amounts and Institutional Investors | 12 |
| Figure 12: Median Settlement by Duration from Filing Date to Settlement Hearing Date | 13 |
| Figure 13: Median Settlement Dollars and Resolution Stage at Time of Settlement | 14 |
| Appendix 1: Settlement Percentiles | 18 |
| Appendix 2: Settlements by Select Industry Sectors | 18 |
| Appendix 3: Settlements by Federal Circuit Court | 19 |
| Appendix 4: Mega Settlements | 19 |
| Appendix 5: Median and Average Settlements as a Percentage of "Simplified Tiered Damages" | 20 |
| Appendix 6: Median and Average Settlements as a Percentage of "Simplified Statutory Damages" | 20 |
| Appendix 7: Median and Average Maximum Dollar Loss (MDL) | 21 |
| Appendix 8: Median and Average Disclosure Dollar Loss (DDL) | 21 |
| Appendix 9: Median Docket Entries by "Simplified Tiered Damages" Range | 22 |

Analyses in this report are based on 2,116 securities class actions filed after passage of the Private Securities Litigation Reform Act of 1995 (Reform Act) and settled from 1996 through year-end 2022. See page 16 for a detailed description of the research sample. For purposes of this report and related research, a settlement refers to a negotiated agreement between the parties to a securities class action that is publicly announced to potential class members by means of a settlement notice.

# 2022 Highlights

In 2022, the number of settled cases reached its highest level in 15 years, increasing 21% relative to 2021. The median settlement amount, median "simplified tiered damages," and median total assets of the defendant issuer also rose dramatically.[1]

- In 2022, the number of securities class action settlements increased to 105 with a total settlement value of over $3.8 billion, compared to 87 settlements in 2021 with a total value of $1.9 billion. (page 3)

- The median settlement amount of $13.0 million represents an increase of 46% from 2021, while the average settlement amount ($36.2 million) increased by 63%. (page 4)

- The $3.8 billion total settlement dollars were 97% higher than the prior year. (page 3)

- There were eight mega settlements (equal to or greater than $100 million), ranging from $100 million to $809.5 million. (page 3)

- The increase in the proportion of "midsize" settlement amounts ($10 million to $50 million) was accompanied by a decrease in the proportion of cases that settled for less than $10 million. (page 4)

- Median "simplified tiered damages" increased more than 125% and reached a record high.[2] (page 5)

- Median "disclosure dollar losses"[3] grew by more than 160%, also reaching an all-time high. (page 5)

- Compared to defendant firms involved in cases that settled in 2021, defendant firms involved in 2022 settlements were 97% larger, as measured by median total assets. (page 5)

- The historically low rate of settled cases involving a corresponding action by the U.S. Securities and Exchange Commission (SEC) observed in 2021 persisted in 2022, remaining below 9%. (page 11)

**Figure 1: Settlement Statistics**
(Dollars in millions)

|  | 2017–2021 | 2021 | 2022 |
|---|---|---|---|
| Number of Settlements | 395 | 87 | 105 |
| Total Amount | $16,714.3 | $1,932.4 | $3,805.5 |
| Minimum | $0.3 | $0.7 | $0.7 |
| Median | $10.2 | $8.9 | $13.0 |
| Average | $42.3 | $22.2 | $36.2 |
| Maximum | $3,496.8 | $202.5 | $809.5 |

Note: Settlement dollars are adjusted for inflation; 2022 dollar equivalent figures are presented.

# Author Commentary

## Findings

The year 2022 was a record year for settlement activity. The number of securities class action settlements in 2022 increased sharply from 2021 and reached levels not observed since 2007. This sharp increase was accompanied by dramatic growth in case settlement amounts, "simplified tiered damages" (our rough proxy for potential shareholder losses), and the size of issuer defendant firms.

The historically high number of settlements in 2022 can be explained by the elevated number of case filings in 2018–2020, when over 70% of these settled cases were filed.

The median settlement amount is the highest since 2018. This was likely driven by the record-high level of "simplified tiered damages," an estimate of potential shareholder losses that our research finds is the single most important factor in explaining settlement amounts.

The all-time-high median "simplified tiered damages" reflects a number of factors such as larger issuer defendants (measured by the company's total assets) and larger disclosure dollar losses (a measure of the change in the issuer defendant's market capitalization following the class-ending alleged corrective disclosure). Institutional investors are more likely to serve as lead plaintiffs in larger cases, i.e., cases with relatively high "simplified tiered damages." Consistent with this observation, institutional investor involvement as lead plaintiffs for 2022 settled cases was higher than the prior year and the 2017–2021 average. Larger cases also tend to take longer to settle, and accordingly, we observe an increase in the median time to settlement in 2022 relative to prior years.

........................................................................

*2022 was an interesting year as settlement activity reached historically high levels across several dimensions, including the number and size of settlements, and a record-high for our proxy for potential shareholder losses.*

*Dr. Laarni T. Bulan*
*Principal, Cornerstone Research*

........................................................................

In contrast to the historic highs, settlements in relation to our proxy for potential shareholder losses declined sharply. In particular, both the median and average settlement as a percentage of "simplified tiered damages" in 2022 fell to their lowest levels among post–Reform Act years. These low levels are consistent with a low presence in 2022 of factors often associated with higher settlement amounts, such as the presence of an SEC action, criminal charges, or accounting irregularities.[4]

........................................................................

*Securities class action settlements in 2022 involved substantially larger cases with larger issuer defendant firms. Overall, these cases took longer to resolve and reached more advanced litigation stages before settlement than in prior years.*

*Dr. Laura E. Simmons*
*Senior Advisor, Cornerstone Research*

........................................................................

## Looking Ahead

In light of the reduced level in the number of securities class action case filings in 2021–2022, we may begin to see a slowdown or flattening out in settlement activity in the upcoming years,[5] absent a decrease in dismissal rates.

Given that SEC enforcement actions have tended to increase subsequent to when a new SEC Chair is sworn in (which last occurred in 2021), we may also begin to see a reversal in the frequency of corresponding SEC actions among settled cases in the near term. For additional details, see Cornerstone Research's *SEC Enforcement Activity: Public Company and Subsidiaries—FY 2022 Update.*

As discussed in Cornerstone Research's *Securities Class Action Filings—2022 Year in Review*, certain issues have emerged as focus areas in securities class actions. In particular, 26% of all core federal filings in 2020–2022 were related to special purpose acquisition company (SPAC), COVID-19, or cryptocurrency matters. While very few of these types of cases have settled to date, we expect increased settlement activity for these cases in the future.

—*Laarni T. Bulan and Laura E. Simmons*

# Total Settlement Dollars

As has been observed in prior years, the presence or absence of just a few very large settlements can have a substantial effect on total settlement dollars for a given year.

- The number of settlements in 2022 (105 cases) continued the upward trend since 2019 and represented a 38% increase from the prior nine-year average (76 cases).

- An increase in the number of mega settlements (i.e., settlements equal to or greater than $100 million) contributed to total settlement dollars nearly doubling in 2022 compared to the prior year.

- There were eight mega settlements in 2022, ranging from $100 million to $809.5 million. Eight such settlements is the highest number since 2016.

- A decline in the proportion of very small settlements further contributed to the growth in total settlement dollars. Only 23% of settlements in 2022 were for less than $5 million, compared to 33% of cases settled in the prior nine years.

*The number of settlements in 2022 was the highest number since 2007.*

Figure 2: Total Settlement Dollars
2013–2022

(Dollars in billions)



| Year | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 |
|------|------|------|------|------|------|------|------|------|------|------|
| Value | $6.0 | $1.4 | $3.7 | $7.3 | $1.8 | $5.9 | $2.4 | $4.7 | $1.9 | $3.8 |
| N | N=66 | N=63 | N=77 | N=85 | N=80 | N=78 | N=74 | N=76 | N=87 | N=105 |

Note: Settlement dollars are adjusted for inflation; 2022 dollar equivalent figures are presented. "N" refers to the number of cases.

# Settlement Size

- The median settlement amount in 2022 was $13.0 million, a 46% increase from 2021 and a 34% increase from the prior nine-year median. Median values provide the midpoint in a series of observations and are less affected than averages by outlier data.

- The average settlement amount in 2022 was $36.2 million, a 63% increase from 2021. *(See Appendix 1 for an analysis of settlements by percentiles.)*

- In 2022, 42% of cases settled for between $10 million and $50 million, compared to only 30% in 2021 and 34% in 2013–2021.

*The median settlement amount in 2022 was the highest since 2018.*

- The increase in the proportion of these "midsize" settlement amounts ($10 million to $50 million) was accompanied by a decrease in the proportion of cases that settled for less than $10 million—43% in 2022 compared to 56% in 2021 and 51% in the prior nine years.

Figure 3: Distribution of Settlements
2013–2022

(Dollars in millions)



Note: Settlement dollars are adjusted for inflation; 2022 dollar equivalent figures are presented.

# Type of Claim

## Rule 10b-5 Claims and "Simplified Tiered Damages"

"Simplified tiered damages" uses simplifying assumptions to estimate per-share damages and trading behavior for cases involving Rule 10b-5 claims. It provides a measure of potential shareholder losses that allows for consistency across a large volume of cases, thus enabling the identification and analysis of potential trends.[6]

Cornerstone Research's analysis finds this measure to be the most important factor in estimating settlement amounts.[7] However, this measure is not intended to represent actual economic losses borne by shareholders. Determining any such losses for a given case requires more in-depth economic analysis.

- Similar to settlement amounts, the median "simplified tiered damages" in 2022 increased 125% compared to 2021 and was over 100% higher than the median of settled cases for the prior nine years.

- In 2022, nearly half of settlements with Rule 10b-5 claims involved "simplified tiered damages" over $500 million, an all-time high.

- Higher "simplified tiered damages" are typically associated with larger issuer defendants. Consistent with this, the median total assets of issuer defendants in 2022 settled cases was 97% higher than the median total assets for 2021 settled cases.

- Higher "simplified tiered damages" are also generally associated with larger disclosure dollar losses. In 2022, the median DDL grew by more than 160% compared to 2021, reaching an all-time high.

*Median "simplified tiered damages" reached an all-time high in 2022.*

Figure 4: Median and Average "Simplified Tiered Damages" in Rule 10b-5 Cases 2013–2022

(Dollars in millions)



Note: "Simplified tiered damages" are adjusted for inflation based on class period end dates for common stock only; 2022 dollar equivalent figures are presented. Damages are estimated for cases alleging a claim under Rule 10b-5 (whether alone or in addition to other claims).

Type of Claim (continued)

- Only 4% of settlements in 2022 had "simplified tiered damages" less than $25 million, the lowest observed to date.

- Cases with smaller "simplified tiered damages" are more likely to be associated with issuers that had been delisted from a major exchange and/or declared bankruptcy prior to settlement. In 2022, the percentage of such issuers for settled cases was at an all-time low (11%).

- The 2022 median and average settlement as a percentage of "simplified tiered damages" of 3.6% and 5.4%, respectively, are all-time lows. *(See Appendix 5 for additional information on median and average settlements as a percentage of "simplified tiered damages.")*

**Figure 5: Median Settlement as a Percentage of "Simplified Tiered Damages" by Damages Ranges in Rule 10b-5 Cases 2013–2022**

(Dollars in millions)



Note: Damages are estimated for cases alleging a claim under Rule 10b-5 (whether alone or in addition to other claims).

Type of Claim (continued)

# '33 Act Claims and "Simplified Statutory Damages"

For Securities Act of 1933 ('33 Act) claim cases—those involving only Section 11 and/or Section 12(a)(2) claims—potential shareholder losses are estimated using a model in which the statutory loss is the difference between the statutory purchase price and the statutory sales price, referred to here as "simplified statutory damages." Only the offered shares are assumed to be eligible for damages.[8]

- In 2022, there were nine settlements for cases with only '33 Act claims, in line with the average from 2017 to 2020 and well below the historically high number of 16 settlements observed in 2021.

- The median settlement as a percentage of simplified statutory damages in 2022 and 2021 were 4.7% and 4.4%, respectively—the lowest levels since 2002. *(See Appendix 6 for additional information on median and average settlements as a percentage of "simplified statutory damages.")*

- The average settlement amount for cases with only '33 Act claims was $7.3 million in 2022, compared to $14.9 million during 2013-2021.

*In 2022, the median settlement amount for cases with only '33 Act claims was $7.0 million, the lowest since 2013.*

**Figure 6: Settlements by Nature of Claims**
**2013–2022**

(Dollars in millions)

| | Number of Settlements | Median Settlement | Median "Simplified Statutory Damages" | Median Settlement as a Percentage of "Simplified Statutory Damages" |
|---|---|---|---|---|
| Section 11 and/or Section 12(a)(2) Only | 82 | $9.2 | $145.2 | 8.7% |

| | Number of Settlements | Median Settlement | Median "Simplified Tiered Damages" | Median Settlement as a Percentage of "Simplified Tiered Damages" |
|---|---|---|---|---|
| Both Rule 10b-5 and Section 11 and/or Section 12(a)(2) | 123 | $15.4 | $355.7 | 6.3% |
| Rule 10b-5 Only | 581 | $9.0 | $250.1 | 4.5% |

Note: Settlement dollars and damages are adjusted for inflation; 2022 dollar equivalent figures are presented.

Type of Claim (continued)

- Settlements as a percentage of the simplified proxies for potential shareholder losses used in this report are typically smaller for cases that have larger estimated damages. As with cases with Rule 10b-5 claims, this finding holds for cases with only '33 Act claims.

- In the past decade, over 85% of the settled '33 Act claim cases involved an underwriter (or underwriters) as a named codefendant.

- Over 80% of '33 Act claim cases that settled in 2013–2022 involved an initial public offering (IPO).

*Consistent with the lower median settlement amount among '33 Act claim cases, the median "simplified statutory damages" in 2022 declined by 61% from the median in 2021 and was the lowest since 2016.*

Figure 7: Median Settlement as a Percentage of "Simplified Statutory Damages" by Damages Ranges in '33 Act Claim Cases 2013–2022

(Dollars in millions)



Jurisdictions of Settlements of '33 Act Claim Cases

|  | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 |
|---|---|---|---|---|---|---|---|---|---|---|
| State Court | 1 | 0 | 2 | 4 | 5 | 4 | 4 | 7 | 6 | 6 |
| Federal Court | 7 | 2 | 2 | 6 | 3 | 4 | 5 | 1 | 10 | 3 |

Note: "N" refers to the number of cases. This analysis excludes cases alleging Rule 10b-5 claims..

8

# Analysis of Settlement Characteristics

## GAAP Violations

This analysis examines allegations of GAAP violations in settlements of securities class actions involving Rule 10b-5 claims, including two sub-categories of GAAP violations—financial statement restatements and accounting irregularities.[9] For further details regarding settlements of accounting cases, see Cornerstone Research's annual report on *Accounting Class Action Filings and Settlements*.[10]

- For the first time since 2017, the median settlement amount for cases involving GAAP allegations was larger than that for non-GAAP cases. Notably, in 2022 the median settlement amount for GAAP cases was more than double that of non-GAAP cases.

- As noted in prior years, settlements as a percentage of "simplified tiered damages" for cases involving GAAP allegations are typically higher than for non-GAAP cases. This result has continued despite a relatively low number of cases involving a financial restatement. For example, only 11% of settlements in 2022 involved a restatement of financial statements.

- Auditor codefendants were involved in only 3% of settled cases, consistent with 2021 but substantially lower than the average from 2013 to 2021.

- The infrequency of cases alleging accounting irregularities continued in 2022 at less than 2% of settled cases.

*The proportion of settled cases in 2022 with Rule 10b-5 claims alleging GAAP violations remained at a historically low level.*

Figure 8: Median Settlement as a Percentage of "Simplified Tiered Damages" and Allegations of GAAP Violations 2013–2022



Note: "N" refers to the number of cases. This analysis is limited to cases alleging Rule 10b-5 claims (whether alone or in addition to other claims).

## Derivative Actions

- Securities class actions often involve accompanying (or parallel) derivative actions with similar claims, and such cases have historically settled for higher amounts than securities class actions without corresponding derivative matters.[11]

- In 2022, the median settlement amount for cases with an accompanying derivative action was approximately 28% higher than for cases without ($14.1 million versus $11.0 million, respectively).

- For cases settled during 2018–2022, 38% of parallel derivative suits were filed in Delaware. California and New York were the next most common venues for such actions, representing 22% and 15% of such settlements, respectively.

*Although the proportion of cases involving accompanying derivative actions in 2022 was higher compared to 2021, it was below the average for 2018–2021.*

- It is commonly understood that most parallel derivative suits do not settle for monetary amounts (other than plaintiffs' attorney fees). However, the likelihood of a monetary settlement among parallel derivative actions is higher when the securities class action settlement is large, as shown in Cornerstone Research's *Parallel Derivative Action Settlement Outcomes*.[12]

Figure 9: Frequency of Derivative Actions
2013–2022



10

# Corresponding SEC Actions

- Historically, cases with an accompanying SEC action have typically been associated with substantially higher settlement amounts.[13] However, this pattern did not hold in 2022.

- The median settlement amount in 2022 for cases that involved a corresponding SEC action was less than 5% higher than the median for cases without such an action. In contrast, in 2021, the median settlement amount for cases with an accompanying SEC action was more than double that for cases without such an action.

*Settled cases involving SEC actions in 2022 were considerably smaller than cases without accompanying SEC actions.*

- Both "simplified tiered damages" and DDL were lower in 2022 for cases with a corresponding SEC action when compared to those without, at 72% and 83% lower, respectively.

- Settled cases in 2022 with a corresponding SEC action were nearly 10% quicker to reach settlement, on average, compared to cases without such an action. In contrast, in 2021, cases with corresponding SEC actions took over 20% longer to reach a settlement than cases without corresponding SEC actions.

- The number of settled cases in 2022 involving either a corresponding SEC action or criminal charge remained below 13%, compared to an average of 24% for the years 2013–2021.

Figure 10: Frequency of SEC Actions
2013–2022



■ Settlements without a Corresponding SEC Action
■ Settlements with a Corresponding SEC Action

| | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 |
|---|---|---|---|---|---|---|---|---|---|---|
| Without | 53 | 53 | 58 | 69 | 63 | 62 | 52 | 61 | 80 | 96 |
| With | 13 | 10 | 19 | 16 | 17 | 16 | 22 | 15 | 7 | 9 |

Analysis of Settlement Characteristics (continued)

# Institutional Investors

As discussed in prior reports, increasing institutional participation as lead plaintiffs in securities litigation was a focus of the Reform Act.[14] Indeed, in years following passage of the Reform Act, institutional investor involvement as lead plaintiffs did increase, particularly in larger cases, that is, cases with higher "simplified tiered damages."

- In 2022, for cases involving an institutional investor as lead plaintiff, median "simplified tiered damages" and median total assets were five times and eight times higher, respectively, than the median values for cases without an institutional investor as a lead plaintiff.

- Since passage of the Reform Act, public pension plans have been the most frequent type of institutional lead plaintiff.

- In 2022, a public pension plan served as lead plaintiff in two-thirds of cases with an institutional lead plaintiff. Moreover, in six of the seven mega settlement cases in 2022 involving an institutional lead plaintiff, the institutional investor was a public pension plan.

- Institutional participation as lead plaintiff continues to be associated with particular plaintiff counsel. For example, an institutional investor served as a lead plaintiff in 2022 in over 85% of settled cases in which Robbins Geller Rudman & Dowd LLP and/or Bernstein Litowitz Berger & Grossmann LLP served as lead plaintiff counsel. In contrast, institutional investors served as lead plaintiffs in 21% of cases in which The Rosen Law Firm, Pomerantz LLP, or Glancy Prongay & Murray LLP served as lead plaintiff counsel.

*Of the eight mega settlement cases in 2022, seven included an institutional lead plaintiff.*

Figure 11: Median Settlement Amounts and Institutional Investors
2013–2022

(Dollars in millions)

Note: Settlement dollars are adjusted for inflation; 2022 dollar equivalent figures are presented.

12

# Time to Settlement and Case Complexity

- Overall, the median time from filing to settlement hearing date in 2022 was longer—3.2 years for 2022 settlements, compared to 2.9 years for 2013–2021 settlements.

- Cases involving an institutional lead plaintiff continued to take longer to settle. In particular, settlements in 2022 with institutional lead plaintiffs took 33% longer to settle than cases not involving an institutional lead plaintiff.

*Only 42% of cases in 2022 reached a settlement hearing date within three years of filing, the lowest percentage in the prior nine years.*

- Larger cases (as measured by higher "simplified tiered damages") often take longer to resolve. Consistent with this, in 2022, the median time to settlement for cases that settled for at least $100 million was over 5.5 years—an all-time high for such cases.

Figure 12: Median Settlement by Duration from Filing Date to Settlement Hearing Date
2013–2022

(Dollars in millions)



Note: Settlement dollars are adjusted for inflation; 2022 dollar equivalent figures are presented. "N" refers to the number of cases.

# Case Stage at the Time of Settlement

In collaboration with Stanford Securities Litigation Analytics (SSLA),[15] this report analyzes settlements in relation to the stage in the litigation process at the time of settlement.

- Cases settling at later stages continue to be larger in terms of total assets and "simplified tiered damages."

- In particular, the median issuer defendant total assets for 2022 cases that settled after the ruling on a motion for class certification was over four times the median for cases that settled prior to such a motion being ruled on.

- In 2022, cases where a motion for class certification was filed were nearly three times as likely to have either Robbins Geller Rudman & Dowd LLP and/or Bernstein Litowitz Berger & Grossmann LLP as lead plaintiff counsel than The Rosen Law Firm, Pomerantz LLP, or Glancy Prongay & Murray LLP.

- Cases settling at later stages often included an institutional investor lead plaintiff. For example, in 2022, an institutional investor served as lead plaintiff 69% of the time for cases that settled after the filing of a motion for class certification (slightly higher than the percentage over the prior four years), compared to 44% for cases that settled prior to the filing of a motion for class certification (38% in the prior four years)

- Overall, compared to settlements in 2021, a larger proportion of cases in 2022 did not reach settlement until after a motion for class certification was filed. In addition, 14% of 2022 settled cases were resolved after a summary judgment motion, compared to less than 9% for 2018–2021 settlements.

**Figure 13: Median Settlement Dollars and Resolution Stage at Time of Settlement 2018–2022**

(Dollars in millions)



Note: Settlement dollars are adjusted for inflation; 2022 dollar equivalent figures are presented. "N" refers to the number of cases. MTD refers to "motion to dismiss," CC refers to "class certification," and MSJ refers to "motion for summary judgment." This analysis is limited to cases alleging Rule 10b-5 claims (whether alone or in addition to other claims).

# Cornerstone Research's Settlement Analysis

This research applies regression analysis to examine the relations between settlement outcomes and certain securities case characteristics. Regression analysis is employed to better understand the factors that are important for estimating what cases might settle for, given the characteristics of a particular securities class action.

## Determinants of Settlement Outcomes

Based on the research sample of cases that settled from January 2006 through December 2022, important determinants of settlement amounts include the following:

- "Simplified tiered damages"

- Maximum Dollar Loss (MDL)—the dollar-value change in the defendant firm's market capitalization from its class period peak to the trading day immediately following the end of the class period.

- Most recently reported total assets of the issuer defendant firm

- Number of entries on the lead case docket

- Whether there were accounting allegations

- Whether there was a corresponding SEC action against the issuer, other defendants, or related parties

- Whether there were criminal charges against the issuer, other defendants, or related parties with similar allegations to those included in the underlying class action complaint

- Whether there was an accompanying derivative action

- Whether Section 11 and/or Section 12(a) claims were alleged in addition to Rule 10b-5 claims

- Whether the issuer defendant was distressed

- Whether an institution was a lead plaintiff

- Whether securities other than common stock/ADR/ADS, were included in the alleged class

Cornerstone Research analyses show that settlements were higher when "simplified tiered damages," MDL, issuer defendant asset size, or the number of docket entries was larger, or when Section 11 and/or Section 12(a) claims were alleged in addition to Rule 10b-5 claims.

Settlements were also higher in cases involving accounting allegations, a corresponding SEC action, criminal charges, an accompanying derivative action, an institution involved as lead plaintiff, or securities in addition to common stock included in the alleged class.

Settlements were lower if the issuer was distressed.

More than 75% of the variation in settlement amounts can be explained by the factors discussed above.

# Research Sample

# Data Sources

- The database compiled for this report is limited to cases alleging Rule 10b-5, Section 11, and/or Section 12(a)(2) claims brought by purchasers of a corporation's common stock. The sample contains only cases alleging fraudulent inflation in the price of a corporation's common stock.

- Cases with alleged classes of only bondholders, preferred stockholders, etc., cases alleging fraudulent depression in price, and mergers and acquisitions cases are excluded. These criteria are imposed to ensure data availability and to provide a relatively homogeneous set of cases in terms of the nature of the allegations.

- The current sample includes 2,116 securities class actions filed after passage of the Reform Act (1995) and settled from 1996 through 2022. These settlements are identified based on a review of case activity collected by Securities Class Action Services LLC (SCAS).[16]

- The designated settlement year, for purposes of this report, corresponds to the year in which the hearing to approve the settlement was held.[17] Cases involving multiple settlements are reflected in the year of the most recent partial settlement, provided certain conditions are met.[18]

In addition to SCAS, data sources include Dow Jones Factiva, Bloomberg, the Center for Research in Security Prices (CRSP) at University of Chicago Booth School of Business, Standard & Poor's Compustat, Refinitiv Eikon, court filings and dockets, SEC registrant filings, SEC litigation releases and administrative proceedings, LexisNexis, Stanford Securities Litigation Analytics (SSLA), Securities Class Action Clearinghouse (SCAC), and public press.

# Endnotes

[1] Reported dollar figures and corresponding comparisons are adjusted for inflation; 2022 dollar equivalent figures are analyzed.

[2] "Simplified tiered damages" are calculated for cases that settled in 2006 or later, following the U.S. Supreme Court's 2005 landmark decision in *Dura Pharmaceuticals Inc. v. Broudo*, 544 U.S. 336. "Simplified tiered damages" is based on the stock-price drops on alleged corrective disclosure dates as described in the settlement plan of allocation.

[3] Disclosure Dollar Loss or DDL is the dollar-value change in the defendant firm's market capitalization between the end of the class period and the trading day immediately following the end of the class period.

[4] Accounting irregularities reflect those cases in which the defendant has reported the occurrence of accounting irregularities (intentional misstatements or omissions) in its financial statements.

[5] *Securities Class Action Filings—2022 Year in Review*, Cornerstone Research (2023).

[6] The "simplified tiered damages" approach used for purposes of this settlement research does not examine the mix of information associated with the specific dates listed in the plan of allocation, but simply applies the stock price movements on those dates to an estimate of the "true value" of the stock during the alleged class period (or "value line"). This proxy for damages utilizes an estimate of the number of shares damaged based on reported trading volume and the number of shares outstanding. Specifically, reported trading volume is adjusted using volume reduction assumptions based on the exchange on which the issuer defendant's common stock is listed. No adjustments are made to the underlying float for institutional holdings, insider trades, or short-selling activity during the alleged class period. Because of these and other simplifying assumptions, the damages measures used in settlement outcome modeling may differ substantially from damages estimates developed in conjunction with case-specific economic analysis.

[7] Laarni T. Bulan, Ellen M. Ryan, and Laura E. Simmons, *Estimating Damages in Settlement Outcome Modeling*, Cornerstone Research (2017).

[8] The statutory purchase price is the lesser of the security offering price or the security purchase price. Prior to the first complaint filing date, the statutory sales price is the price at which the security was sold. After the first complaint filing date, the statutory sales price is the greater of the security sales price or the security price on the first complaint filing date. Similar to "simplified tiered damages," the estimation of "simplified statutory damages" makes no adjustments to the underlying float for institutional holdings, insider trades, or short-selling activity.

[9] The two sub-categories of accounting issues analyzed in Figure 8 of this report are (1) restatements—cases involving a restatement (or announcement of a restatement) of financial statements; and (2) accounting irregularities.

[10] *Accounting Class Action Filings and Settlements—2022 Review and Analysis*, Cornerstone Research (2023), forthcoming in spring 2023.

[11] To be considered an accompanying or parallel derivative action, the derivative action must have underlying allegations that are similar or related to the underlying allegations of the securities class action and either be active or settling at the same time as the securities class action.

[12] *Parallel Derivative Action Settlement Outcomes*, Cornerstone Research (2022).

[13] As noted previously, it could be that the merits in such cases are stronger, or simply that the presence of a corresponding SEC action provides plaintiffs with increased leverage when negotiating a settlement. For purposes of this research, an SEC action is evidenced by the presence of a litigation release or an administrative proceeding posted on www.sec.gov involving the issuer defendant or other named defendants with allegations similar to those in the underlying class action complaint.

[14] See, for example, *Securities Class Action Settlements—2006 Review and Analysis*, Cornerstone Research (2007) and Michael A. Perino, "Have Institutional Fiduciaries Improved Securities Class Actions? A Review of the Empirical Literature on the PSLRA's Lead Plaintiff Provision," St. John's Legal Studies Research Paper No. 12-0021 (2013).

[15] Stanford Securities Litigation Analytics (SSLA) tracks and collects data on private shareholder securities litigation and public enforcements brought by the SEC and the U.S. Department of Justice. The SSLA dataset includes all traditional class actions, SEC actions, and DOJ criminal actions filed since 2000. Available on a subscription basis at https://sla.law.stanford.edu/.

[16] Available on a subscription basis. For further details see https://www.issgovernance.com/securities-class-action-services/.

[17] Movements of partial settlements between years can cause differences in amounts reported for prior years from those presented in earlier reports.

[18] This categorization is based on the timing of the settlement hearing date. If a new partial settlement equals or exceeds 50% of the then-current settlement fund amount, the entirety of the settlement amount is re-categorized to reflect the settlement hearing date of the most recent partial settlement. If a subsequent partial settlement is less than 50% of the then-current total, the partial settlement is added to the total settlement amount and the settlement hearing date is left unchanged.

# Appendices

## Appendix 1: Settlement Percentiles

(Dollars in millions)

| Year | *Average* | 10th | 25th | *Median* | 75th | 90th |
|---|---|---|---|---|---|---|
| 2013 | *$90.8* | $2.4 | $3.8 | *$8.2* | $27.9 | $103.6 |
| 2014 | *$22.5* | $2.1 | $3.5 | *$7.4* | $16.3 | $61.8 |
| 2015 | *$48.6* | $1.6 | $2.7 | *$8.0* | $20.1 | $116.1 |
| 2016 | *$86.1* | $2.3 | $5.1 | *$10.4* | $40.2 | $178.0 |
| 2017 | *$22.0* | $1.8 | $3.1 | *$6.3* | $18.2 | $42.3 |
| 2018 | *$75.6* | $1.8 | $4.2 | *$13.1* | $28.8 | $57.3 |
| 2019 | *$32.3* | $1.7 | $6.4 | *$12.6* | $22.9 | $57.2 |
| 2020 | *$62.3* | $1.6 | $3.6 | *$11.1* | $22.9 | $60.3 |
| 2021 | *$22.2* | $1.9 | $3.4 | *$8.9* | $19.3 | $63.3 |
| 2022 | *$36.2* | $2.0 | $5.0 | *$13.0* | $33.0 | $71.8 |

Note: Settlement dollars are adjusted for inflation; 2022 dollar equivalent figures are presented.

## Appendix 2: Settlements by Select Industry Sectors
## 2013–2022

(Dollars in millions)

| Industry | Number of Settlements | Median Settlement | Median "Simplified Tiered Damages" | Median Settlement as a Percentage of "Simplified Tiered Damages" |
|---|---|---|---|---|
| Financial | 92 | $14.8 | $293.3 | 5.0% |
| Healthcare | 20 | $14.2 | $189.4 | 6.4% |
| Pharmaceuticals | 119 | $7.6 | $237.6 | 3.8% |
| Retail | 50 | $13.2 | $294.2 | 4.8% |
| Technology | 103 | $9.3 | $315.9 | 4.6% |
| Telecommunication | 26 | $10.5 | $311.0 | 4.4% |

Note: Settlement dollars and "simplified tiered damages" are adjusted for inflation; 2022 dollar equivalent figures are presented. "Simplified tiered damages" are calculated only for cases involving Rule 10b-5 claims (whether alone or in addition to other claims).

Appendices (continued)

Appendix 3: Settlements by Federal Circuit Court
2013–2022
(Dollars in millions)

| Circuit | Number of Settlements | Median Settlement | Median Settlement as a Percentage of "Simplified Tiered Damages" |
|---|---|---|---|
| First | 21 | $12.4 | 3.0% |
| Second | 202 | $9.0 | 5.0% |
| Third | 81 | $7.5 | 4.9% |
| Fourth | 26 | $22.9 | 3.8% |
| Fifth | 38 | $10.7 | 4.9% |
| Sixth | 32 | $13.5 | 7.4% |
| Seventh | 37 | $15.5 | 3.6% |
| Eighth | 14 | $46.4 | 5.1% |
| Ninth | 191 | $7.6 | 4.6% |
| Tenth | 17 | $10.2 | 5.8% |
| Eleventh | 37 | $11.9 | 4.9% |
| DC | 5 | $33.7 | 2.4% |

Note: Settlement dollars are adjusted for inflation; 2022 dollar equivalent figures are presented. Settlements as a percentage of "simplified tiered damages" are calculated only for cases alleging Rule 10b-5 claims (whether alone or in addition to other claims).

Appendix 4: Mega Settlements
2013–2022

■ Total Mega Settlement Dollars as a Percentage of All Settlement Dollars
■ Number of Mega Settlements as a Percentage of All Settlements



Note: Mega settlements are defined as total settlement funds equal to or greater than $100 million.

Appendix 5: Median and Average Settlements as a Percentage of "Simplified Tiered Damages"
2013–2022



Note: "Simplified tiered damages" are calculated only for cases alleging Rule 10b-5 claims (whether alone or in addition to other claims).

Appendix 6: Median and Average Settlements as a Percentage of "Simplified Statutory Damages"
2013–2022



Note: "Simplified statutory damages" are calculated only for cases alleging Section 11 ('33 Act) claims and no Rule 10b-5 claims.

## Appendix 7: Median and Average Maximum Dollar Loss (MDL)
## 2013–2022

(Dollars in millions)



Note: MDL is adjusted for inflation based on class period end dates; 2022 dollar equivalents are presented. MDL is the dollar value change in the defendant firm's market capitalization from the trading day with the highest market capitalization during the class period to the trading day immediately following the end of the class period. This analysis excludes cases alleging '33 Act claims only.

## Appendix 8: Median and Average Disclosure Dollar Loss (DDL)
## 2013–2022

(Dollars in millions)



Note: DDL is adjusted for inflation based on class period end dates; 2022 dollar equivalents are presented. DDL is the dollar-value change in the defendant firm's market capitalization between the end of the class period and the trading day immediately following the end of the class period. This analysis excludes cases alleging '33 Act claims only.

Appendices (continued)

Appendix 9: Median Docket Entries by "Simplified Tiered Damages" Range 2013–2022

(Dollars in millions)



Note: "Simplified tiered damages" are calculated only for cases alleging Rule 10b-5 claims (whether alone or in addition to other claims).

# About the Authors

**Laarni T. Bulan**

Ph.D., Columbia University; M.Phil., Columbia University; B.S., University of the Philippines

Laarni Bulan is a principal in Cornerstone Research's Boston office, where she specializes in finance. Her work has focused on securities and other complex litigation addressing class certification, damages, and loss causation issues, firm valuation, and corporate governance, executive compensation, and risk management issues. She has also consulted on cases related to insider trading, market manipulation and trading behavior, financial institutions and the credit crisis, derivatives, foreign exchange, and securities clearing and settlement.

Dr. Bulan has published notable academic articles in peer-reviewed journals. Her research covers topics in dividend policy, capital structure, executive compensation, corporate governance, and real options. Prior to joining Cornerstone Research, Dr. Bulan had a joint appointment at Brandeis University as an assistant professor of finance in its International Business School and in the economics department.

**Laura E. Simmons**

Ph.D., University of North Carolina at Chapel Hill; M.B.A., University of Houston; B.B.A., University of Texas at Austin

Laura Simmons is a senior advisor with Cornerstone Research. She has more than 25 years of experience in economic consulting. Dr. Simmons has focused on damages and liability issues in securities class actions, as well as litigation involving the Employee Retirement Income Security Act (ERISA). She has also managed cases involving financial accounting, valuation, and corporate governance issues. She has served as a testifying expert in litigation involving accounting analyses, securities case damages, ERISA matters, and research on securities lawsuits.

Dr. Simmons's research on pre– and post–Reform Act securities litigation settlements has been published in a number of reports and is frequently cited in the public press and legal journals. She has spoken at various conferences and appeared as a guest on CNBC addressing the topic of securities case settlements. She has also published in academic journals, including research focusing on the intersection of accounting and litigation. Dr. Simmons was previously an accounting faculty member at the Mason School of Business at the College of William & Mary. From 1986 to 1991, she was an accountant with Price Waterhouse.

The authors gratefully acknowledge the research efforts and significant contributions of their colleagues at Cornerstone Research in the writing and preparation of this annual update. The views expressed herein do not necessarily represent the views of Cornerstone Research.

Many publications quote, cite, or reproduce data, charts, or tables from Cornerstone Research reports. The authors request that you reference Cornerstone Research in any reprint, quotation, or citation of the charts, tables, or data reported in this study.

Please direct any questions and requests for additional information to the settlement database administrator at settlementdatabase@cornerstone.com.

**Boston**
617.927.3000

**Chicago**
312.345.7300

**London**
+44.20.3655.0900

**Los Angeles**
213.553.2500

**New York**
212.605.5000

**San Francisco**
415.229.8100

**Silicon Valley**
650.853.1660

**Washington**
202.912.8900

www.cornerstone.com

© 2023 by Cornerstone Research.
All rights reserved. Cornerstone Research is a registered service mark of Cornerstone Research, Inc.
C and design is a registered trademark of Cornerstone Research, Inc.